1  Thomas B. Mayhew (State Bar No. 183539)
   tmayhew@fbm.com
2  Deborah K. Barron (State Bar No. 257146)
   dbarron@fbm.com
3  Benjamin J. Sitter (State Bar No. 273394)
   bsitter@fbm.com
4  Farella Braun + Martel LLP
   235 Montgomery Street, 17th Floor
5  San Francisco, CA  94104
   Telephone:  (415) 954-4400
6  Facsimile:  (415) 954-4480

7  Attorneys for Defendant

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11

12  SCOTT MILLER, an individual, on        Case No.
    behalf of himself, the general public
    and those similarly situated,          **NOTICE OF REMOVAL**
13
                                           **CLASS ACTION**
14              Plaintiff,

15       vs.

16  GHIRARDELLI CHOCOLATE
    COMPANY, and DOES 1
17  THROUGH 50,

18              Defendants.

19

20  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT,**

21  **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION:**

22       PLEASE TAKE NOTICE THAT:  Defendant Ghirardelli Chocolate

23  Company ("Ghirardelli" or "Defendant"), by and through its undersigned counsel

24  and pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, hereby removes this

25  action from the Superior Court of San Francisco, California, to the United States

26  District Court for the Northern District of California.  In support of its Notice of

27  Removal, Ghirardelli states as follows:

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NOTICE OF REMOVAL

28172\3251623.1

1.   Plaintiff Scott Miller (the "Plaintiff") filed his Class Action Complaint for damages and other monetary, injunctive and other relief (the "Complaint"), styled *Scott Miller, an individual, on behalf of himself, the general public and those similarly situated v. Ghirardelli Chocolate Company; and Does 1-50*, Case No. CGC-12-523375, on August 17, 2012, in San Francisco Superior Court. *See* Exh. A (Complaint). The Complaint alleges that Ghirardelli violated California's Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*), False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), and Unfair Competition Law (California Business and Professions Code §§ 17200, *et seq.*) by deceptively advertising certain of its products. The Complaint alleges similar claims against fictitious Defendants Does 1–50.

2.   Plaintiff seeks restitution, compensatory and punitive damages, attorneys' fees and costs, and pre- and post-judgment interest. *See* Exh. A, Prayer. Plaintiff also seek injunctive and declaratory relief. *See, e.g.*, Exh. A ¶¶ 79, 101.

3.   Ghirardelli was served with a copy of Plaintiff's Complaint on August 23, 2012, Exh. B (Certificate of Service of Process Transmittal). Thus, this removal is effected and has been timely filed within thirty (30) days of the removing Defendant being served with process, as allowed by 28 U.S.C. § 1446(b).

4.   Ghirardelli denies any liability in this action and intends to oppose class certification. However, for purposes of the jurisdictional requirements for removal, and based on the allegations of Plaintiff's Complaint, Ghirardelli has a good-faith belief that the requirements for removal set forth in 28 U.S.C. § 1332(d) are met, including the requirement that the proposed class exceeds 100 members and the requirement that the aggregate amount in controversy exceeds $5,000,000.00 (Five Million U.S. Dollars).

## Jurisdiction

5.   This Court has jurisdiction over this matter, which is properly removed pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. Specifically, removal of this

1  putative class action is appropriate pursuant to 28 U.S.C. §§ 1332(d), 1441(a) and

2  1453.  Original jurisdiction exists pursuant to 28 U.S.C. § 1332(d), as amended by

3  the Class Action Fairness Act of 2005 ("CAFA"), in that the number of persons in

4  the proposed class exceeds 100, the matter in controversy exceeds the value of

5  $5,000,000.00, exclusive of interest and costs, the parties are minimally diverse,

6  and no applicable exceptions apply.

**Intradistrict Assignment**

7

8       6.      Because this action is pending in the Superior Court of California,

9  County of San Francisco, upon removal, it should properly be assigned to the San

10  Francisco Division of the United States District Court for the Northern District of

11  California.  *See* 28 U.S.C. 1441(a).

12  **I.      THE NUMBER OF PERSONS IN THE PROPOSED CLASS
            EXCEEDS ONE HUNDRED.**

13

14       7.      For jurisdiction to exist under CAFA, the total number of people in all

    proposed plaintiff classes must exceed one hundred.  *See* 28 U.S.C.
15
    § 1332(d)(5)(B).  The proposed class is sufficiently numerous to satisfy this
16
    jurisdictional threshold.
17

18       8.      Plaintiff seeks to represent a class of persons that plaintiff defines as:

19  "All persons who between August 17, 2008 and the present, purchased, in the

20  United States, any of the following products: 'Ghirardelli Chocolate Premium

    Baking Chips – Classic White,' 'Ghirardelli Chocolate White Chocolate Flavored
21
    Confectionary Coating Wafers,' 'Ghirardelli Chocolate Sweet Ground White
22
    Chocolate Flavor,' 'Ghirardelli Chocolate Premium Hot Beverage – White Mocha,'
23
    or 'Ghirardelli Chocolate Frappé Classico – Classic White.'"  *See* Exh. A, ¶ 51.
24

25       9.      Plaintiff alleges that the class is estimated to have more than 100

26  members.  *See* Exh. A, ¶ 53.  This is uncontested by defendant.  Indeed, Ghirardelli

    has sold hundreds of thousands of bags of white baking chips each year:  over a
27
    million pounds in 2010, for example.  It is improbable that they were all consumed
28

1   by 99 people.  People enjoy Ghirardelli products, but no one can eat that many

2   cookies.

3          10.    Therefore, the number of persons allegedly belonging to the proposed

4   class exceeds 100, satisfying the requirement of 28 U.S.C. § 1332(d)(5)(B).

5   **II.    THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000.00.[1]**

6          11.    For jurisdiction to exist under CAFA, the amount in controversy must

7   exceed $5,000,000.00, exclusive of interests and costs.  28 U.S.C. § 1332(d)(2).

8   The claims of the individual class members shall be aggregated to determine

9   whether the matter in controversy exceeds the sum or value of $5,000,000.00.  28

10  U.S.C. § 1332(d)(6).  The amount in controversy in this case exceeds the

11  jurisdictional threshold.

12         12.    Plaintiff claims that the amount at stake in the action is the full amount

13  paid by consumers for the product.  Plaintiff alleges that he seeks full restitution of

14  any and all monies acquired by Defendants from Plaintiff, the general public, or

15  those similarly situated herein by means of the unfair and/or deceptive trade

16  practices complained of," *see* Exh. A, ¶¶ 47, 58; Prayer for Relief ¶ 2, which

17  plaintiff claims is the full amount the proposed class paid for the products at issue.

