Thomas B. Mayhew (State Bar No. 183539)
  tmayhew@fbm.com
Deborah K. Barron (State Bar No. 257146)
  dbarron@fbm.com
Benjamin J. Sitter (State Bar No. 273394)
  bsitter@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

Attorneys for Defendant
GHIRARDELLI CHOCOLATE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT MILLER, an individual, on behalf of himself, the general public and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GHIRARDELLI CHOCOLATE COMPANY, and DOES 1 THROUGH 50,<br><br>Defendants. | Case No. 3:12-cv-04936-LB<br><br>**DEFENDANT GHIRARDELLI CHOCOLATE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>**CLASS ACTION**<br><br>Date:<br>Time:<br>Location:<br>Courtroom:   Hon. Laurel Beeler<br>December 6, 2012<br>11:00 a.m.<br>15th Floor, Courtroom C |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

28172\3315557.1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on December 6, 2012 at 11:00 a.m., or as soon thereafter as this matter may be heard in Courtroom C, 15th Floor, of this Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Ghirardelli Chocolate Company ("Ghirardelli") will and hereby does move the Court for an order dismissing Plaintiff Scott Miller's Class Action Complaint and each of his claims without leave to amend.

This motion is made pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(1), and 12(b)(6) and is based on the following grounds:

1. Miller lacks standing under Article III of the U.S. Constitution to sue about products he did not purchase.

2. The complaint fails to state claims upon which relief can be granted as a matter of California law.

Based upon these grounds, Ghirardelli requests that this Court dismiss all claims against it.

This motion is based upon this notice of motion, the memorandum of points and authorities, the pleadings and documents on file in this lawsuit, the declaration of Heather Saunders in support, the declaration of Benjamin Sitter in support, the proposed order, and such other matters and arguments as may come before the Court, including the reply briefing and oral argument.

Dated:     October 19, 2012          FARELLA BRAUN + MARTEL LLP


                                      By:/s/ Thomas B. Mayhew
                                      _____
                                         Thomas B. Mayhew

                                      Attorneys for Defendants
                                      GHIRARDELLI CHOCOLATE COMPANY

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

28172\3315557.1

1

**TABLE OF CONTENTS**

2

**Page**

3 MEMORANDUM OF POINTS & AUTHORITIES ................................................. 1

4 SUMMARY OF ALLEGATIONS AND ARGUMENT ........................................ 1

5 ARGUMENT .......................................................................................................... 3

6 I.      PLAINTIFF LACKS STANDING UNDER ARTICLE III TO SUE
        BASED ON PRODUCTS HE NEVER PURCHASED ................................. 3
7
8 II.     PLAINTIFF'S CLAIMS CONCERNING PRODUCTS HE NEVER
        PURCHASED FAIL ON THE MERITS BECAUSE HE DID NOT
        LOSE MONEY OR PROPERTY ................................................................. 6
9
10 III.    PLAINTIFF'S CLAIMS AS TO EACH OF THE PRODUCTS LACK
        MERIT AS A MATTER OF LAW .............................................................. 8

11      A.      The White Baking Chips ................................................................. 9

12      B.      "White Chocolate Flavored Confectionary Wafers" and "Sweet
                Ground White Chocolate Flavor" ................................................. 17
13
14              1.      State Law Is Preempted If The Requirement Is Not
                        "Identical" To The FDA Regulation Governing Use Of
                        The Words "Flavor" Or "Flavored." ................................. 17
15
16              2.      Miller's Claims About Ghirardelli's "Sweet Ground
                        White Chocolate Flavor" And "White Chocolate Flavored
                        Confectionary Coating Wafers" Products Are Preempted ....... 18
17
        C.      The Mocha Mix ............................................................................. 21
18
        D.      The Frappé ..................................................................................... 23
19
20 IV.     THE FRAUD CLAIMS SHOULD BE DISMISSED ................................. 24

21 CONCLUSION ..................................................................................................... 24

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                  - i -                              28172\3315557.1

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Anderson v. Jamba Juice Co.,*
2012 WL 3642835 (N.D. Cal. Aug. 25, 2012) .................................................. 4, 6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................ 9

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
2012 WL 2990766 (N.D. Cal. July 20, 2012) ................................................... 4, 6

*Baltazar v. Apple, Inc.,*
2011 WL 2795013 (N.D. Cal. Aug. 26, 2011) ..................................................... 10

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................ 9

*Carrea v. Dryers Grand Ice Cream, Inc.,*
2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ......................................... 4, 11, 14

*Degelmann v. Advanced Med. Optics, Inc.,*
659 F.3d 835 (9th Cir. 2011) ............................................................................... 18

*Dvora v. General Mills, Inc.,*
2011 WL 1897349 (C.D. Cal. 2011) .................................................................... 20

*Dysthe v. Basic Research LLC,*
2011 WL 5868307 (C.D. Cal. June 13, 2011) ................................................... 3, 6

*Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,*
458 U.S. 141 (1982) ......................................................................................... 18, 19

*Fraker v. KFC Corp.,*
2007 WL 1296571 (S.D. Cal. April 30, 2007) ................................................... 18

*Freeman v. Time, Inc.,*
68 F.3d 285 (9th Cir. 1995) ..................................................................... 9, 10, 14

*Green v. Green Mtn. Coffee Roasters, Inc.,*
279 F.R.D. 275 (D.N.J. Dec. 20, 2011) ................................................................. 3

*Hairston v. South Beach Beverage Co., Inc.,*
2012 WL 1893818 (C.D. Cal. 2012) ................................................ 10, 11, 15, 23

*Hemy v. Purdue Farms, Inc.,*
2011 WL 6002463 (D.N.J. Nov. 30, 2011) ........................................................... 3

*In re Epogen & Aransep Off-Label Mktg. & Sales Practices Litigation,*
590 F. Supp. 2d 1282 (C.D. Cal. 2008) ............................................................... 18

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

- ii -

28172\3315557.1

*Johns v. Bayer Corp.,*
2010 WL 2573493 (S.D. Cal. 2010) .................................................................. 3

*Johns v. Bayer Corp.,*
2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ..................................................... 7, 8

*Koh v. S.C. Johnson & Son, Inc.,*
2010 WL 94265 (N.D. Cal. Jan 6, 2010) ........................................................... 5

*Krueger v. Wyeth, Inc.,*
2011 WL 8971149 (S.D. Cal. 2011) ................................................................ 16

*Lam v. General Mills, Inc.,*
2012 WL 1656731 (N.D. Cal. May 10, 2012) .................................................. 21

*Larsen v. Trader Joe's Co.*
No. 3:11-cv-5188-SI, Dkt # 41 (N.D. Cal. June 14, 2012) ............................ 4, 5

*Lieberson v. Johnson & Johnson Consumer Cos.,*
2011 WL 4414214 (D.N.J. Sept. 21, 2011) ....................................................... 3

*Long v. Hewlett-Packard Co., No C,*
2007 WL 2994812 (N.D. Cal. July 27, 2007) .................................................. 13

*McKinnis v. Kellogg USA,*
2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ........................................... 10, 12

*McKinniss v. Sunny Delight Beverages Co.,*
2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) .................................................. 20

*Mlejnecky v. Olympus Imaging American Inc.,*
2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) .................................................... 7

*Perez v. Nidek Co. Ltd.,*
657 F. Supp. 2d 1156 (S.D. Cal. 2009) ........................................................... 18

*Rooney v. Cumberland Packing Corp.,*
2012 WL 1512106 (S.D. Cal. April 16, 2012) ................................................. 11

*Starr v. Baca,*
652 F.3 1202 (9th Cir. 2011) ............................................................................ 9

*Stephenson v. Neutrogena,*
2012 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012) .......................... 4, 5, 6

*Stickrath v. Globalstar, Inc.,*
527 F. Supp. 2d 992 (N.D. Cal. 2007) ....................................................... 13, 22

*Summit Technology, Inc. v. High-Line Med. Instruments Co., Inc.,*
922 F. Supp. 299 (C.D. Cal. 2009) ................................................................. 18

*Turek v. General Mills, Inc.,*
662 F.3d 423 (7th Cir. 2011) .......................................................................... 18

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

- iii -

28172\3315557.1

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ................................................................5

