1  **GUTRIDE SAFIER LLP**
   ADAM J. GUTRIDE (State Bar No. 181446)
2  SETH A. SAFIER (State Bar No. 197427)
   KRISTEN G. SIMPLICIO (State Bar No. 263291)
3  835 Douglass Street
   San Francisco, California 94114
4  Telephone: (415) 336-6545
   Facsimile:  (415) 449-6469
5
6  Attorneys for Plaintiff
7                    UNITED STATES DISTRICT COURT
8                   NORTHERN DISTRICT OF CALIFORNIA
9                       SAN FRANCISCO DIVISION
10

11 | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF | CASE NO. 12-cv-00117 (LB) |
   | HIMSELF, THE GENERAL PUBLIC, AND THOSE | |
12 | SIMILARLY SITUATED, | PLAINTIFF'S OPPOSITION TO |
   | | DEFENDANT'S MOTION TO |
13 | Plaintiff, | DISMISS PURSUANT TO |
   | | RULE 12(b)(6) |
14 | v. | |
   | | Date:  December 6, 2012 |
15 | | Time:  11:00 am |
   | GHIRARDELLI CHOCOLATE COMPANY, AND DOES | Place:  Courtroom C, 15th Floor |
16 | 1 THROUGH 50, | Judge:  Hon. Laurel Beeler |
17 | | |
   | Defendants. | |
18

19
20
21
22
23
24
25
26
27
28

-1-

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................1

I.     INTRODUCTION ...........................................................................................1

II.    STATEMENT OF FACTS ..............................................................................2

III.   ARGUMENT ..................................................................................................6

    A.   Legal Standard For Motion To Dismiss......................................................6

    B.   Plaintiff Has Standing to Pursue This Litigation On Behalf of All Absent
        Class Members. ...........................................................................................6

    C.   Plaintiff Adequately Pleads False Advertising, Fraud, CLRA, and UCL
        Claims. ......................................................................................................13

        1.   Ghirardelli's Misrepresentations and Omissions Are Actionable...................13

        2.   Plaintiff's Fraud Claim Is Properly Pled.........................................................19

    D.   Federal Law Does Not Preempt Plaintiff's Claims As To Defendant's "White
        Chocolate Flavored" Products. ................................................................20

        1.   There Exists A Strong Presumption Against Preemption. .............................20

        2.   The Food, Drug And Cosmetics Act Does Not Expressly Preempt The
            Laws At Issue In This Case..........................................................................21

        3.   Plaintiff's Complaint Is Not An Attempt To Enforce (Or Otherwise
            Circumvent) The Food, Drug And Cosmetics Act. ....................................22

        4.   Ghirardelli Does Not Comply with the FDCA's Rules. ...............................23

    E.   If Any Allegations Are Insufficient, Leave To Amend Should Be Granted. ..............25

IV.   CONCLUSION.............................................................................................26

## TABLE OF AUTHORITIES

### CASES

*Allen-Bradley Local v. Board*, 315 U.S. 740 (1942)................................................................21

*Anderson v. Jamba Juice Co.*, 2012 U.S. Dist. LEXIS 120723 (N.D. Cal. Aug. 25, 2012) ........................................................................................................................................8

*Annunziato v. eMachines*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005) ...........................................14

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. Jul. 20, 2012) ...............................................................................................................9

*Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007) .................................19

*Bank of the West v. Superior Court*, 2 Cal.4th 1254 (1992) ......................................................13

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .............................................................6

*Black v. Financial Freedom Senior Funding Corp.*, 92 Cal.App.4th 917 (2001) .....................20

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. Nov. 14, 2011)........................9

*Buckman Co. v. Plaintiffs' Legal Cmte.*, 531 U.S. 341 (2001) ..................................................22

*California v. ARC America Corp.*, 490 U.S. 93 (1989) ........................................................20, 21

*Cardenas v. NBTY, Inc.*, 2012 U.S. Dist. LEXIS 63376 (E.D. Cal. May 4, 2012).......................8

*Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122 (W.D. Wash. 2010).................................................9

*Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011)................................................................................................................11, 16

*Chavez v. Blue Sky Natural Bev. Co*, 268 F.R.D. 365 (N.D. Cal. 2010) ................................9, 12

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ..............................................................20

*Committee on Children's Television Committee on Children's Television, Inc., et al., v. General Foods Corporation, et al*, 35 Cal.3d 197 (1974) ..........................................14

*Conley v. Gibson*, 355 U.S. 41 (1957) ..........................................................................................6

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351 (2003) ......................19

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242 (9th Cir. 1990) ............................................................................................................................................14

*Cooper v. Pac. Life Ins. Co.*, 229 F.R.D. 245 (S.D. Ga. 2005)...................................................18

*Davis v. Scherer*, 468 U.S. 183 (1984) .........................................................................................6

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992)......................................................25

*Donohue v. Apple, Inc.*, 2012 U.S. Dist. LEXIS 65860 (N.D. Cal. May 10, 2012) ...................12

*Donohue v. Apple*, No. 11-cv-05337 RMW, 2012 U.S. Dist. LEXIS 65860 (N.D. Cal. May 10, 2012) ..............................................................................................................8

*Durell v. Sharp Healthcare* (2010) 183 Cal. App. 4th 1350......................................................13

*Dvora v. General Mills, Inc.,* 2011 U.S. Dist. LEXIS 55513 (C.D. Cal. May 16, 2011) ......................................................................................................................................25

*Dysthe v. Basic Research LLC*, 2011 U.S. Dist. LEXIS 137315 (C.D. Cal. June 13, 2011) ......................................................................................................................................11

*Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008) ..............................................................23

*Forcellati v. Hyland's, Inc.*, 2012 U.S. Dist. LEXIS 91393 (C.D. Cal. June 1,

2012) ......................................................................................................................8

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) .................................................18

*Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995) ........................................13

Gen. Tel. Co. of the Sw. v. Falcon ...........................................................................8

*Greenwood v. Compucredit Corp.,* 2010 U.S. Dist. LEXIS 3839 (N.D. Cal. Jan. 19, 2010) .................................................................................................................12

*Hewlett-Packard v. Super. Ct.*, 167 Cal. App. 4th 87 (2008) ....................................9

*Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003) .......................................................................................................................7

*Hill v. Roll Int'l Corr.*, 195 Cal.App. 4th 1295 (2011) ............................................18

*Hodes v. Van's Int'l Foods*, 2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009) .....................................................................................................................12

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 2012 U.S. Dist. LEXIS 88413 (N.D. Cal. June 26, 2012) ........................................................................13

*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) ................................13

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)...................................................1, 8

*Jordan v. Paul Fin., LLC,* 2012 U.S. Dist. LEXIS 119899 (N.D. Cal. Aug. 23, 2012) .....................................................................................................................19

*Koh v. S.C. Johnson & Son, Inc.,* 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 5, 2010) .......................................................................................................................8

*Krueger v. Wyeth, Inc.*, 2008 U.S. Dist. LEXIS 12236 (S.D. Cal. Feb. 19, 2008) ....................13

*Larsen v. Trader Joe's Co.,* No. 3:11-cv-5188-SI, Dkt. #41 (N.D. Cal. June 14, 2012) .....................................................................................................................11

*Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496 (2003) ................................14

*Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115 (2007) ................14

*McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457 (2006) .........................14

*McKinniss v. Kellogg USA*, 2007 LEXIS 96106 (C.D. Cal. Sept. 19, 2007).............................15

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996).................................................20, 21

*Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634 (2009)...........................................7

*Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993) ..............................................20

*Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 U.S. Dist. LEXIS 42333 (E.D. Cal. Apr. 18, 2011) ......................................................................................................13

*Pacific Trading Co. v. Wilson & Co., Inc.*, 547 F.2d 367 (7th Cir. 1976)................22

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) ................6, 16

*Pfizer v. Super. Ct.*, 182 Cal. App. 4th 622 (2010) ................................................13

*Pharmaceutical Mfrs. v. Food & Drug Admin.* 484 F. Supp. 1179 (D.Del. 1980)....................22

*quoting Robinson Helicopter Co. v. Dana Co., Inc.*, 34 Cal. 4th 979 (2004)...........................19

*Ray v. Atlantic Richfield Co,*  435 U.S. 151 (1978) ................................................21

*Ries v. Hornell Brewing Co.*, 2011 U.S. Dist. LEXIS 36845 (N.D. Cal. Apr. 4, 2011) .....................................................................................................................25

*Rooney v. Cumberland*, 2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012) ...................15

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ...................................................................................6

