1   Thomas B. Mayhew (State Bar No. 183539)
        tmayhew@fbm.com
2   Deborah K. Barron (State Bar No. 257146)
        dbarron@fbm.com
3   Benjamin J. Sitter (State Bar No. 273394)
        bsitter@fbm.com
4   Farella Braun + Martel LLP
    235 Montgomery Street, 17th Floor
5   San Francisco, CA  94104
    Telephone:  (415) 954-4400
6   Facsimile:  (415) 954-4480

7   Attorneys for Defendant

8

                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10

11

12   SCOTT MILLER, an individual, on          Case No. 3:12-cv-04936-LB
     behalf of himself, the general public
     and those similarly situated,            **GHIRARDELLI CHOCOLATE**
13                                             **COMPANY'S REPLY IN SUPPORT**
                                               **OF MOTION TO DISMISS**
14                   Plaintiff,

15          vs.

                                               Judge:       Hon. Laurel Beeler
16   GHIRARDELLI CHOCOLATE                      Date:        December 6, 2012
     COMPANY, and DOES 1                        Time:        11:00 a.m.
     THROUGH 50,                                Courtroom:   15th Floor, Courtroom C
17
                     Defendants.
18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                                              28172\3399564.1

1

# TABLE OF CONTENTS

2

**Page**

3
I.    MILLER LACKS STANDING UNDER ARTICLE III TO SUE
      BASED ON PRODUCTS HE NEVER PURCHASED ................................. 1

4
II.   MILLER'S CLAIMS AS TO EACH OF THE PRODUCTS LACK
      MERIT AS A MATTER OF LAW ............................................................. 6

5

6
      A.   The White Baking Chips ................................................................. 7

      B.   "White Chocolate Flavored Confectionary Wafers" and "Sweet
7          Ground White Chocolate Flavor" ................................................. 10

      C.   White Mocha, White Frappe ........................................................ 14

8
III.  THE FRAUD CLAIM SHOULD BE DISMISSED .................................... 15

9
CONCLUSION ...................................................................................................... 15

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                    - i -                    28172\3399564.1

# TABLE OF AUTHORITIES

**Page**

## FEDERAL COURT CASES

*Allen v. Wright,*
    468 U.S. 737 (1984) ....................................................................................5

*Anderson v. Jamba Juice Co.,*
    2012 U.S. Dist. LEXIS 12072 (N.D. Cal. Aug. 25, 2012)......................5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................15

*Baltazar v. Apple, Inc.,*
    2011 WL 2795013 (N.D. Cal. 2011).........................................................6

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) ....................................................................................1

*Carrea v. Dreyer's Grand Ice Cream,*
    475 Fed. App. 113, 2012 U.S. App. LEXIS 6851 (9th Cir. 2012)..............6, 9, 14

*Carrea v. Dreyer's Grand Ice Cream,*
    2011 U.S. Dist. LEXIS 6371 (N.D.Cal. 2011),.......................................9

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ....................................................................................2

*Donohue v. Apple, Inc.,*
    2012 U.S. Dist. LEXIS 65860 (N.D. Cal. 2010)................................5, 6

*Dvora v. General Mills, Inc.,*
    2011 WL 1897349 (C.D. Cal. 2011) ............................................11, 12, 13

*Gladstone, Realtors v. Village of Bellwood,*
    441 U.S. 91 (1979) ......................................................................................1

*Gratz v. Bollinger,*
    539 U.S. 244 (2003) ....................................................................................1

*Hitt v. Arizona Bev. Co.,*
    2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb 4, 2009) ......................13

*Juidice v. Vail,*
    430 U.S. 327 (1977) ....................................................................................1

*Koh v. S.C. Johnson, Inc.,*
    2010 U.S. Dist. LEXIS 654 (N.D. Cal. 2010)..........................................6

*Lam v. General Mills, Inc.,*
    2012 WL 1656731 (N.D. Cal. 2012) ...............................................11, 12

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

- ii -

28172\3399564.1

*Lockwood v. Conagra Foods, Inc.*,
  2009 U.S. Dist. LEXIS 10064 (N.D. Cal. Feb. 3, 2009) .....................................13

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ........................................................................................................2

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ...............................................................................15

*McKinnis v. Sunny Delight Beverages Co.*,
  2007 WL 4766525 (C.D. Cal. 2007) .....................................................................11

*Moose Lodge No. 107 v. Irvis*,
  407 U.S. 163 (1972) ....................................................................................................2

*Perez v. Nidek Co. Ltd.*,
  657 F.Supp.2d 1156 (S.D. Cal. 2009) ...................................................................12

*Pom Wonderful LLC v. The Coca-Cola Co.*,
  679 F.3d 1170 (9th Cir. 2012) ...............................................................................12

*Red v. The Kroger Co.*,
  2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) .....................................................13

*Rooney v. Cumberland*,
  2012 U.S. Dist. LEXIS 58710 (S.D. Cal. 2012) ...................................................8

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
  902 F.2d 222 (3rd Cir. 1990) .................................................................................12

*Schneider v. California Dept. of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) ...............................................................................14

*Sosna v. Iowa*,
  419 U.S. 393 (1975) ....................................................................................................1

