# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| SCOTT MILLER, an individual, on behalf of himself, the general public and those similarly situated,<br><br>Plaintiff,<br>v.<br>GHIRARDELLI CHOCOLATE COMPANY, and DOES 1 THROUGH 50,<br><br>Defendants.<br>_____/ | No. C 12-04936 LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[ECF No. 7] |

## INTRODUCTION

Plaintiff Scott Miller bought a package of "Ghirardelli Chocolate Premium Baking Chips Classic White" and then – on behalf of himself and other consumers – sued Ghirardelli Chocolate, complaining that this and four other Ghirardelli Chocolate products were marketed as "White" or "White Chocolate Flavored" when they did not contain any white chocolate, in violation of the following state laws: (1) the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; (2) the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) common-law fraud; and (4) the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. Ghirardelli moves to dismiss, arguing that Miller does not have standing regarding the four products he never purchased, other claims are preempted by federal regulations, his false advertising claims concerning several products are insufficiently pleaded, and he fails to state a fraud claim about any products.

The court GRANTS the motion on the ground that Miller lacks standing to challenge the four products he did not buy and DENIES Ghirardelli's motion otherwise. Plaintiff may file an amended complaint in 21 days.

**STATEMENT**

**I. BACKGROUND ALLEGATIONS**

Ghirardelli Chocolate is a California corporation that manufactures and markets premium chocolate products and non-chocolate products. Complaint, ECF No. 1, ¶¶ 3, 15, 17.[1] Scott Miller is an individual who resides in Auburndale, Florida. *Id.* ¶ 2. Miller accuses Ghirardelli Chocolate of misleading consumers regarding whether several of its products contain white chocolate.

On June 24, 2012, Miller wanted to buy white chocolate chips and ultimately bought Ghirardelli Chocolate's Premium Baking Chips – Classic White" ("baking chips"). *Id.* ¶ 47. In deciding which product to purchase, Miller reviewed the product packaging to satisfy himself that he was buying white chocolate. *Id.* ¶ 48. The next day, Miller tasted the baking chips and thought that they did not taste like white chocolate. *Id.* He reviewed the ingredients list on the packaging and noticed that the white chips contained no white chocolate, cocoa, or cocoa butter. *Id.* ¶ 49.

"Webster's Dictionary defines 'white chocolate' as 'a confection of cocoa butter, sugar, milk solids, lecithin, and flavorings.'" *Id.* ¶ 21. Miller also alleges that United States Food and Drug Administration ("FDA") regulations provide more technical definitions of "white chocolate" and "white chocolate flavor." *Id.* ¶ 22. Miller explains that the FDA regulations require products labeled as "white chocolate" to contain a minimum of 20 percent cocoa butter. *Id.* Other FDA regulations mandate that "a product may cannot be called 'white chocolate flavored' unless it has some natural derivative of cocoa butter or cacao fat." *Id.* ¶ 23.

Miller claims that he would not have purchased the baking chips or would have paid less for them but for Ghirardelli Chocolate's allegedly misrepresenting (by omission and commission) their white chocolate content. *Id.* ¶ 50.

In this lawsuit, Miller alleges that Ghirardelli Chocolate misrepresented the white chocolate

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the page.

content of five products (collectively, the "Products"):

1. Premium Baking Chips – Classic White ("baking chips");
2. White Chocolate Flavored Confectionary Coating Wafers ("wafers");
3. Sweet Ground White Chocolate Flavor ("white chocolate flavor");
4. Premium Hot Beverage – White Mocha ("mocha mix");
5. Frappé Classico – Classic White ("frappe").

*Id.* ¶ 19.

## II. THE ALLEGED MISREPRESENTATIONS

Miller alleges that Ghirardelli makes a number of actionable misrepresentations about the Products, both individually and collectively.

### A. Premium Baking Chips – Classic White

Miller alleges that the baking chips packaging refers to the product as "Classic White," and "Premium," which misleads consumers into believing the baking chips contain classic or premium white chocolate. *Id.* ¶ 24. The packaging also states:

> The luxuriously deep flavor and smooth texture of Ghirardelli Premium Baking Chocolate delivers the ultimate chocolate indulgence. We hand-select the world's finest cocoa beans and roast them to perfection and then blend the purest ingredients to achieve our award-winning chocolate. For our **Classic White Baking Chips**, pure vanilla and whole milk powder combine to create rich, melt-in-your-mouth bliss. Experience the Ghirardelli difference:
>
> • All Natural ingredients
> • Luxuriously smooth and creamy
> • Finest grind for smoothest texture and easiest melting.

