1  **.GUTRIDE SAFIER LLP**
   ADAM J. GUTRIDE (State Bar No. 181446)
2  SETH A. SAFIER (State Bar No. 197427)
   ANTHONY J. PATEK (State Bar No. 228964)
3  KRISTEN G. SIMPLICIO (State Bar No. 263291)
4  835 Douglass Street
   San Francisco, California 94114
5  Telephone: (415) 271-6469
   Facsimile:  (415) 449-6469
6
7  Attorneys for Plaintiff

8                   UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11
   SCOTT MILLER, an individual, on behalf of     CASE NO. C 12-04936 LB
12 himself, the general public and those similarly situated

13     Plaintiff,                                 FIRST AMENDED CLASS
                                                  ACTION COMPLAINT FOR
14            v.                                  VIOLATION OF THE CALI-
                                                  FORNIA CONSUMERS LE-
15 GHIRARDELLI CHOCOLATE COMPANY;                 GAL REMEDIES ACT; FALSE
                                                  ADVERTISING; FRAUD, DE-
16     Defendants                                 CEIT, AND/OR MISREPRE-
                                                  SENTATION; AND UNFAIR
17                                                BUSINESS PRACTICES
18
19                                                JURY TRIAL DEMANDED
20
21
22
23
24
25
26
27
28

Scott Miller, by and through his counsel, brings this First Amended Class Action Complaint ("Class Action Complaint") against Defendant Ghirardelli Chocolate Company, on behalf of himself and those similarly situated, for violations of the Consumer Legal Remedies Act, false advertising, violation of the Unfair Competition Law, and fraud, deceit and/or misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

**INTRODUCTION**

1.     Defendant deceptively informed and led its customers to believe that they were purchasing, for a premium price, products containing chocolate, while failing to adequately disclose that such products contain no chocoloate, white chocolate, or cocoa deriveratives of any kind and that they were "artificial" or "imitation."  Defendant obtained substantial profits from these unlawful and deceptive sales.

**PARTIES**

2.     Scott Miller ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Auburndale, Florida.

3.     Defendant Ghirardelli Chocolate Company ("Ghirardelli") is a corporation incorporated under the laws of the State of California, having its principal place of business in San Leandro, California.  Ghirardelli is a wholly owned subsidiary of Lindt & Sprüngli AG.

**JURISDICTION AND VENUE**

4.     This action is brought by Plaintiff pursuant, *inter alia*, to the California Business and Professions Code, section 17200, *et seq.*  Plaintiff and Defendant are "persons" within the meaning of the California Business and Professions Code, section 17201.

5.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California.

6.     Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California, including in San Francisco and Alameda Counties. Defendant was founded in San Francisco, where it maintains its "Original Chocolate

Manufactory" flagship store and from which it sells more chocolate than from any other retail location in the United States.  Defendant has its headquarters in San Leandro, from which it manages the design of the packaging, website and other marketing materials described herein, and from which it manages the distribution of their purportedly white chocolate products throughout the United States.

7.     In accordance with California Civil Code Section 1780(d), Plaintiff filed, with his original class action complaint, a declaration establishing that, in June of 2012, he purchased at least one Ghirardelli product and that Ghirardelli has its headquarters in San Leandro, California, in the County of Alameda and does business in San Francisco.

8.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

### Ghirardelli's Position In The Marketplace

9.     Ghirardelli is a manufacturer and marketer of premium chocolate products.

10.     Claiming to be America's longest continuously operating chocolate manufacturer, Ghirardelli markets itself as having established its position as America's premium chocolate company for more than 150 years.  Defendant further contends on its website at www.ghirardelli.com (the "Website") (last visited January 10, 2013) that it is "one of very few American manufacturers that make chocolate starting from the cocoa bean through to finished products. Throughout the process, [Ghirardelli claims to take] special steps to ensure that [its] premium chocolate delivers [its] signature intense, smooth-melting chocolate taste."

11.     Ghirardelli also claims on its Website that its customers can taste the "Ghirardelli difference" due to the following:

   a.   "Intensive quality assurance in the selection of cocoa beans means that Ghirardelli accepts only the highest-quality beans. We reject as many as 30% of the beans that are offered to us. Beans that are not selected are sold to other manufacturers."

   b.   "In all of its chocolate products, Ghirardelli uses a proprietary blend of cocoa beans that has been refined over the company's 160-year history to provide the company's distinct and intense chocolate taste."

c.  "Ghirardelli roasts the cocoa beans in-house to ensure the company's signature flavor profile is consistently maintained in all chocolate products. We also use a different roasting process whereby they remove the shell first and then roast the small nibs inside. Because the nibs are fairly uniform in size, we have more control over the temperature and time, so it can get a more specific flavor. Other companies roast their beans before removing the shell, which requires over-roasting the outside portion of the bean in order to roast the inside. This could impart a burned flavor to their chocolate."

d.  "Finally, Ghirardelli uses an intensive refining process to ensure that its chocolate truly melts in your mouth! Ghirardelli has no grainy feel because we refine most of our chocolate flakes until they are 18 microns (human hair is 100 microns in diameter). Other mass market chocolates are refined to only 50 microns."