18  *Id.*, ¶¶ 90 ("As a direct and proximate result of Defendants' misrepresentations,

19  Plaintiff and those similarly situated have suffered damages, including, without

20  limitation, the amount the paid for the chocolate classic white premium baking

21  chips."), 102 ("Among other things, Plaintiff and the class lost the amount they paid

22  for the Fake White Chocolate Products.").

23         13.    In 2010, Ghirardelli made $5,309,920 in sales of 11 oz. bags of the

24  white baking chips.  Exh. C (Decl. of Kevin Zaccardi), ¶ 2.  The amount in

25

26  [1]     The calculations provided in this section are solely for purposes of
    determining the potential amount in controversy, and are not intended in any way as
27  an admission of liability or a concession as to the proper scope or scale of damages
    or other remedies.  Defendant denies that plaintiff is entitled to the relief he seeks,
28  or that the remedy he seeks is proper.

1  controversy is higher, as Plaintiff seeks all retail sales of all of the Ghirardelli

2  products at issue over a span of four years.

3       14.    Therefore, on the basis of Plaintiff's claims for restitution and

4  damages, the amount in controversy threshold of more than $5,000,000.00 is

5  satisfied.  The requirement of 28 U.S.C. § 1332(d)(2) has, therefore, been met.

6  **III.**    **THE PARTIES ARE MINIMALLY DIVERSE**

7       15.    For jurisdiction to exist, CAFA requires "minimal diversity," meaning

8  that diversity will exist so long as "any member of a class of plaintiffs is a citizen of

9  a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).

10       16.    Plaintiff is a resident of Auburndale, Florida, and seeks to represent a

11  nationwide class.  Exh. A, ¶¶ 2, 51-59.

12       17.    Ghirardelli is a California corporation with its principal place of

13  business in Alameda County, California.  Exh. A, ¶ 3.

14  **IV.**    **NO EXCEPTIONS PROHIBITING REMOVAL APPLY**

15       18.    This Court has original jurisdiction over this action pursuant to 28

16  U.S.C. § 1332(d) because this is a civil action that is a class action within the

17  meaning of § 1332(d)(1)(B); the action involves a putative class of more than 100

18  members as required by § 1332(d)(5)(B); the amount in controversy exceeds

19  $5,000,000.00, exclusive of interest and costs, as required by § 1332(d)(2); and the

20  class is minimally diverse as required by § 1332(d)(2)(A).

21       19.    A federal court may decline jurisdiction where greater than one-third

22  but less than two-thirds of the members of all proposed plaintiff classes and the

23  primary defendants are citizens of the state in which the action was originally filed.

24  *See* 28 U.S.C. §§ 1332(d)(3).  Additionally, a district court *must* decline removal

25  jurisdiction over a class action in which two-thirds or more of all members of the

26  proposed classes and the primary defendants are citizens of the state where the

27  action was originally filed.  *See* 28. U.S.C. §§ 1332(d)(4)(B).  Neither of these

28  provisions applies here.  Since 2009, less than 20% of all wholesale sales of the

1    Ghirardelli products at issue were made to California customers.  Exh. C (Zaccardi

2    Decl.), ¶ 3.  Thus, fewer than one third of the members of all proposed plaintiff

3    classes in the aggregate are citizens of the state in which the action was originally

4    filed, and federal jurisdiction is proper.  *See* 28 U.S.C. §§ 1332(d)(3),

5    1332(d)(4)(A)(i)(I), and 1332(d)(4)(B).

6        20.    The primary defendant is not a State, State official, or other

7    governmental entity against whom the district court may be foreclosed from

8    ordering relief.  *See* 28 U.S.C. § 1332(d)(5)(A).

9        21.    This action does not solely involve a claim described by 28 U.S.C.

10   § 1332(d)(9).

11       22.    The citizenship of fictitious ("John Doe") defendants is to be

12   disregarded for purposes of removal.  *See, e.g.*, 28 U.S.C. § 1441(b)(1).

13   **V.    OTHER PROCEDURAL REQUIREMENTS**

14       23.    The United States District Court for the Northern District of California

15   is the court embracing the place wherein the instant action is pending in state court.

16   28 U.S.C. § 84(a).  San Francisco is the proper division or location for the matter.

17   *See* 28 U.S.C. § 1441(a).

18       24.    True and correct copies of the Summons and Complaint served on

19   Ghirardelli are attached as Exhibit A.  Exhibit B is the Certificate of Service of

20   Process Transmittal.  Exhibit C is the Declaration of Kevin Zaccardi.  Other than

21   the Summons and Complaint, there are no records and proceedings filed in state

22   court that need be attached to this Notice of Removal.  Exhibits A, B, and C

23   constitute the complete record of all records, process, and proceedings in the state

24   court that are required to be appended hereto by 28 U.S.C. § 1446(a).

25       25.    Promptly upon filing the Notice of Removal, Ghirardelli shall furnish

26   written notice to Plaintiff's counsel, and shall file and serve a copy of this notice

27   upon the Clerk of the San Francisco Superior Court, pursuant to 28 U.S.C.

28   § 1446(d).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NOTICE OF REMOVAL                          - 6 -

28172\3251623.1

1    26.    Wherefore, Defendant hereby removes this action from the Superior

2    Court of California in and for San Francisco County.

3    Dated:    September 21, 2012          Farella Braun + Martel LLP

4

5                                          By: _____

6                                                Benjamin J. Sitter

7                                          Attorneys for Defendants
                                           GHIRARDELLI CHOCOLATE
8                                          COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

08/23/12 0 323

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

NOTICE TO DEFENDANT:
(AVISO AL DEMANDADO):

GHIRARDELLI CHOCOLATE COMPANY; AND DOES 1 THROUGH 50

YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTÁ DEMANDANDO EL DEMANDANTE):

SCOTT MILLER, an individual, on behalf of himself, the general public and those similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):
San Francisco Superior Court, 400 McAllister Street, San Francisco, CA 94102

CASE NUMBER:
(Número del Caso):
12 - 523375

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Seth A. Safier, Gutride Safier LLP, 835 Douglass St., San Francisco, CA 94114, 415-336-6545

DATE: AUG 17 2012          CLERK OF THE COURT          Clerk, by DELA VEGA-NAVARRO, Rossaiy , Deputy
(Fecha)                                               (Secretario)                              (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [X] on behalf of (specify): Ghirardelli Chocolate Company

   under: [X] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [X] by personal delivery on (date): 08/23/12