*Videtto v. Kellogg USA,*
    2009 WL 1439086 (E.D. Cal. 2009) ................................................12

*Von Koenig v. Snapple Beverage Corp.,*
    2011 WL 43577 (E.D. Cal. Jan. 6, 2011) ..........................................5

*Werbel v. Pepsico, Inc.,*
    2010 WL 2673860 (N.D. Cal. July 2, 2010) ................................10, 11

*Wright v. General Mills, Inc.,*
    2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ...................................17

*Williams v. Gerber,*
    552 F.3d 934 (9th Cir. 2008) .......................................................passim

### STATE CASES

*Conroy v. Regents of Univ. of California,*
    45 Cal. 4th 1244 (2009).......................................................................7

*Consumer Advocates v. Echostar Satellite Corp.,*
    113 Cal. App. 4th 1351 (2003)................................................9, 13, 22

*Durell v. Sharp Healthcare,*
    183 Cal. App. 4th 1350 (2010)..........................................................16

*Hill v. Roll International Corp.,*
    195 Cal. App. 4th  1295 (2011)......................................................9, 10

*In re Farm Raised Salmon Cases,*
    42 Cal. 4th 1077 (2008)....................................................................18

*In re Tobacco II Cases,*
    46 Cal. 4th 298, 326 n. 17 (2009)..................................................7, 16

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (Cal. 2011) .................................................................7

*Lavie v. Procter & Gamble Co.,*
    105 Cal. App. 4th 496 (2003).............................................................10

*Paduano v. Amer. Honda Motor Co., Inc.,*
    169 Cal. App. 4th 1458 (2009)......................................................13, 23

*Pfizer v. Superior Court,*
    182 Cal. App. 4th 622 (2010).............................................................16

*Ragland v. U.S. Bank Nat. Assn.,*
    209 Cal. App. 4th 182 (2012).............................................................24

*Sevidal v. Target Corp.,*
    189 Cal. App. 4th 905 (2010).............................................................16

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

- iv -

28172\3315557.1

1

## FEDERAL STATUTES

2

21 C.F.R.

§ 100.1(c)(4) ................................................................................................ 17
§ 101.22 ................................................................................................ 18, 19
§ 101.22(a)(1) ............................................................................................... 19
§ 101.22(i) ....................................................................................... 2, 18, 19
§ 101.4 ........................................................................................................ 19
§ 301 et seq ................................................................................................. 17
§ 337(a) ....................................................................................................... 18
§ 343(e) & (k) ............................................................................................... 18
§ 343-1 ......................................................................................................... 17
§ 343-1(a) ..................................................................................................... 17
§ 343-1(a)(2) ................................................................................................ 18
§ 343-1(a)(3) ................................................................................................ 18
§ 343(g), (i) & (k) ........................................................................................ 18

28 U.S.C. § 1332(d) ........................................................................................... 1

67 Fed. Reg. 62171, 62173 (Oct. 4, 2002) ...................................................... 14

67 Fed. Reg. 62172 (Oct. 4, 2002) ............................................................ 14, 15

Fed. R. Civ. P. 8 ................................................................................................. 9

## STATE STATUTES

Cal. Bus. & Prof. Code § 17204 ....................................................................... 7

Cal. Bus. & Prof. Code § 17535 ....................................................................... 7

Cal. Civ. Code §1780(a) .................................................................................... 7

Cal. Civ. Jury Inst. (CACI) 1900 ................................................................. 7, 24

Proposition 64 § 1(b)(1), 1(b)(3), 1(c), 1(d) ................................................... 8

## OTHER AUTHORITIES

*Webster's Online Dictionary* (2012) ............................................................... 23

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

1

## MEMORANDUM OF POINTS & AUTHORITIES

2

### SUMMARY OF ALLEGATIONS AND ARGUMENT

3

According to the complaint, in June 2012, Plaintiff Scott Miller purchased a

4

package of Ghirardelli Classic White Baking chips at a Publix supermarket in

5

Auburndale, Florida.  Complaint ¶ 47.  After eating the chips the next day, he

6

looked at the ingredient list and saw that the product did not contain white

7

chocolate or cacao butter.  *Id.* ¶ 49.  He then filed this suit[1] alleging that he thought

8

the white baking chips were "white chocolate" baking chips, and would not have

9

bought them – or at least would have paid less for them – if only Ghirardelli had

10

disclosed that the product was not "white chocolate" and contained no cacao butter.

11

*Id.* ¶ 50.

12

Miller also claims that other people were injured because they bought other

13

Ghirardelli products and may have believed that the other products contained white

14

chocolate.  He complains that Ghirardelli "White Chocolate Flavored

15

Confectionary Coating Wafers" and "Sweet Ground White Chocolate Flavor" are

16

labeled in violation of FDA standards governing use of the term "flavor" or

17

"flavored" on food packaging.  He claims that two powdered beverage mixes –

18

"white mocha" beverage mix and "Frappé Classico – Classic White" – falsely

19

suggest that they contain white chocolate.

20

Miller does not allege that he purchased any product other than the white

21

baking chips, nor does he allege that he ever saw or relied on statements made on

22

the other products' packaging.  Because Miller does not allege that he purchased or

23

was otherwise harmed by the other products or their packaging, he has no Article

24

III standing for claims based upon those products.  Moreover, Miller's claims

25

26

[1] Miller initially filed the case in San Francisco County Superior Court.  Ghirardelli timely removed the case based on this Court's subject matter jurisdiction over class actions between citizens of different States where the amount in controversy exceeds $5 million.  28 U.S.C.

27

§ 1332(d).  Miller claims a right to a full refund for all consumers who purchased white chips in the last four years, *see, e.g.,* Complaint ¶¶ 90, 102, and sales of the chips in 2010 exceeded $5

28

million.  Not. of Removal, ¶¶ 13-14.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

- 1 -

28172\3315557.1

relating to the other products lack merit as a matter of California law, which restricts standing under those statutes to consumers who allege reliance and economic injury.

Each of Miller's claims fail on the merits as well.  Even taking all of the complaint's allegations as true, Miller does not allege that he saw any affirmatively false statement about the chips, and he does not plausibly allege that the packaging of the white baking chips is misleading.  The claims about the use of the word "flavor" or "flavored" should be dismissed because the use of those terms is expressly permitted under FDA labeling standards in 21 C.F.R. § 101.22(i), and any state law contrary to that regulation – including any claim that the use of those terms is "misleading" under the Unfair Competition Law, the False Advertising Law, the Consumer Legal Remedies Act, or common law fraud – is preempted.  Finally, the packaging of the white mocha and white frappé beverage mixes is not misleading as a matter of law.

## ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))

1.  Whether Miller has Article III standing to make claims about products he never purchased.

2.  Whether Miller can sue under California law concerning products he never purchased where he alleges no reliance and economic injury.

3.  Whether Miller's state law claims concerning the White Chocolate Flavored Confectionary Wafers and Sweet Ground White Chocolate Flavor products are preempted by federal regulations.

4.  Whether Miller states a plausible false advertising claim concerning the white baking chips, white mocha beverage mix, or frappé mix products.

5.  Whether Miller states a claim for fraud concerning any of the products.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                - 2 -                          28172\3315557.1

1

**ARGUMENT**

2

**I.     PLAINTIFF LACKS STANDING UNDER ARTICLE III TO SUE
BASED ON PRODUCTS HE NEVER PURCHASED.**

3

4

Miller alleges he purchased only one of the products identified in the

5

complaint:  the white baking chips.  Complaint ¶¶ 47-50.  He does not allege that he

6

purchased any of the other four products:  the white mocha or frappé beverage

7

mixes, the flavored confectionary wafers, or the sweet ground white chocolate

8

flavor powder.  Because Miller never claims he bought any of those other products,

9

he lacks Article III standing to complain about them, and that part of the case

10

should be dismissed for lack of subject matter jurisdiction.