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ................25

*See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)....................................................7

*Sevidal v. Target Corp.*, 189 Cal. App. 4th 905 (2010) ............................................................13

*Sosna v. Iowa*, 419 U.S. 393 (1975).......................................................................................1, 7

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997)................................15

*Static Random Access Memory Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009)...................12

*Stephenson v. Neutrogena Corp.*, 2012 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012) ................................................................................................................................11

*Sugawara v. Pepsico, Inc.*, 2009 U.S. Dist. LEXIS 43127, 2009 WL 1439115 (E.D. Cal. May 21, 2009) .......................................................................................................15

*United States v. Locke*, 529 U.S. 89, 107-108 (2000)...............................................................21

*Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.*, 2006 U.S. Dist. LEXIS 13683 *22 (D. Mass. 2006)....................................................................................23

*Videtto v. Kellogg USA*, 2009 U.S. Dist. LEXIS 43114 (E.D. Cal., May 21, 2009) .................15

*Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011)............................................8

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) .....................................6

*Washington Mutual Bank v. Superior Court*, 95 Cal.App.4th 606 (2002) .................................20

*Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010).....................15

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ....................................................2

*Winkler v. DTE, Inc.*, 205 F.R.D. 235 (D. Ariz. 2001) .............................................................18

## STATUTES

21 C.F.R. § 100.1(c)(4) .............................................................................................................24

21 C.F.R. § 101.1 *et. seq* ....................................................................................................15, 24

21 U.S.C. § 343-1(a)(2)-(3) ......................................................................................................24

21 U.S.C. § 393(b)(2)(A)...........................................................................................................24

Plaintiff Scott Miller ("Plaintiff") respectfully submits this Opposition to Defendant's Motion to Dismiss ("Mot.").  (Dkt.# 7.)

## I.     INTRODUCTION

Defendant Ghirardelli Chocolate Company ("Ghirardelli" or "Defendant") manufactures, markets and sells "premium chocolate products," including a line of products that purport to be white chocolate.  Only some of those products, however, actually contain white chocolate or its essential ingredient, cocoa butter.  The others—the Fake White Chocolate Products—are marketed in such a way as to deceive reasonable consumers into believing that they are white chocolate, when they are not.  Plaintiff, who relied on the false advertising, has sued on behalf of himself and other similarly situated purchasers of the Fake White Chocolate Products.

Defendant moves to dismiss on three grounds, all of which completely ignore the most damning facts of this case, including the fact that even Defendant's own employees were confused into believing that they were selling real white chocolate.

Defendant first argues that Plaintiff does not have standing, as a matter of law, under Article III and/or California's law to bring suit.  But Defendant confuses standing with class certification.  The "standing" doctrine requires only that the named plaintiff show that he has presented claims of injury to himself by *each and every defendant*.  *See, e.g., Gratz v. Bollinger*, 539 U.S. 244, 285 n.5 (2003).  Defendant does not dispute that Plaintiff, in fact, purchased one of its Fake White Chocolate Products in reliance on its false and deceptive advertisements.  Rather, it argues that Plaintiff is atypical of putative class members because they purchased different Fake White Chocolate Products.  However, once a plaintiff establishes standing to assert his or her individual claim against a defendant, his ability to represent the class for all potential class members depends solely on whether the requirements of Rule 23 are met.  *See Sosna v. Iowa*, 419 U.S. 393, 402-03 (1975) (once a named plaintiff in a class action shows that the threat of injury in a case, it ***"shift[s] the focus of examination from the elements of justiciability to the ability of the named representative to fairly and adequately protect the interest of the class [under] Rule 23.***") (emphasis added) (citations omitted); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 326-327 (2009) (stating that "representative parties who have a direct and substantial interest have

standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.")

Defendant next argues that when it falsely and deceptively marketed and advertised the Fake White Chocolate Products, it was just "romancing" consumers.  The argument ignores most of the allegations of the Complaint and, in any event, is foreclosed by the law of this Circuit.  *See, e.g., Williams v. Gerber Prods. Co*., 552 F.3d 934, 939 (9th Cir. 2008) (stating that all statements can contribute to the deceptive context of the packaging, which must be viewed as a whole.)

Defendant finally asserts that Plaintiff's claims against two of the Fake White Chocolate Products, which were labeled as "white chocolate *flavored*," are preempted by federal regulations. Because Congress neither expressly nor impliedly intended to preempt the state consumer protection laws that Plaintiff seeks to enforce, the argument fails.

Ghirardelli's motion should be denied in its entirety.

## II.    STATEMENT OF FACTS

Ghirardelli manufactures, markets and sells chocolate products.  It claims to be "America's premier chocolate company" and represents that it is "one of the very few American manufacturers that make chocolate starting from the cocoa bean through the finished products." (Complaint (Dkt.# 1) ¶ 16.)  It describes how its "premium chocolate delivers [its] signature intense, smooth-melting chocolate taste."  (Id.)   It makes numerous additional representations regarding, for example, how it "roasts the cocoa beans in-house to ensure the company's signature flavor profile is consistently maintained in all chocolate products."  And it describes its careful selection of cocoa beans, and the fine, smooth, melting characteristics of its final chocolate products.  (Id.)

Ghirardelli also manufactures, markets and sells a white chocolate product line.  Many of the white chocolate products do in fact contain cocoa butter.  But five of the "white chocolate" products contain no chocolate or cocoa butter whatsoever.  Those products are:

- •   Ghirardelli Chocolate Premium Baking Chips Classic White ("Fake White Chocolate Chips")

- Ghirardelli® Chocolate White Chocolate Flavored Confectionary Coating Wafers ("Fake White Chocolate Wafers")

- Ghirardelli® Chocolate Sweet Ground White Chocolate Flavor ("Fake Ground White Chocolate")

- Ghirardelli® Chocolate Premium Hot Beverage – White Mocha ("Fake White Mocha")

- Ghirardelli® Chocolate Frappé Classico – Classic White ("Fake White Chocolate Frappé")

(collectively, "Fake White Chocolate Products") (Id. ¶ 19.)

Cocoa butter is the ingredient that is required to make white chocolate, as the term is commonly understood and defined by the United States Food and Drug Administration ("FDA"). (Id. ¶ 20-22.)  Indeed, the FDA has issued regulations defining "white chocolate," and those regulations have been adopted by the State of California as part of the Sherman Food, Drug, and Cosmetic Law, California Health and Safety Code ("Cal. Health & Saf. Code"), § 109875, *et seq*. Both rules require that "white chocolate" contain a minimum of 20 percent cocoa butter.  (Id. ¶ 22.)  The packaging of all of the Fake White Chocolate Products is inconsistent with these regulations.  (Id. ¶ 24.)  None of the Fake White Chocolate Products contain any white chocolate, cocoa butter, cocoa fat, or other cocoa derivative.  (Id. ¶¶ 24-36.) Defendant did not adequately disclose this fact.  (Id. ¶ 36.) To the contrary, all Fake White Chocolate Products prominently stated "chocolate" and/or "white chocolate," which was designed to mislead reasonable consumers.  (Id. ¶¶ 16-20, 24-42, 55, 66, 72.)

Furthermore, the language on the packaging for the Fake White Chocolate Chips references a "deep chocolate flavor" and states that the product "delivers the ultimate chocolate indulgence."  (Id. ¶ 24.)  The product also states that it contains the "finest grind," implying that cocoa beans are indeed ground up in the product.  The Fake White Chocolate Wafers use the same language that appears on Ghirardelli's Double Chocolate Flavored Confectionary Coating Wafers – a product that also contains real chocolate.  (Id. ¶ 27.)  The Fake Ground White Chocolate places the word "flavor" in smaller font than the font used to advertise the "Sweet Ground White Chocolate."   The packaging tells consumers that it is "For White Chocolate Hot Cocoas and White Mochas."  And the Fake White Mocha repeatedly uses the term "mocha,"

which consumers understand to mean coffee and chocolate.  (Id. ¶ 31.)  Finally, the Fake White Chocolate Frappe represents that it is for "white chocolate lovers."