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
  454 U.S. 464 (1982) ....................................................................................................3

*Wright v. General Mills, Inc.*,
  2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sep 30, 2009) ....................................13

## STATE COURT CASES

*Hill v. Roll International Corp.*,
  195 Cal. App. 4th 1295 (2011)....................................................................6, 8, 10

*In re Farm Raised Salmon Cases*,
  42 Cal. 4th 1077 (2008)...........................................................................................13

*North Carolina Dairy Foundation v. Foremost-McKesson*,
  92 Cal. App. 3d 98 (1979)........................................................................................7

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

- iii -

28172\3399564.1

**FEDERAL STATUTES**

21 U.S.C. § 343-1 ................................................................................................. 13

**FEDERAL RULES AND REGULATIONS**

21 C.F.R. § 101.22(c) ....................................................................................... 4, 14

21 C.F.R. § 101.22(i)(1)(i) ............................................................................... *passim*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                  - iv -                                          28172\3399564.1

## I.   MILLER LACKS STANDING UNDER ARTICLE III TO SUE BASED ON PRODUCTS HE NEVER PURCHASED.

Article III standing must be considered at the outset of the case, and at every stage after that. *Juidice v. Vail*, 430 U.S. 327 (1977) (court is obliged to examine standing even if raised by neither party, and even on certiorari). Miller's suggestion that the Court allow him to proceed to litigate about products he never bought, and business practices, labeling, or advertising that never caused him any harm – based solely on the fact that he listed those other products in his definition of the class he wishes to represent – should be rejected.

Miller contends that the only requirement of standing is that the plaintiff have been injured by the defendant. Opp. at 7. This is not the law.[1] In *Blum v. Yaretsky*, 457 U.S. 991 (1982), the Supreme Court confronted this precise issue, plaintiffs representing a class of Medicaid patients sued to challenge procedures governing transfers to other facilities. The plaintiffs had been ordered transferred to a facility that would provide a lower level of care. *Id.* at 995. They complained that the decision violated due process because of lack of notice and an opportunity to contest the transfer. *Id.* at 998. The Court concluded that the plaintiffs had standing to complain about the process governing transfers to lower level of care facilities – because they had been threatened with that action – but that they lacked standing to sue about transfers to higher levels of care:

> Since they have not been threatened with transfers of any other kind, they have no standing to object, and the District Court consequently was without Art. III jurisdiction to enter its judgment.

> It is axiomatic that the judicial power conferred by Article III may not be exercised unless the plaintiff shows "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood*, 441 U. S. 91, 99 (1979). It is not enough that the conduct of which the

---

[1] In support of this proposition, Plaintiff twice cites a footnote from a dissent in *Gratz v. Bollinger*, 539 U.S. 244, 285 n.5 (2003). But even the dissent footnote does not say what Plaintiff claims: it stands instead for the unremarkable proposition that a class representative can sue for injunctive relief "even though the claim of the named plaintiff has become moot." *Id.* citing *Sosna v. Iowa*, 419 U.S. 393, 402 (1975).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                    - 1 -                    28172\3399564.1

1
2
3
4

> plaintiff complains will injure someone.  The complaining party must also show that he is within the class of persons who will be concretely affected.  Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.  *See Moose Lodge No. 107 v. Irvis*, 407 U. S. 163, 166-167 (1972).

5

*Id.* at 999; *see also id.* at 1002 ("We conclude, therefore, that although respondents

6

have standing to challenge facility-initiated discharges and transfers to lower levels

7

of care, the District Court exceeded its authority in adjudicating the procedures

8

governing transfers to higher levels of care.").  Even though plaintiffs (1) had been

9

injured by the defendant (by being threatened with transfer to a lower-level

10

facility), and (2) were members of a class that included patients who could be

11

transferred to a higher level of care, they lacked standing to complain about the

12

practice that did not affect them personally.  Similarly, in *DaimlerChrysler Corp. v.*

13

*Cuno*, 547 U.S. 332 (2006), the Supreme Court rejected that an injured plaintiff

14

could also assert claims where the plaintiff lacked standing, simply by arguing that

15

those claims derived from the same "common nucleus of operative fact":

16
17
18
19
20
21
22
23
24

> What we have never done is apply the rationale of *Gibbs* to permit a federal court to exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry, such as constitutional standing, that "serv[e] to identify those disputes which are appropriately resolved through the judicial process." *Whitmore*, 495 U. S., at 155. We see no reason to read the language of *Gibbs* so broadly, particularly since our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press. *See Allen* [*v. Wright*], 468 U. S. [737], at 752 ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted" (emphasis added)).  We have insisted, for instance, that "a plaintiff must demonstrate standing separately for each form of relief sought." *Laidlaw*, 528 U. S., at 185; *see Los Angeles v. Lyons*, 461 U. S. 95, 109 (1983).  But if standing were commutative, as plaintiffs claim, this insistence would make little sense when all claims for relief derive from a "common nucleus of operative fact," . . . .

25

*Id.* at 351-52; *see Larsen v. Trader Joe's*, Sitter Decl. Exh. A at p. 6 (following

26

*DaimlerChrysler* in dismissing class claims about products plaintiff did not

27

purchased by plaintiff).