*Id.*; Saunders Decl. Supp. Motion to Dismiss, ECF No. 9 ¶¶ 3-4; *id.* Ex. A, ECF No. 9-1 at 3; *id.* Ex. B, ECF No. 9-2.[2] This "romance language" (as Ghirardelli refers to it) is allegedly misleading

---

[2] The quoted language is taken from the FAC and from the products and labels submitted with Ghirardelli's motion. Ghirardelli requests the court take judicial notice of the products and labels because they are referenced in, but not attached to, the complaint. *See* Request for Judicial Notice, ECF No. 8 at 2 (citing *In re Cornerstone Propane Partners, L.P. Securities Litig.*, 255 F. Supp. 2d 1069 (N.D. Cal. 2005)). Miller initially objected to the labels as insufficiently authenticated, but agreed to withdraw his opposition "if Defendant adequately establishes that the labels and packaging at issue were both unchanged, and in use, during the proposed class period–i.e., August 27, 2008 through present . . . ." Opp'n to Def.'s RJN, ECF No. 14 at 3. Ghirardelli then submitted a supplemental declaration that specifies when the labels were in use and corrects a mistake in the previous Saunders declaration. *See* Reply Saunders Decl., ECF No. 18. At oral argument, Miller's counsel agreed on the record to withdraw the objection. Accordingly, the court takes judicial notice of the submitted products and their labels.

**UNITED STATES DISTRICT COURT** *For the Northern District of California*

because it suggests that the packaging contents are white chocolate and because identical language appears on another product that does contain white chocolate – the Ghirardelli® Chocolate Premium Baking Bar. FAC ¶ 24. Miller claims that consumers viewing both products are likely to incorrectly assume that they both contain white chocolate. *Id.* ¶ 25.

### B. White Chocolate Flavored Confectionary Coating Wafers

The packaging for the wafers allegedly misleads by referring to the wafers as "White Chocolate Flavored Confectionary Coating Wafers," though the wafers are not flavored with white chocolate and contain no cocoa butter or cacao fat. *Id.* ¶ 26. In addition, this language is allegedly misleading because a chocolate product – Ghirardelli® Chocolate Double Chocolate Flavored Confectionary Coating Wafers – uses a similar label. Because the two products are likely to be shelved near each other and are marketed for the same price, consumers may be misled to believe that both contain chocolate. *Id.* ¶ 27.

### C. Sweet Ground White Chocolate Flavor

The white chocolate flavor packaging allegedly misleads because the word "flavor" is used in a substantially smaller font than the words "sweet ground white chocolate." *Id.* ¶ 28. The label also indicates that the product can be used in white chocolate hot cocoas and white mochas and that it has a "luxuriously rich and complex white chocolate flavor." *Id.* Miller alleges this is misleading because the product does not contain a cocoa derivative. *Id.* As with the wafers packaging, Miller alleges that the use of the word "flavor" is misleading because the product contains no cocoa butter or cacao fat. *Id. ¶ 29* Finally, Miller alleges that the product is misleadingly sold alongside similarly labeled products that do contain cocoa. *Id.* ¶¶ 29-30.

### D. Premium Hot Beverage – White Mocha

The mocha mix packaging is allegedly deceptive because it states: "The rich indulgent flavor of Ghirardelli Premium White Mocha creates the pleasurable moment cocoa lovers cherish," though it contains no cocoa. *Id.* ¶ 31. In addition, the term "white mocha" implies the combination of white chocolate and coffee. *Id.*

### E. Frappé Classico – Classic White

The frappe packaging states: "The luxuriously rich and complex flavor of Ghirardelli's Classic

White Frappé Classico creates the pleasurable moment cherished by white chocolate lovers." *Id.* ¶ 32. Miller alleges that this implies the product is derived from white chocolate. *Id.* In addition, the frappe is likely sold alongside a similarly labeled product – the Ghirardelli® Chocolate Double Chocolate Frappé, which contains sweetened dark chocolate. *Id.* ¶ 33.