12.  Ghirardelli states that its product line includes its signature SQUARES™ chocolate, chocolate bars, other chocolate confections, chocolate chip cookies, "baking chocolate," and chocolate beverages.

**The Fake White Chocolate Products**

13.  This case focuses on five Ghirardelli products that are sold and marketed as white chocolate products even though they contain no chocolate, white chocolate or cocoa butter. These are:

a.  Ghirardelli® Chocolate Premium Baking Chips – Classic White ("Fake White Chocolate Chips")

b.  Ghirardelli® Chocolate White Chocolate Flavored Confectionary Coating Wafers ("Fake White Chocolate Wafers")

c.  Ghirardelli® Chocolate Sweet Ground White Chocolate Flavor ("Fake Ground White Chocolate")

d.  Ghirardelli® Chocolate Premium Hot Beverage – White Mocha ("Fake White Mocha")

e.  Ghirardelli® Chocolate Frappé Classico – Classic White  ("Fake White Chocolate

1    Frappé")

2    In this complaint these products will be collectively referred to as the "Fake White Chocolate

3    Products."

4    **Regulations Governing Labeling Of Chocolate And White Chocolate**

5    14.    The United States Food and Drug Administration ("FDA") has issued regulations

6    requiring that a food label "accurately identify or describe, in as simple and direct terms as

7    possible, the basic nature of the food or its characterizing properties or ingredients," that it "not

8    be confusingly similar to the name of any other food that is not reasonably encompassed within

9    the same name." 21 C.F.R. § 102.5(a). The label also must "include a statement of the presence or

10   absence of any characterizing ingredient(s) or component(s) and/or the need for the user to add

11   any characterizing ingredient(s) or component(s) when the presence or absence of such

12   ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance

13   or when the labeling or the appearance of the food may otherwise create an erroneous impression

14   that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be

15   misled about the presence or absence of the ingredient(s) or component(s) in the food." *Id.* §

16   102.5(c).  Such statement must be in boldface print of sufficient size on the front display panel.

17   *Id.*

18   15.    The FDA regulations further provide that "If the label, labeling, or advertising of a

19   food makes any direct or indirect representations with respect to the primary recognizable

20   flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be

21   considered the characterizing flavor" and one of the following tests must be met:  (1) the food

22   must contain the "characterizing food ingredient, e.g., strawberries in 'strawberry shortcake'" in

23   an amount sufficient to "independently characterize the food," (2) if the ingredient is present but

24   insufficient to independtely characterize the food," the word "natural flavor" must be present,

25   (3) if the flavor is simulated by being derived from another product, then the product must be

26   labelled "either with the flavor of the product from which the flavor is [actually] derived or as

27   'artificially flavored,'" and (4) if any artificial flavor is present "which simulates, resembles or

28   reinforces the characterizing flavor," the food must be labelled "artificially flavored."  21 C.F.R.

§ 101.22(i)(1)-(2).  The regulation goes on to provide that such statements must appear on the display panel, immediately and conspicuously following the name of the characterizing flavor, without intervening text or graphics.  *Id.* § 101.22(i)(3).  The regulation further provides that "Where the characterizing flavor and a trademark or brand are presented together, other written, printed, or graphic matter that is a part of or is associated with the trademark or brand may intervene if the required words [e.g., "naturally flavored" or "artificially flavored"] are in such relationship with the trademark or brand as to be clearly related to the characterizing flavor."  *Id.* §101.22(i)(3)(1).

16.     FDA regulations also require that "a food shall be deemed to be misbranded if it is an imitation of another food unless its label bears, in type of uniform size and prominence, the word 'imitation' and, immediately thereafter, the name of the food imitated."  21 C.F.R. § 101.3(e).  There is an exception to this rule if the subsituting food that resembles another food (i) "is not nutritionally inferior to the food for which it substitutes and which it resembles," (ii) complies with the provisions of [21 C.F.R.] § 102.5 of this chapter" [see above] and "is not false or misleading."  *Id.* § 101.3(e)(2).

17.     The FDA has also adopted standards of identify for "chocolate" and "white chocolate."  The regulations provide that "Chocolate" must contain "chocolate liquor" made by "finely grinding cacao nibs" such that the chocolate liquor is "not less than 50 percent nor more than 60 percent by weight of cacao fat."  21 C.F.R. § 163.111 *et seq*.  The regulations further provide that "White chocolate is the solid or semiplastic food prepared by mixing and grinding cocoa butter with one or more of the optional dairy ingredients listed in [21 C.F.R. § 163.124(b)(2)] and one or more optional nutritive carbohydrate sweeteners. **It contains a minimum of 20 percent cocoa butter**, a minimum of 14 percent of total milk solids, a minimum of 3.5 percent milkfat, and a maximum of 55 percent nutritive carbohydrate sweeteners."  Id. §163.124 (emphasis added); 67 Fed. Reg. 62171, 62173 (Oct. 4, 2002) (establishing standard of identity for white chocolate; explaining that "Because products bearing the name "chocolate" would be expected to contain some cacao-derived ingredients, we believe that it is necessary to ensure that  'white chocolate' contains cacao-derived ingredients.")