[SEAL]

FAXED

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
www.accesslaw.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Seth A. Safier, Esq. (SBN 197427)
Gutride Safier LLP
835 Douglass Street, San Francisco, California 94114

TELEPHONE NO.:415-336-6545          FAX NO.:415-449-6469

ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS:400 McAllister St.
MAILING ADDRESS:400 McAllister St.
CITY AND ZIP CODE:San Francisco, California 94102
BRANCH NAME:SAN FRANCISCO SUPERIOR COURT

CASE NAME:
MILLER v. GHIRARDELLI CHOCOLATE COMPANY, ET AL

**ENDORSED**
**F I L E D**
San Francisco County Superior Court

AUG 17 2012

**CLERK OF THE COURT**
BY: ROSSALY DELAVEGA-NAVARRO
Deputy Clerk

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder | | C G C |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: | 12 - 523375 |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

**2.** This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought (check all that apply): a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[✓] punitive
**4.** Number of causes of action (specify):four (4)
**5.** This case [✓] is [ ] is not   a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:August 17, 2012

Seth A. Safier, Esq.
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

FAXED

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; |
|---|---|---|
| Judicial Council of California | | Cal. Standards of Judicial Administration, std. 3.10 |
| CM-010 [Rev. July 1, 2007] | | www.courtinfo.ca.gov |
| | | www.access.law.com |

1   GUTRIDE SAFIER LLP
2   ADAM J. GUTRIDE (State Bar No. 181446)
    SETH A. SAFIER (State Bar No. 197427)
3   ANTHONY J. PATEK (State Bar No. 228964)
    KRISTEN G. SIMPLICIO (State Bar No. 263291)
4   835 Douglass Street
    San Francisco, California 94114
5   Telephone: (415) 271-6469
    Facsimile:  (415) 449-6469
6
7   Attorneys for Plaintiff

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10  SCOTT MILLER, an individual, on behalf of          CASE NO.
11  himself, the general public and those similarly situated    CGC - 12 - 523375
                                                        UNLIMITED CIVIL CASE
12        Plaintiff,
                                                        CLASS ACTION COMPLAINT
13           v.                                         FOR VIOLATION OF THE
                                                        CALIFORNIA CONSUMERS
14  GHIRARDELLI CHOCOLATE COMPANY; AND DOES    LEGAL REMEDIES ACT;
15  1 THROUGH 50                                       FALSE ADVERTISING;
                                                        FRAUD, DECEIT, AND/OR
16        Defendants                                    MISREPRESENTATION; AND
                                                        UNFAIR BUSINESS PRAC-
17                                                      TICES
18
                                                        JURY TRIAL DEMANDED
19
20
21
22
23
24
25
26
27
28

ENDORSED
F I L E D
San Francisco County Superior Court
AUG 17 2012
CLERK OF THE COURT
BY: ROSSALY DELAVEGA-NAVARRO
Deputy Clerk

FAXED

-1-

Scott Miller, by and through his counsel, brings this Class Action Complaint against Defendant Ghirardelli Chocolate Company, on behalf of himself and those similarly situated, for violations of the Consumer Legal Remedies Act, false advertising, unfair trade practices, and fraud, deceit and/or misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.      Defendants deceptively informed and led their customers to believe that they were purchasing, for a premium price, products containing white chocolate, while failing to adequately disclose that such products contain no white chocolate, or chocolate of any kind. Defendants obtained substantial profits from these deceptive sales.

## PARTIES

2.      Scott Miller ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Auburndale, Florida.

3.      Defendant Ghirardelli Chocolate Company ("Ghirardelli") is a corporation incorporated under the laws of the State of California, having its principal place of business in San Leandro, California.  Ghirardelli is a wholly owned subsidiary of Lindt & Sprüngli AG.

4.      The true names and capacities of Defendants sued as Does 1 through 50 inclusive are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Plaintiff will seek leave of Court to amend this Class Action Complaint when said true names and capacities have been ascertained.

5.      The Parties identified in paragraphs 3 and 4 of this Class Action Complaint are collectively referred to hereafter as "Defendants" or "Ghirardelli."

6.      At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

7.      At all times herein mentioned, Defendants, and each of them, were members of,

-1-

Class Action Complaint

and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

8.    At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

9.    At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

**JURISDICTION AND VENUE**

10.    This action is brought by Plaintiff pursuant, *inter alia*, to the California Business and Professions Code, section 17200, *et seq.*  Plaintiff and Defendants are "persons" within the meaning of the California Business and Professions Code, section 17201.

11.    The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California.

12.    Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California, including in San Francisco and Alameda Counties. Defendants were founded in San Francisco, where they maintain their "Original Chocolate Manufactory" flagship store and from which they sell more chocolate than from any other retail location in the United States.  Defendants have their headquarters in San Leandro, from which they managed the design of the packaging, website and other marketing materials described herein, and from which they managed the distribution of their purportedly white chocolate products throughout the United States.

13.    In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that, in June of 2012, he purchased at least one Ghirardelli product and that Ghirardelli has its headquarters in San Leandro, California, in the County of Alameda and does business in San Francisco.  (Plaintiff's declaration is attached hereto

-2-

Class Action Complaint

1    as Exhibit A.)

2          14.    Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

3                          **SUBSTANTIVE ALLEGATIONS**

4        **Defendants' Advertising and Marketing Materials Are Deceptive**

5                          **(1) The Packaging**

6          15.    Ghirardelli is a manufacturer and marketer of premium chocolate products.

7          16.    Claiming to be America's longest continuously operating chocolate manufacturer,

8    Ghirardelli markets itself as having established its position as America's premium chocolate

9    company for more than 150 years.  Defendants further contend on their website at

10   www.ghirardelli.com (the "Website") (last visited August 13, 2012) that they "are one of very

11   few American manufacturers that make chocolate starting from the cocoa bean through to

12   finished products. Throughout the process, [Ghirardelli claims to take] special steps to ensure that

13   [their] premium chocolate delivers [its] signature intense, smooth-melting chocolate taste."

14         17.    Ghirardelli also claims on its Website that its customers can taste the "Ghirardelli

15   difference" due to the following:

16           a.    "Intensive quality assurance in the selection of cocoa beans means that Ghirardelli

17                  accepts only the highest-quality beans. We reject as many as 40% of the beans that

18                  are offered to it. Beans that are not selected are sold to other manufacturers."