11

A plaintiff lacks Article III standing to bring consumer protection claims

12

concerning a product he has not purchased.  *See, e.g., Larsen v. Trader Joe's Co*.,

13

No. 3:11-cv-5188-SI, Dkt # 41 (N.D. Cal. June 14, 2012),[2] ("The Court finds

14

plaintiffs do not have standing to bring this claim because they did not purchase the

15

Crescent Rolls and therefore, as a matter of law, could not have suffered a

16

particularized injury as required by Article III."); *Dysthe v. Basic Research LLC*,

17

2011 WL 5868307, at *4 (C.D. Cal. June 13, 2011) ("Plaintiff does not have

18

standing to bring her CLRA, UCL, or warranty claim based on a product that she

19

never purchased."), *citing Johns v. Bayer Corp*., 2010 WL 2573493 (S.D. Cal.

20

2010) (Plaintiff "cannot expand the scope of his claims to include a product he did

21

not purchase . . . .").[3]

22

_____

23

[2] A copy of the case is attached as Exhibit A to the Declaration of Benjamin Sitter In Support of

24

Defendant's Motion To Dismiss ("Sitter Decl.").

25

[3] Federal courts elsewhere apply the same rule.  *See Lieberson v. Johnson & Johnson Consumer
Cos*., 2011 WL 4414214, at *4 (D.N.J. Sept. 21, 2011) (dismissing allegations relating to
products named plaintiff did not allege to have purchased); *Green v. Green Mtn. Coffee Roasters,

26

Inc*., 279 F.R.D. 275, 280 (D.N.J. Dec. 20, 2011) (holding that plaintiff, who purchased one
model of Keurig coffeemakers, did not have standing to pursue class claims relating to other

27

models and dismissing the claims against the other models); *Hemy v. Purdue Farms, Inc*., 2011
WL 6002463, at *11 (D.N.J. Nov. 30, 2011) ("Plaintiffs' failure to allege that they purchased the

28

'Perdue' brand chicken products is a critical omission because, without asserting that they

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

- 3 -

28172\3315557.1

1    Where a plaintiff has only purchased one or some of the products challenged,

2  courts generally sever the claims and dismiss those relating to the unpurchased

3  products for lack of jurisdiction.  For example, in *Stephenson v. Neutrogena*, 2012

4  U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012), the plaintiff alleged that six

5  different Neutrogena products made the same deceptive representation that they

6  were made solely from natural ingredients, although the plaintiff purchased only

7  one of the products listed in the complaint.  *Id.* at *2.  The court dismissed the

8  claims relating to the other five products for lack of standing.  *Id.* at *3.  Similarly,

9  in *Carrea v. Dryers Grand Ice Cream, Inc*., plaintiff alleged that defendant

10  misrepresented that its "Drumsticks" and "Dibs" ice cream products contained "0 g

11  of Trans Fat."  2011 WL 159380 (N.D. Cal. Jan. 10, 2011).  However, because

12  plaintiff only alleged purchasing the "Drumsticks" products, the court dismissed all

13  claims relating to the "Dibs" products.  *Id.* at *3.  And, in *Larsen v. Trader Joe's

14  Co*., plaintiffs alleged that Trader Joe's misrepresented certain of its products,

15  including its crescent rolls, as "All Natural" or "100% Natural."  Sitter Decl. Exh.

16  A at 1.  But because the plaintiffs had not alleged that they purchased the crescent

17  rolls, their claims regarding that product were dismissed.  *Id.* at 7.

18    Miller may attempt to rely on a narrow class of cases extending standing to

19  consumers who only purchased one product, but who challenge several other

20  substantially similar products.  But such reliance would be misplaced.  Generally,

21  these cases have extended standing only where a plaintiff alleges that all the

22  products he challenges bear identical labels.  *See, e.g., Astiana v. Dreyer's Grand

23  Ice Cream, Inc.*, 2012 WL 2990766 (N.D. Cal. July 20, 2012) (where all challenged

24  products were ice cream products bearing allegedly misleading "All Natural"

25  labels, plaintiff who only purchased some of the products was permitted standing as

26  to all); *Anderson v. Jamba Juice Co*., 2012 WL 3642835 (N.D. Cal. Aug. 25, 2012)

27

28  purchased 'Perdue' brand products, Plaintiffs have failed to sufficiently allege an injury-in-fact
with respect to those products.").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                    - 4 -                    28172\3315557.1

1   (where challenged products were different flavors of smoothie kits bearing

2   identical, allegedly misleading "All Natural" labels, and all of them were false

3   because of the presence of the same allegedly non-natural ingredients, plaintiff who

4   only purchased two of the flavors was permitted standing as to all); *Koh v. S.C.*

5   *Johnson & Son, Inc.*, 2010 WL 94265 (N.D. Cal. Jan 6, 2010) (where challenged

6   products were cleaning products bearing identical, allegedly misleading "Greenlist"

7   label, plaintiff, who only purchased one of the two products, was permitted

8   standing as to both).[4]  And at least one court has expressly refused to follow this

9   line of cases where doing so would require an "individualized factual inquiry" as to

10  each product.  *Stephenson*, 2012 U.S. Dist. LEXIS 105099, at *3.

11        Here, the products Miller challenges are different from one another with

12  respect to the critical issue in the case:  whether the packaging would mislead

13  consumers into believing that the product contains white chocolate.  None of the

14  products affirmatively represent that they contain white chocolate; Miller's case is

15  instead based on whether other elements of the packaging falsely imply that they

16  do.  Miller does not allege that the products are similarly packaged, share an

17  identical label, have a similar purpose, or even are a part of the same market.  Nor

18  could he.  Miller purchased "Premium Baking Chips" labeled "Classic White."

19  Complaint ¶¶ 47-50.  In contrast to the product Miller purchased, the other

20  products' packages do not contain the term "classic white."[5]  Unlike the white

21

_____

22  [4] Notably, this line of cases is in tension with other cases where courts have denied standing even
     where purchased and unpurchased products bore identical labeling.  *See Larsen*, No. 3:11-cv-

23  5188-SI (plaintiff denied standing as to products not purchased, even though all challenged
     products bore allegedly deceptive "100% Natural" or "All Natural" labeling); *Stephenson*, 2012

24  U.S. Dist. LEXIS 105099 (plaintiff denied standing as to products not purchased, even though all
     challenged products bore "Neutrogena Naturals" labeling).

25

26  [5] Each of the products at issue are attached to the Declaration of Heather Saunders In Support of
     Defendant's Motion to Dismiss ("Saunders Decl."), filed concurrently herewith, as Exhibits A-F.

27  Since Miller cites these product labels in his complaint, the Court may consider these items in
     evaluating the motion to dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003);
     *see also, e.g., Von Koenig v. Snapple Beverage Corp.*, 2011 WL 43577, at *1 (E.D. Cal. Jan. 6,

28  2011) (considering product labels under *Ritchie*).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)     - 5 -     28172\3315557.1

baking chips, one is labeled "white chocolate flavor" and another "white chocolate flavored . . ."; those products will require a decision about an FDA regulation not at issue with the products Miller purchased.  And three of the products are beverage mixes (one of which is coffee-based) sold in cardboard canisters.  Some of the other products are not even marketed to consumers – two products state that they were designed "exclusively" or "specifically" for "specialty coffee retailers," and are sold in canisters too large and heavy (ranging from 3-25 pounds) to be practically used in most households.  The frappé mix label states that it is "[d]esigned specifically for specialty coffee retailers" and that it "allows you to create a unique drink that *your customers* will crave." (emphasis added)  Obviously, this product is not aimed at household purchasers but at commercial enterprises.

This is not a case where a plaintiff challenges several flavors of the same product, intended for identical use, and bearing an identical label. *See Anderson*, 2012 WL 3642835.  Nor is this a case where a plaintiff challenges "the same kind of product," "based on largely the same ingredients," bearing substantially identical labels. *See Astiana,* 2012 WL 2990766, at *13.  Indeed, the only ingredient all of the challenged products share in common is sugar. *See Dysthe*, 2011 WL 5868307 at *4 (holding no standing to complain about "Relacore" product, as opposed to "Relacore Extra" product plaintiff had purchased, based on differing product ingredients and packaging; rejecting argument that there was "no real difference" between the two); *Stephenson*, 2012 U.S. Dist. LEXIS 105099, at *3.

Accordingly, Miller's claims about products other than the white baking chips should be dismissed for lack of Article III standing.

## II.    PLAINTIFF'S CLAIMS CONCERNING PRODUCTS HE NEVER PURCHASED FAIL ON THE MERITS BECAUSE HE DID NOT LOSE MONEY OR PROPERTY.