Ghirardelli's use of the term "classic" in the "Classic White" adds to the deception, as it suggests that the product is unchanged from the original.  (Id. ¶ 34)  The "original" white chocolate product is the "Ghirardelli Chocolate Premium Baking Bar – White Chocolate" which does contain white chocolate.   (Id.)   Interestingly, the baking bar uses the *identical* language about "finest grind," but it fact contains actual white chocolate.  (Id. ¶ 24)  The products are sold near each other and are packaged in such a way to suggest that the "Classic White" baking chips are chips version of the bar, just as there are "Chips" versions of the Milk Chocolate Premium Baking Bar and the 60% Cacao Bittersweet Chocolate Baking Bar.  (Id.)  Further, Ghirardelli sells another product, called "Ghirardelli Chocolate Classic White Flavored Sauce," which *does* contain real cocoa butter.  (Id.)  Similarly, Ghirardelli sells its "Ghiradelli Chocolate Sublime White Cookies Jubilee Bar" and "Ghirardelli Chocolate Sublime White Vanilla Dream Bar," neither of which (like the chips) explicitly say "White Chocolate" in the name, but both of which *do* contain white chocolate.  (Id.)

Ghirardelli makes matters even worse by pricing its Fake White Chocolate Products the same as their similar, real chocolate products.  (Id. ¶ 35)  For example, the Fake White Chocolate Chips are sold at the same price as their real chocolate chips.  (Id.)  And, the other Fake White Chocolate Products are all sold at the same price as their real chocolate counterparts.  (Id.)

Even Defendant's own employees were confused.  For example, the persons who created the Ghirardelli website described the Fake White Chocolate Chips as "Classic White Chocolate Baking Chips."  They billed the Fake Ground White Chocolate as "Sweet White Chocolate" (omitting the word "Flavor").  They included in the "White Chocolate" category on the Website a mix of Fake White Chocolate Products and the products containing actual white chocolate.  (Id. ¶ 40.)  Moreover, Defendant trained its employees to tell consumers that all the Ghirardelli products are real chocolate products, and if a customer asks to purchase products for someone with a chocolate allergy, they are told no such product exists.  (Id. ¶ 39.)  Ghirardelli has also purchased key words from search engines so customers looking for white chocolate are prompted

to the Website, where they are presented with Fake White Chocolate Products.  (Id. ¶ 41.)
Finally, Ghirardelli instructs retailers to advertise the products as "White Chocolate."  (Id. ¶ 42.)

Ghirardelli's disclosures stand in stark contrast to those of their competitors.  Hershey Company's "Premier White Chips" disclose that they are "Artificially Flavored Creamy Vanilla" immediately beneath the name of the product, and the package does not use the word "chocolate." (Id. ¶ 44.)  Nestle S.A. sells "Toll House Premier White Morsels" that disclose that the chips are "creamy vanilla-flavored baking pieces."  (Id. ¶ 45.)  Both companies' white chips retail for a lower price than Ghirardelli's Fake White Chocolate Chips. (Id. ¶ 44-45.)  Similarly, Safeway sells a ground white chocolate beverage similar to Ghirardelli's Fake Ground White Chocolate, labeled "European Café Style – White Chocolate Hot Cocoa – Naturally & Artificially Flavored." The product states that it has "Rich White Chocolate Flavor." But, unlike Ghirardelli's Fake Ground White Chocolate, Safeway's product actually does contain white chocolate, and retails for less money.  (Id. ¶ 46.)  Ghirardelli is able to charge a premium price for its Fake White Chocolate Products because consumers believe that the products contain premium Ghirardelli chocolate.  (Id.)

Plaintiff fell victim to Ghirardelli's deceptive marketing.  On June 24, 2012, Plaintiff purchased one of Ghirardelli's Fake White Chocolate Products, first reviewing the packaging to satisfy himself that the baking chips were in fact white chocolate.  (Id. ¶ 48)  The package Plaintiff saw made numerous references to "chocolate," noting that it was "Premium Baking Chocolate," and describing the product as having "Finest grind" and "melt-in-your-mouth" qualities.  (Id. ¶ 49.)  Plaintiff further relied on the fact that the product did not state that it was "not white chocolate" "artificially flavored" or "contained no cocoa butter."  (Id.)  Satisfied that he was indeed purchasing white chocolate, Plaintiff purchased the Fake White Chocolate Chips from a Publix supermarket in Auburndale, Florida for $3.29.  (Id.)

The next day, Plaintiff tasted the Fake White Chocolate Chips and noticed that they did not taste like white chocolate.  (Id. ¶ 49.)  He then looked closely at the ingredients list and noticed that they did not contain any white chocolate, cocoa, or cocoa butter.  (Id.)  Plaintiff would not have purchased the Fake White Chocolate Chips or paid a premium for them if he had

1   known that they were not real white chocolate.  (Id.)

2          Plaintiff brought this suit to put a stop to Ghirardelli's deceptive practices.   On or about

3   August 17, 2012, Plaintiff filed suit in San Francisco Superior Court.  He alleges four causes of

4   action—all under California law— including violations of the Consumer Legal Remedies Act,

5   false advertising, unfair trade practices, and fraud, deceit and/or misrepresentation.

6   **III.    ARGUMENT**

7          **A.    Legal Standard For Motion To Dismiss**

8          Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint

9   only if it fails to state a claim upon which relief can be granted.   A motion to dismiss should only

10  be granted if it appears beyond doubt that the plaintiff "can prove no set of facts in support of his

11  claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The

12  question is not whether a plaintiff will prevail in the action, but whether he is entitled to offer

13  evidence in support of its claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on

14  other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984).

15         District courts are obligated to accept a plaintiff's allegations as true and construe them in

16  the light most favorable to plaintiff.  *Id.*  To survive a Rule 12(b)(6) motion, a complaint need not

17  contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief

18  that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 1974 (2007);

19  *see also Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994) (courts must

20  assume that all general allegations "embrace whatever specific facts might be necessary to

21  support them"); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (at

22  pleading stage, plaintiffs "need only show that the facts alleged, if proved, would confer standing

23  upon him") (citations omitted).

24         **B.    Plaintiff Has Standing to Pursue This Litigation On Behalf of All Absent Class
25             Members.**

26          Ghirardelli first presents two overlapping "standing" arguments—one under Article III

27  and another under the California UCL—both of which miss the mark.  Ghirardelli is confusing

28  and conflating standing with class certification.

The Article III "standing" doctrine requires only that the named plaintiff show that he has presented claims of injury to himself by *each and every defendant*. *See, e.g., Gratz v. Bollinger*, 539 U.S. 244, 285 n.5 (2003); *Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS 11972 at *19-20 (S.D.N.Y. July 16, 2003).   California's unfair competition ("UCL"), false advertising ("FAL") and Consumer Legal Remedies Act ("CLRA") laws additionally require that a plaintiff has suffered an "injury-in-fact" and "has lost money or property" as a result of the defendant's alleged conduct.  *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a).   In other words, under the UCL, FAL and CLRA, "standing" requires both an economic injury and actual reliance on the allegedly deceptive or misleading statements.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011); *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009) (holding that the CLRA imposes a requirement that a violation "caus[e] or result[] in some sort of damage.")

Defendant does not dispute that Plaintiff adequately pleads both economic injury and actual reliance—i.e., that he purchased Defendant's Fake White Chocolate Chips in reliance on its false and deceptive statements and omissions.  Rather, Defendant argues only that Plaintiff cannot assert claims as to the entire *category* of its Fake White Chocolate Products; instead, he may only assert his claims with respect to the one product within that category that he purchased—i.e., the Fake White Chocolate Chips.   Defendant is incorrect.  It is well established that this issue is best determined, on a more developed record, in the context of class certification.

Once a plaintiff establishes standing to assert his or her individual claim against each defendant, his ability to represent the class for all potential class members depends solely on whether the requirements of Rule 23 are met.  As stated by the Supreme Court:

> A named plaintiff in a class action must show that the threat of injury in a case such as this is "real and immediate", not "conjectural" or "hypothetical"....This conclusion does not automatically establish that appellant is entitled to litigate the interests of the class she seeks to represent, *but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to fairly and adequately protect the interest of the class [under] Rule 23.*

*Sosna v. Iowa*, 419 U.S. 393, 402-03 (1975) (emphasis added) (internal citations omitted); *see*

1   *also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (court held that to assert a claim

2   on behalf of a class, "a class representative must be part of the class and possess the same interest

3   and suffer the same injury as the class members."). The California Supreme Court has similarly

4   explained that "representative parties who have a direct and substantial interest have standing; the

5   question whether they may be allowed to present claims on behalf of others who have similar, but

6   not identical, interests depends not on standing, but on an assessment of typicality and adequacy

7   of representation." *In re Tobacco II Cases*, 46 Cal. 4th at 319 (internal citations omitted).