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                    - 2 -

28172\3399564.1

1  Miller claims, nevertheless, that the Court should find he has standing to
2  pursue claims about the four products he didn't buy because "Plaintiff challenges
3  only fake white chocolate products that are, at a minimum, materially similar, if
4  not, identical."  Opp. at 11.  There is some similarity between the five products:
5  each is sold by Ghirardelli, each label bears the company name, and each lacks
6  cacao butter.  But for purposes of assessing standing, the labels are not "materially
7  similar" (and the claim the products are "identical" is hyperbole) because the lables
8  are not materially similar with respect to what Miller seeks to have adjudicated.

9  Standing keeps the court from ruling on issues that are purely hypothetical,
10  presented by a party who was never injured.  Unlike Congress, courts only declare
11  the law when they are required to do so in order to adjudicate a person's case
12  because the claimant has suffered cognizable injury.  *Valley Forge Christian*
13  *College v. Americans United for Separation of Church and State, Inc.*, 454 U.S.
14  464, 473-74 (1982) ("Were the federal courts merely publicly funded forums for the
15  ventilation of public grievances or the refinement of jurisprudential understanding,
16  the concept of 'standing' would be quite unnecessary.  But the 'cases and
17  controversies' language of Art. III forecloses the conversion of courts of the United
18  States into the judicial versions of college debating forums. . . . The exercise of
19  judicial power, which can so profoundly affect the lives, liberty, and property of
20  those to whom it extends, is . . . restricted to litigants who can show 'injury in fact'
21  resulting from the action which they seek to have the court adjudicate.").

22  But as the rest of this motion shows, allowing Miller to proceed with a
23  lawsuit about the other products requires the court to adjudicate hypothetical
24  questions in favor (or against) a person who is unaffected.  Specifically:

25  • The labeling of the flavor mix and confectionary coating wafers are alleged to
26  be deceptive because of the use of the term "white chocolate" in the phrase
27  "white chocolate flavored."  As the complaint alleges, and the motion to dismiss
28  briefing confirms, whether the words "white chocolate flavored" are

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)        - 3 -        28172\3399564.1

1   appropriately used on the package of these two products turns on interpretation

2   of an FDA definition:  21 C.F.R. § 101.22(i)(1)(i); Complaint ¶ 23.  But the

3   Court need never reach this issue to adjudicate Miller's claim.  Miller didn't buy

4   that product.  Article III standing keeps courts from deciding what the law is

5   unless necessary to adjudicate a live controversy between the parties.

6   • As discussed further below, Miller now argues 21 C.F.R. § 101.22(c) and (i)(2),

7   governing "artificial flavoring," applies to the flavor mix and confectionary

8   coating wafers labels.  Again, while whether and how the regualtion applies may

9   or may not be an interesting legal discussion, the court has no need to decide the

10  issue for Miller's case because he did not buy those products.

11  • The "white mocha" and "white frappe" hot beverage mixes do not contain the

12  "romance" language that Miller claims he read and was deceived by on the back

13  of the white chips package:  the melt-in-your-mouth bliss, the term "Classic

14  White," the "finest grind," the reference to "chocolate indulgence."  And as both

15  parties agree, the packaging "as a whole" must be evaluated in order to

16  determine the validity of the claim.  *See* Opp. at 15.  Whether a reasonable

17  consumer would be deceived by, and injured by, the white baking chips, will be

18  decided by evaluating the white baking chips bag; whether a reasonable

19  purchaser would be deceived by, and injured by, the frappe or white mocha mix

20  canisters, depends on the label on each of those products.

21  • Similarly, the white mocha and white frappe hot beverage mixes have other

22  language that plaintiff relies on to assert that those products are misleading:  for

23  example, the language about pleasurable moments cherished by white chocolate

24  lovers, or the phrase "white mocha" (which the complaint argues implies white

25  chocolate).  The complaint also makes much of how the frappe label looks

26  compared to the label for Double Chocolate Frappe.  The Court should only

27  decide whether these labels are misleading if there is a lawsuit by a person who

28  claims to have been misled by them.  Miller doesn't.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                   - 4 -                                    28172\3399564.1

1   Plaintiff's cases do not stand for the broad proposition he claims (i.e. that an

2   injured plaintiff has standing to sue about whatever products he includes in his class

3   definition).[2]  Miller's case is not like *Anderson v. Jamba Juice Co.*, 2012 U.S. Dist.

4   LEXIS 120723, at *13-14 (N.D. Cal. Aug. 25, 2012), where the Court identified the

5   "critical inquiry" of "whether there is sufficient similarity between the products

6   purchased and not purchased," and found it satisfied because on all of the smoothie

7   kit flavors, the same words "all natural" were alleged to be deceptive for the same

8   reason ("all smoothie kits contain allegedly non-natural ingredients . . ." *Id.*

9   Plaintiff in *Anderson* was injured by the same words that were false in the same

10  way as the rest of the products in his class definition.  Adjudicating Anderson's

11  claim about whether mango flavored smoothie with xantham gum, ascorbic acid

12  and steviol gycosides was deceptively labeled "all natural" therefore required the

13  court to decide the same questions that were at issue with the strawberry or orange

14  flavored smoothies that Anderson had not bought.