### F. Shared Misrepresentations

In addition to the product-specific allegations, Miller alleges that Ghirardelli makes common misrepresentations across product lines:

- The packaging of the Products "prominently uses the term 'chocolate' in the company name 'Ghirardelli® Chocolate.'" *Id.* ¶¶ 24 (referring to the baking chips), 26 (the wafers), 28 (the white chocolate flavor), 31 (the mocha mix), 32 (the frappe).
- The labels for the baking chips and frappe employ the terms "Classic White" and "Classico," respectively to deceptively suggest the products are unchanged from an original white chocolate product. *Id.* ¶ 34.
- Ghirardelli sells the baking chips, wafers, white chocolate flavor, and mocha mix for the same price as a analogous products containing real chocolate. *Id.* ¶ 35.

### G. Other Marketing Materials

Finally, Miller alleges that Ghirardelli makes a variety of false and deceptive misrepresentations on its website and marketing materials and trains its retail store staff to misinform customers that all Ghirardelli's products contain chocolate. *Id.* ¶¶ 37-42.

### III. CLASS ALLEGATIONS, JURISDICTION, CLAIMS, AND RELIEF SOUGHT

Miller seeks to represent a class of allegedly similarly situated persons, defined as:

> All persons who, between August 27, 2008 and the present, purchased, in the United States, any of the following products: "Ghirardelli® Chocolate Premium Baking Chips – Classic White," "Ghirardelli® Chocolate White Chocolate Flavored Confectionary Coating Wafers," "Ghirardelli® Chocolate Sweet Ground White Chocolate Flavor," "Ghirardelli® Chocolate Premium Hot Beverage – White Mocha," or "Ghirardelli® Chocolate Frappé Classico – Classic White."

*Id.* ¶ 51. The parties do not dispute that the number of people in the proposed class exceeds 100, the amount in controversy exceeds $5M, jurisdiction is minimally diverse, and jurisdiction exists under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). *See* Notice of Removal, ECF No. 1, ¶¶ 5, 9, 13, 15 (setting forth facts establishing the jurisdictional thresholds). Miller brings four claims. *See id.* ¶¶ 60-103.

First, he alleges that Ghirardelli violated § 1770(a)(2), (5), (7), (8), and (9) of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*. *Id.* ¶¶ 60-69. These CLRA provisions bar:

> (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> (8) Disparaging the goods, services, or business of another by false or misleading representation of fact.
>
> (9) Advertising goods or services with intent not to sell them as advertised.

*See id.* ¶ 65. Miller states that Ghirardelli led customers to falsely believe that the Products were (or contained) white chocolate and/or cocoa butter. *Id.* ¶ 66. He specifically alleges that his claims under § 1700(a)(8) are based on Ghirardelli's online representations. *See id.* ¶¶ 17, 66. Miller currently seeks only injunctive relief, fees, and costs but may seek to amend the complaint to seek damages. *Id.* ¶¶ 68-69.

Second, he alleges a violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, based on the misrepresentations alleged throughout the complaint. *Id.* ¶¶ 70-80. He seeks restitution and injunctive relief. *Id.*, ECF No. 1-1 at 5(B).

Third, he alleges common law fraud, deceit, and/or misrepresentation and seeks compensatory and punitive damages. *Id.* ¶¶ 81-91, ECF No. 1-1 at 1-2, 5(C).

Finally, Miller claims that Ghirardelli violated the all three prongs of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq. Id.* ¶¶ 60-103. The UCL claims are based on the misrepresentations alleged throughout the complaint and, under the unlawful prong, on the CLRA and FAL violations. *Id.* ¶ 93. Miller also alleges that Ghirardelli is liable under the UCL for violating at least 14 sections of the Sherman Food, Drug and Cosmetic Law, Cal. Health & Saf. Code § 109875, *et seq.* Miller seeks restitution and declaratory and injunctive relief. *Id.* ¶ 101; *Id.* ECF No. 1-1 at 5(B).

## IV. PROCEDURAL HISTORY

Miller filed suit in San Francisco County Superior Court on August 17, 2012, *see* Complaint, ECF No. 1 at 11, and served Ghirardelli on August 23, 2012, *see* Certificate of Service, ECF No. 1-1 at 20. Ghirardelli timely removed on September 21, 2012. *See* Notice of Removal, ECF No. 1 at 1. On October 19, 2012, Plaintiffs filed their motion to dismiss which was heard on December 6, 2012.

**ANALYSIS**

## I. STANDING

Ghirardelli first argues that Miller does not have standing to bring claims based on the four products that he did not purchase. Motion, ECF No. 7 at 10. On this record, the court finds that Miller lacks standing except for his purchase of the baking chips.