18.     Interpreting the above regulations at the time it issued the white chocolate standard of identity, the FDA considered the argument that "white chocolate-type products made with ingredients not derived from cacao could be identified as 'white chocolate-flavored' or 'artificially flavored' to sufficiently distinguish them from white chocolate products derived from cacao. The comment further stated that consumers could look at the ingredient list to discover the substitution of less expensive ingredients not derived from cacao; thus, current regulations are sufficient to prevent economic deception."  It ruled as follows:

> FDA does not agree that identifying white chocolate products made from cheaper noncacao ingredients as "artificially flavored" or "white chocolate-flavored" would be sufficiently descriptive with regard to the composition of white chocolate. These terms refer to the characterizing flavor of a food, not its composition. The terms suggest products that are flavored to taste like white chocolate, but they do not provide guidance as to white chocolate's composition. Thus, use of such terms does not negate the need for a standard of identity, but rather further supports its need because, without a definition and standard for "white chocolate," there is no way to define "white chocolate-flavored." Moreover, FDA regulations governing use of the term "flavored" Sec. 101.22(i)(1)(i) (21 CFR 101.22(i)(1)(i)) provide that a product that is expected to contain an ingredient, e.g., "white chocolate," must bear the term "flavored" in the name of the food if the food contains natural flavor derived from that ingredient and either an amount of the ingredient insufficient to independently characterize the food or none of the ingredient. Therefore, unless a food contains the flavoring constituents derived from white chocolate, it cannot be named "white chocolate-flavored."

> Once a standard for white chocolate has been "white chocolate-flavored" could be used to describe a food that is commonly expected to contain the characterizing food ingredient, white chocolate, and which contains natural flavor derived from such an ingredient (i.e., cocoa butter or cacao fat) (Sec. 101.22(i)(1)(i)). The term "artificially-flavored white chocolate" could be used in cases where the

food contains an artificial flavor that simulates, resembles, or reinforces the characterizing flavor (Sec. 101.22(i)(2)).

The only constituent in white chocolate that is derived from the cacao bean is cacao fat (i.e., cocoa butter); therefore, the agency assumes that if a cheaper ingredient that was not derived from cacao were used to replace the cacao-derived ingredient, the substitute ingredient would be some type of fat or oil used to replace the cacao fat. In this case, the agency would treat such products as substitute or imitation white chocolate products (21 CFR 101.3(e)) and would not regulate them by requiring that they be labeled "white chocolate-flavored."

*See* 67 Fed. Reg. 62171, 62174 *(citing* 21 C.F.R. § 101.22(i)(1)(i)).

19. Each of the regulations discussed above has been independently adopted as part of the Sherman Food, Drug and Cosmetic Law, California Health and Safety Code ("Cal. Health & Saf. Code") § 109875, et seq.  *See* Cal. Health & Saf. Code §§ 110100(a), 110380, 110505 (adopting FDA standards).

**All Fake White Chocolate Products Violate These Regulations In the Same Manner**

20. The packaging for all the Fake White Chocolate Products is inconsistent with the FDA regulations, and those embodied in the state law for a uniform reason: All the packaging prominently uses the term "chocolate" on the primary label panel when the products, in fact, contain no chocolate or white chocolate, cocoa butter, cacao fat, or any cacao derivatives.

21. The word "Chocolate" is used on the front panel immediately following the brand name "Ghirardelli®" in a manner that suggests that it is the "characterizing flavor," 21 C.F.R. § 101.22(i), of the product. The label shows "Ghirardelli®" is the brand name (as it is followed by the registered trademark symbol) and "Chocolate" as the flavor (as it is in a smaller font and not followed by any trademark symbol.  The label does not state the brand name as "Ghirardelli Chocolate Company."  Moreover, even if it had done so, or even if "Ghirardelli® Chocolate" were deemed to be a "trademark or brand," the regulations would require the statements about "artificial" or "imitation" immediately following that trademark or brand.  *Id.* §§ 101.22(i)(3),

101.3.[1]

22. Defendant intentionally prices its Fake White Chocolate Products as the same price as its similar real (dark or milk) chocolate products. For example, it sells its Fake White Chocolate Chips at the same price as its real chocolate chips (*i.e.,* their milk chocolate, semi-sweet chocolate, and bittersweet chocolate chips), its Fake Ground White Chocolate at the same price as its ground chocolate (*i.e.,* ground cocoa), its Fake White Mocha at the same price as its real "Ghirardelli® Chocolate Premium Hot Cocoa – *Chocolate Mocha*," (*i.e.,* coffee-flavored cocoa), and its Fake White Chocolate Wafers at the same prices as its real chocolate wafers (*i.e.,* sweetened dark chocolate wafers). These actions further deceive customers into believing that all the Fake White Chocolate Products contain chocolate. As a result, customers pay a premium for the Fake White Chocolate Products that cost Defendant far less to manufacture than real chocolate products.