19           b.    "In all of its chocolate products, Ghirardelli uses a proprietary blend of cocoa

20                  beans that has been refined over the company's 150-year history to provide the

21                  company's distinct and intense chocolate taste."

22           c.    "Ghirardelli roasts the cocoa beans in-house to ensure the company's signature

23                  flavor profile is consistently maintained in all chocolate products. We also use a

24                  different roasting process whereby they remove the shell first and then roast the

25                  small nibs inside. Because the nibs are fairly uniform in size, we have more

26                  control over the temperature and time, so it can get a more specific flavor. Other

27                  companies roast their beans before removing the shell, which requires over-

28                  roasting the outside portion of the bean in order to roast the inside. This could

1    impart a burned flavor to their chocolate."

2        d.  "Finally, Ghirardelli uses an intensive refining process to ensure that its chocolate

3            truly melts in [its customer's] mouth! Ghirardelli has no grainy feel because it

4            refines most of our chocolate flakes until they are 19 microns (human hair is 100

5            microns in diameter). Other mass market chocolates are refined to only 40

6            microns."

7        18.    Ghirardelli's states that its product line includes its signature SQUARES™

8    chocolate, chocolate bars, other chocolate confections, chocolate chip cookies, "baking

9    chocolate," and chocolate beverages.

10       19.    This case focuses on five Ghirardelli products that are sold and marketed as white

11   chocolate products even though they contain no chocolate or cocoa butter.  These are:

12       a.  Ghirardelli® Chocolate Premium Baking Chips – Classic White ("Fake White

13           Chocolate Chips")

14       b.  Ghirardelli® Chocolate White Chocolate Flavored Confectionary Coating Wafers

15           ("Fake White Chocolate Wafers")

16       c.  Ghirardelli® Chocolate Sweet Ground White Chocolate Flavor ("Fake Ground

17           White Chocolate")

18       d.  Ghirardelli® Chocolate Premium Hot Beverage – White Mocha ("Fake White

19           Mocha")

20       e.  Ghirardelli® Chocolate Frappé Classico – Classic White  ("Fake White Chocolate

21           Frappé")

22   In this complaint these products will be collectively referred to as the "Fake White Chocolate

23   Products."

24       20.    Through the use of intentional misrepresentations and selective omission,

25   Ghirardelli deceptively misleads consumers to believe that these products in fact contain white

26   chocolate or are flavored with white chocolate.  In fact, none of the products contain "white

27   chocolate" or even "white chocolate flavor," because none contain any cocoa butter.

28       21.    As defined by Webster's Dictionary, "white chocolate" is "a confection of cocoa

-4-

Class Action Complaint

1  butter, sugar, milk solids, lecithin, and flavorings."

2      22.    The United States Food and Drug Administration ("FDA") has issued regulations

3  to define "white chocolate" and "white chocolate flavor," and those regulations have been

4  adopted by the State of California as part of the Sherman Food, Drug and Cosmetic Law,

5  California Health and Safety Code ("Cal. Health & Saf. Code") § 109875, et seq.  The FDA

6  regulations provide that "White chocolate is the solid or semiplastic food prepared by mixing and

7  grinding cocoa butter with one or more of the optional dairy ingredients listed in [21 C.F.R. §

8  163.124(b)(2)] and one or more optional nutritive carbohydrate sweeteners.  **It contains a**

9  **minimum of 20 percent cocoa butter,** a minimum of 14 percent of total milk solids, a minimum

10 of 3.5 percent milkfat, and a maximum of 55 percent nutritive carbohydrate sweeteners."  21

11 C.F.R. §163.124 (emphasis added); 67 Fed. Reg. 62171, 62173(Oct. 4, 2002) (establishing

12 standard of identity for white chocolate; explaining that "Because products bearing the name

13 "chocolate" would be expected to contain some cacao-derived ingredients, we believe that it is

14 necessary to ensure that 'white chocolate' contains cacao-derived ingredients."); Cal. Health &

15 Saf. Code §§ 110100(a), 110380, 110505 (adopting FDA standards).

16     23.    The FDA regulations (which also have been adopted as state standards, *id.*) further

17 provide that a product may not be labeled as "flavored" by an ingredient unless the product

18 actually contains a flavor derived from that ingredient.  21 C.F.R. § 101.22(i)(1)(i).  Thus, the

19 FDA has explained that a product cannot be called "white chocolate flavored" unless it has some

20 natural derivative of cocoa butter or cacao fat.  *See* 67 Fed. Reg. 62171, 62174 ("FDA regulations

21 governing use of the term 'flavored' provide that a product that is expected to contain an

22 ingredient, e.g., 'white chocolate,' must bear the term 'flavored' in the name of the food if the

23 food contains natural flavor derived from that ingredient and either an amount of the ingredient

24 insufficient to independently characterize the food or none of the ingredient. Therefore, unless a

25 food contains the flavoring constituents derived from white chocolate, it cannot be named 'white

26 chocolate-flavored.' Once a standard for white chocolate has been established, the term 'white

27 chocolate-flavored' could be used to describe a food that is commonly expected to contain the

28 characterizing food ingredient, white chocolate, and which contains natural flavor derived from

1    such an ingredient (i.e., cocoa butter or cacao fat).") (*citing* 21 C.F.R. § 101.22(i)(1)(i)).

2        24.    The packaging for the Fake White Chocolate Products is inconsistent with, at a

3    minimum, common dictionary definitions and the FDA regulations embodied in the state law, and

4    it is highly deceptive.   For example, the packaging of the Fake White Chocolate Chips

5    prominently uses the term "chocolate" in the company name "Ghirardelli® Chocolate." It refers

6    to the product as "Classic White" to deceptively mislead consumers into believing that it is classic

7    white chocolate.  It states that the product is "Premium" leading consumers to incorrectly believe

8    that, unlike its competitors, the product is a premium white chocolate chip product.  It then goes

9    on to deceptively state: "The luxuriously deep flavor and smooth texture of Ghirardelli Premium

10   Baking Chocolate delivers the ultimate chocolate indulgence." But because there is no chocolate

11   or white chocolate in Defendants' chips, the product cannot deliver a "deep chocolate flavor or

12   texture" or the "ultimate chocolate indulgence."  The label further says that the product contains

13   the "Finest grind for smoothest texture and easiest melting" but in fact, unlike real white

14   chocolate, the product is not "ground" from cocoa beans.