Irrespective of the lack of Article III standing, each of Miller's claims concerning the products he did not purchase fails on the merits as a matter of California law.  Under the UCL, FAL, and CLRA, a plaintiff can only sue if he

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                - 6 -                28172\3315557.1

1    "has lost money or property" as a result of the defendant's alleged conduct.  *See*

2    Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a) (emphasis

3    added).  The California Supreme Court has found that the economic injury

4    requirement renders this standard "substantially narrower than federal standing

5    under Article III."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (Cal. 2011).

6    And "Proposition 64 'imposes an actual reliance' requirement under which

7    plaintiffs seeking to represent a class of consumers must 'plead and prove actual

8    reliance' on the challenged product."  *Johns v. Bayer Corp.*, 2010 WL 476688 (S.D.

9    Cal. Feb. 9, 2010) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 326, 326 n. 17

10   (2009)).  Similarly, a plaintiff has no fraud claim unless he read and relied on the

11   statement he claims was fraudulent.  *Conroy v. Regents of University of Cal.*, 45

12   Cal. 4th 1244 (2009) (common law fraud requires justifiable reliance); *see also* Cal.

13   Civ. Jury Inst. (CACI) 1900 "Intentional Misrepresentation."

14           Miller pleads no reliance, and cannot satisfy this "substantially narrower"

15   standard.  First, he has not alleged that he has suffered any economic injury with

16   respect to four of the five products he challenges.  *See Mlejnecky v. Olympus*

17   *Imaging Am. Inc.*, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (denying

18   UCL standing because "[p]laintiff does not claim that she suffered any economic

19   injury from any alleged misrepresentation regarding . . .," a camera model she did

20   not purchase).  Nor does he allege that that he saw, let alone relied on, a single

21   representation by Ghirardelli regarding any of those four products.  *See Johns*, 2010

22   WL 476688 at *5 (denying UCL and CLRA standing where "plaintiff does not

23   allege he saw any advertisements for Men's 50+, that he read the packaging on the

24   product, or that he even considered purchasing the product.").  Accordingly,

25   Miller's claims relating to the other products must be dismissed.

26           Indeed, Miller's claims challenging products he never purchased are

27   precisely the sort of claims California voters sought to preclude with Proposition

28   64.  Until 2004, anyone could sue under California consumer protection laws "on

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                - 7 -                    28172\3315557.1

1  behalf of the general public" regarding any unfair business practice.  Proposition 64

2  severely restricted standing under California's consumer protection statutes,

3  specifically addressing abuses of this liberal standing requirement.  The

4  Proposition's "Findings and Declarations of Purpose" ("Declaration") states that:

5        [California's] unfair competition laws are being misused by some
      private attorneys who . . . [f]ile frivolous lawsuits as a means of

6        generating attorneys fees [or] . . . [f]ile lawsuits for clients who have
      not used the defendant's product or service, [or] viewed the

7        defendant's advertising. . . . Frivolous unfair competition lawsuits clog
      our courts and cost taxpayers.  Such lawsuits cost California jobs and

8        economic prosperity, threatening the survival of small businesses and
      forcing businesses to raise their prices or to lay off employees to pay

9        lawsuit settlement costs or to relocate to states that do not permit such
      lawsuits. . . . It is the intent of California voters in enacting this act to

10        eliminate frivolous unfair competition lawsuits . . . .

11  Proposition 64 § 1(b)(1), 1(b)(3), 1(c), 1(d).

12      Miller's claims relating to products he never purchased are what Proposition

13  64 was designed to eradicate.  *See* "Declaration" at § 1(f) ("It is the intent of

14  California voters in enacting this act that *only* the California Attorney General and

15  local public officials be authorized to file and prosecute actions on behalf of the

16  general public.") (emphasis added); *see also Johns*, 2010 WL 476688 at *5

17  (discussing how Prop. 64 altered standing requirements and holding that plaintiff

18  "cannot expand the scope of his claims to include a product he did not purchase or

19  advertisements relating to a product that he did not rely upon.").  Miller has no

20  legitimate personal interest in challenging products he never purchased regarding

21  packaging he never saw that allegedly imparted misrepresentations he never relied

22  upon.  Accordingly, Miller cannot bring claims as a matter of California law

23  relating to the other products.

24  **III.    PLAINTIFF'S CLAIMS AS TO EACH OF THE PRODUCTS LACK
       MERIT AS A MATTER OF LAW.**

25

26      Miller's claims also lack merit for each of the products as a matter of law.

27  Ghirardelli addresses each product in the order they appear in the complaint,

28  starting with the white baking chips Miller actually purchased.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

- 8 -

28172\3315557.1

A.     **The White Baking Chips**

Miller claims that he was misled by the packaging of the white baking chips, and would not have purchased the chips except in reliance on (1) the following words or phrases on the package: "Chocolate," "Premium Baking Chocolate," "Classic White," "Premium Baking Chips," "Finest grind," "melt-in-your mouth," and "The luxuriously deep flavor and smooth texture of Ghirardelli Premium Baking Chocolate delivers the ultimate chocolate indulgence"; and (2) the "failure to disclose that the product was not 'white chocolate' and contained no cocoa butter."  Complaint ¶ 48.  However, when the statements are reviewed in the actual context of the packaging, Miller's complaint fails to plausibly establish[6] that a reasonable consumer would likely be misled.  No discovery or trial is necessary to this determination:  Miller's claim fails to meet the standard as a matter of law.

A complaint does not state a valid false advertising claim unless the advertising is "likely" to deceive a "reasonable consumer."  *Freeman v. Time, Inc*. 68 F.3d 285, 289 (9th Cir. 1995); *Consumer Advocates v. Echostar Satellite Corp*., 113 Cal. App. 4th 1351, 1360 (2003); *Hill v. Roll Int'l Corp*., 195 Cal. App. 4th 1295, 1300-01 (2011) (applying the "reasonable consumer" standard to false advertising allegations brought under California consumer protection laws); *see also Williams v. Gerber*, 552 F.3d 934, 938 (9th Cir. 2008) ("Appellant's claims under [the UCL, FAL, and CLRA] are governed by the 'reasonable consumer' test.").  Under this standard, a plaintiff's allegations about being subjectively deceived by a label are not legally sufficient to establish a likelihood that a

---

[6] Fed. R. Civ. P. 8 requires complaints to contain a short plain statement . . . showing that the pleader is entitled to relief."  Under this standard, a complaint must plead "enough facts to state a claim that is *plausible on its face*."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added).  A claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This analysis provides a critical gatekeeping function by requiring plaintiffs to establish the plausible allegations "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3 1202, 1216 (9th Cir. 2011).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS                    - 9 -                              28172\3315557.1
(CASE NO. 3:12-CV-04936-LB)

"reasonable consumer would be deceived."  *Hill*, 195 Cal. App. 4th at 1303-1304.

The "reasonable consumer" is not the "least sophisticated consumer" or an "unwary

customer":  "[r]ather, California courts consistently have looked to the ordinary

consumer within the larger population."  *Id.* at 1304 (citing *Lavie v. Procter &*

*Gamble Co.*, 105 Cal. App. 4th 496, 505-06, 510 (2003)).[7]  "While whether a

business practice is deceptive is usually a question of fact not appropriate for a

motion to dismiss, [citation to *Gerber*], '[i]f an alleged misrepresentation would not

deceive a reasonable consumer or amounts to mere puffery, then any cause of

action having deception as an element may be addressed, as a matter of law, on a

motion to dismiss.'"  *Baltazar v. Apple, Inc.*, 2011 WL 2795013, *6 (N.D. Cal.

Aug. 26, 2011) (quoting *McKinnis v. Kellogg USA*, 2007 WL 4766060, at *3 (C.D.

Cal. Sept.19, 2007)); *see also Hairston v. South Beach Beverage Co., Inc.*, 2012

WL 1893818, *4 (C.D. Cal. 2012) (allowing that, under *Gerber* deception is

usually a question of fact, but nonetheless holding that "in certain instances, the

Court can properly make this determination and resolve such claims based on its

review of the product packaging"); *Werbel v. Pepsico, Inc.*, No C 09-05556 SBA,

2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (stating that whether a business

practice is deceptive based on the product's packaging may be determined on a

motion to dismiss).