8         This holding is underscored in a long line of cases. In each, the court held that

9   Defendant's argument best resolved at class certification, and not on standing in the context of a

10  motion to dismiss or strike. *See, e.g., Anderson v. Jamba Juice Co.*, 2012 U.S. Dist. LEXIS

11  120723, *14 (N.D. Cal. Aug. 25, 2012) (holding that plaintiff has standing under Article III, the

12  UCL, FAL and CLRA, because "[i]f there is a sufficient similarity between the products, any

13  concerns regarding material differences in the products can be addressed at the class certification

14  stage."); *Forcellati v. Hyland's, Inc.*, 2012 U.S. Dist. LEXIS 91393 (C.D. Cal. June 1, 2012)

15  (allowing plaintiff to assert claims as to entire category of defendants' "Cold and Flu Remedies";

16  court "agreed" with the "numerous recent decisions that have concluded that Defendants'

17  argument is better taken under the lens of typicality or adequacy of representation, rather than

18  standing"); *Cardenas v. NBTY, Inc.*, 2012 U.S. Dist. LEXIS 63376, at *7 (E.D. Cal. May 4, 2012)

19  ("The court will analyze solely under Rule 23 whether Plaintiff may be allowed to present claims

20  on behalf of purchasers of the remaining Osteo Bi-Flex products."); *Donohue v. Apple*, 2012 U.S.

21  Dist. LEXIS 65860 at *6 (N.D. Cal. May 10, 2012) (denying motion to dismiss where plaintiff

22  sought to represent a class of persons who purchased different but similar products; reasoning that

23  "questions of whether common issues predominate and whether plaintiff can adequately represent

24  absent class members, [are] issues that are better resolved at the class certification stage."); *Koh v.

25  S.C. Johnson & Son, Inc.,* 2010 U.S. Dist. LEXIS 654, *7-8 (N.D. Cal. Jan. 5, 2010) (deferring

26  decision on standing to assert claims about unpurchased products until class certification); *Wang

27  v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 632-33 (N.D. Cal. 2011) (denying motion to strike

28  claims with respect to computer models plaintiffs did not purchase, and holding that the inclusion

of such products at the pleading stage, and prior to a motion for class certification, is proper); *Carideo v. Dell, Inc*., 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010) (allowing named plaintiffs to sue for misrepresentations regarding computer models they did not purchase, because all claims involved the "same core factual allegations and causes of actions"); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. Nov. 14, 2011) (named plaintiff had standing to sue on behalf of purchasers of related products; finding that "treatises and the vast majority of persuasive authority" indicate that this issue should be analyzed under Rule 23 rather than as standing question); *see also Chavez v. Blue Sky Natural Bev. Co*, 268 F.R.D. 365 (N.D. Cal. 2010) (granting class certification, and rejecting defendants' arguments, that "plaintiff's claims are not typical of the purported class pointing out that plaintiff did not buy each [of the dozens of] product[s] in the Blue Sky beverage line" because all that was required was that products "bore substantially the same misrepresentation."); *Hewlett-Packard v. Super. Ct*., 167 Cal. App. 4th 87, 89-91 (2008) (denying writ to vacate order certifying class of computer purchasers for lack of community of interest, where class included models of computers plaintiff had not purchased).

Defendant does counter with a few cases where the same issue was determined on a motion to dismiss. But while there is undoubtedly conflicting authority, Defendant relies on the minority position, and, in any event, each case it cites is distinguishable. As explained by Judge Chen earlier this year, "[t]he critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 U.S. Dist. LEXIS 101371, at *37-38 (N.D. Cal. Jul. 20, 2012). In this instance, Plaintiff easily meets the "sufficient similarity" test. For example, he alleges that **all** of the Fake White Chocolate Products affirmatively state that they are "chocolate" and/or "white chocolate," but that none actually contain chocolate, cocoa or cocoa butter. (Dkt.# 1, ¶¶ 16-20, 24-42, 55, 66, 72.) Plaintiff further alleges that, unlike Defendant's competitors, **none** of the Fake White Chocolate Products affirmatively state that they do *not* contain chocolate, cocoa or cocoa butter. (Id., ¶¶ 44-46) Plaintiff further alleges that Ghirardelli advertised and marketed **all** of the Fake White Chocolate Products as "white chocolate," including on the marketing materials that it provided to its retailers, on its Website and in the keywords it purchased online. (Id., ¶¶ 37-42.) Finally,

1   Defendant trained **all** of its employees to inform all consumers that it only sells chocolate

2   products.  (Dkt.# ¶ 17.)   In other words, all of Defendant's advertising and marketing efforts

3   were uniformly aimed at convincing consumers that all of its products were chocolate or white

4   chocolate, when all of the Fake White Chocolate Products contained any white chocolate.

5          Ghirardelli attempts to upgrade the standard required to survive motion to dismiss from

6   "sufficiently similar" labels to "identical" labels.  Ghirardelli cites *Koh, supra,* to support this

7   argument, but a close reading of *Koh* undercuts its contention.   In *Koh*, plaintiff alleged that

8   defendant placed a deceptive "Greenlist" label to create the false impression that several different

9   product lines were environmentally friendly.  *Id.* *2-3. Concluding that "there is no brightline rule

10  that different product lines cannot be covered by a single class," the court permitted plaintiff's

11  complaint to proceed as to all of defendants' products, including those not purchased by plaintiff.

12  *Id.*   Plaintiff's allegations here are similar.

13         Defendant nevertheless argues that all of the products at issue are different from one

14  another with respect to the critical issue—i.e., whether they would mislead reasonable consumers

15  into falsely believing that they contain white chocolate.  Defendant then argues that "none of the

16  products affirmatively represent they contain white chocolate."[1]  Unless Defendant is arguing that

17  no product affirmatively states "CONTAINS WHITE CHOCOLATE," this is totally untrue.  To

18  the contrary, Plaintiff alleges that **all** of the products at issue in this case prominently state that the

19  products are "chocolate" or "white chocolate."  (Dkt.# 1 ¶¶ 16-20, 24-42, 55, 66, 72.)  Like the

20  Greenlist label, which did not disclose that that it was a meaningless, self-awarded honor, all

21  products at issue here contain the same material omission: none disclose that the products do not

22  contain any chocolate, cocoa or cocoa butter.  The fact that the products are sold for different

23  purposes, contain different ingredients, or come in different packaging is not controlling because

24  _____

25  [1] Ghirardelli also makes a stink about other purported differences between the products by
    introducing various facts that are no where alleged in the Complaint.  For example, it notes that
    three of the products are sold in cardboard canisters, and two are designed for coffee retailers, not

26  consumers.   None of these supposed differences are relevant until certification, and they also
    appear to be untrue.  For example, each product is sold online, by Ghirardelli, to consumers.  In

27  any event, even if there were to be some differences, the differences do not materially alter the
    gravamen of Plaintiff's allegations: all of the Fake White Chocolate Products similarly deceived

28  consumers into believing that they were chocolate or white chocolate, when they were not.

they share common misrepresentations and omissions.  Any concern "about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage," when this Court is better informed.  *Astiana*, 2012 U.S. Dist. LEXIS 101371, at *37.

Ghirardelli further relies on *Larsen v. Trader Joe's Co.,* No. 3:11-cv-5188-SI, Dkt. #41 (N.D. Cal. June 14, 2012), *Dysthe v. Basic Research LLC*, 2011 U.S. Dist. LEXIS 137315 (C.D. Cal. June 13, 2011), *Stephenson v. Neutrogena Corp.*, 2012 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012), and *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011), minority opinions where courts determined, at the pleading stage,[2] class certification issues.  Even if this methodology was preferred, each of these cases is distinguishable.

For example, in *Larsen*, plaintiffs challenged a wide range of Trader Joe's products (cookies, apple juice, cinnamon rolls, biscuits, ricotta cheese, and crescent rolls), which bore "little similarity." *See Larsen v. Trader Joe's Co.,* No. 3:11-cv-5188-SI, Dkt. #41 (N.D. Cal. June 14, 2012).   Here, Plaintiff challenges only fake white chocolate products that are, at a minimum, materially similar, if not, identical.

*Dysthe* concerned a motion for summary judgment.   The problem was that Dysthe's complaint challenged two weight-loss products—Relacore and Relacore Extra—but she had repeatedly alleged in her complaint that she had seen advertising for only the first product, while her deposition revealed that she had purchased only the second product.  The court denied leave to amend because the parties had engaged in extensive litigation and discovery, and defendants would be prejudiced.  The court also noted that two Relacore products were "significantly different."  Here, Plaintiff adequately alleges that he purchased the Fake White Chocolate Chips and, unlike the products in *Dysthe*, the alleged misrepresentations and omissions regarding Defendant's fake white chocolate products are materially similar, if not, identical.