15      Nor is it like *Donohue v. Apple, Inc.*, 2012 U.S. Dist. LEXIS 65860 (N.D.

16  Cal. 2010).  Judge Whyte there found that plaintiff, who sued Apple because

17  iPhone signal meters are "totally wrong" (as the company conceded, in those

18  words), claimed an injury that was common to all of iPhone models, even though

19  he had only bought two models:  "plaintiff here does not allege injury based solely

20  on Apple's alleged misrepresentations, but on the diminution in value resulting

21  from the product defect itself, which Apple has already admitted existed in every

---

[2] Plaintiff suggests that the Court ignore the decisions finding that a purchaser of one product lacks standing to sue about other products by playing a numbers game.  *Cf.* Opp. at 8:8 ("long line of cases"); 9:15:17 ("Defendant does counter with a few cases . . . Defendant relies on the minority position . . ."); 11:8 ("minority opinions").  Against *Larsen v. Trader Joe's* (Judge Illston), *Carrea v. Dreyer's Grand Ice Cream* (Judge White), *Astiana v. Dreyer's Ice Cream* (Judge Chen), *Stephenson v. Neutrogena* (Judge Hamilton), and other cases from outside the Northern District, plaintiff stacks *Anderson v. Jamba Juice* (Judge Rogers), *Donohue v. Apple* (Judge Whyte), *Koh v. S.C. Johnson & Son, Inc.* (Judge Whyte again), *Wang v. OCZ Tech. Group, Inc.* (Mag. Judge Grewal) (though this decision expressly declined to rule on the standing issue, *see* 276 F.R.D. at 633), and other cases from outside the Northern District.  But Article III standing isn't decided by popular vote.  "[F]ederal courts may exercise power only 'in the last resort, and as a necessity.'"  *Allen v. Wright*, 468 U.S. 737 (1984).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                - 5 -                                    28172\3399564.1

iPhone model at issue in this case." *Id.* at *19.  The admission of a common defect that affected all the models was why Judge Whyte held that plaintiff had standing to sue about the other models, pending class certification.

*Koh v. S.C. Johnson, Inc.*, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. 2010) is also of limited value.  The Court there did not decide the standing question; it noted the absence of "a brightline rule that different product lines cannot be covered by a single class," and then decided to "defer ruling on the issue." *Id.* at *7.  *Koh* does not stand for the proposition that a plaintiff has standing to sue about a product he never purchased.  Judge Whyte's decision to punt, without grappling with the Article III standing question the Supreme Court says is necessary to avoid turning the courts into a jurisprudential debating society, is unpersuasive in light of that Court's precedents requiring subject matter jurisdiction be evaluated at every stage.

## II.   MILLER'S CLAIMS AS TO EACH OF THE PRODUCTS LACK MERIT AS A MATTER OF LAW.

Plaintiff asserts that *Williams* "forecloses" this Court from ruling at the pleading stage that the labels at issue are not deceptive to a reasonable consumer.  Opp. at 14:8-18.  *Williams* does no such thing.  *See, e.g., Carrea v. Dreyer's Grand Ice Cream*, 475 Fed. App. 113, 115, 2012 U.S. App. LEXIS 6851, at *4 (9th Cir. 2012)[3] (evaluating allegedly deceptive use of "original" and "classic" on Drumstick ice cream treats; "In sum, we conclude that Carrea's state law claims fail to satisfy the 'reasonable consumer' standard in *Williams* [citation].  Dismissal of these claims with prejudice was therefore proper."); *Hill v. Roll Int'l*, 195 Cal. App. 4th 1295, 1300-01 (2011) (concluding that label would not mislead a reasonable consumer at the pleading stage, despite *Williams*); *Baltazar v. Apple, Inc.*, 2011 WL 3795013, *6 (N.D. Cal. 2011) (citing *Williams* for reasonable consumer standard, then in next sentence stating "If an alleged misrepresentation would not deceive a reasonable consumer or amounts to mere puffery, then the claim may be dismissed

---

[3] Under Ninth Circuit Rule 36-3, this case is not precedential, and is therefore cited for its persuasive value only.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                - 6 -                         28172\3399564.1

1    as a matter of law"; granting motion to dismiss).

2         Despite conceding that assessing a label's deceptiveness requires evaluating

3    label statements in context, *see, e.g.,* Opp. at 15 n.6; 17:4-6 (*Williams* evaluated

4    statements in "context of packaging as a whole"), Plaintiff lumps together his

5    discussion of all five products.  Lumping them together and discussing them *en*

6    *masse*, and divorcing the words on the packaging from their context, allows

7    Plaintiff to make assertions like "In rejecting Defendant's argument, the Court need

8    not look further than Plaintiff's specific allegations that Defendant falsely labeled

9    all of the Fake White Chocolate Products as 'chocolate' **and/or** 'white chocolate.'"