### A. Legal Standard Generally

Dismissal of a claim is appropriate under Federal Rule of Civil Procedure Rule 12(b)(1) when the court lacks subject-matter jurisdiction over the claim. Standing is jurisdictional, cannot be waived, and is properly addressed under Rule 12(b)(1). *See United States v. Hays,* 515 U.S. 737, 742 (1995); *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010). The party asserting the claim has the burden of establishing standing. *See Colwell v. Dept. of Health and Human Servs.,* 558 F.3d 1112, 1121 (9th Cir. 2009). When ruling on a motion to dismiss for lack of standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Graham v. FEMA,* 149 F.3d 997, 1001 (9th Cir. 1998) (*quoting Warth v. Seldin,* 422 U.S. 490, 501 (1975)).

The doctrine of standing encompasses constitutional requirements and prudential considerations. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 471 (1982); *Sahni v. American Diversified Partners,* 83 F.3d 1054, 1057 (9th Cir. 1996). From a constitutional perspective, Article III's case-or-controversy requirement requires the following for each claim: (1) the party invoking federal jurisdiction must have suffered some actual or threatened injury; (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision would likely redress or prevent the injury. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),* 528 U.S. 167, 180–81, 185 (2000); *Lujan v. Defenders of Wildlife,* 504

U.S. 555, 560–61 (1992); *Valley Forge Christian College,* 454 U.S. at 472; *Sahni,* 83 F.3d at 1057. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *See Bates v. United Parcel Serv.,* 511 F.3d 974, 985 (9th Cir. 2007).

The prudential limitations on federal court jurisdiction require the following: (1) a party must assert his own legal rights and interests, not those of others; (2) courts will not adjudicate "generalized grievances;" and (3) a party's claims must fall within the zone of interests that is protected or regulated by the statute or constitutional guarantee in question. *See Valley Forge Christ. College,* 454 U.S. at 474–75; *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1122 (9th Cir. 2009).

In addition to Article III standing, the named plaintiff must establish standing to bring the UCL, CLRA, and FAL claims. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a). These statutes require the plaintiff show that he or she has suffered an "economic injury." *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). The economic injury requirement under the UCL is "substantially narrower than federal standing . . . which may be predicated on a broader range of injuries." *Id.* at 324.

**B. Case Law On Standing to Sue Over Products the Named Plaintiff Never Purchased**

Ghirardelli argues that Miller lacks standing for the four products he did not buy. Mot., ECF No. 7 at 10. Miller counters that he has established standing and – in any event – the issue of whether he can bring claims based on the four products he did not purchase should be addressed at the class certification stage. Opp'n, ECF No. 16 at 11-12.

There is no controlling authority on whether Plaintiffs have standing for products they did not purchase. *See, e.g., Donohue v. Apple, Inc.*, No. 11-cv-05337, 2012 U.S. Dist. LEXIS 65860, at *16 (N.D. Cal. May 10, 2012) (collecting cases).

Some federal courts have held, as a matter of law, that a plaintiff lacks standing to assert such claims. *See, e.g., Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("when a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing"); *Mlejnecky v. Olympus Imaging America Inc.,* No. 2:10-CV-02630 JAM-KJN, at *4 (N.D. Cal. Apr. 19, 2011) (dismissing claims based on products not purchased for failure to

allege economic injury under the UCL); *Carrea v. Dreyer's Grand Ice Cream, Inc.,* No. C 10-01044 JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (dismissing claims based on products other than those purchased by the plaintiff).

Other courts have held that the standing inquiry is more appropriately resolved on a motion for class certification. *See, e.g., Cardenas v. NBTY, Inc.*, No. CIV. S-11-1615 LKK/CKD, 2012 WL 1593196, at *7 (E.D. Cal. May 4, 2012) (analyzing "solely under Rule 23" whether plaintiff may assert claims on behalf of purchasers of products she did not purchase); *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK, 2012 WL 2513481, at *5 (C.D. Cal. June 1, 2012) (denying defendants' motion to dismiss because the "argument is better taken under the lens of typicality or adequacy of representation, rather than standing").