23. Defendant did not disclose that the Fake White Chocolate Products were not chocolate, white chocolate, nor were they flavored with chocolate or white chocolate. To do so, they would at a nimimum have been required to state in the appropriate font size and type, on the front or primary label panel, "Imitation" (or, if one of the other ingredients was designed to simulate the chocolate flavor, to state that ingredient as the flavor or to state "artificial" or "artificially flavored.") Accordingly, all the packaging violated the state and federal regulations set forth above.

**The Fake White Chocolate Chips Marketing Was Deceptive For Additional Reasons**

24. The packaging of the Fake White Chocolate Chips is deceptive for additioanl reasons. It refers to the product as "Classic White" to deceptively mislead consumers into believing that it is classic white chocolate. It states that the product is "Premium" leading consumers to incorrectly believe that, unlike its competitors, the product is a premium white chocolate chip product. It then goes on to deceptively state: "The luxuriously deep flavor and smooth texture of Ghirardelli Premium Baking Chocolate delivers the ultimate chocolate

---

[1] The use of the word "Flavor" on the Fake Ground White Chocolate does not cure the violation, as the FDA has explained in the quotation above. *See* 67 Fed. Reg. 62171, 62174.

indulgence." But because there is no chocolate or white chocolate in Defendant's chips, the product cannot deliver a "deep chocolate flavor or texture" or the "ultimate chocolate indulgence." The label further says that the product contains the "Finest grind for smoothest texture and easiest melting" but in fact, unlike real white chocolate, the product is not "ground" from cocoa beans.

25.     The use of the language about "luxuriously deep …ultimate chocolate indulgence" and "finest grind for smoothest texture and easiest melting" is particularly misleading because the *identical* language appears on the packaging of another product made by Defendant: the Ghirardelli® Chocolate White Chocolate Premium Baking Bar. But the latter product *does* in fact contain white chocolate (a.k.a. at least 20% cocoa butter.) Indeed, the first listed ingredient is "White chocolate." Thus, consumers who see both products (which are likely to appear near each other on the retail shelves or Defendant's Website, and which are sold at the same price) will assume that both contain the same ingredients except that one is a bar one and other is the chips, but the products are otherwise the same.

26.     The use of the term "Classic White" in the Fake White Chocolate Chips increases the deception because it suggests that the product is unchanged from the original (e.g., Coke Classic). In this case, the "original" white chocolate product is the "Ghirardelli® Chocolate Premium Baking Bar – White Chocolate" which does contain white chocolate. Furthermore, Defendant uses the same term—"Classic White"—in the name of its "Ghirardelli® Chocolate Classic White Flavored Sauce" which does contain cocoa butter. And Defendant also sells other candy bars apparently containing real white chocolate: the "Ghirardelli® Chocolate Sublime White Cookies Jubilee Bar" and "Ghirardelli® Chocolate Sublime White Vanilla Dream Bar." Nothing would lead a reasonable consumer to think that a "Sublime White" product is real white chocolate, while some (but not all) "Classic White" products are not real white chocolate.

27.     As defined by Webster's Dictionary, "chocolate" is "a food prepared from ground roasted cacao beans" and "white chocolate" is "a confection of cocoa butter, sugar, milk solids, lecithin, and flavorings."

28.     Beyond Defendant's affirmative misrepresentations, it also fails to adequately

disclose that its Fake White Chocolate Chips are not white chocolate and/or that they do not contain any white chocolate or cocoa butter.

**Ghirardelli's Website And Other Marketing Compounded—And Proves—The Deception**

29.     Beyond Defendant's false and deceptive packaging, it falsely and deceptively markets and advertises the Fake White Chocolate Products on its Website, and in other widely available advertising and marketing materials.

30.     As explained above, Defendant's Website touts the history and preeminence of Ghirardelli Chocolate products with no indication that any of them are not in fact chocolate.

31.     The Website also lists the product name of the Fake White Chocolate Chips as "Classic White Chocolate Baking Chips" (whereas the package states "Premium Baking Chips – Classic White").  It similarly lists the product name of the Fake Ground White Chocolate as "Sweet Ground White Chocolate" (omitting the word "Flavor").  These misrepresentations not only further the deception for customers and retailers who review the Website, but they show that even the Defendant's employees who have created the Website were misled into believing that the Fake White Chocolate Chips and Fake Ground White Chocolate are real white chocolate.

32.     Defendant sells a cookbook with recipes for its products, including the Fake White Chocolate Chips, which further shows that even its own agents and employees have been deceived into believing that the Fake White Chips are real white chocolate.  For example, the cookbook contains a recipe for "Tiramisu-Me" in which the ingredient list includes a "White Chocolate Mixture" containing mascarpone cheese and "1/4 cup Ghirardelli Classic White Chocolate Chips."  The recipe then goes on to instruct the reader to "mix the mascarpone cheese and white chocolate chips."  The Ghirardelli Chocolate Company, The Ghirardelli Chocolate Cookbook: Recipies and History from America's Premier Chocolate Maker (Ten Speed Press: 2007).