15       25.    The use of the language about "luxuriously deep & ultimate chocolate indulgence"

16   and "finest grind for smoothest texture and easiest melting" is particularly misleading because the

17   *identical* language appears on the packaging of another product made by Defendants: the

18   Ghirardelli® Chocolate White Chocolate Premium Baking Bar.  But the latter product *does* in fact

19   contain white chocolate (a.k.a. at least 20% cocoa butter.)  Indeed, the first listed ingredient is

20   "White chocolate."  Thus, consumers who see both products (which are likely to appear near each

21   other on the retail shelves or Defendants' Website, and which are sold at the same price) will

22   assume that both contain the same ingredients except that one is a bar one and other is the chips,

23   but the products are otherwise the same.

24       26.    The packaging for the Fake White Chocolate Wafers is similarly deceptive.  It also

25   prominently uses the term "chocolate" in the company name "Ghirardelli® Chocolate."  It further

26   refers to the product as "White Chocolate Flavored Confectionary Coating Wafers" to deceptively

27   mislead consumers into believing that it flavored with white chocolate.  In fact none of its

28   ingredients are derived from cocoa butter / cacao fat.

27.     The deception in the packaging of the Fake White Chocolate Wafers is even more apparent when put side-by-side with nearly identical packaging of another product sold by Defendants, the Ghirardelli® Chocolate Double Chocolate Flavored Confectionary Coating Wafers.  That packaging uses the same font, background and location for the words "Double Chocolate Flavored Confectionary Coating Wafers" as are used for the words "White Chocolate Flavored Confectionary Coating Wafers" on the Fake White Chocolate Wafers packaging. As these products are likely to appear side-by-side at retail locations (as well as on Defendants' Website), and are marketed for the same price, consumers are misled to believe that both contain chocolate, but one is white chocolate while the other is sweetened dark chocolate.

28.     The packaging for the Fake Ground White Chocolate is similarly deceptive.  It also prominently uses the term "chocolate" in the company name "Ghirardelli® Chocolate."  It further refers to the product as "Sweet Ground White Chocolate Flavor" with the word "Flavor" in a substantially smaller font.  It goes to say that the product is "For White Chocolate Hot Cocoas and White Mochas."  On the back of the package, it states "Ghirardelli® Sweet Ground White Chocolate Flavor" again with the word "Flavor" in a substantially smaller font.  It then goes on to deceptively state: "This mix offers a luxuriously rich and complex white chocolate flavor, whether you're using it to make white mochas or white hot cocoas."  But because there is no chocolate, white chocolate or cocoa derivatives in the product, the product cannot deliver a "chocolate flavor" or be used to make a "mocha" or "hot cocoa."  The package further states that the product can be combined with hot milk to make "Ghirardelli White Hot Cocoa," which is false because there is no cocoa derivative.  Finally, the fact that the title of the product contains the word "Ground" deceptively implies that it has been ground from cocoa beans, which is not the case.

29.     The use of the word "Flavor" in the product name of the Fake Ground White Chocolate does not eliminate the deception.  As noted above, a product cannot be properly described as "flavored" with white chocolate unless it contains cocoa butter / cacao fat. Furthermore, Defendants market other white chocolate products with the same word "Flavor" in the product name that *do* have cocoa butter.  For example, Defendants market a product called

1   "Ghirardelli® Chocolate Classic White Flavored Sauce" that contains cocoa butter.

2       30.     The deception in the packaging of the Fake Ground White Chocolate is even more

3   apparent when put side-by-side with nearly identical packaging of another product sold by

4   Defendants, the "Ghirardelli® Chocolate Sweet Ground Chocolate And Cocoa." That product

5   actually does contain ground chocolate (a.k.a. ground cocoa).  It uses the same font and location

6   for the words "Sweet Ground Chocolate" as are used for the words "Sweet Ground White

7   Chocolate" on the Fake Ground White Chocolate packaging.  It then uses the identical font and

8   location for the words "For Hot Cocoa and Mochas" as is used for the words "For White

9   Chocolate Hot Cocoas and White Mochas" on the Fake Ground White Chocolate packaging.  As

10  these products are likely to appear side-by-side at retail locations (as well as on Defendants'

11  Website), and are marketed for the same price, consumers are misled to believe that both contain

12  chocolate, but one is white chocolate while the other is sweetened dark chocolate.

13      31.     The packaging of the Fake White Mocha is similarly deceptive. It also prominently

14  uses the term "chocolate" in the company name "Ghirardelli® Chocolate." It states that "The rich

15  indulgent flavor of Ghirardelli Premium White Mocha creates the pleasurable moment cocoa

16  lovers cherish."  This statement falsely implies that the product is derived from premium cocoa.

17  Further, the use of the term "mocha" is itself deceptive as that term is commonly understood to

18  mean the combination of coffee and chocolate, with "white mocha" meaning a combination of

19  coffee and white chocolate.  *See, e.g., http://en.wikipedia.org/wiki/Cafe_mocha*, last visited Aug.

20  15, 2012.  "Mochas" are commonly available at coffee shops, where they are prepared with

21  espresso, water, and chocolate syrup.  Indeed, the term "mocha" originally meant a particular type

22  of Arabian coffee that had a chocolate-like taste, and they were named for "Mocha," the port in

23  Yemen from which the beans were shipped.  *Id.; accord* The American Heritage Dictionary of

24  the English Language (4th ed. 2000).

25      32.     The packaging for the Fake White Chocolate Frappé is similarly deceptive.  It also

26  prominently uses the term "chocolate" in the company name "Ghirardelli® Chocolate."  It states

27  that "The luxuriously rich and complex flavor of Ghirardelli's Classic White Frappé Classico

28  creates the pleasurable moment cherished by white chocolate lovers."  This statement falsely

1   implies that the product is derived from white chocolate.

2       33.    The deception in the packaging of the Fake White Chocolate Frappé is even more

3   apparent when put side-by-side with nearly identical packaging of another product sold by

4   Defendants, the "Ghirardelli® Chocolate Double Chocolate Frappé." That product uses the same

5   font, background and location for the words "Double Chocolate" as are used for the words

6   "Classic White" on the Fake White Chocolate Frappé packaging. As these products are likely to

7   appear side-by-side at retail locations (as well as on Defendants' Website), and are marketed for

8   the same price, consumers are misled to believe that both contain chocolate, but one is white

9   chocolate while the other is sweetened dark chocolate.