Significantly, the plaintiff is not permitted to bring suit based on statements

divorced from their context.  If the statements placed in context are not misleading,

the selective quotation of certain phrases is insufficient as a matter of law.

*Freeman*, 68 F.3d at 290 (dismissing claims because "[a]ny ambiguity that

[plaintiff] would read into any particular statement [wa]s dispelled by the

---

[7] *See also Lavie*, 105 Cal. App. 4th at 494 ("Perhaps a few misguided souls believe, for example, that all 'Danish pastry' is made in Denmark.  Is it, therefore, an actionable deception to advertise 'Danish pastry' when it is made in this country?  Of course not.  A representation does not become false and deceptive merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

- 10 -

28172\3315557.1

1   promotion *as a whole*") (emphasis added); *Hairston*, 2012 WL 1893818, at *4

2   ("The Court concludes that Plaintiff's selective interpretation of individual words or

3   phrases from a product's labeling cannot support a CLRA, FAL, or UCL claim.");

4   (*citing Carrea*, 2012 WL 1131526) (rejecting the plaintiff's attempt to interpret

5   words on a product's label out of context)).  In order to present the full context,

6   Ghirardelli has provided a sample of the relevant products so that the Court can

7   review the packaging for itself.

8           Miller's first point is that the package has the word "Chocolate" on the front

9   of the label.  Complaint ¶ 47.  The quotation is selective and divorced from its

10  context.  *See Hairston*, 2012 WL 1893818, at *4-5 (holding that the "selective

11  interpretation of individual words or phrases from a product's labeling cannot

12  support a CLRA, FAL, or UCL claim," in insisting on interpreting the phrases at

13  issue in context.)  What the label says, with a blue background to reinforce that the

14  words go together, is "Ghirardelli Chocolate," which is the name of the company

15  that makes the product.  *Cf.* Complaint ¶ 24 (identifying as "highly deceptive" that

16  "the packaging prominently uses the term "chocolate" in the company name

17  "Ghirardelli Chocolate.").  But consumers know that not everything that comes

18  from a chocolate company is chocolate.  In Willy Wonka's Chocolate Factory, for

19  instance, Violet Beauregard turns blue after eating roast-beef-and-blueberry-pie-

20  flavored gum, and Charlie runs into trouble by trying to filch an Everlasting

21  Gobstopper, but no one thinks that these candies contain cacao fat, or any other

22  chocolate derivative.  Reasonable consumers understand that the words "Ghirardelli

23  Chocolate" used to identify the company name do not mean "white chocolate."  *See*

24  *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106 (S.D. Cal. April 16,

25  2012) (holding that a reasonable consumer would not conclude that "Sugar in the

26  Raw" is raw, unprocessed and unrefined sugar, where "[a]side from the brand

27  name, the word raw does not appear on the packaging."); *Werbel v. Pepsico, Inc.*,

28  2010 WL 2673860 (N.D. Cal. July 2, 2010) (holding that, as a matter of law, no

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                          - 11 -                          28172\3315557.1

1   reasonable consumer would be led to believe that defendant's cereal contained real

2   fruit berries despite the use of the word "berries" in the product name); *cf.*

3   *McKinnis v. Kellogg USA*, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)

4   (dismissing claims because "no reasonable consumer would view the trademark

5   'FROOT LOOPS' name as describing the ingredients in the cereal," because the

6   word "froot" appeared "not on its own or as a description of the actual ingredients

7   of the cereal itself"); *Videtto v. Kellogg USA*, 2009 WL 1439086, *2-3 (E.D. Cal.

8   2009).

9       Miller next points to "romance" language on the back of the package,

10  quoting the (1) first sentence, (2) select words from the end of the second sentence,

11  and (3) the third bullet point.  Complaint ¶¶ 24-25.  Here's the entire quote, which

12  Miller couldn't have helped but read in its entirety if he relied, as he says, on the

13  first and last lines:

14          The luxuriously deep flavor and smooth texture of Ghirardelli
            Premium Baking Chocolate delivers the ultimate chocolate indulgence.
15          For our **Classic White Baking Chips**, pure vanilla and whole milk
            powder combine to create rich, melt-in-your mouth bliss.  Experience
16          the Ghirardelli difference:
                • *All Natural* ingredients
17              • Luxuriously smooth and creamy
                • Finest grind for smoothest texture and easiest melting
18

19  Saunders Decl., Exh. B (bold and font change in original).  Significantly, the

20  product name according to this paragraph is not "white chocolate chips" – it's

21  "Classic White Baking Chips."  (Or, as the front of the package says, "Premium

22  Baking Chips" that are "Classic White.")  If Miller really was looking for white

23  chocolate as he claims, then the bolded text "White Baking Chips" should have

24  been a significant indication to him that this was not the product for him.[8]  As

25  _____

26  [8] Plaintiff points to the recipes printed on competitor's packages, emphasizing that the Hershey
    product (which is also not white chocolate) is not misleading because (1) the recipe is for "White
27  Chip Chocolate Cookies (rather than 'White Chocolate Chip Cookies')" and (2) that recipe
    requires that the user add cocoa powder (in order to justify calling it a "chocolate" cookie).
    Complaint ¶ 44.  Ghirardelli agrees that a recipe for "White Chip Cookies" rather than "White
28  Chocolate Chip Cookies" communicates to a reasonable consumer that the product is white chips,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS                    - 12 -                    28172\3315557.1
(CASE NO. 3:12-CV-04936-LB)

Miller acknowledges in his complaint, reasonable consumers understand that a product that doesn't say "white chocolate" in the name likely is not "white chocolate" in the package.  *Cf.* Complaint ¶¶ 44 ("nowhere does the Hershey's package state 'chocolate.'"); 45 ("Nestle Toll House Premier White Morsels" package "nowhere states that the 'Premier White Morsels' are 'chocolate' or 'white chocolate.'").

Miller claims that "melt-in-your mouth bliss" misled him, but this puffing language wouldn't mislead a reasonable consumer:  products with no chocolate can both melt in one's mouth and produce feelings of bliss.  *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003) ("mere puffing," *e.g.*,  "statements that are not factual representations that a given standard is met," cannot support liability in tort) (citations omitted); *Paduano v. Amer. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1458, 1500 (2009) ("nebulous, nonspecific assertions" constitute non-actionable puffery as a matter of law); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1003 (N.D. Cal. 2007) (dismissing UCL and CLRA claims because generalized statements were "mere puffery"); *Long v. Hewlett-Packard Co.*, No C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007) (same).  For instance, with M&Ms, "melt in your mouth, not in your hands" refers to the hard candy shell, not the chocolate inside.[9]

"Finest grind for smoothest texture," Miller's next point, describes a consistency, not a cacao content.  While cacao beans can be ground, as Miller emphasizes, Complaint ¶ 24, so can sugar.  But there's a more fundamental problem with Miller's "finest grind" argument.  Since cacao butter is the non-solid (oil) part of the cacao bean, grinding doesn't affect its consistency:  oil can't be

---

not white chocolate chips.  And indeed, the recipe on the back of Ghirardelli's white chips is for "Ghirardelli Macadamia White Chip Cookies" – "rather than "White Chocolate Chip Cookies" (*cf.* Complaint ¶ 44) and in bold letters calls the product "**Ghirardelli Classic White Chips**."

[9] Non-chocolate products, of course, can also melt-in-your-mouth.  To wit:  vanilla ice cream. Whether they create bliss is a matter of taste.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                      - 13 -                      28172\3315557.1

ground finely or coarsely, for smooth texture, easiest melting, or any other purpose. A reasonable consumer would understand that the ingredients of the chip are finely ground so that the chip will melt easily and with a smooth texture, but would not likely assume that the "finest grind" referred to cacao beans.