---

[2] *Dysthe* was not decided at the pleading stage, but rather at summary judgment. *See Dysthe v. Basic Research LLC*, 2011 U.S. Dist. LEXIS 137315 (C.D. Cal. June 13, 2011).

Finally, in *Stephenson* and *Carrea*,[3] it is quite difficult to determine, from the opinions, the similarities and/or differences among the challenged product lines, which is precisely why most courts decide that the issue is best left to class certification.  *See, e.g., Chavez*, 268 F.R.D. 365 (N.D. Cal. 2010) (all that is required is that products "bore substantially the same misrepresentation."); *Greenwood v. Compucredit Corp.,* 2010 U.S. Dist. LEXIS 3839, *10 (N.D. Cal. Jan. 19, 2010) (holding that "minor differences in wording" of an advertisement do not defeat certification); *Static Random Access Memory Antitrust Litig*., 264 F.R.D. 603 (N.D. Cal. 2009) (certifying class of all persons who during multi-year period purchased any product containing SRAM made by any of over twenty defendants); *cf. Hodes v. Van's Int'l Foods*, 2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009) (denying **certification** where defendants sold 19 different varieties of frozen waffles, each with different representations).

Defendant concludes with an identical argument, though differently framed under the UCL statute.  Defendant argues because Plaintiff cannot allege that he relied on the labels for the other fake white chocolate products, he cannot satisfy the "substantially narrower" requirement set forth in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).  Judge Whyte recently addressed, and rejected, this same argument in *Donohue v. Apple, Inc*., 2012 U.S. Dist. LEXIS 65860 (N.D. Cal. May 10, 2012), where the plaintiff made claims about a phone he had purchased and other similar phones.  Judge Whyte explained:

> While *Kwikset* clarified the economic injury requirement for standing under the UCL, it did not purport to address whether a plaintiff who has suffered such an injury could represent a class of individuals who purchased distinct but similar products. Indeed, shortly before issuing its decision in *Kwikset*, the California Supreme Court explained that "representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *In re Tobacco II Cases*, 46 Cal. 4th at 319 (internal citations omitted); *see also Bruno*, 280 F.R.D. 524, 2011 U.S. Dist. LEXIS 132323, at *10. The *Kwikset* court relied heavily on the reasoning of its *In re Tobacco II* decision, and made no reference to overruling or modifying its earlier holding.

---

[3] The standing issue was irrelevant in *Carrea* as the court dismissed all of the claims with prejudice.  The Ninth Circuit later affirmed without addressing the standing issue.  *See Carrea v. Dreyer's Grand Ice Cream*, 2012 U.S. App. LEXIS 6851 (9th Cir. Cal., Apr. 5, 2012).

*Donahue*, at \*18-19 (rejecting *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 U.S. Dist. LEXIS 42333 (E.D. Cal. Apr. 18, 2011)); *see also In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-92 (9th Cir. 2006) (rejecting argument that fraudulent system must "consist of a specifically-worded false statement repeated to each and every borrower of the plaintiff class," noting "[t]he class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims"); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 2012 U.S. Dist. LEXIS 88413 (N.D. Cal. June 26, 2012) (denying motion to strike, stating "Whether the multiple representations allegedly made by defendants in this case are sufficiently similar is a factual question the court cannot resolve at this stage.").[4]

## C. Plaintiff Adequately Pleads False Advertising, Fraud, CLRA, and UCL Claims.

Ghirardelli next argues that no consumer could reasonably have believed that any of the Fake White Chocolate Products contained white chocolate. Instead, Ghirardelli argues that all of the alleged misrepresentations were non-actionable "puffery" or "romance" language. It further argues that the alleged omissions are not actionable because it adequately disclosed, on the back of all of the packages, the true ingredients, which did not include cocoa or cocoa butter. Both arguments are invariably rejected in this context.

### 1. Ghirardelli's Misrepresentations and Omissions Are Actionable.

To prevail on a false advertising claim, a plaintiff need only show that members of the public are likely to be deceived. *See Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995); *see also Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992). An allegation of "false or misleading advertising and unfair business practices claim must be evaluated from the vantage of

---

[4] Defendant later makes the argument that its statements on it Website, the positioning of the product on the shelves, its communications with retailers, and the conversation with the store clerk cannot support his claim. Under *Tobacco II*, this is false no matter, under what lens, Defendant argues the issue. The cases cited by Defendant is support of this argument are inapposite, especially because they are class certification cases. *See, e.g., Pfizer v. Super. Ct.*, 182 Cal. App. 4th 622 (2010); *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905 (2010); *Krueger v. Wyeth, Inc.*, 2008 U.S. Dist. LEXIS 12236 (S.D. Cal. Feb. 19, 2008). The one case decided on demurrer, *Durell v. Sharp Healthcare* (2010) 183 Cal. App. 4th 1350, because, unlike here, plaintiff did not allege he even saw ***any*** of the alleged misrepresentations.

a reasonable consumer." *Williams*, 523 F.3d at 938 *citing Lavie v. Procter & Gamble Co*., 105 Cal.App.4th 496, 506-07 (2003) ("[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer."). The Ninth Circuit and California Supreme Court have recognized "that these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, 523 F.3d 938 *citing Kasky*, 27 Cal.4th at 951(citations omitted.)

Against this backdrop, Defendant performs back flips to explain why each of the alleged misrepresentations—when "read in context"—could not have reasonably deceived.  On that basis, Defendant invites this Court to rule as a matter of law that Plaintiff is an unreasonable consumer. Such a ruling, however, is foreclosed by *Williams*, 523 F.3d at 939-40 (9th Cir. 2008).  *See also Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.") *quoting McKell v. Washington Mutual, Inc*., 142 Cal.App.4th 1457, 1472 (2006); *Committee on Children's Television Committee on Children's Television, Inc., et al., v. General Foods Corporation, et al*, 35 Cal.3d 197 (1974) (finding demurrer inappropriate in case where parents alleged deceptive advertising of sugar cereals).

Defendant first contends that all of the challenged misrepresentations are non-actionable puffery.  "Generalized, vague, and unspecified assertions constitute mere 'puffery' upon which a reasonable consumer could not rely, and hence are not actionable" under the UCL, FAL, or CLRA.  *Annunziato v. eMachines*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005); *see also Williams*, 523 F.3d at 939 n.3; *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv*., 911 F.2d 242, 245 (9th Cir. 1990).  Puffery involves "outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers." *Cook*, 911 F.2d at 246 (quotations omitted).  "While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, 'misdescriptions of specific or absolute characteristics of a product are actionable.'" *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1145 (9th

Cir. 1997) (citations omitted.)  In rejecting Defendant's argument, the Court need not look further than Plaintiff's specific allegations that Defendant falsely labeled all of the Fake White Chocolate Products as "chocolate" and/or "white chocolate."  (Dkt.# ¶¶ 16-20, 24-42, 55, 66, 72.)  Whether or not a product is "chocolate" or "white chocolate" is easily proved (or disproved) by reference to common understanding, a dictionary definition or governing regulations.[5]  (Id. ¶¶ 21-23.)

Ghirardelli responds that reasonable consumers could not rely on the words "chocolate" or "white chocolate" because they reasonably should have known that everything that comes from "America's premium chocolate company" is not necessarily chocolate.  The rationale behind this preposterous assertion is that even Willy Wonka's Chocolate Factory made roast beef- and blueberry-flavored chewing gum and everlasting gobstoppers.  But unlike Willy Wonka, Ghirardelli does business in the real world, and it does not sell chewing gum, gobstoppers, other candy, or, for that matter, any other product that is not marketed as chocolate.  Indeed, when asked, Ghirardelli's own employee said that it sold nothing but "chocolate."[6]  (Dkt.# 1, ¶ 39.)

---

[5] The FDA regulations provide that "White chocolate is the solid or semiplastic food prepared by mixing and grinding cocoa butter with one or more of the optional dairy ingredients listed in [21 C.F.R. § 163.124(b)(2)] and one or more optional nutritive carbohydrate sweeteners. **It contains a minimum of 20 percent cocoa butter**, a minimum of 14 percent of total milk solids, a minimum of 3.5 percent milkfat, and a maximum of 55 percent nutritive carbohydrate sweeteners."  21 C.F.R. §163.124.  (Dkt.# 1, ¶ 22.)