10   Opp. at 15:1-3 (emphasis added); *see also id.* at 9:21-23 ("all of the Fake White

11   Chocolate Products affirmatively state that they are 'chocolate' and/or 'white

12   chocolate,' . . . ."), and to refer to "chocolate" without conceding that what the label

13   actually says is the trademark "Ghirardelli Chocolate."  It also allows him to

14   juxtapose "white chocolate," with "mocha," with "Premium Baking Chocolate," *id.*

15   at 16:4-8 – the kind of juxtaposition that never happens on the actual labels,

16   because this language appears on different products.  As in the opening brief,

17   Ghirardelli urges the Court to evaluate each product's label on its own merits.

18        **A.    The White Baking Chips**

19        Plaintiff's arguments fail to show that the white baking chips package would

20   mislead a reasonable consumer.

21        In support of the argument that a reasonable consumer would think the white

22   baking chips were white chocolate baking chips, Plaintiff points to the company's

23   name on the label:  the words "Ghirardelli Chocolate" that appear against a blue

24   background on the front panel.  While Plaintiff gets momentarily sidetracked over

25   whether the entire brand name is a registered trademark, as opposed to a common

26   law trademark (i.e., words used to identify a business or product's source), *see*

27   *generally North Carolina Dairy Found. v. Foremost-McKesson*, 92 Cal. App. 3d 98

28   (1979) (discussing common law and registered trademarks), he concedes, as he

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                - 7 -                                    28172\3399564.1

must, that a brand name alone – like "Sugar in the Raw" – should be evaluated in the context of the rest of the package to decide if a reasonable consumer would be misled. *See* Opp. at 15, n.6 (conceding that brand names were held not misleading as a matter of law in *Rooney v. Cumberland*, 2012 U.S. Dist. LEXIS 58710 (S.D. Cal. 2012) (reasonable consumer would not conclude that SUGAR IN THE RAW contains unrefined sugar because "raw" is in the trade mark) and other cases). Consumers don't decide whether the package contains white chocolate based on the blue background brand name "Ghirardelli Chocolate":  if Ghirardelli Chocolate Company sells something other than chocolate, like Willy Wonka's Chocolate Factory – or for that matter, Hershey's or Nestle Toll House, two decidedly real-world chocolate competitors who Plaintiff acknowledges openly sell white chips that are not white chocolate chips, side-by-side in the grocery with their more famous chocolate products – consumers know this based on the label description of the contents; they don't just assume it based on the brand name.  A reasonable consumer would not believe that white chips must be white chocolate chips because they were sold by a company named Ghirardelli Chocolate.

Plaintiff next argues that Ghirardelli's employee allegedly said to an investigator that the company sold only chocolate, and that reasonable consumers would think that everything from the company is chocolate.  Opp. at 15; *see also* Opp. at 17 ("its own employees and website refer to the product as 'white chocolate chips.'").  In *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1305 (2011), the court showed the right way to deal with this kind of argument.  If the statement doesn't appear on the label, it doesn't really provide any context for what the reasonable consumer would believe the label means.  *Id.* ("It is difficult from her briefing to discern what Hill means to gain from the 'Every drop is green' slogan allegedly used at some point in store displays and other advertising.  It is not clear that reasonable consumers would know of the slogan, for it does not appear anywhere on the bottled water, as far as the photographic images reveal.").  Miller, for

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)

- 8 -

28172\3399564.1

1  example, couldn't be deceived by a statement he never heard; what an apparently

2  underinformed retail clerk said in San Francisco tells us nothing about what a

3  reasonable consumer would believe when they look at the white chips package.

4      Plaintiff argues that what he calls "cheesy pick-up lines," like "classic,"

5  "melt-in-your mouth," "easier melting," and "luxuriously smooth and creamy" are

6  "actionable" based on their context.  They are not.  These words do not

7  communicate to a reasonable consumer that Classic White Baking Chips are white

8  chocolate chips.  They are puffery about the texture and whether the chips will melt

9  nicely, and Plaintiff's complaint is not about the chips melting characteristic.

10     Meanwhile, this Court and the Ninth Circuit have both said that determining

11 what "classic" means depends on what it modifies.  If it modifies "recipe," then

12 someone can complain if the recipe isn't the classic one.  *Carrea v. Dreyer's Grand

13 Ice Cream, Inc.*, 2011 U.S. Dist. LEXIS 6371 (N.D.Cal. 2011) and 475 Fed. App.

14 113, 2012 U.S. App. LEXIS 6851 (9th Cir. 2012) ("Notably, none of these phrases

15 [including "classic"] modify 'recipe,' 'ingredients,' '1928,' or any other term that

16 might suggest that the modern Drumstick is identical in composition to its

17 prototype.").  Plaintiff's assertion (Opp. at 16 n.9) that a reasonable consumer

18 would think that calling a product "Classic White Baking Chips" means that it is

19 made from the same ingredients as what his opposition calls the "original" or

20 "classic" "Ghirardelli Chocolate Premium Baking Bar – White Chocolate" fails

21 because there's nothing on the label that even suggests this.  If a reasonable

22 consumer did have the "Premium Baking Bar – White Chocolate" in mind when it

23 saw the chips package, it would note that one says it is white chocolate, and the

24 other does not.  "Classic" wouldn't fool a reasonable consumer.

25     Plaintiff concludes by reinvoking an exaggerated view of *Williams*, bashing

26 the stuffing out of the straw man argument that "Like here, the defendants [in

27 *Williams*] argued that no reasonable person could be deceived, because the side of

28 the package fully disclosed the true ingredients and their relative proportions."