The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar. *See, e.g., Stephenson v. Neutrogena*, No. 12-cv-00426 PJH, 2012 U.S. Dist. LEXIS 1005099 (N.D. Cal. July 27, 2012) (dismissing claims based on products not purchased because the purchased products were not "similar enough to the unpurchased products such that an individualized factual inquiry was not needed for each product"); *see Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (noting that in most reasoned opinions, "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased"); *see also Anderson v. Jamba Juice*, No. 12-cv-01213 YGR, 2012 U.S. Dist. LEXIS 120723, at *13-14 (N.D. Cal. Aug. 25, 2012) (relying on *Astiana* for the same proposition).

For example, in *Astiana*, the plaintiffs found sufficient similarity where the plaintiffs challenged:

> the same kind of food products (i.e., ice cream) as well as the same labels for all of the products–i.e., "All Natural Flavors" for the Dreyer's/Edy's products and "All Natural Ice Cream" for the Haagen–Dazs products. That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors.

2012 WL 2990766, at *13. Similarly, in *Anderson v. Jamba Juice Co.*, the court held that the plaintiff, who purchased several flavors of at-home smoothie kits labeled "All Natural," had standing to bring claims on behalf of purchasers of other flavors because the products were

1 sufficiently similar and because the "same alleged misrepresentation was on all of the smoothie
2 kit[s] regardless of flavor . . . ." No. 12-CV-01213 YGR, 2012 U.S. Dist. LEXIS 120723, at *15
3 (N.D. Cal. Aug. 25, 2012).

4 Where product composition is less important, the cases turn on whether the alleged
5 misrepresentations are sufficiently similar across product lines. For example, in *Koh v. S.C. Johnson*
6 *& Son, Inc*, No. C-09000927 RMW, 2010 U.S. Dist. LEXIS 654, at *2, *6-7 (Jan. 5, 2010), the
7 plaintiff purchased Windex brand glass cleaner that bore a label suggesting the product was
8 environmentally-friendly. He also sought to challenge the defendant's use of the identical label on
9 Shout brand stain remover that he had not purchased. *Id.* at *2. Because the labels were identical,
10 the court denied defendant's motion to dismiss for lack of standing and deferred ruling on the
11 standing question until class certification. *Id.* at *7.

12 Where the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss
13 claims to the extent they are based on products not purchased. For example, in *Larsen v. Trader*
14 *Joe's Co.*, No. 11-cv-5188-SI (Docket No. 41) (N.D. Cal. filed June 14, 2012), the court found that
15 the plaintiffs lacked standing to bring claims based on products they did not purchase. There, the
16 plaintiffs challenged "a wide range of Trader Joe's products (cookies, apple juice, cinnamon rolls,
17 biscuits, ricotta cheese, and crescent rolls) which bear little similarity." *Astiana*, 2012 WL2990766,
18 at *13 (finding *Larsen* distinguishable). And in *Stephenson v. Neutrogena*, the court dismissed
19 claims based on products not purchased where plaintiff brought suit over six Neutrogena Naturals
20 products but had only purchased the purifying facial cleanser. 2012 U.S. Dist. LEXIS 1005099, at 1.

21 This court finds the approach in *Astiana*, *Jamba Juice*, and *Stephenson* to be persuasive and
22 considers whether there are substantial similarities in the accused products and whether there are
23 similar misrepresentations across product lines.

24 **C. Whether Miller Has Standing**

25 The issue is whether the five products and the alleged misrepresentations about them are
26 sufficiently similar so that Miller has standing as to the four products he did not buy. The court
27 holds that they are not sufficiently similar and that Miller does not have standing.

28 The products have some similarities in packaging, composition, and labeling: they are branded

"Ghirardelli Chocolate," they do not contain cacao butter, they are packaged, priced, and sold next to products that contain chocolate or white chocolate, the products' labeling (by juxtaposition to the brand "Ghirardelli Chocolate") suggests a connection to chocolate even though the products are not white chocolate, and they use words that create a connection to white chocolate (such as "classic white" for the chips and frappe, "white chocolate" for the wafers and ground white chocolate flavor drink product, and "white mocha" for the hot beverage mix). But these similarities and Miller's other allegations about the labeling of the products do not establish the kind of similarity that courts find persuasive in conferring standing over similar (but unpurchased) products.