33.     Defendant also trains its store personnel at its branded retail locations (including the flagship store at Ghirardelli Square and the store at Union Square, both in San Francisco), to inform customers that *all* the Ghirardelli products are real chocolate products.  Customers who ask, for example, for "white chocolate chips" are directed to the Fake White Chocolate Chips

without being told that the product contains no chocolate.  In one instance, an investigator asked a Ghirardelli store retail employee if there were any non-chocolate Ghirardelli products that he could purchase for a friend with a chocolate allergy; the employee stated (as trained to do), that there were none.

34.    Defendant further permits customers to search its website by choosing to "Shop By Product," and then to choose the "White Chocolate" category.  This process causes the Website to present present the Fake White Chocolate Chips, the Fake Ground White Chocolate, and the Fake White Chocolate Wafers.  These products appear alongside the real White Chocolate Baking Bar and the Classic White Chocolate Flavored Sauce, which, as discussed above, do contain white chocolate and/or cocoa butter, which compounds the deception.

35.    Defendant also advertises, for example, on the Internet by purchasing key words such as "white chocolate," and asking consumers if they "Want White Chocolate?"  If consumers follow the link on Defendant's advertisements, they are taken to Defendant's website and offered the Fake White Chocolate Products.

36.    Finally, Defendant permits its marketing partners, including grocery stores, to advertise, market, advertise and sell its Fake White Chocolate Products.  Defendant provides its marketing partners information that specifically refers to these Fake White Chocolate Products as real white chocolate.  For example, the marketing material provided by Defendant to retailers for the Fake White Chocolate Chips tells retailers that the product name is "Classic White Chocolate Chips."  Retailers in turn use this name when displaying the product on store shelves.

**Ghirardelli's Conduct Is Misleading When Compared to Competitors'**

37.    Defendant's competitors more adequately disclose the truth about their products that are imitation or artificially flavored white chocolate.

38.    The Hershey Company, for example, sells a competitive product to Defendant's Fake White Chocolate Chips, which it calls "Premier White Chips."  But unlike the Defendant's Fake White Chocolate Chips, Hershey specifically states, immediately under the name of the product, "Artificially Flavored Creamy Vanilla."  Moreover, nowhere does the Hershey's package state "chocolate."  Indeed, the Hershey product offers a recipe for "White Chip

Chocolate Cookies" (rather than "White Chocolate Chip Cookies"), which specifically requires that the user add cocoa powder.  As a result, the retail price for Hershey's Premier White Chips is less than Defendant's Fake White Chocolate Chips.

39.     Similarly, the Nestle S.A. company sells, for less money that Defendant's Fake White Chocolate Chips, "Toll House Premier White Morsels."  Like Hershey, but unlike Defendant, the Nestle package (1) discloses that its "Premier White Morsels" are "creamy vanilla-flavored baking pieces" and (2) nowhere states that the "Premier White Morsels" are "chocolate" or "white chocolate."

**PLAINTIFF'S EXPERIENCE**

40.     On June 24, 2012, Plaintiff desired to purchase white chocolate chips.

41.     Prior to purchasing the Ghirardelli® Chocolate Premium Baking Chips — Classic White, Plaintiff reviewed the packaging to satisfy himself that he was purchasing white chocolate. Plaintiff specifically reviewed Defendant's statements on the package that the product is "Chocolate," "Premium Baking Chocolate," "Classic White," "Premium Baking Chips," the "Finest grind," "melt-in-your mouth," and had "The luxuriously deep flavor and smooth texture of Ghirardelli Premium Baking Chocolate delivers the ultimate chocolate indulgence."  Plaintiff further relied on Defendant's failure to adequately disclose that the product was artificial or imitation, was not chocolate, was not "white chocolate" and that it contained no cocoa butter.  He then purchased Defendant's Ghirardelli® Chocolate Premium Baking Chips — Classic White from a Publix supermarket in Auburndale, Florida for $3.29.

42.     The next day, Plaintiff tasted Defendant's Ghirardelli® Chocolate Premium Baking Chips — Classic White and noticed that they did not at all taste like white chocolate.  He then looked closely at the ingredients list on the back of the packaging and noticed that the product did not contain any white chocolate, chocolate, cocoa or cocoa butter.

43.     Had Defendant not misrepresented (by omission and commission) the true nature of its Fake White Chocolate Products, Plaintiff would not have purchased Defendant's product or, at a very minimum, he would have paid less for the product.

**CLASS ALLEGATIONS**

44.     Plaintiff brings this action against Defendant on behalf of himself and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks to represent a class defined as follows:

> All persons who, between August 17, 2008 and the present, purchased, in the United States, any of the following products that have the word "Chocolate" on the primary display panel: "Ghirardelli® Chocolate Premium Baking Chips – Classic White," "Ghirardelli® Chocolate White Chocolate Flavored Confectionary Coating Wafers," "Ghirardelli® Chocolate Sweet Ground White Chocolate Flavor," "Ghirardelli® Chocolate Premium Hot Beverage – White Mocha," or "Ghirardelli® Chocolate Frappé Classico – Classic White" (the "Class").