10       34.    The use of the term "Classic White" in the Fake White Chocolate Chips (and

11   "Classico" in the Fake White Chocolate Frappé) also does not remove the deception. The term

12   "classic" actually increases the deception because it suggests that the product is unchanged from

13   the original (e.g., Coke Classic). In this case, the "original" white chocolate product is the

14   "Ghirardelli® Chocolate Premium Baking Bar – White Chocolate" which does contain white

15   chocolate. Furthermore, Defendants use the same term—"Classic White"—in the name of their

16   "Ghirardelli® Chocolate Classic White Flavored Sauce" which as noted above, does contain

17   cocoa butter. And Defendants also sell other candy bars apparently containing real white

18   chocolate: the "Ghirardelli® Chocolate Sublime White Cookies Jubilee Bar" and "Ghirardelli®

19   Chocolate Sublime White Vanilla Dream Bar." Nothing would lead a reasonable consumer to

20   think that a "Sublime White" product is real white chocolate, while some (but not all) "Classic

21   White" products are not real white chocolate.

22       35.    Defendants also intentionally price their Fake White Chocolate Products as the

23   same price as their similar real (dark or milk) chocolate products. For example, they sell their

24   Fake White Chocolate Chips at the same price as their real chocolate chips (i.e., their milk

25   chocolate, semi-sweet chocolate, and bittersweet chocolate chips), their Fake Ground White

26   Chocolate at the same price as their ground chocolate (i.e., ground cocoa), their Fake White

27   Mocha at the same price as their real "Ghirardelli® Chocolate Premium Hot Cocoa – *Chocolate*

28   *Mocha*," (i.e., coffee-flavored cocoa), and their Fake White Chocolate Wafers at the same prices

-9-

1   as their real chocolate wafers (*i.e.*, sweetened dark chocolate wafers).  These actions further

2   deceive customers into believing that all the Fake White Chocolate Products contain chocolate.

3   As a result, customers pay a premium for the Fake White Chocolate Products that cost

4   Defendants far less to manufacture than real chocolate products.

5         36.    Beyond Defendants' affirmative misrepresentations, Defendants fail to adequately

6   disclose that their Fake White Chocolate Products are not white chocolate and/or that they do not

7   contain any white chocolate or cocoa butter.

8                  **(2) Defendants' Other Marketing Materials**

9         37.    Beyond Defendants' false and deceptive packaging, Defendants falsely and

10   deceptively market and advertise the Fake White Chocolate Products on their Website, and in

11   other widely available advertising and marketing materials.

12         38.    As explained above, Defendants' Website touts the history and preeminence of

13   Ghirardelli Chocolate products with no indication that any of them are not in fact chocolate.

14   The Website also overtly lists the product name of the Fake White Chocolate Chips as "Classic

15   White Chocolate Baking Chips" (whereas the package states "Premium Baking Chips – Classic

16   White").  It similarly lists the product name of the Fake Ground White Chocolate as "Sweet

17   Ground White Chocolate" (omitting the word "Flavor").  These misrepresentations not only

18   further the deception for customers and retailers who review the Website, but they show that even

19   the Defendants' employees who have created the Website were misled into believing that the

20   Fake White Chocolate Chips and Fake Ground White Chocolate are real white chocolate.

21         39.    Defendants also train their store personnel at their branded retail locations

22   (including the flagship store at Ghirardelli Square and the store at Union Square, both in San

23   Francisco), to inform customers that *all* the Ghirardelli products are real chocolate products.

24   Customers who ask, for example, for "white chocolate chips" are directed to the Fake White

25   Chocolate Chips without being told that the product contains no chocolate.  In one instance, an

26   investigator asked a Ghirardelli store retail employee if there were any non-chocolate Ghirardelli

27   products that he could purchase for a friend with a chocolate allergy; the employee stated (as

28   trained to do), that there were none.

40.     Defendants further permit customers to search their website accordingly to products.  When customers "Shop By Product," and chose the "White Chocolate" category, they are presented with the Fake White Chocolate Chips, the Fake Ground White Chocolate, and the Fake White Chocolate Wafers.  These products appear alongside the real White Chocolate Baking Bar and the Classic White Chocolate Flavored Sauce, which, as discussed above, do contain white chocolate and/or cocoa butter, which compounds the deception.

41.     Defendants also advertise, for example, on the Internet by purchasing key words such as "white chocolate," and asking consumers if they "Want White Chocolate?"  If consumers follow the link on Defendants' advertisements, they are taken to Defendants' website and offered the Fake White Chocolate Products.

42.     Finally, Defendants permit their marketing partners, including grocery stores, to advertise, market, advertise and sell their Fake White Chocolate Products.  Defendants provide their marketing partners information that specifically refers to these Fake White Chocolate Products as real white chocolate.  For example, the marketing material provided by Defendants to retailers for the Fake White Chocolate Chips tells retailers that the product name is "Classic White Chocolate Chips."  Retailers in turn use this name when displaying the product on store shelves.

### (3) Defendants' Competitors More Accurately Disclose the Truth

43.     Unlike Defendants, their competitors more adequately disclose the truth about their Fake White Chocolate Products.

44.     The Hershey Company, for example, sells a competitive product to Defendants' Fake White Chocolate Chips, which it calls "Premier White Chips."  But unlike the Defendants' Fake White Chocolate Chips, Hershey specifically states, immediately under the name of the product, "Artificially Flavored Creamy Vanilla."  Moreover, nowhere does the Hershey's package state "chocolate."  Indeed, the Hershey product offers a recipe for "White Chip Chocolate Cookies" (rather than "White Chocolate Chip Cookies"), which specifically requires that the user add cocoa powder.  As a result, the retail price for Hershey's Premier White Chips is less than Defendants' Fake White Chocolate Chips.

45.     Similarly, the Nestle S.A. company sells, for less money that Defendants' White Chocolate Chips, "Toll House Premier White Morsels." Like Hershey, but unlike Defendants, the Nestle package (1) discloses that its "Premier White Morsels" are "creamy vanilla-flavored baking pieces" and (2) nowhere states that the "Premier White Morsels" are "chocolate" or "white chocolate."

46.     Similarly, Safeway sells a competitive product to Defendants' Fake Ground White Chocolate. That product, sold under the "Safeway Select$_{TM}$" brand, is called "European Café Style - White Chocolate Hot Cocoa – Naturally & Artificially Flavored." It states on the package that it has "Rich White Chocolate Flavor with a Hint of Sweetness and Buttery Notes." Unlike Defendants' competing product, however, it actually contains white chocolate. Yet, it is sold for a lower price than Defendants' competing product, because consumers are misled to believe that Defendants' product contains premium chocolate from the Ghirardelli Chocolate Company.