This brings us to what we assume is Miller's main argument: the first sentence of the romance language refers to "The luxuriously deep flavor of Ghirardelli Premium Baking Chocolate" as delivering "the ultimate chocolate indulgence." Miller asserts that the white baking chips he bought could do neither, because they are not chocolate and have no chocolate flavor. Complaint ¶ 24 ("But because there is no chocolate or white chocolate in Defendants' chips, the product cannot deliver a 'deep chocolate flavor or texture' or the 'ultimate chocolate indulgence.'"). Here the context – specifically the very next sentence – makes all the difference. *See Carrea*, 2012 WL 1131526 (rejecting plaintiff's suggestion to interpret words on a product's label out of context); *Freeman*, 68 F.3d 285, 287 (9th Cir. 1995) ("Any ambiguity that Freeman would read into any particular statement is dispelled by the promotion *as a whole*.") (emphasis added). Ghirardelli tells the consumer that the white baking chips don't have a chocolate flavor at all: "For our **Classic White Baking Chips**, pure vanilla and whole milk powder combine to create rich, melt-in-your mouth bliss." (bold in original). Indeed, white chocolate is created by taking the part of the cacao bean that gives chocolate its flavor – the nonfat cacao solids – and separating it from the cacao butter (also known as cacao fat). *See* 67 Fed. Reg. 62171 (Oct. 4, 2002) (defining "white chocolate" as the common name for "products made from cacao fat . . . but containing no nonfat cacao solids"). If it was chocolate that Miller was after, he should have bought the "60% Cacao Bittersweet Chocolate" baking chips, or perhaps the "Semi-Sweet Chocolate" baking chips – but definitely not the "Classic White" baking chips.[10]

---

[10] Indeed, the FDA has been clear that "white chocolate" is not "chocolate" at all. 67 Fed. Reg. 62173 (Oct. 4, 2002) (White chocolate "does not conform to the definition and standard for

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS          - 14 -                    28172\3315557.1
(CASE NO. 3:12-CV-04936-LB)

1    But Miller concedes that he was not looking for chocolate; at best he was looking

2    for white chocolate.  A sentence about chocolate – and Ghirardelli does sell a lot of

3    "Premium Baking Chocolate" that it regards as delivering "the ultimate chocolate

4    indulgence" – is an advertisement for the company's overall product line.  For

5    information about the product inside the package, reasonable consumers would

6    focus on the sentence about the product in the package, the one with "Classic White

7    Baking Chips" in bold letters.  And if the conspicuous absence of the words "white

8    chocolate" were not enough to tell the consumer that this is not a white chocolate

9    product, telling the consumer that they were buying a product where "pure vanilla

10   and whole milk powder" are the key ingredients surely did.[11]  *See Hairston*, 2012

11   WL 1893818 at *5 (finding no deception as a matter of law where the ingredients

12   list was consistent with statements on the front label, and both together dispelled

13   any alleged ambiguity about "the exact contents of [the product]").

14           The final thing that Miller alleges reliance on is the "failure to disclose" that

15   the product was not white chocolate.  Complaint ¶ 36, 48.  But the package does

16   disclose that the product is not white chocolate:  indeed, Miller claims he learned

17   that the product was not white chocolate by reading the label the very next day.

18   Complaint ¶ 49 ("He then looked closely at the ingredients list on the packaging

19   and noticed that the product did not contain any white chocolate, cocoa or cocoa

20   butter.").  While a reasonable consumer is not expected to read the ingredient list to

21   see if there is information that contradicts information on the front panel about the

22   contents of the package, *see Williams v. Gerber*, 552 F.3d 934, 939-40 (9th Cir.

23   2008), no case has ever held that a manufacturer can be held liable for "failing to

24   chocolate in that it does not contain the nonfat portion of the cacao nibs."), *see also id.* at 62172

25   ("All existing chocolate standards include the cacao-derived ingredient chocolate liquor, which
     contains both the nonfat and the fat components of the cacao nibs.  In contrast, the cacao-derived

26   ingredient contained in products consumers have come to know as "white chocolate" is cacao fat
     (*i.e.*, cocoa butter), not chocolate liquor.").

27   [11] *Compare* Complaint ¶ 45 (Nestle Toll House "discloses that its 'Premier White Morsels' are

28   'creamy vanilla-flavored baking pieces'"); *with* ¶ 43 ("Unlike Defendants, their competitors more
     adequately disclose the truth about their" products).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS          - 15 -                    28172\3315557.1
(CASE NO. 3:12-CV-04936-LB)

1  disclose" that a package does not contain an ingredient when the ingredient list

2  discloses just that.  Miller's case succeeds or falls on whether the affirmative

3  statements he complains about are misleading; the reference to "failure to disclose"

4  is simply incorrect.

5          Miller is specific as to what affected his purchase decision:  the statements on

6  the package itself.  Complaint ¶ 48.  But the complaint goes on to allege a number

7  of statements or practices that seem not to have affected his purchase decision at

8  all:  text on Ghirardelli's web site, *id.* ¶ 38, 40-41 (which he does not claim to have

9  seen), communications with retailers, *id.* ¶ 42 (which he does not allege affected his

10  purchase decision), positioning on the grocery store shelf, ¶ 25, pricing, ¶ 35, the

11  sale of other products that do contain white chocolate, ¶ 34, and even the

12  conversation that Plaintiff's counsel's investigator claims to have had with a store

13  employee 2,900 miles away.  *Id.* ¶ 39.  These unrelied-upon statements or practices

14  do not help Miller state a claim.  *Pfizer v. Superior Court*, 182 Cal. App. 4th 622,

15  631 (2010) ("[O]ne who was not exposed to the alleged misrepresentations and

16  therefore could not possibly have lost money or property as a result of the unfair

17  competition is not entitled to restitution."); *Sevidal v. Target Corp.*, 189 Cal. App.

18  4th 905, 923-29 (2010) (those who "never saw the Web page containing the alleged

19  misrepresentation" had no right to recover); *Krueger v. Wyeth, Inc.*, 2011 WL

20  8971149 (S.D. Cal. 2011) (those who had not "actually heard or read one of [the]

21  alleged misrepresentations" could not recover); *Durell v. Sharp Healthcare*, 183

22  Cal. App. 4th 1350, 1363-64 (2010) (demurrer upheld where complaint did not

23  claim that named plaintiff had actually visited the website alleged to contain

24  misrepresentations); *see also In re Tobacco II Cases*, 46 Cal. 4th at 324-28 (named

25  plaintiff must plead and prove reliance in order to establish that he has "lost money

26  or property as a result of" the alleged fraudulent statements).

27          Discovery will *not* tell us more than what the complaint already has:  that

28  Miller's case is based on review of a package that never said it contained white

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                 - 16 -                    28172\3315557.1

chocolate and that accurately disclosed that it did not, and is based only on an unreasonable implication from the brand name and puffing text like "melt-in-your mouth bliss." Miller's claims fail because a reasonable consumer is not "likely" to be misled by the Ghirardelli white baking chips label as a matter of law.

### B. "White Chocolate Flavored Confectionary Wafers" and "Sweet Ground White Chocolate Flavor"

Miller next attacks two products sold not at retail, but in a food service supply channel where the products are used by coffee shops or other food manufacturers: "white chocolate flavored confectionary coating wafers" and "sweet ground white chocolate flavor." Unlike the other products Miller challenges, these two product lines *do* use the words "white chocolate." But critically, they use those words in combination with "flavor" or "flavored." Under FDA regulations, that makes all the difference, and any state law claim to the contrary is preempted.

#### 1. State Law Is Preempted If The Requirement Is Not "Identical" To The FDA Regulation Governing Use Of The Words "Flavor" Or "Flavored."

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") creates an express preemption for state laws "not identical" to federal labeling requirements created by the FDA. 21 U.S.C. § 343–1; *see also Wright v. General Mills, Inc.*, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009). Specifically, the FDCA provides that no state "may directly or indirectly establish . . . any requirement for the labeling of food of the type" regulated by federal law "that is not identical to the [federal] requirement." 21 U.S.C. § 343–1(a). Thus, to the extent any law addressing labeling standards imposes requirements not "identical" to federal requirements, it is expressly preempted.[12]

---

[12] *See* 21 C.F.R. § 100.1(c)(4) (The "not identical" standard precludes any "State requirement [that] directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food" that are "not imposed by or contained in the applicable [federal] provision" or "[d]iffer from those specifically imposed by or contained in the applicable [federal]

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

The FDA regulates references to flavors and flavorings on food product labels.[13]  *See* 21 U.S.C. §§ 343(g), (i), (k); 21 C.F.R. § 101.22.  The federal statutes governing "flavor" label statements are specifically enumerated in the express preemption statute.  21 U.S.C. § 343(e), (k); 21 U.S.C. § 343-1(a)(2) and 1(a)(3).  The preemption provision also extends to labeling requirements established by regulations promulgated under the statutes.  *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).  Thus, state law requirements that are not identical to Code of Federal Regulations section 101.22, which governs use of the terms "flavor" and "flavored" on labels, are preempted by federal law.  21 C.F.R. § 101.22.