[6] Defendant further claims that reasonable consumers would have known that (some of its) "chocolate" statements were made as part of its registered trade mark, which it argues is "Ghirardelli Chocolate."  This is untrue.  As evidenced by the "®" on "Ghirardelli®," the trade mark is "Ghirardelli," not "Ghirardelli Chocolate®."  Even if its trade mark was "Ghirardelli Chocolate®," this argument is still premature.  Ghirardelli nevertheless cites cases that it claims stand for the general proposition that a trade mark (or product name) cannot form the basis of a false advertising claim.  However, as mandated by *Williams*, all of these cases examine the larger context of the alleged misrepresentations and omissions before concluding that a trade mark or product name alone is insufficient.  *See, e.g., Rooney v. Cumberland*, 2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012) (reasonable consumer would not conclude that SUGAR IN THE RAW® contains unrefined sugar because "raw" is the trade mark; moreover, the product is repeatedly referred to as turbinado sugar); *McKinnis v. Kellogg USA*, 2007 LEXIS 96106, *12 (C.D. Cal. Sept. 19, 2007) (reasonable consumer would not conclude FROOT LOOPS® contained real fruit, as the word was spelled differently, the product was billed as a cereal, and no photographs of fruit appeared on the box); *Videtto v. Kellogg USA*, 2009 U.S. Dist. LEXIS 43114 (E.D. Cal., May 21, 2009) (dismissing without leave to amend UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that FROOT LOOPS® cereal contained "real, nutritious fruit"); *Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) (holding that, as a matter of law, no reasonable consumer would be led to believe that CAP'N CRUNCH'S CRUNCH BERRIES® cereal contained real fruit berries despite the use of the word berries in the product); *Sugawara v. Pepsico, Inc.*, 2009 U.S. Dist. LEXIS 43127, 2009 WL 1439115 (E.D. Cal. May 21, 2009) (same).

1   Ghirardelli next focuses on the "romance" language that it included on all of the bags and

2   labels of the Fake White Chocolate Products.  It then fly-specks its "romantic" words and phrases,

3   and argues why it would necessarily be unreasonable for someone to rely on those

4   misrepresentations.  Sometimes, however, people do fall for pick up lines, even cheesy ones.  Had

5   Defendant not intended for consumers to rely on its deceptive marketing materials and

6   statements, including its promises of "the ultimate chocolate indulgence," "Premium Baking

7   Chocolate," deep chocolate flavor or texture, "mocha," "hot cocoa," the "finest grind for

8   smoothest texture,"[7] it should not have used the terms and phrases.  In any event, as discussed, the

9   representations are also easily proved—as the products are not chocolate, they cannot be mocha,

10  cocoa, chocolate or ground.  Nor can they impart chocolate flavors or textures.  Moreover, though

11  arguably closer calls, the other disputed representations—e.g., "melt-in-your-mouth,"[8]

12  "luxuriously smooth and creamy," "classic,"[9] and "easier melting"—are still actionable because

13  _____

14  [7] Ghirardelli preposterously contends that this refers to the grinding of sugar, not of cocoa.
    Plaintiff looks forward to testing this contention, especially because sugar is most commonly

15  "granulated" or, even, powdered, not "ground."

16  [8] Consumers obviously correlate "melt in your mouth" with chocolate, not candy.  Ghirardelli
    nevertheless contends that the "melts in your mouth, not in your hand" M&Ms campaign refers to

17  the melting characteristics of the candy shell.  Even if it was relevant, Ghirardelli misses the
    point.  The slogan isn't selling the melting characteristics of the candy coating, but rather, it

18  suggests that the candy shell is what prevents the **chocolate** from melting in one's hand, as
    opposed to one' mouth.  Defendant also argues that other things—such as vanilla ice cream—

19  melt.  Ice cream certainly melts in one's mouth, but this is simply distraction.  *See Peloza*, 37
    F.3d at 521 (9th Cir. 1994) (on a motion to dismiss, courts assume that all general allegations

20  "embrace whatever specific facts might be necessary to support them").

21  [9] Defendant again cites *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 U.S. Dist. LEXIS 6371
    (N.D. Cal. Jan. 10, 2011) to support it position regarding the term "classic."  Unlike here, plaintiff

22  in *Carrea* argued that the statements "original" and "classic" deceived consumers into believing
    that ice cream was "wholesome" or "healthy."   Plaintiff's allegations are totally different.   He

23  alleges that "Classic White" deceptively mislead consumers into believing that it is classic white
    chocolate.  Moreover, because "classic" suggests that the product is unchanged from the original

24  (e.g., Coke Classic), the  "original" or "classic" white chocolate product is the "Ghirardelli®
    Chocolate Premium Baking Bar – White Chocolate" which does contain white chocolate.

25  Furthermore, Defendants use the same term—"Classic White"—in the name of their
    "Ghirardelli® Chocolate Classic White Flavored Sauce" which as noted above, does contain

26  cocoa butter. And Defendants also sell other candy bars apparently containing real white
    chocolate: the "Ghirardelli® Chocolate Sublime White Cookies Jubilee Bar" and "Ghirardelli®

27  Chocolate Sublime White Vanilla Dream Bar." Nothing would lead a reasonable consumer to
    think that a "Sublime White" product is real white chocolate, while some (but not all) "Classic

28  White" products are not real white chocolate.  (Dkt.# ¶ 34.)

they are made in the context of other representations about chocolate.  *Williams* is instructive.

In *Williams,* defendants made the argument that the term "nutritious" was non-actionable puffery.  *See Williams*, 523 F.3d at 939.   The Ninth Circuit, however, declined to review that word standing alone.  Rather, it stated that "[t]his statement certainly contributes, however, to the deceptive context of the packaging as a whole. Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery."  *Id*.  It then admonished all defendants "[i]t is not difficult to choose statements, designs, and devices which will not deceive."  *Id*.

Ghirardelli finally contends that that Plaintiff should have been "tipped off" by the fact the product was called "Classic White Baking Chips."   It conveniently overlooks the other misleading statements on the package, as well as the fact that *its own employees and website* refer to the product as "white chocolate chips."  (Dkt. 1, ¶¶ 16-20, 24-42, 55, 66, 72.)  Ghirardelli similarly argues that consumers must read the ingredients list, which it claims excuses all of its misrepresentations and omissions.  In other words, Defendant claims it provided adequately disclosures to account for all of the alleged misrepresentations and omissions.  *Williams* again controls.

In *Williams*, the plaintiff alleged that the defendant violated California's false advertising law by (1) calling its product "fruit juice snacks," (2) saying that the product was made with "fruit juice and other all natural ingredients" and (3) placing pictures of fruit on the front, when the product did not contain the pictured fruits but only white grape juice, sugar and corn syrup.  *Id*. at 936.  Like here, the defendants there argued that no reasonable person could be deceived, because the side of the package fully disclosed the true ingredients and their relative proportions.  *Id*. at 939-40.  The Ninth Circuit reversed the district court's order of dismissal and admonished the district court for basing "its decision to grant the motion to dismiss solely on its own review of an example of the packaging."  *Id*. at 938.  It held that only in a "rare" case can a court determine that a business practice is nondeceptive as a matter of law.  *Id*. at 939.  It then stated:

> We do not…think that a busy parent walking through the aisles of a grocery store should be expected to verify that the representations on the front of the box are confirmed in the ingredient list. Instead, reasonable consumers expect that the ingredient list contains more

detailed information about the product that confirms other representations on the packaging. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.

*Id.*, at 940.[10]

Defendant fails to make a single argument or cite a single case that successfully distinguishes *Williams*.  Instead, it rehashes the same series of cases that are always mentioned, but easily distinguished.  For example, Defendant cites *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) and *Hill v. Roll Int'l Corr.*, 195 Cal.App. 4th 1295 (2011) as cases where false advertising claims were dismissed at the pleading stage.  But *Freeman* and *Hill* are inapposite.

In *Freeman*, plaintiffs claimed that a "Million Dollar Dream Sweepstakes" mailer was deceptive because it misled consumers into believing that they had won the sweepstakes.  *Id.* at 289.  The Ninth Circuit affirmed dismissal, because every time the mailer said that the recipient would be paid money, it included a statement in the same sentence such as "if you return the grand prize winning entry" or "if one of your numbers is the grand prize winners."  *Id.* at 287, 290.  It is not the case here that every time Defendant stated "chocolate" or "white chocolate," it included a disclaimer saying that the product did not contain any chocolate, white chocolate, cocoa or cocoa butter.