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS          - 9 -
(CASE NO. 3:12-CV-04936-LB)                              28172\3399564.1

Opp. at 17:21-22.  To avoid all confusion about Ghirardelli's argument on this point, we repeat it in full:

> This is not a case like [*Williams v.*] *Gerber* where the front panel tells one story but the ingredient list on the back contradicts it.  *Cf.* 552 F.3d at 939.  Instead, the front panel never says or otherwise represents white chocolate, and the ingredient list confirms no white chocolate is present.  *Compare id.* at 939-40 ("[R]easonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.") *with Hairston*, 2012 WL 1893818 at *5 (citing *Gerber* and finding that because "the ingredient list is consistent with the front label statement[s]" defendant's product is not deceptive as a matter of law).

Mot. at 23-24.  Ghirardelli does not say, or suggest, that the Classic White Baking Chips product is "white chocolate," and the ingredient list confirms it is not.  A reasonable consumer would know this not just from the ingredient list but from the label, which calls the product "White Baking Chips," has a recipe for "White Chip Cookies," and says that the "For our Classic White Baking Chips, pure vanilla and whole milk powder" -- not cacao butter, and not white chocolate – "combine to create melt-in-your mouth bliss."  If a consumer wants Ghirardelli's white chocolate for baking, they buy the product that is labeled "baking bar – white chocolate."[4]

## B.  "White Chocolate Flavored Confectionary Wafers" and "Sweet Ground White Chocolate Flavor"

Plaintiff's complaint alleges that Ghirardelli's confectionary wafers and flavor mix were in violation of 21 C.F.R. § 101.22(i)(1)(i), because those products

---

[4] Plaintiff also makes a strange argument that about other Ghirardelli Chocolate products that are not labeled "white chocolate" but do contain cacao butter.  Opp. at 16 n.9; Complaint ¶ 34.  If under *Williams* a reasonable consumer is not expected to review the ingredient list on the product that they *are* buying, Plaintiff's idea that the consumer would infer that the white baking chips are white chocolate by first reviewing the ingredient lists of the "Sublime White Cookies Jubilee Bar," "Classic White Flavored Sauce," and "Sublime White Vanilla Dream Bar," realizing that those products each contain white chocolate but are not called white chocolate, running back from the candy aisle (or, for the sauce, the ice cream aisle) over to the baking aisle, and then buying the white chips in the belief that they must have the same ingredients as those other products *without* reviewing the ingredient list, is ridiculous.  Plaintiff never pleads that anyone ever did that.  *See Hill*, 195 Cal. App. 4th at 1305 (label not misleading based on slogan, where no pleading that slogan was on label).  A reasonable consumer who reads ingredient lists would rely on the ingredient list on the white chips package, not the ingredient list on Sublime White Cookies Jubilee Bar, to figure out the ingredients of the white chips.

1   are labeled "white chocolate flavor" or "white chocolate flavored,"[5] and contain no

2   white chocolate.[6]  In response, Ghirardelli showed in its motion to dismiss that the

3   regulation permits exactly this kind of product description:  a manufacturer can

4   describe the characterizing flavor and label the product as "flavored" even if it

5   contains "no such ingredient."  21 C.F.R. § 101.22(i)(1)(i).  And because

6   Ghirardelli complied with the regulation, Plaintiff's state law claims complaining

7   that the label is misleading are preempted.

8        To support its interpretation that a product may be labeled as "flavored"

9   when it contains none of the ingredient referred to, Ghirardelli cited a series of

10  cases interpreting 21 C.F.R. § 101.22(i)(1):  *Dvora v. General Mills, Inc.*, 2011 WL

11  1897349 (C.D. Cal. 2011); *McKinnis v. Sunny Delight Beverages Co.*, 2007 WL

12  4766525 (C.D. Cal. 2007); *Lam v. General Mills, Inc.*, 2012 WL 1656731 (N.D.

13  Cal. 2012).  Plaintiff does not distinguish these cases or claim that they are wrongly

14  decided.  If the Court reaches the question (i.e., if it finds that Miller has standing),

15  it should interpret 21 C.F.R. § 101.22(i)(1)(i) in the same way that the other courts

16  have.[7]  The law allows Ghirardelli to say "white chocolate flavored" on a product

17  _____

    [5] The Saunders Reply Declaration shows, as Exhibit G, the label that plaintiff appears to refer to

18  in the complaint.  The original Saunders declaration had attached, as exhibit C, the current
    version of this label, which says "White Flavored" instead of "White Chocolate Flavored."
    Defendant's counsel contacted Plaintiff's counsel last week (before Plaintiff's opposition was

19  due) and pointed out the discrepancy, and promised to file the correct label.  While nothing in this
    motion turns on the difference between Exhibits C and G, defendant nonetheless wanted to ensure

20  that the correct label – the one referred to in the complaint – was in the record.