First, the products are different: baking chips, three drink powders, and wafers. They may all be Ghirardelli products, but they are otherwise dissimilar. They look different, they are labeled differently (white mocha for a drink, Frappe Classico Classic White for another drink), and only one other product looks like a baking product (the confectionary wafers) but confectionary wafers are different than chips for cookies. They also – based on their labels – have different customers in that two of the drink powders on their labels say that they are marketed to retailers. Saunders Decl. Exs. D & F, ECF Nos. 9-4 and 9-6. The court recognizes Miller's argument that questions of similarity are better reserved for the class certification stage. Still, the dissimilarity of the products is considered by courts in assessing standing for products not purchased.

The labeling of the products also is very different. The baking chips that Miller purchased use "Classic White" and "Premium," and the "romance language" on the packaging sets up a connection among "Premium Baking Chocolate," the roasting of cocoa beans, the creation of award-winning chocolate, and the "Classic White Baking Chips." Also, the complaint alleges that the product is sold alongside of and equivalently priced to "Ghirardelli Chocolate White Chocolate Premium Baking Bar," a similarly-labeled product that does contain white chocolate. Complaint, ECF No. 1, ¶ 25. This alleged connection to chocolate is arguably stronger and at least different than that for the other products.

Of the other products, only the frappe label uses the words "Classic White." *See* Saunders Decl. Ex. F, ECF No. 9-6 at 2. That product, which according to the label is "[d]esigned exclusively for specialty coffee retailers," has very different "romance language" about "luxuriously rich and

1 complex flavor . . . that creates the pleasurable moment cherished by white chocolate lovers." *See*
2 Saunders Decl. Ex. F, ECF No. 9-6 at 3. The mocha mix product has similar language of "the
3 pleasurable moment cocoa lovers cherish." *Id.* Ex. E, ECF No. 9-5. The wafers label has no
4 romance language at all. *Id.* Ex. C, ECF No. 9-3. Even if the court did not take judicial notice of the
5 labels, Miller does not allege the sort of similarity of representation or product that make the
6 products more like the Jamba Juice mixes or ice cream flavors that involved "the same basic
7 mislabeling practice across different product flavors." *Astiana*, 2012 WL 2990766, at * 13.

8   Miller also alleges that the white chips are sold alongside a Ghirardelli product that actually
9 contains white chocolate. He does not allege that about the other products (although the white
10 chocolate flavor and the frappe are allegedly sold next to and priced equivalently to a similarly-
11 labeled and equivalent chocolate product, thereby enhancing the chocolate connection). *See*
12 Complaint, ECF No. 1, ¶¶ 30 ("Sweet Ground White Chocolate Flavor" mix sold next to "Sweet
13 Ground Chocolate and Cocoa"), 31, 33 ("Classic White" Frappe sold next to "Double Chocolate"
14 Frappe).

15   Then, Miller alleges that the labels for the wafers and white chocolate flavor employ the words
16 "flavor" and "flavored" in a manner that violates FDA regulations and the Sherman Food, Drug and
17 Cosmetic Law. *See* Complaint, ECF No. 1 ¶¶ 22-23 26, 29. But those words are absent from the
18 baking chips packaging. The mocha mix also has little discernable similarity to the baking chips.

19   In the end, the court does not believe that the "common misrepresentations and omissions" that
20 Miller points to are enough. *See* Opp'n, ECF No. 16 at 15-16. Miller never alleges in the FAC that
21 the products affirmatively state that they are white chocolate (and Ghirardelli's exhibits show that
22 they do not). Miller's best argument is that the labels imply white chocolate content, but the alleged
23 misrepresentations vary widely.

24   Miller similarly says that the products are similar because "**none** of the Fake White Chocolate
25 Products affirmatively state that they do *not* contain chocolate, cocoa or cocoa butter." *Id.* at 14.
26 Miller compares this case to *Koh v. S.C. Johnson & Son*, 2010 U.S. Dist. LEXIS 654, where the
27 Windex cleaner and Shout stain remover bore the same "Greenlist" label suggesting that they were
28 environmentally-friendly. *Id.* The comparison that Miller makes is that the Greenlist label did not

1  disclose that it was a "meaningless, self-awarded honor," and the products here all made the similar
2  material omission that they did not contain white chocolate. *Id.* at 15. But an identical label
3  stamped on different products is more obviously the same labeling practice. In contrast,
4  Ghirardelli's labels differ widely across the product lines.