Plaintiff also seeks to represent a "Subclass" comprised of all members of the Class who purchased "Ghirardelli® Chocolate Premium Baking Chips – Classic White."  For purposes of this Class Action Complaint, the unmodified word "Class" and the phrase "Class Members" shall refer collectively to all members of the Class and Subclass, including the named Plaintiff.

45.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

46.     Numerosity:  Plaintiff does not know the exact size of the class, but it is estimated that it is composed of more than 100 persons.  The persons in the class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

47.     Common Questions Predominate:  This action involves common questions of law and fact to the potential class because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led Defendant's customers to believe that the Fake White Chocolate Products were (or at a minimum contained) chocolate, white chocolate, cocoa and/or cocoa butter.   The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover.  The questions of law and fact common to the Class are (a) whether the use

of the word "Chocolate" on the primary display panel of the Fake White Chocolate Products, in the absence of the word "Imitation" or "Artificially Flavored," violated Federal and/or California state law and (b) whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief. Among the additional questions of law and fact common to the Subclass are:

g) Whether Defendant unfairly, unlawfully and/or deceptively failed to inform Subclass members that its Fake White Chocolate Chips were not (and did not contain) chocolate, white chocolate, cocoa or cocoa butter;

h) Whether Defendant misled Subclass members by, inter alia, representing that their Fake White Chocolate Chips were or had "chocolate," "baking chocolate," "premium" chocolate, "ground" chocolate, "classic white" chocolate, delivered the "ultimate chocolate indulgence," "melt-in-your mouth," "finest grind," "the luxuriously deep flavor and smooth texture of Ghirardelli Premium Baking Chocolate," and/or "the ultimate chocolate indulgence."

i) Whether Defendant's advertising and marketing regarding their Fake White Chocolate Chips sold to Subclass members was likely to deceive Subclass members or was unfair;

j) Whether Defendant engaged in the alleged conduct knowingly, recklessly, or negligently;

k) The amount of profits and revenues earned by Defendant as a result of the conduct; and

l) Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

48.   Typicality: Plaintiff's claims are typical of the Class (and Subclass) because, on June 24, 2012, he purchased one of the Fake White Chocolate Products, namely Defendant's Ghirardelli® Chocolate Premium Baking Chips – Classic White, in reliance on Defendant's misrepresentations and omissions that it was white chocolate. Thus, Plaintiff and class members sustained the same injuries and damages arising out of Defendant's conduct in violation of the

law. The injuries and damages of each class member were caused directly by Defendant's wrongful conduct in violation of law as alleged.

49. Adequacy: Plaintiff will fairly and adequately protect the interests of all class members because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to him for the unfair and illegal conduct of which he complains. Plaintiff also has no interests that are in conflict with or antagonistic to the interests of class members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and that of the class. By prevailing on his own claim, Plaintiff will establish Defendant's liability to all class members. Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

50. Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions world engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

51. Nexus to California. The State of California has a special interest in regulating the affairs of corporations that do business here. Defendant has its principal place of business in California, and the acts complained of herein emanated from decisions made by Defendant in California. Accordingly, there is a substantial nexus between Defendant's unlawful behavior and California such that the California courts should take cognizance of this action on behalf of a

class of individuals who reside anywhere in the United States.

52. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

Plaintiff does not plead, and hereby disclaims, causes of action under the Food Drug and Cosmetic Act ("FDCA") and regulations promulgated thereunder by the FDA. Plaintiff relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

## PLAINTIFF'S FIRST CAUSE OF ACTION
### (Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*) On Behalf of Himself and the Sub-Class

53. Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

54. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

55. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

56. Plaintiff and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

57. The Fake White Chocolate Chips that Plaintiff (and others similarly situated class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

58. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California

Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods they sell are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code §1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

59. Specifically, Defendant's acts and practices led customers to falsely believe that that its Fake White Chocolate Chips were (or contained) chocolate, white chocolate and/or its principal ingredient, cocoa butter. Finally, regarding California Civil Code §1770(a)(8), Ghirardelli falsely or deceptively markets and advertises that, unlike other chocolate manufacturers, it does the following with respect to the Fake White Chocolate Chips:

- "makes chocolate starting from the cocoa bean through to finished products";

- maintains intensive quality assurance in the selection of cocoa beans and accepts only the highest-quality beans;

- rejects as many as 40% of the beans that are offered to it, and the chocolate beans that are not selected by Ghirardelli are sold to other manufacturers;

- uses a proprietary blend of cocoa beans that has been refined over the company's 150-year history to provide the company's distinct and intense chocolate taste;

- roasts the cocoa beans in-house to ensure the company's signature flavor profile is consistently maintained in all chocolate products; and

- uses a different roasting process whereby it remove the shell first and then roast the small nibs inside and has more control over the temperature and time, so it can get a more specific flavor, whereas other companies roast their beans before re-moving the shell, which requires over-roasting the outside portion of the bean in order to roast the inside, which could impart a burned flavor to their chocolate.

60. Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the

1   future, Plaintiff and the other members of the Class will continue to suffer harm.

2        61.   More than thirty days prior to the filing of this First Amended Class Action

3   Complaint, Plaintiff gave notice and demand that Defendant correct, repair, replace or otherwise

4   rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  Defendant

5   failed to do so in that, among other things, it failed to identify similarly situated customers, notify

6   them of their right to correction, repair, replacement or other remedy; and provide that remedy.

7   Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of himself

8   and those similarly situated class members, compensatory damages, punitive damages and

9   restitution of any ill-gotten gains due to Defendant's acts and practices.

10        62.   Plaintiff also requests that this Court award him his costs and reasonable attorneys'

11  fees pursuant to California Civil Code § 1780(d).

12        **PLAINTIFF'S SECOND CAUSE OF ACTION**
     **(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
13        **On Behalf Of Himself and the Sub-Class**

14        63.   Plaintiff realleges and incorporates by reference the paragraphs of this Class

15  Action Complaint as if set forth herein.

16        64.   Beginning at an exact date unknown to Plaintiff, but within three (3) years

17  preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive

18  and/or misleading statements in connection with the advertising and marketing of their its White

19  Chocolate Chips.

20        65.   Defendant made representations and statements (by omission and commission)

21  that led reasonable customers to believe that they were purchasing white chocolate.  Defendant

22  deceptively failed to inform Plaintiff, and those similarly situated, that its Fake White Chocolate

23  Chips did not contain any chocolate, white chocolate, cocoa or cocoa butter.

24        66.   Plaintiff and those similarly situated relied to their detriment on Defendant's false,

25  misleading and deceptive advertising and marketing practices, including each of the

26  misrepresentations and omissions set forth in paragraphs 20, 24-28, 31 and 34-36 above.   Had

27  Plaintiff and those similarly situated been adequately informed and not intentionally deceived by

28  Defendant, they would have acted differently by, without limitation, refraining from purchasing

Defendant's Fake White Chocolate Chips or paying less for them.

67.     Defendant's acts and omissions are likely to deceive the general public.

68.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits.  Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

69.     The aforementioned practices, which Defendant used, and continue to use, to its significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendant's competitors as well as injury to the general public.

70.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

71.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein.  The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of this Class Action Complaint.

72.     Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future.  Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that the Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled.  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been

1    violated herein.

2       73.    As a direct and proximate result of such actions, Plaintiff and the other members of

3    the Subclass have suffered, and continue to suffer, injury in fact and have lost money and/or

4    property as a result of such false, deceptive and misleading advertising in an amount which will

5    be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

6                      **PLAINTIFF'S THIRD CAUSE OF ACTION**
                        **(Fraud, Deceit and/or Misrepresentation)**
7                       **On Behalf of Himself and the Sub-Class**

8       74.    Plaintiff realleges and incorporates by reference the paragraphs of this Class

9    Action Complaint as if set forth herein.

10      75.    On or about June 24, 2012, Defendant fraudulently and deceptively led Plaintiff to

11   believe that Defendant's Fake White Chocolate Chips were real white chocolate chips.

12   Defendant also failed to inform Plaintiff that Defendant's Fake White Chocolate Chips are not

13   and do not contain chocolate or white chocolate and are not derived from white chocolate / cocoa

14   butter.

15      76.    These omissions were material at the time they were made.  They concerned

16   material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase

17   Defendant's Fake White Chocolate Chips.

18      77.    Defendant made identical misrepresentations and omissions to members of the

19   Subclass regarding Defendant's Fake White Chocolate Chips.

20      78.    In not so informing Plaintiff and the members of the Subclass, Defendant breached

21   its duty to him.  Defendant also gained financially from, and as a result of, its breach.

22      79.    Plaintiff and those similarly situated relied to their detriment on Defendant's

23   fraudulent omissions.  Had Plaintiff and those similarly situated been adequately informed and

24   not intentionally deceived by Defendant, they would have acted differently by, without limitation,

25   not purchasing (or paying less for) Defendant's Fake White Chocolate Chips.

26      80.    Defendant had a duty to inform Subclass members at the time of their purchase of

27   that the Fake White Chocolate Chips that the product they were purchasing was not chocolate or

28   white chocolate and did not contain any cocoa butter.  Defendant omitted to provide this

information to Subclass members.  Subclass members relied to their detriment on Defendant's omissions.  These omissions were material to the decisions of the Subclass members to purchase Fake White Chocolate Chips.  In making these omissions, Defendant breached its duty to Subclass members.  Defendant also gained financially from, and as a result of, its breach.

81.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, to purchase the Fake White Chocolate Chips.

82.    Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's omissions, and, accordingly, were damaged by Defendant.

83.    As a direct and proximate result of Defendant's misrepresentations, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Fake White Chocolate Chips.

84.    Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

**PLAINTIFF'S FOURTH CAUSE OF ACTION**
**(Unfair, Unlawful and Deceptive Trade Practices,**
**Business and Professions Code § 17200, et seq.)**
**On Behalf of Himself and the Class**

85.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

86.    Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendant has engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint.