**PLAINTIFF'S EXPERIENCE**

47.     On June 24, 2012, Plaintiff desired to purchase white chocolate chips.

48.     Prior to purchasing the Ghirardelli® Chocolate Premium Baking Chips — Classic White, Plaintiff reviewed the packaging to satisfy himself that he was purchasing white chocolate. Plaintiff specifically reviewed Defendants' statements on the package that the product is "Chocolate," "Premium Baking Chocolate," "Classic White," "Premium Baking Chips," the "Finest grind," "melt-in-your mouth," and had "The luxuriously deep flavor and smooth texture of Ghirardelli Premium Baking Chocolate delivers the ultimate chocolate indulgence." Plaintiff further relied on Defendants' failure to disclose that the product was not "white chocolate" and that it contained no cocoa butter. He then purchased Defendants' Ghirardelli® Chocolate Premium Baking Chips — Classic White from a Publix supermarket in Auburndale, Florida for $3.29.

49.     The next day, Plaintiff tasted Defendants' Ghirardelli® Chocolate Premium Baking Chips — Classic White and noticed that they did not at all taste like white chocolate. He then looked closely at the ingredients list on the packaging and noticed that the product did not contain any white chocolate, cocoa or cocoa butter.

50.     Had Defendants not misrepresented (by omission and commission) the true nature of their Fake White Chocolate Products, Plaintiff would not have purchased Defendants' product or, at a very minimum, he would have paid less for the product.

## CLASS ALLEGATIONS

51.     Plaintiff brings this action against Defendants on behalf of himself and all others similarly situated, as a class action pursuant to section 382 of the California Code of Civil Procedure and section 1781 of the California Civil Code.  Plaintiff seeks to represent a group of similarly situated persons (the "Class"), defined as follows:

> All persons who, between August 17, 2008 and the present, purchased, in the United States, any of the following products: "Ghirardelli® Chocolate Premium Baking Chips – Classic White," "Ghirardelli® Chocolate White Chocolate Flavored Confectionary Coating Wafers," "Ghirardelli® Chocolate Sweet Ground White Chocolate Flavor," "Ghirardelli® Chocolate Premium Hot Beverage – White Mocha," or "Ghirardelli® Chocolate Frappé Classico – Classic White"

52.     This action has been brought and may properly be maintained as a class action against Defendants pursuant to the provisions of California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

53.     Numerosity:  Plaintiff does not know the exact size of the class, but it is estimated that it is composed of more than 100 persons.  The persons in the class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

54.     Common Questions Predominate:  This action involves common questions of law and fact to the potential class because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led Defendants' customers to believe that the Fake White Chocolate Products were (or at a minimum contained) white chocolate.   The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover.  Among the questions of law and fact common to the class are:

    a)     Whether Defendants' Fake White Chocolate Products are (or contain) white

1   chocolate or white chocolate flavor;

2           b)     Whether Defendants unfairly, unlawfully and/or deceptively failed to

3   inform class members that their Fake White Chocolate Products were not (and did not contain)

4   white chocolate or cocoa butter;

5           c)     Whether Defendants misled class members by, inter alia, representing that

6   their Fake White Chocolate Products were or had "chocolate," "baking chocolate," "premium"

7   chocolate, "ground" chocolate, "classic white" chocolate, delivered the "ultimate chocolate

8   indulgence," "melt-in-your mouth," "finest grind," "the luxuriously deep flavor and smooth

9   texture of Ghirardelli Premium Baking Chocolate," "the ultimate chocolate indulgence," "a

10   luxuriously rich and complex white chocolate flavor," "white chocolate flavor[ed]," "white

11   mocha" or "white hot cocoa" or "the pleasurable moment cocoa lovers cherish."

12           d)     Whether Defendants' advertising and marketing regarding their Fake White

13   Chocolate Products sold to class members was likely to deceive class members or was unfair;

14           e)     Whether Defendants engaged in the alleged conduct knowingly, recklessly,

15   or negligently;

16           f)     The amount of revenues and profits Defendants received and/or the amount

17   of monies or other obligations lost by class members as a result of such wrongdoing;

18           g)     Whether class members are entitled to injunctive and other equitable relief

19   and, if so, what is the nature of such relief; and

20           h)     Whether class members are entitled to payment of actual, incidental,

21   consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the

22   nature of such relief.

23      55.    Typicality:  Plaintiff's claims are typical of the class because, on June 24, 2012, he

24   purchased one of the Fake White Chocolate Products, namely Defendants' Ghirardelli® Chocolate

25   Premium Baking Chips – Classic White, in reliance on Defendants' misrepresentations and

26   omissions that it was white chocolate.  Thus, Plaintiff and class members sustained the same

27   injuries and damages arising out of Defendants' conduct in violation of the law.  The injuries and

28   damages of each class member were caused directly by Defendants' wrongful conduct in

-14-

1  violation of law as alleged.

2      56.    Adequacy:  Plaintiff will fairly and adequately protect the interests of all class

3  members because it is in his best interests to prosecute the claims alleged herein to obtain full

4  compensation due to him for the unfair and illegal conduct of which he complains.  Plaintiff also

5  has no interests that are in conflict with or antagonistic to the interests of class members.  Plaintiff

6  has retained highly competent and experienced class action attorneys to represent his interests and

7  that of the class.  By prevailing on his own claim, Plaintiff will establish Defendants' liability to

8  all class members.  Plaintiff and his counsel have the necessary financial resources to adequately

9  and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary

10  responsibilities to the class members and are determined to diligently discharge those duties by

11  vigorously seeking the maximum possible recovery for class members.

12      57.    Superiority:  There is no plain, speedy, or adequate remedy other than by

13  maintenance of this class action.  The prosecution of individual remedies by members of the class

14  will tend to establish inconsistent standards of conduct for the Defendants and result in the

15  impairment of class members' rights and the disposition of their interests through actions to

16  which they were not parties.  Class action treatment will permit a large number of similarly

17  situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

18  and without the unnecessary duplication of effort and expense that numerous individual actions

19  world engender.  Furthermore, as the damages suffered by each individual member of the class

20  may be relatively small, the expenses and burden of individual litigation would make it difficult

21  or impossible for individual members of the class to redress the wrongs done to them, while an

22  important public interest will be served by addressing the matter as a class action.

23      58.    Nexus to California.  The State of California has a special interest in regulating the

24  affairs of corporations that do business here.  Defendants have their principal place of business in

25  California, and the acts complained of herein emanated from decisions made by Defendants in

26  California.  Accordingly, there is a substantial nexus between Defendants' unlawful behavior and

27  California such that the California courts should take cognizance of this action on behalf of a

28  class of individuals who reside anywhere in the United States.