> 2.    Miller's Claims About Ghirardelli's "Sweet Ground White Chocolate Flavor" And "White Chocolate Flavored Confectionary Coating Wafers" Products Are Preempted.

The claims about Ghirardelli's labels for (1) "Sweet Ground White Chocolate Flavor" and (2) "White Chocolate Flavored Confectionary Coating Wafers" are preempted because Plaintiff seeks to impose limitations on Ghirardelli's manner of packaging that are different from what federal regulations require.  21 C.F.R. § 101.22(i); Complaint ¶¶ 19, 23, 26, 28, 29.  Ghirardelli is permitted by federal

---

provision.").  The purpose of the express preemption "was to create uniform national standards regarding the labeling of food . . . ."  *In re Farm Raised Salmon Case*s, 42 Cal. 4th 1077, 1086 (2008); *see also Turek v. General Mills, Inc*., 662 F.3d 423, 426 (7th Cir. 2011) (Posner, J.) ("It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide[,] [as] [m]anufacturers might have to print 50 different labels . . . ."); *Degelmann v. Advanced Med. Optics, Inc*., 659 F.3d 835, 842 (9th Cir. 2011) ("California's UCL and FAL required something different than what the FDA required [and] . . . , [a]ccordingly, the class' claims are expressly preempted.").

[13]  Enforcement of the FDCA is entrusted exclusively to the federal government; no private cause of action exists.  *See* 21 U.S.C. § 337(a) ("all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States"); *Fraker v. KFC Corp.*, 2007 WL 1296571, at *3 (S.D. Cal. April 30, 2007).  It is well established that state unfair competition laws cannot be used as vehicles to assert private causes of actions based on alleged violations of the FDCA.  *In re Epogen & Aransep Off-Label Mktg. & Sales Practices Litig*., 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008); *Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc*., 922 F. Supp. 299, 316 (C.D. Cal. 2009).  Alleged violations of the FDCA also may not serve as a predicate for a claim under the "unlawful" prong of the UCL or the CLRA.  *See Perez v. Nidek Co. Ltd*., 657 F. Supp. 2d 1156, 1164-66 (S.D. Cal. 2009) (dismissing UCL and CLRA claims).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                    - 18 -                    28172\3315557.1

1   regulation to use these words:  no state law cause of action can impose a different

2   requirement, even if Miller claims that the label is misleading.

3       Section 101.22 applies whenever a manufacturer wishes to designate a food's

4   flavor on the label other than through the statement of ingredients.  Section 101.22

5   permits manufacturers to describe a product's "characterizing flavor" on the

6   product's label or in advertising.  21 C.F.R. § 101.22(i).  The use of a characterizing

7   flavor permits manufacturers to explain to consumers what a product tastes like,

8   and is not a representation of ingredients.  *Id*.  The regulation states:

9       If the label, labeling, or advertising of a food makes any direct or
        indirect representations with respect to the primary recognizable
10      flavor(s), by word, vignette, *e.g.*, depiction of a fruit, or other means,
        or if for any other reason the manufacturer or distributor of a food
11      wishes to designate the type of flavor in the food other than through
        the statement of ingredients, such flavor shall be considered the
12      characterizing flavor and shall be declared in the following way:

13          (1) If the food contains no artificial flavor which simulates,
        resembles or reinforces the characterizing flavor, the name of the food
14      on the principal display panel or panels of the label shall be
        accompanied by the common or usual name of the characterizing
15      flavor, *e.g.*, "vanilla", in letters not less than one-half the height of the
        letters used in the name of the food, except that:
16
            (i) If the food is one that is commonly expected to contain a
17      characterizing food ingredient, e.g., strawberries in "strawberry
        shortcake", and the food contains natural flavor derived from such
18      ingredient and an amount of characterizing ingredient insufficient to
        independently characterize the food, or the food contains no such
19      ingredient, the name of the characterizing flavor may be immediately
        preceded by the word "natural" and shall be immediately followed by
20      the word "flavored" in letters not less than one-half the height of the
        letters in the name of the characterizing flavor, *e.g.*, "natural
21      strawberry flavored shortcake," or "strawberry flavored shortcake" . . .

22   *Id*.[14] (emphasis added).  The regulation thus provides: (1) that manufacturers who

23   ───────────────────

24   [14] The question of what imparts flavor to a product (*i.e.* the "characterizing flavor") is a different
     question from whether a given ingredient is a defined "flavor" additive that must be listed on the
25   ingredient packaging under federal law.  *See* 21 C.F.R. § 101.22(a)(1) & (3) (artificial flavors
     consist solely of those specificallydefined substances that "impart flavor"; natural flavors are
26   those whose "significant function in food is flavoring rather than nutritional but which are derived
     from the original food product that the flavor refers to); *see also* 21 C.F.R. § 101.4 ("Food;
27   designation of ingredients," explaining that flavoring is governed by 21 C.F.R. § 101.22).  Thus, a
     food product's "characterizing flavor" or "taste" can be (and often is) derived from many
28   ingredients that are not "flavor additives" under the regulations, but still may be used or depicted
     to describe to consumers what a product tastes like, so long as terms like "flavor" or "flavored"

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS         - 19 -                    28172\3315557.1
(CASE NO. 3:12-CV-04936-LB)

1    wish to represent that the product has a certain taste may use the word "flavor"

2    (subsection (i)); (2) that if the food contains no artificial flavor which simulates,

3    resembles, or reinforces that taste, the manufacturer should put the flavor name on

4    the front panel (sub-subsection (i)(1)); and (3) that if the food is commonly

5    expected to contain a particular ingredient – and here, Miller alleges that consumers

6    would expect each of these two products to contain "white chocolate" (*see*

7    Complaint ¶¶ 25-30) – the word "flavored" is required to be in letters at least half

8    the height of the characterizing flavor's name if the product contains either (a)

9    flavor derived from the ingredient but insufficient to independently characterize the

10   food, or (b) "no such ingredient."[15]

11         Case law confirms that the FDA permits depictions or the name of a product

12   (*e.g.*, "white chocolate" in a white-chocolate flavored product, "fruit" in a fruit-

13   flavored product, or "strawberry" in a strawberry-flavored product) to be used on a

14   label to indicate a product's characterizing flavor "even where the product contains

15   *no ingredients* derived from the depicted or stated product."  *Dvora v. General*

16   *Mills, Inc*., 2011 WL 1897349 *4 (C.D. Cal. 2011) (emphasis added) ("Section

17   101.22(i) permits a manufacturer to use the name and image of a fruit on a

18   product's packaging to describe the characterizing flavor of the product even where

19   the product does not contain any of that fruit, or contains no fruit at all."); *see also*

20   *McKinniss v. Sunny Delight Beverages Co.*, 2007 WL 4766525, at *4 (C.D. Cal.

21   Sept. 4, 2007) ("FDA regulations permit illustrations of fruit on product labels to

22   indicate the product's 'characterizing flavor,' even where the product contains no

23   ingredients derived from the depicted fruit.").

24   are used.  Plaintiff has not alleged in his complaint that Ghirardelli failed to disclose a flavor
     additive on its ingredients list.  Regardless, Ghirardelli's Sweet Ground White Chocolate Flavor
25   states in its ingredient list that the product contains "natural and artificial flavors," and
     Ghirardelli's "White Chocolate Flavored Confectionary Coating Wafers" includes "artificial
26   flavor" on its ingredients list.

27   [15] Plaintiff does not claim that the letters are not the required height.  *See* Complaint ¶ 28
     (alleging that the word flavor is in a "substantially smaller" font," but not alleging that the font is
28   less than half the height of that used for the words "white chocolate.").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS          - 20 -          28172\3315557.1
(CASE NO. 3:12-CV-04936-LB)

1       In *Lam v. General Mills, Inc.*, 2012 WL 1656731 *3-4 (N.D. Cal. May 10,

2   2012), this Court held that Section 101.22 "allows a producer to label a product as

3   "natural strawberry flavored," even if that product contains no strawberries at all.