Similarly, in *Hill*, plaintiff alleged that a green drop on Fiji water was deceptive because it implied, in the circumstances, that an independent third party organization has endorsed Fiji water as environmentally superior, when in fact, the green drop was purely defendants' marketing creation.   The court dismissed the complaint, because the practice was specifically permitted by the FTC, and the green drop did nothing to connote that it was endorsed for environmental superiority by a third party organization.  Here, there is no such FTC "safe harbor," and unlike the

---

[10] In any event, an evaluation of the exculpatory effects of any disclosure is not to be performed on a motion to dismiss or even at class certification.  Rather, the effect of a disclaimer is a common issue that may only be decided at trial or summary judgment.  *See, e.g., Cooper v. Pac. Life Ins.* Co., 229 F.R.D. 245, 261 (S.D. Ga. 2005) (class certified based on defendant's "common course of conduct"; evaluation of the adequacy of the disclosure in the uniform sales materials was a common issue); *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 243 (D. Ariz. 2001) (certifying class and finding that evaluation of disclosure form was common issue).  Thus, whether the ingredients list provides effective notice that the product does not contain "white chocolate" is an issue for trial.

green drop, Defendant specifically refers to its fake white chocolate products as chocolate and white chocolate.[11]

## 2.    Plaintiff's Fraud Claim Is Properly Pled.

Defendant reserves a singular attack for Plaintiff's fraud claim.  It claims that Plaintiff improperly pleads fraud because fraud "requires a false representation," and "Plaintiff has none." This argument is mistakenly premised.

In California, a plaintiff may allege fraud either by misrepresentation or omission.   He must allege "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) *quoting Robinson Helicopter Co. v. Dana Co., Inc.*, 34 Cal. 4th 979, 990 (2004). Plaintiff adequately alleges both misrepresentations and omissions.

He alleges that Defendant knowingly misrepresented the Fake White Chocolate Products as "chocolate" and/or "white chocolate," when they are not.  (Dkt.# 1 ¶¶ 16-20, 24-42, 55, 66, 72, 82.)  He further alleges that Ghirardelli failed to adequately disclose that the product contains no real white chocolate.  (Id. ¶¶ 1, 36, 50.)  These allegations are more than sufficient. *See, e.g., Jordan v. Paul Fin., LLC,* 2012 U.S. Dist. LEXIS 119899 (N.D. Cal. Aug. 23, 2012) ("Reliance on a fraudulent omission can be shown where a plaintiff proves that 'had the omitted information

---

[11] Defendant also cites *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351 (2003) and *Hairston v. South Beach Bev. Co.*, 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012) to support its arguments.  Neither helps it, and *Consumer Advocates* supports Plaintiff's position. *Consumer Advocates* concerned not a demurrer or motion to dismiss but rather a motion for summary judgment.  Moreover, the lower court's decision granting summary judgment was *reversed* because there were triable issues concerning defendants' representation.  *Id.* at 1361-62 (finding "that there is a triable issue of fact on the relevant point, whether these representations [i.e., 50 channels and 7 days] are likely to deceive a reasonable consumer.) *Hairston* also does not further Defendant's cause.  In *Hairston*, plaintiff challenged the fruit flavor representations on SoBe Lifewater beverages.  The court, however, found the claims to be preempted.  Plaintiff was thereby left arguing that the "all natural" labeling on defendants' products was potentially deceptive because the product contains "deceptively labeled ingredients" that are "synthetic or created via chemical processing."   The court disagreed because, it found, that no reasonable consumer would read the "all natural" language as modifying the "with vitamins" language and believe that the added vitamins are suppose to be "all natural vitamins."   This case is demonstrably different, at a minimum, because Plaintiff's "white chocolate" allegations are not preempted and, in that context, the rest of the misrepresentations and omissions are also deceptive.

been disclosed, [he] would have been aware of it and behaved differently'), *citing Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)*; see also Williams,* 523 F.3d 934, 938 (reversing dismissal of fraud claims where plaintiff stated claim for inadequate disclosures).

**D.    Federal Law Does Not Preempt Plaintiff's Claims As To Defendant's "White Chocolate Flavored" Products.**

Ghirardelli finally asserts that Plaintiff's claims, as to Defendant's two "white chocolate flavored" products—i.e., the "Sweet Ground White Chocolate Flavor" and "White Chocolate Flavored Confectionary Coating Wafers"—are preempted by federal law.  Ghirardelli's preemption theory is two fold.  First, it argues that it complies with the "flavor" regulations set forth in the FDCA.  Then, it argues that because the FDCA defines where and how the "flavor" language may be used, California cannot impose more burdensome labeling requirements.   Both of Ghirardelli's preemptions theories are not supported by law.

**1.    There Exists A Strong Presumption Against Preemption.**

The Supreme Court has held that federal preemption should be narrowly construed.  *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992).  It explained that "we must fairly but -- in light of the strong presumption against pre-emption -- narrowly construe the precise language of [the statute] and we must look to each of petitioner's common law claims to determine whether it is preempted."  *Id.* at 523.

In fields traditionally occupied by the states such as the exercise of a state's police powers, Congress's intent to preempt state law must be "'clear and manifest.'"  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  Accordingly, consumer protection laws such as the unfair competition law ("UCL"), false advertising law ("FAL"), and CLRA, which are within the states' historic police powers, are subject to the strong presumption against preemption.  *See California v. ARC America Corp.*, 490 U.S. 93 (1989); *see also Washington Mutual Bank v. Superior Court*, 95 Cal.App.4th 606, 613 (2002); *Black v. Financial Freedom Senior Funding Corp.*, 92 Cal.App.4th 917, 926 (2001).

The presumption against preemption applies not only to the question of whether Congress intended to preempt state law, but also to the scope of preemption.  *See Medtronic*, 518 U.S. at

485.  The party asserting federal preemption bears the burden to demonstrate it.  *See ARC America Corp*, 490 U.S. at 101; *United States v. Locke,* 529 U.S. 89, 107-08 (2000); *Medtronic*, 518 U.S. at 485 (presumption applies both to the existence of preemption and the scope of preemption); *Ray v. Atlantic Richfield Co*, 435 U.S. 151, 157 (1978); *Allen-Bradley Local v. Board*, 315 U.S. 740, 749 (1942).  Defendant cannot carry that burden under any set of facts.

> **2.      The Food, Drug And Cosmetics Act Does Not Expressly Preempt The Laws At Issue In This Case.**

The FDCA gives the Food and Drug Administration ("FDA") the responsibility to protect the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 393(b)(2)(A), and the FDA has promulgated regulations pursuant to this authority. *See, e.g.*, 21 C.F.R. § 101.1 *et. seq*.  The FDCA contains an express preemption provision, which provides that it preempts any state law that is "not identical to" what the FDA requires.  21 U.S.C. § 343-1(a)(2)-(3).  The phrase "not identical to" means that "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food" that are "not imposed by or contained in the applicable provision [or regulation]" or "[d]iffer from those specifically imposed by or contained in the applicable provision [or regulation]."  21 C.F.R. § 100.1(c)(4).

Here, the express preemption provision of 21 U.S.C. § 343-1(a)(2)-(3) does not apply, because Plaintiff has not sued under any state laws that "directly or indirectly establish … or continue.... any requirement for the labeling of food of the type required by [specified sections of the FDCA] that [are] not identical to the requirement of such sections."  Rather, plaintiff has pled claims only under general state laws pertaining to advertising and sale of all good and services, namely unfair competition (California Business and Professions Code §§ 17200 *et seq.)*; false advertising (California Business and Professions Code §§ 17500 *et seq.)*; violation of the California Consumers Legal Remedies Act (California Civil Code §§ 1750 *et seq.)*; and common law fraud, deceit and/or misrepresentation.  None of these laws are particular to food labeling, and the FDCA was *not* intended to preempt such general state laws regarding labeling and advertising, even if such laws applied to food among other products. *See, e.g., Wright*, 2009 U.S.

Dist. LEXIS 90576 at *6-7 (explaining that Congress "has specifically indicated that it does not intend to occupy the field of food and beverage labeling,") *citing In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1091 ("Congress made clear that the preemptive scope of section 343-1 was to sweep no further than the plain language of the statute itself."); *Pharmaceutical Mfrs. v. Food & Drug Admin*. 484 F. Supp. 1179, 1183 (D.Del. 1980); *Reese*, 43 Cal. App. 4th at 1326; *see also* 21 U.S.C. § 393 (The FDCA is intended to "protect the public health by ensuring that [ ] foods are safe, wholesome, sanitary, and properly labeled.").