21  [6]  Miller's claims as to Ghirardelli's flavor/flavored products are premised on the allegation that
    Ghirardelli's labeling violates state law because it allegedly violates Section 101.22(i)(1)(i)'s

22  regulation of the terms "flavor" and "flavored."  *See* Complaint at ¶¶ 23, 26, 28-30 (¶ 23: The
    FDA regulations provide that "a product may not be labeled as 'flavored' by an ingredient unless

23  that product actually contains a flavor derived from that ingredient. 21 C.F.R. 101.22(i)(1)(i)"; ¶
    24: "The packaging for Fake White Chocolate Products is inconsistent with . . . the FDA

24  regulations embodied in the state law"; ¶ 26: "The packaging  for Fake White Chocolate
    Wafers" is deceptive because it "misleads[s] consumers into believing that it is flavored with

25  white chocolate"; ¶ 28: "The fake Ground While Chocolate" is deceptive because "on the back of
    the package it states 'Ghirardelli Sweet Ground White Chocolate Flavor" with the word flavor in

26  a "smaller font" and "because there is no chocolate, white chocolate or cocoa derivatives in the
    product, the product cannot deliver a 'chocolate flavor'"; ¶ 29 "The use of the word 'Flavor' in

27  the product name of the Fake Ground White Chocolate does not eliminate the deception.").
    [7]  In instances where there is ambiguity in the language of a regulation, courts may accept that a

28  label "presumptively complies" with the relevant FDA regulations if the agency has not brought

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
 (CASE NO. 3:12-CV-04936-LB)

- 11 -

28172\3399564.1

1    containing no white chocolate, just like the defendant in *Lam* could say "strawberry

2    flavored" on a product containing no strawberry.  *Lam*, 2012 WL 1656731, *3-4.

3          Any state law claim to the contrary is preempted because it by defination

4    requires something beyond what FDA requires in 21 C.F.R. § 101.22(i)(1)(i).  In

5    *Dvora v. General Mills*, 2011 WL 1897349 (C.D. Cal. 2011), the plaintiff sued

6    under 17200 and the Consumer Legal Remedies Act, just as Miller does here.

7    Plaintiff claimed that the package misled him to think the product contained

8    blueberries and pomegranate seeds:  pictures which resembled blueberries and

9    pomegranate seeds, and the product name "Total Blueberry Pomegranate" with

10   smaller letters below it "Naturally and Artificially Flavored."  *Id.* at *3-4.  The

11   Court found his claims preempted and dismissed them.

12        Defendant persuasively argues that Plaintiff's lawsuit seeks to impose
13        requirements that are "not identical" to this regulatory scheme.  First,
          Plaintiff apparently seeks to forbid General Mills from labeling its
14        product "Total Blueberry Pomegranate," even though such
          descriptions of "characterizing flavor" are expressly authorized by
15        federal law.  Second, Plaintiff appears to demand that General Mills
          affirmatively state on the package that the cereal "does not actually
16        contain blueberries or pomegranates," even though FDA regulations
          would not require this.  Third, Plaintiff objects to the depiction of
17        brown colored "clusters" that (according to Plaintiff) allegedly
          "resemble blueberries and/or pomegranate seeds," FAC ¶11, even
18        though FDA regulations would have permitted General Mills to depict
          even fresh blueberries and pomegranates on its box.

19   *Id.* at *11.  FDA allows manufacturers to describe the characterizing flavor on the

20   label through pictures or words.  A state law claim that would prevent Ghirardelli

21   from labeling its powdered flavor mix as "Sweet Ground White Chocolate Flavor,"

22   or its confectionary coating wafers as "White Chocolate Flavored," where the use

23

24   an action to enforce its regulations.  *Pom Wonderful LLC v. The Coca-Cola Co*., 679 F.3d 1170,
     1178 (9th Cir. 2012) (holding that the court should respect the FDA's expertise in guarding
25   against deception and deciding not to impose the requirements or interpretation of the regulation
     urged by the Plaintiff); *see also Sandoz Pharm. Corp. v. Richardson-Vicks, Inc*., 902 F.2d 222,
26   231 (3rd Cir. 1990) (finding preemption and holding it was not proper for a district court "to
     usurp administrative agencies' responsibility for interpreting and enforcing potentially ambiguous
27   regulations."); *Perez v. Nidek Co. Ltd*., 657 F.Supp.2d 1156, 1166 (S.D. Cal. 2009) (holding
     applicability and interpretation of FDA regulations "should be decided by the FDA in the first
28   instance" and refusing to allow the plaintiff to "privately enforce the FDCA and its regulations
     under the guise of state law claims").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                              - 12 -                          28172\3399564.1

of those terms is permitted under 21 C.F.R. § 101.22(i)(1)(i), is preempted.  *See also Red v. The Kroger Co*., 2010 WL 4262037 at *5, 6 (C.D. Cal. Sept. 2, 2010) ("Given that federal regulation sspecify when the terms 'cholesterol free' can be used, Defendant's compliance with those regulations cannot be deemed to be 'false or misleading'" ; "Plaintiffs cannot escape the fact that they seek to enjoin exactly what federal law expressly permits.").