5  Miller makes two sets of allegations in the complaint about false marketing. The first is that
6  Ghirardelli "advertised and marketed **all** of the Fake White Chocolate Products as 'white chocolate,'
7  including on the marketing materials that it provided to its retailers, on its Website and in the
8  keywords it purchased online." Opp'n, ECF No. 16 at 14. He also alleges that Ghirardelli "trained
9  **all** of its employees to inform all consumers that it only sells chocolate products." *Id.* at 14-15. But
10 Miller does not claim that he was misled by any of these marketing materials or by a Ghirardelli
11 employee and alleges only that he considered the baking chips label. *See* Compl., ECF No. 1, ¶¶ 47-
12 50. Accordingly, these allegations do not establish standing. *See Johns v. Bayer Corp.*, No.
13 09CV1935 DMS, 2010 WL 2573493, at *3 (S.D. Cal. June 24, 2010).

14 In sum, the products are too different, and their labeling is dissimilar. Unlike *Astiana* and *Jamba*
15 *Juice*, this is not the type of case where similar products or similar misrepresentations injured Miller
16 in the same way as the unnamed plaintiffs. In a closer case, the court would resolve the question on
17 class certification. On this record, however, the court **GRANTS** Ghirardelli's motion to dismiss
18 Miller's claims based on the four products he did not purchase.

19 At oral argument, Plaintiff raised arguments under 21 C.F.R. § 101.22(c)(i)(3), arguing that the
20 combination of the "Ghirardelli Chocolate" branding on the front of the label on top of the
21 characterization of the product means that – under the FDA regulations and standards – the harm is
22 identical across product lines, making it closer to the "Greenlist" case or even the iPhone case (with
23 identical harms in different but similar products). The parties agreed that the court should consider
24 the arguments in the context of a motion to dismiss an amended complaint with factual allegations
25 supporting this theory.

## II. MOTION TO DISMISS

The court turns next to the sufficiency of the remaining allegations as to the baking chips, the only remaining product.[3] Ghirardelli moves to dismiss under Rule 12(b)(6), arguing that, as a matter of law, the alleged misrepresentations are not likely to deceive a reasonable consumer. *See* Motion, ECF No. 1 at 15-24. The court finds that Miller's allegations are sufficient to survive a motion to dismiss.

### A. Legal Standards

#### 1. Rule 12(b)(6)

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In this context, "claim" means a set of facts that, if established, entitle the pleader to relief." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted). Dismissal is warranted where a claim lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Alternatively, a claim may be dismissed where it presents a cognizable legal theory yet the complaint fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Shroyer*, 622 F.3d at 1041.

---

[3] Because Miller has no standing to raise claims about the products he did not purchase, the court need not reach the sufficiency of the allegations concerning these products.

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. See *id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.1990)).

**2. FAL Claim Standard**

In order to state a false advertising claim, a plaintiff must allege that (1) the statements in the advertising are untrue or misleading, and (2) the defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading. Cal. Bus. and Prof. Code § 17500; *see also National Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1342 (2003). Private plaintiffs are authorized to bring civil actions to enjoin and seek restitution from false advertisers under California Business and Professions Code section 17535.

The "reasonable consumer" test governs false advertising and unfair or fraudulent business practice claims under the UCL, FAL, or CLRA. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). Under the reasonable consumer standard, the plaintiff must "show that members of the public are likely to be deceived." *Id.* (quotation marks and citations omitted). Generally the question whether a business practice is deceptive is an issue of fact not appropriate for decision on a motion dismiss. However, dismissal of such claims is appropriate where the plaintiff fails to show the likelihood that a reasonable consumer would be deceived. *Freeman,* 68 F.3d at 289-90.

**B. Whether Miller States Claims Based on the Baking Chips**

Ghirardelli argues that Miller's allegations about the baking chips are not legally sufficient to state a claim. Ghirardelli identifies three misrepresentation allegations: (1) the use of the word chocolate in the Ghirardelli Chocolate label on the face of all packaging, (2) the Romance Language, and (3) the packaging's "failure to disclose" that the baking chips are not white chocolate. *See*

Motion, ECF No. 7 at 18-24.

On page 11, the court summarizes the labeling and how it establishes a connection among "Premium Baking Chocolate," the roasting of cocoa beans, the creation of award-winning chocolate, and the "Classic White Baking Chips." The complaint's allegations of side-by-side marketing with white chocolate products also establishes a connection. Complaint, ECF No. 1, ¶ 25. These allegations are sufficient to survive a motion to dismiss.