87.    In particular, Defendant has engaged, and continues to engage, in unlawful trade practices with respect to the Class by including the word "Chocolate" on the primary display panel of the Fake White Chocolate Products without stating that the producst are "Imitation,"

"Artificial" and/or "Artificially Flavored," in violation of Cal. Health & Safety Code § 110100(a), 110380, and 110505, which incorporate 21 C.F.R. §§ 101.3, 101.22 and 102.5.

88.     In addition, Defendant has engaged and continues to continues to engage in unfair, unlawful and deceptive trade practices with respect to the Subclass by, without limitation, the following:

a.      deceptively representing to Plaintiff, and the Subclass, the Fake White Chocolate Chips were and/or contained chocolate and/or white chocolate;

b.      failing to inform Plaintiff, and the Subclass, that the Fake White Chocolate Chips were not and did not contain chocolate, white chocolate and/or cocoa butter;

c.      engaging in fraud, deceit, and misrepresentation as described herein;

d.      violating the CLRA as described heredin;

e.      violating the FAL as described herein; and

f.      violating the Sherman Food, Drug and Cosmetic Act, Cal. Health & Saf. Code, including without limitation sections 110300, 110340, 110380, 110385, 110390, 110395, 110398, 110400, 110505, 110660, 110680, 110760, 110765, and/or 110770.

89.     Plaintiff and those similarly situated relied to their detriment on Defendant's unfair, deceptive and/or unlawful business practices.  Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by not purchasing (or paying less for) Defendant's Fake White Chocolate Products.

90.     Defendant's acts and omissions are likely to deceive the general public.

91.     Defendant engaged in these practices to increase its profits.  Accordingly, Defendant has violated section 17200, et seq. of the California Business and Professions Code.

92.     The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

93.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive

trade practices complained of herein, plus interest thereon.

94.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the practices complained of herein.

95.     The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Class Action Complaint.

96.     Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining Defendant from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future.  Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

97.     As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.   Among other things, Plaintiff and the class lost the amount they paid for the Fake White Chocolate Products.

98.     As a direct and proximate result of such actions, Defendant have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.   On Cause of Action Number 1 against Defendant and in favor of Plaintiff and the other members of the Subclass:

    1.   for restitution and injunctive relief pursuant to California Civil Code section 1780;

    2.   actual damages, the amount of which is to be determined at trial;

    3.   punitive damages, the amount of which is to be determined at trial; and

    4.   statutory damages as provided by Civil Code section 1780(b), the amount of which is to be determined at trial.

B.   On Causes of Action Number 2 against Defendant and in favor of Plaintiff and the other members of the Subclass:

    1.   for restitution pursuant to, without limitation, the California Business & Professions Code §§ 17500, et seq.; and

    2.   for injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17500, et seq.;

C.   On Cause of Action Number 3 against Defendant and in favor of Plaintiff and the other members of the Subclass:

    1.   an award of compensatory damages, the amount of which is to be determined at trial; and

    2.   an award of punitive damages, the amount of which is to be determined at trial.

D.   On Causes of Action Number 4 against Defendant and in favor of Plaintiff and the other members of the Class and Subclass:

    1.   for restitution pursuant to, without limitation, California Business & Professions Code §§ 17200, et seq.; and

    2.   for injunctive relief pursuant to, without limitation, California Business & Professions Code §§ 17200, et seq.;

E.   On all causes of action against Defendant and in favor of Plaintiff, class

members and the general public:

    1.   for reasonable attorneys' fees according to proof pursuant to applicable law (*see, e.g.,* Cal. Civ. Code ¶ 1780(e); Cal. Code Civ. Proc. § 1021.5);

    2.   for costs of suit incurred; and

    3.   for such further relief as this Court may deem just and proper.

<strong><u>JURY TRIAL DEMANDED</u></strong>

Plaintiff hereby demands a trial by jury.

Dated: January 11, 2013          **GUTRIDE SAFIER LLP**

_____
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Anthony J. Patek, Esq.
Kristen G. Simplicio, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff

First Amended Class Action Complaint

**PROOF OF SERVICE**

I, Seth A. Safier, declare:

My business address is 835 Douglass Street, San Francisco, California.  I am employed in the County of San Francisco, where this mailing occurs.  I am over the age of 18 years and not a party to the within cause.

On January 11, 2013, I served the following documents:

**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALI- FORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; AND UNFAIR BUSINESS PRACTICES**

on the following person(s) in this action by placing a true copy thereof as follows:

Thomas B. Mayhew (State Bar No. 183539)
tmayhew@fbm.com
Deborah K. Barron (State Bar No. 257146)
dbarron@fbm.com
Benjamin J. Sitter (State Bar No. 273394)
bsitter@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

[x]      BY ELECTRONIC MAIL.  I caused said documents to be transmitted by electronic mail via ECF to the email address indicated after the address(es) above.

I declare under penalty of perjury under the laws of the State of California that the forego- ing is true and correct and that this document was executed on January 11, 2013, at San Francisco, California.

_____

Seth A. Safier, Esq.