1    59.    Plaintiff is unaware of any difficulties that are likely to be encountered in the

2    management of this action that would preclude its maintenance as a class action.

3                                    **CAUSES OF ACTION**

4          Plaintiff does not plead, and hereby disclaims, causes of action under the Food Drug and

5    Cosmetic Act ("FDCA") and regulations promulgated thereunder by the FDA.  Plaintiff relies on

6    FDCA and FDA regulations only to the extent such laws and regulations have been separately

7    enacted as state law or regulation or provide a predicate basis of liability under the state and

8    common laws cited in the following causes of action.

9                              **PLAINTIFF'S FIRST CAUSE OF ACTION**
     **(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**
10                          **On Behalf of Himself and the Class**

11   60.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint

12   as if set forth herein.

13   61.    This cause of action is brought pursuant to the California Consumers Legal

14   Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

15   62.    Defendants' actions, representations and conduct have violated, and continue to

16   violate the CLRA, because they extend to transactions that are intended to result, or which have

17   resulted, in the sale or lease of goods or services to consumers.

18   63.    Plaintiff and other class members are "consumers" as that term is defined by the

19   CLRA in California Civil Code § 1761(d).

20   64.    The Fake White Chocolate Products that Plaintiff (and others similarly situated

21   class members) purchased from Defendants were "goods" within the meaning of California Civil

22   Code § 1761(a).

23   65.    By engaging in the actions, representations and conduct set forth in this Class

24   Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(2), § 1770(a)(5),

25   § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA.  In violation of California Civil Code

26   §1770(a)(2), Defendants' acts and practices constitute improper representations regarding the

27   source, sponsorship, approval, or certification of the goods they sold.  In violation of California

28   Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that

1   the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or

2   quantities, which they do not have.  In violation of California Civil Code §1770(a)(7),

3   Defendants' acts and practices constitute improper representations that the goods they sell are of a

4   particular standard, quality, or grade, when they are of another.  In violation of California Civil

5   Code §1770(a)(8), Defendants have disparaged the goods, services, or business of another by

6   false or misleading representation of fact.  In violation of California Civil Code §1770(a)(9),

7   Defendants have advertised goods or services with intent not to sell them as advertised.

8       66.    Specifically, Defendants' acts and practices led customers to falsely believe that

9   that their Fake White Chocolate Products were (or contained) white chocolate and/or its principal

10  ingredient, cocoa butter.  Finally, regarding California Civil Code §1770(a)(8), Ghirardelli falsely

11  or deceptively markets and advertises that, unlike other chocolate manufacturers, it does the

12  following with respect to the Fake White Chocolate Products:

13
14      • "makes chocolate starting from the cocoa bean through to finished products";

15      • maintains intensive quality assurance in the selection of cocoa beans and accepts
          only the highest-quality beans;

16
17      • rejects as many as 40% of the beans that are offered to it, and the chocolate beans
          that are not selected by Ghirardelli are sold to other manufacturers;

18
19      • uses a proprietary blend of cocoa beans that has been refined over the company's
          150-year history to provide the company's distinct and intense chocolate taste;

20      • roasts the cocoa beans in-house to ensure the company's signature flavor profile is
          consistently maintained in all chocolate products; and

21
22      • uses a different roasting process whereby it remove the shell first and then roast
          the small nibs inside and has more control over the temperature and time, so it can
23        get a more specific flavor, whereas other companies roast their beans before re-
          moving the shell, which requires over-roasting the outside portion of the bean in
24        order to roast the inside, which could impart a burned flavor to their chocolate.

25      67.    Plaintiff requests that this Court enjoin Defendants from continuing to employ the

26  unlawful methods, acts and practices alleged herein pursuant to California Civil Code

27  § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the

28  future, Plaintiff and the other members of the Class will continue to suffer harm.

68.     CLRA § 1782 NOTICE.  **Irrespective of any representations to the contrary in this Class Action Complaint, Plaintiff specifically disclaims, at this time, any request for damages under any provision of the CLRA.**  Plaintiff, however, hereby provides Defendants with notice and demand that within thirty (30) days from that date, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  Defendants' failure to do so will result in Plaintiff amending this Class Action Complaint to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of himself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

69.     Plaintiff also requests that this Court award him his costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## PLAINTIFF'S SECOND CAUSE OF ACTION
### (False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))
### On Behalf Of Himself and the Class

70.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

71.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of their Fake White Chocolate Products.

72.     Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that they were purchasing white chocolate.  Defendants deceptively failed to inform Plaintiff, and those similarly situated, that their Fake White Chocolate Products did not contain any white chocolate or cocoa butter.

73.     Plaintiff and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth in paragraphs 16-18, 20, and 24-42, above.  Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing

1   Defendants' Fake White Chocolate Products or paying less for them.

2        74.     Defendants' acts and omissions are likely to deceive the general public.

3        75.     Defendants engaged in these false, misleading and deceptive advertising and

4   marketing practices to increase their profits.  Accordingly, Defendants have engaged in false

5   advertising, as defined and prohibited by section 17500, et seq. of the California Business and

6   Professions Code.

7        76.     The aforementioned practices, which Defendants used, and continue to use, to

8   their significant financial gain, also constitute unlawful competition and provide an unlawful

9   advantage over Defendants' competitors as well as injury to the general public.

10       77.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as

11  necessary and according to proof, to restore any and all monies acquired by Defendants from

12  Plaintiff, the general public, or those similarly situated by means of the false, misleading and

13  deceptive advertising and marketing practices complained of herein, plus interest thereon.

14       78.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

15  Defendants from continuing to engage in the false, misleading and deceptive advertising and

16  marketing practices complained of herein.  The acts complained of herein occurred, at least in

17  part, within three (3) years preceding the filing of this Class Action Complaint.

18       79.     Plaintiff and those similarly situated are further entitled to and do seek both a

19  declaration that the above-described practices constitute false, misleading and deceptive

20  advertising, and injunctive relief restraining Defendants from engaging in any such advertising

21  and marketing practices in the future.  Such misconduct by Defendants, unless and until enjoined

22  and restrained by order of this Court, will continue to cause injury in fact to the general public

23  and the loss of money and property in that the Defendants will continue to violate the laws of

24  California, unless specifically ordered to comply with the same.  This expectation of future

25  violations will require current and future customers to repeatedly and continuously seek legal

26  redress in order to recover monies paid to Defendants to which Defendants are not entitled.

27  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate

28  remedy at law to ensure future compliance with the California Business and Professions Code