4   There, the plaintiff alleged that a Fruit-Roll-Ups product labeled "strawberry

5   natural flavored" was misleading because nothing in the product was derived from

6   strawberries, and no strawberry in any form appeared on the ingredients list. *Id*.

7   The court found that plaintiff's claim of misleading labeling was preempted

8   because Section 101.22 both governed use of the term "flavored" and permitted

9   General Mills to use the term "strawberry flavored" despite the lack of any

10  strawberry in the product – and even though Plaintiff alleged that the flavoring of

11  the product came from "unnatural, non-fruit ingredients."  The same rule applies

12  here, where Ghirardelli products labeled "white chocolate flavor/flavored" comply

13  with Section 101.22 despite the fact that the ingredients list does not contain white

14  chocolate.  *Lam* makes clear that Ghirardelli's use of the terms "flavor" and

15  "flavored" to describe its Sweet Ground White Chocolate Flavor and its White

16  Chocolate Flavored Confectionary Coating Wafers products is permitted by Section

17  101.22.

18      Because Miller's complaint seeks to prevent Ghirardelli from labeling its

19  products "white chocolate flavor/flavored" even though that description of the

20  product's characterizing flavor is expressly authorized by federal law, Miller is

21  impermissibly seeking to impose a requirement on Ghirardelli "not identical" to

22  federal regulations.  Miller's claims as to Ghirardelli's Sweet Ground White

23  Chocolate Flavor and White Chocolate Flavored Confectionary Coating Wafers

24  products are thus preempted.

25  **C.     The Mocha Mix**

26      Miller's complaint makes three arguments about the "White Mocha" hot

27  beverage mix.  First, Miller points to the brand name "Ghirardelli Chocolate" on the

28  package.  Complaint ¶ 31.  As explained above, in context, reasonable consumers

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS                    - 21 -                    28172\3315557.1
(CASE NO. 3:12-CV-04936-LB)

1    understand that this refers to the brand, and not that it is an indication that the

2    product will contain a cacao bean derivative.

3        Second, plaintiff argues that "white mocha" means a "combination of coffee

4    and white chocolate." *Id.* However, according to the allegations in the complaint,

5    "mocha" originally meant a type of Arabian coffee that had a chocolate-like taste,

6    *id.*, but which did not actually contain any chocolate. Miller acknowledges that

7    "mocha" doesn't necessarily contain cacao – indeed, if he claimed otherwise, then

8    "mocha" beans – the original coffee that merely tastes like chocolate but contains

9    no chocolate syrup – would fail to satisfy his definition. Nonetheless, Miller insists

10   that a "white mocha" absolutely must have cacao even though a "mocha" need not,

11   which hardly makes sense. No reasonable consumer would be deceived here. If it

12   is important to the consumer that the beverage mix be manufactured using cacao,

13   the consumer would look at the ingredient list, which correctly indicates that the

14   product contains no cacao. Miller cannot enforce an FDA standard of identity for

15   white chocolate against a product that never says it contains white chocolate.

16       Third, Miller claims that the white mocha beverage mix packaging is

17   deceptive because it states "The rich indulgent flavor of Ghirardelli Premium White

18   Mocha creates the pleasurable moment cocoa lovers cherish." Complaint ¶ 31.

19   This statement is puffing. The advertising claim is not capable of being measured

20   or evaluated by any objective standard. *See Consumer Advocates v. Echostar*

21   *Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003) ("statements that are not

22   factual representations that a given standard is met," are non-actionable puffery)

23   (citations omitted); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 999 (N.D.

24   Cal. 2007) (distinguishing non-actionable puffery from "actionable factual

25   representations that *can be proved or disproved during discovery*") (emphasis

26   added). Does the product create a pleasurable moment that will be cherished? A

27   pleasurable moment cherished by people who love hot cocoa? Consumers will

28   have to decide for themselves. No one can legally (*i.e.*, reasonably) claim that they

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                    - 22 -                    28172\3315557.1

1    were misled into believing that the reference to a pleasurable moment cherished by

2    cocoa lovers was intended to refer to the ingredients, as opposed to the

3    unmeasurable subjective experience of tasting something that – according to

4    Ghirardelli – has a "rich indulgent flavor."

5         **D.   The Frappé**

6         Miller's Frappé[16] allegations similarly state no claim, for reasons discussed

7    more thoroughly above.  The reference to chocolate in the company's trade name,

8    and to a pleasurable or cherished moment, Complaint ¶ 32, would not deceive a

9    reasonable consumer into believing that this product contains cacao.  *Paduano*, 169

10   Cal. App. 4th at 1500 (2009) ("nebulous, nonspecific assertions" constitute non-

11   actionable puffery as a matter of law).  Nor does the fact that Ghirardelli also sells –

12   side-by-side or otherwise – a product that does say "Double Chocolate Frappé."

13   Complaint ¶ 33.  If anything, a reasonable consumer seeing one product that says

14   chocolate, and another that does not, would conclude that the product that does not

15   say "white chocolate" contains no white chocolate.

16        If there are consumers who care whether the Frappé mix contains cacao –

17   and Miller does not claim to be one of them – they should read the ingredient list,

18   which correctly confirms that no cacao is used.  This is not a case like *Gerber*

19   where the front panel tells one story but the ingredient list on the back contradicts

20   it.  *Cf.* 552 F.3d at 939.  Instead, the front panel never says or otherwise represents

21   white chocolate, and the ingredient list confirms no white chocolate is present.

22   *Compare id.* at 939-40 ("[R]easonable consumers expect that the ingredient list

23   contains more detailed information about the product that confirms other

24   representations on the packaging.") *with Hairston*, 2012 WL 1893818 at *5 (citing

25   _____

26   [16] A "frappé" is "1. a:  a partly frozen drink (as of fruit juice)  b:  a liqueur served over shaved ice

27   2:  a thick milk shake."  Webster's Online Dictionary (2012) (available at http://www.merriam-
     webster.com/dictionary/frappe) (last visited Oct. 11, 2012).  Calling something a "white" frappé

28   (or to be precise, a "Frappé Classico – Classic White") does not indicate anything about the
     cacao-bean derivative content of the product.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                     - 23 -                        28172\3315557.1

1  *Gerber* and finding that because "the ingredient list is consistent with the front label

2  statement[s]" defendant's product is not deceptive as a matter of law).

3  **IV.    THE FRAUD CLAIMS SHOULD BE DISMISSED.**

4         Under California law, a fraud claim requires a false representation. *Ragland*

5  *v. U.S. Bank Nat. Assn.*, 209 Cal. App. 4th 182 (2012) ("The elements of fraud are

6  (1) the defendant made a false representation as to a past or existing material

7  fact . . . ."); *see also* Cal. Civ. Jury Inst. (CACI) 1900 "Intentional

8  Misrepresentation" (requiring findings that "(1) [defendant] represented to

9  [plaintiff] that an important fact was true; (2) That [defendant]'s representation was

10  false [. . .]"). Here, plaintiff has none. The white baking chips never falsely claim

11  to have white chocolate in them. The white mocha beverage mix never falsely

12  claims to be made with cacao fat. The frappé never claims to contain white

13  chocolate. The white chocolate "flavor," and "flavored" confectionary wafers,

14  never claim to have been made out of white chocolate (and indeed, are labeled in

15  compliance with FDA regulations permitting them to refer to the flavor even if no

16  white chocolate was used to make them). There is no fraud claim here, as a matter

17  of law.

18                          **CONCLUSION**

19         For the foregoing reasons, the claims as to products other than the white

20  chips should be dismissed for lack of subject matter jurisdiction, and the claims

21  concerning the white chips should be dismissed for failure to state a claim.

22  Dated:    October 19, 2012          FARELLA BRAUN + MARTEL LLP

23

24                                      By:/s/ Thomas B. Mayhew

25                                         Thomas B. Mayhew

26                                      Attorneys for Defendant
                                        GHIRARDELLI CHOCOLATE COMPANY

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT'S MOTION TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                - 24 -                    28172\3315557.1