It is widely agreed that there is no express preemption in the FDCA of cases involving false advertising.  *See, e.g., Wright v. General Mills, Inc*., 2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sept. 30, 2009) (holding that state law claims for violations of the UCL, CLRA, and FAL "do not stand as an obstacle to accomplishing Congress' objectives of uniformity and consistency in regulating labeling," and do "not require technical expertise within the special competence of the FDA."); *Hitt v. Arizona Bev. Co., LLC*, 2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb. 4, 2009) (no express preemption under the FDCA regarding plaintiff's claim that beverages were deceptively labeled as "All Natural"); *Lockwood v. Conagra Foods, Inc*., 2009 U.S. Dist. LEXIS 10064 (N.D. Cal. Feb. 3, 2009) (no express preemption under the FDCA regarding plaintiff's claim that pasta sauce was deceptively labeled as "All Natural").

### 3. Plaintiff's Complaint Is Not An Attempt To Enforce (Or Otherwise Circumvent) The Food, Drug And Cosmetics Act.

Section 337(a) of the FDCA states that a proceeding to enforce or restrain a violation of the FDCA must be commenced by and in the name of the United States, except that a State may commence a proceeding for the civil enforcement of, or to restrain a violation of, certain provisions after giving notice to the federal government.  *See id*. § 337(a).  Nothing in section 337(a), however, expressly preempts state laws.  Rather, it merely precludes a private right of action to enforce the FDCA itself.  *See Pacific Trading Co. v. Wilson & Co., Inc.*, 547 F.2d 367, 370 (7th Cir. 1976); *see also Buckman Co. v. Plaintiffs' Legal Cmte.*, 531 U.S. 341, 349 n. 4, 352 (2001); *Reese v. Payless Drug Stores Northwest, Inc*., 43 Cal. App. 4th 1317 (1995) (section 337

does not limit or prohibit state legislation; it specifies those who have standing to sue to enforce the FDCA and is not an express preemption provision.)

Plaintiff does not seek to sue directly under the FDCA.  In fact, he specifically disclaims "causes of action under the Food Drug and Cosmetic Act ("FDCA") and regulations promulgated thereunder by the FDA. Plaintiff relies on FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action." (Dkt.# 1, p. 16:4-8.)  For example, as a predicate act for the UCL violation, Plaintiff relies on sections 110100(a), 110380 and 110505 of the Sherman Act (Complt. ¶¶ 22-23), which adopt the FDA regulations, including its regulations on "flavoring," verbatim.

Where the state laws impose requirements *identical* to the FDCA, and the state law provides a private right of action, pursuit of the state private right of action does not violate section 337(a).  *See, e.g., Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.*, 2006 U.S. Dist. LEXIS 13683 *22 (D. Mass. 2006) (Vermont Pure's "spring water" claims are not preempted to the extent that they are based solely on state laws that have adopted the FDA definition of "spring water," where the state laws provide independent rights of action); *Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008) (FDCA does not preempt state claim under Sherman Act regarding the failure to disclose color added to salmon food). [12]

### 4.     Ghirardelli Does Not Comply with the FDCA's Rules.

Ghirardelli argues that because it complies with 21 C.F.R. 101.22, which sets forth instructions for labeling a food as containing "flavor" or "flavors," Plaintiff's claims with respect to the two "White Chocolate Flavored" products are preempted.  But, Ghirardelli selectively picks

---

[12] California has used the permission in the FDCA to enact the Sherman Food Drug and Cosmetic Act, Cal. Health Safety Code § 109875 *et seq.*, which mirrors the FDCA but also, unlike the FDCA, provides a private right of action for injunctive relief and attorneys' fees. *Id.* § 111910. Although plaintiff has not yet alleged a cause of action under the Sherman Act, he could do so. *See, e.g., id.* § 110675 ("food is misbranded if it is in package form, unless it bears a label containing all o fthe following information…the name and place of business of the manufacturer, packer or distributor.), which mirrors the regulation issued under the FDCA, 21 CFR 101.5 (same).  Plaintiff could then pursue the private right of action under the Sherman Act without running afoul of section 337(a) of the FDCA, because he would merely be seeking to enforce the Sherman Act, not the FDCA itself.  *See Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008).

from the regulations.  A complete review of 21 C.F.R. 101.22 reveals that Ghirardelli fails to comply with the following rules:

> A statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.
>
> * * *
>
> If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored', in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., 'artificial vanilla', 'artificially flavored strawberry', or 'grape artificially flavored.'

*Id.* at § 101.22(c), (i)(2).[13]  Nowhere does Ghirardelli even address these requirements.[14]

More fundamentally, the FDA has itself explained that a product cannot be called "white chocolate flavored" unless it has some natural derivative of cocoa butter or cacao fat.  *See* 67 Fed. Reg. 62171, 62174.  It states that the "FDA regulations governing use of the term 'flavored' provide that a product that is expected to contain an ingredient, e.g., 'white chocolate,' must bear the term 'flavored' in the name of the food if the food contains natural flavor derived from that ingredient and either an amount of the ingredient insufficient to independently characterize the food or none of the ingredient. Therefore, unless a food contains the flavoring constituents derived from white chocolate, it cannot be named 'white chocolate-flavored.' Once a standard for white chocolate has been established, the term 'white chocolate-flavored' could be used to describe a food that is commonly expected to contain the characterizing food ingredient, white chocolate, and which contains natural flavor derived from such an ingredient (i.e., cocoa butter or

---

[13] As the products do not contain any real white chocolate, Ghirardelli cannot (and does not) argue that rules about natural flavorings should apply.

[14] Ghirardelli will likely point to its ingredient list as the portion of its labeling that complies with this regulation.  But, a legitimate question of fact exists over whether the ingredients list is "likely to be ready by the ordinary person under customary conditions of purchase and use of the food." *Id.*  Indeed, as Plaintiff points out, the products are sold on the Website, where the product is advertised as real white chocolate, the ingredients list is not provided, and no other disclosures are given.  Thus, it appears a consumer is not informed of the artificial flavoring at the time of purchase, contrary to federal rules.

cacao fat)." *citing* 21 C.F.R. § 101.22(i)(1)(i).  Because Plaintiff alleges that the Fake White Chocolate Products contain no cocoa butter or cocoa fat, or natural flavors derived from those ingredients, they cannot be called "white chocolate flavor."   As such, Plaintiff's allegations are exactly coterminous with federal law.  These regulations are discussed at length in the complaint (*see* paragraphs 22-23) but Ghirardelli does not address them.

The cases cited by Ghirardelli do not support a different result.  For example, *Dvora v. General Mills, Inc.,* 2011 U.S. Dist. LEXIS 55513 (C.D. Cal. May 16, 2011), the product in question contained the phrase "Naturally and Artificially Flavored," and the question was whether that phrase was misleading.[15]  Because FDA regulations explicitly permit manufacturers "to use the name and images of a fruit on a product's packaging to describe the characterizing flavor of the product even where the product does not contain any of that fruit, or contains no fruit at all," the court found that the state law claims were pre-empted.  *See also Ries v. Hornell Brewing Co*., 2011 U.S. Dist. LEXIS 36845 (N.D. Cal. Apr. 4, 2011) (holding that while "all natural" claim was not preempted, federal law preempted the related "fruit name" claim where plaintiffs challenged "all natural" labeling as false because of product's FDA-compliant use of fruit names).

**E.      If Any Allegations Are Insufficient, Leave To Amend Should Be Granted.**

If a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Indeed, leave to amend is only really properly denied "where the amendment would be futile."  *DeSoto v. Yellow Freight Sys*., 957 F.2d 655, 658 (9th Cir. 1992).  Should this Court find any of Plaintiff's allegations insufficient to state a claim for relief, Plaintiff requests leave to amend.

---

[15] Defendant's other cases, *McKinnis v. Sunny Delight Beverages Co.*, 2007 LEXIS 96108 (C.D. Cal. Sept. 4, 2007) and *Lam v. General Mills, Inc*., 2007 LEXIS (N.D. Cal. May 10, 2012), also involve situations where the labels were clearly in compliance with the FDCA's rules relating to natural and artificial fruit flavorings.

IV.     **CONCLUSION**

For the foregoing reasons, this Court should deny Defendant's motion to dismiss.

Dated:  November 2, 2012                    **GUTRIDE SAFIER LLP**

                                            /s/ Seth A. Safier
                                            Adam J. Gutride, Esq.
                                            Seth A. Safier, Esq.
                                            Kristen G. Simplicio, Esq.
                                            835 Douglass Street
                                            San Francisco, California 94114

                                             Attorneys for Plaintiff