Plaintiff claims that there is no express preemption here – but only by citing cases where FDA has established no standard.[8]  In *Wright v. General Mills, Inc*., 2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sep 30, 2009), the claim about "100% natural" was not preempted because there was no FDA standard:  "Because the FDA has deferred taking regulatory action with respect to the term 'natural,' plaintiff's state law claims do not stand as an obstacle to accomplishing Congress's objectives of uniformity and consistency in regulating labeling."  Similarly, *Hitt v. Arizona Bev. Co.*, 2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb 4, 2009) and *Lockwood v. Conagra Foods, Inc*., 2009 U.S. Dist. LEXIS 10064 (N.D. Cal. Feb. 3, 2009), both  involved disputes over use of the term "All Natural" on food labels – a term that the FDA expressly declined to define.  *See Hitt*, 2009 U.S. Dist. LEXIS 16871, at *10 (explaining that the "FDA has not defined 'natural' or 'all natural' because' of resource limitation and other agency priorities.").  Here, in contrast, 21 C.F.R § 101.22 expressly governs product labeling about the flavor, thereby preempting any state laws that would impose labeling requirements above and beyond or not "identical to" federal law.

---

[8] In his Opposition Plaintiff engages in a lengthy discursion about preemption law generally that is both irrelevant and inacurate.  Opp. at 20-23.  Cases cited by Plaintiff like *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008), hold only that there is no preemption *if* a state law claim is based on *proof of* a *violation* of FDA regulation.  Where, as here, defendant's label *complies* with FDA regulations, state law claims are preempted, as discussed in *Dvora* and other cases. Similarly, plaintiff's argument that his claims are not preempted because he is not bringing a private right of action to directly enforce the FDCA is beside the point:  the problem with Plaintiff's case is not that he seeks to bring a direct claim under the FDCA, but instead that his state law claims would impose requirements that are not "identical to" the FDA rule (i.e., that would require Ghirardelli to do something above and beyond what federal law requires).  21 U.S.C. § 343-1 (preempting all state laws not "identical to" FDA regulations).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
(CASE NO. 3:12-CV-04936-LB)                   - 13 -                              28172\3399564.1

Plaintiff expresses great surprise that Ghirardelli does not address two additional regulations: 21 C.F.R. § 101.22(c), and 21 C.F.R. § 101.22(i)(2).  Opp. at 23-24 (criticizing Ghirardelli for "selectively pick[ing]" from the regulations, and for "nowhere" addressing these two rules).  There is an incredibly good reason why Ghirardelli did not discuss 21 C.F.R. § 101.22(c) and (i)(2):  Plaintiff didn't sue about violation of those rules.  He sued about 21 C.F.R. § 101.22(i)(2)(i), which is why Ghirardelli discussed 21 C.F.R. § 101.22(i)(2)(i) and showed that the case-law interpreting that regulation validates Ghirardelli's labeling practice.  If Plaintiff wants to change the subject, and talk about "artificial flavoring," plaintiff will need to amend his complaint.[9]  *Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (on 12(b)(6) motion, "a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition") (emphasis in original).

## C.   White Mocha, White Frappe

Plaintiff does not separately analyze the white mocha or white frappe canisters.  He never answers the argument that referring to the "pleasurable moment cocoa lovers cherish" is puffing on which no reasonable consumer would rely.  Meanwhile, the use of the adjective "cocoa" in that sentence, or the expression "white chocolate lovers" on the old version of the frappe container, describes the kind of people who enjoy the beverage, and is not used to describe the product's ingredients.  *See Carrea*, *supra* (evaluating whether "classic" or "original" are used to describe the recipe).  No reasonable consumer would incorrectly think the white frappe, or white mocha mix, contain cacao butter or are made from white chocolate.

---

[9] Plaintiff already has started thinking about the arguments that he'll make – he claims that "a consumer is not informed of the artificial flavoring at the time of purchase, contrary to federal rules."  Opp. at 24, n.14 (attempting to explain why the fact that the ingredient list says "artificial flavoring" doesn't comply with this rule).  Of course, plaintiff never bought either of these products, so the footnote statement in his brief about what does or doesn't happen on a website he never claims to have read, in connection with a product he never tried to purchase, and without any citation to his complaint, should not be considered when deciding if he states a claim.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO MOT. TO DISMISS
 (CASE NO. 3:12-CV-04936-LB)                      - 14 -                          28172\3399564.1

III.    **THE FRAUD CLAIM SHOULD BE DISMISSED.**

In the motion, Ghirardelli pointed out that fraud requires a false representation.  While plaintiff asserts he alleged "Defendant knowingly misrepresented the Fake White Chocolate Products as 'chocolate' and/or 'white chocolate,' when they are not," Opp. at 19:12-13, none of the 28 paragraphs he cites support the assertion when conclusory pleading is disregarded.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("On a motion to dismiss for failure to state a claim, [the court] is not required to credit legal conclusions.").  Similarly, while plaintiff "alleges" that Ghirardelli failed to adequately disclose that the product contains no real white chocolate, the allegation is conclusory, and meritless as a matter of law because the ingredient list discloses the ingredients (and shows white chocolate is not one of them).  A fraudulent omission case requires an omission.  This is not a fraud case; the claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the claims as to products other than the white chips should be dismissed for lack of subject matter jurisdiction, and the claims concerning the white chips should be dismissed for failure to state a claim.

Dated:  November 9, 2012                FARELLA BRAUN + MARTEL LLP


By: _/s/ Thomas B. Mayhew_
    Thomas B. Mayhew
    Attorneys for Defendant