Ghirardelli's cases about customer confusion (or the lack of it on the face of a complaint) do not compel a different conclusion. For example, in *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H (DHB), 2012 WL 1512106 (S.D. Cal. April 16, 2012), the brand name "Sugar in the Raw" would not make a reasonable consumer believe that the product is actually raw. And the cereal cases are more clearly about fake products. *See Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) (no reasonable consumer would think that Crunch Berries cereal contains real berries); *McKinnis v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) (no reasonable consumer would think that FROOT LOOPS contain fruit).

Ghirardelli also picks apart the "Romance Language" (quoted in full in the facts section) to establish that the labeling could not deceive a reasonable consumer. *See* Motion, ECF No. 7 at 19-22. Ghirardelli's primary arguments are as follows:

1. The product is labeled "Classic White Baking Chips" and not "white chocolate chips." *Id.* at 19.

2. The label's "melt-in-your-mouth bliss" language is mere puffing that cannot support liability in tort. *Id.* at 20 (citing *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003)).

3. "Finest grind for smoothest texture" describes the product's consistency and does not imply chocolate content. *Id.* at 20.

4. "A reasonable consumer . . . would not likely assume that the 'finest grind' referred to cacao beans." *Id.* at 21.

5. No reasonable consumer would think the label's reference to the flavor and texture of Ghirardelli's Premium Baking Chocolate implied that the baking chips had similar properties because the relevant sentence begins, "For our **Classic White Baking Chips**." *Id.*

6. By referring to the baking chips as containing "pure vanilla and whole milk powder," the label disclosed that it contained no white chocolate. *Id.* at 22.

1   These are fact questions that should not be decided on a motion to dismiss. The court does not
2   disagree with Ghirardelli that "assessing a label's deceptiveness requires evaluating label statements
3   in context." Reply, ECF No. 17 at 12. Reading this label as a whole and in context with the
4   allegations about the marketing, the court cannot say, as a matter of law, that no reasonable
5   consumer would be deceived by the baking chips label. *See Williams v. Gerber Product Company*,
6   552 F.3d 934, 938 (9th Cir. 2008) (reversing as inappropriately decided on a motion to dismiss the
7   district court's dismissal of UCL and CLRA claims that alleged that the product packaging for
8   "Gerber Graduates for Toddlers Fruit Juice Snacks" suggested that the snacks contained fruit juice
9   even though – as the ingredients list showed – they did not).

10  In reaching this conclusion, the court disregards Miller's allegations about Ghirardelli employees
11  or the website because he did not allege that he relied on those factors in his purchasing decisions.

12  **C. Miller's Fraud Claim**

13  Finally, Ghirardelli moves to dismiss Miller's fraud claim for failing to plead the elements of the
14  claim. The elements of a cause of action for fraud in California are: (1) misrepresentation, e.g.,
15  false representation, concealment, or nondisclosure; (2) knowledge of falsity, or scienter; (3) intent
16  to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Marketing*
17  *West, Inc. v. Sanyo Fisher (USA) Corp.,* 6 Cal. App. 4th 603 (1992). Ghirardelli argues that Miller's
18  fraud claim fails because it does not plead any misrepresentation, in that "[t]he white baking chips
19  never falsely claim to be made with cacao fat." Motion, ECF No. 7 at 31.

20  Miller responds that a fraud claim can be based either by misrepresentation or omission. Opp'n,
21  ECF No. 16 at 24. He cites 28 paragraphs in the complaint, which he claims show that "Defendant
22  knowingly misrepresented the Fake White Chocolate Products as 'chocolate' and/or 'white
23  chocolate,' when they are not." *Id.* (citing Complaint, ECF No. 1, ¶¶ 16-20, 24-42, 55, 66, 72, 82).

24  At this stage of the case, and considering Rule 9(b)'s heightened pleading requirements, Miller's
25  allegations – summarized in the previous sections – are sufficient to state a claim for fraud. In
26  *Williams v. Gerber Products*, for example, the Ninth Circuit reversed the dismissal of claims for
27  misleading labels that included a common-law fraud claim. 552 F.3d at 938, 940 n.5.
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**CONCLUSION**

For the reasons discussed above, the court **GRANTS** Ghirardelli's motion on the ground that Miller lacks standing for the products he did not purchase and **DENIES** the motion in all other respects. Miller may file an amended complaint within 21 days.

This disposes of ECF No. 7.

**IT IS SO ORDERED.**

Dated: December 6, 2012

_____
LAUREL BEELER
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
For the Northern District of California

C 12-04936 LB (ORDER)

18