1   Thomas B. Mayhew (State Bar No. 183539)
        tmayhew@fbm.com
2   Deborah K. Barron (State Bar No. 257146)
        dbarron@fbm.com
3   Benjamin J. Sitter (State Bar No. 273394)
        bsitter@fbm.com
4   Farella Braun + Martel LLP
    235 Montgomery Street, 17th Floor
5   San Francisco, CA  94104
    Telephone:  (415) 954-4400
6   Facsimile:  (415) 954-4480

7   Attorneys for Defendant
    GHIRARDELLI CHOCOLATE COMPANY

8

9                       UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11

12   SCOTT MILLER, an individual, on behalf      Case No. 3:12-cv-04936-LB
     of himself, the general public and those
13   similarly situated,                         **DEFENDANT GHIRARDELLI
                                                 CHOCOLATE COMPANY'S NOTICE OF**
14                    Plaintiff,                  **MOTION AND MOTION TO DISMISS**

15          vs.                                   **CLASS ACTION**

16   GHIRARDELLI CHOCOLATE               Date:        Hon. Laurel Beeler
     COMPANY, and DOES 1 THROUGH 50,    Time:        March 21, 2013
17                                       Location:    11:00 a.m.
                      Defendants.        Courtroom:   15th Floor, Courtroom C
18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)                                              28172\3510145.6

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on March 21, 2012 at 11:00 a.m., or as soon thereafter as this matter may be heard in Courtroom C, 15th Floor, of this Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Ghirardelli Chocolate Company ("Ghirardelli") will and hereby does move the Court for an order dismissing the claims in Paragraphs 87 and 88(f) of Plaintiff Scott Miller's First Amended Class Action Complaint ("FAC") without leave to amend.  This motion is made pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(1), and 12(b)(6) and is based on the following grounds:

1.  Miller lacks standing under Article III of the U.S. Constitution to sue about products he did not purchase.

2.  The Fourth Cause of Action of Miller's FAC, to the extent it is based on alleged violations of the Sherman, Food, Drug & Cosmetic Law under the "unlawful" prong of Business & Professions Code Section 17200 (FAC ¶¶ 87 and 88(f)) fails to state claims upon which relief can be granted as a matter of California law.

Based upon these grounds, Ghirardelli requests that this Court dismiss all claims based on the products other than the white chips, and all claims based on the Sherman, Food, Drug & Cosmetic Law:  i.e., the 17200 claims made in paragraphs 87 (for the "Class") and 88(f) (for the "Subclass").

This motion is based upon this notice of motion, the memorandum of points and authorities, the pleadings and documents on file in this lawsuit, the Motion to Dismiss and supporting Declaration of Heather Saunders, the Declaration of Deborah Barron, the proposed order, and such other matters and arguments as may come before the Court, including the reply briefing and oral argument.

Dated:  February 14, 2013          FARELLA BRAUN + MARTEL LLP

By:/s/ Thomas B. Mayhew
    Thomas B. Mayhew

Attorneys for Defendants
GHIRARDELLI CHOCOLATE COMPANY

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)

28172\3510145.6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS & AUTHORITIES ........................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) ................................................. 2

ARGUMENT .............................................................................................................. 3

I.      MILLER LACKS STANDING TO SUE ABOUT PRODUCTS HE DID NOT PURCHASE ....................................................................................................... 3

II.      PLAINTIFF'S CLAIMS BASED ON THE SHERMAN FOOD, DRUG & COSMETIC LAW SHOULD BE DISMISSED .................................................. 7

     A.      The Claims Based On Violation Of The "White Chocolate" Standard Of Identity, As Purportedly Incorporated Into The Sherman Food Law, Should Be Dismissed ................................................................................................ 8

     B.      Ghirardelli Need Not Put The Word "Imitation" On The Products ...................... 11

     C.      Ghirardelli Need Not Put The Words "Artificially Flavored" On The Products .......................................................................................................... 13

     D.      The "Common Or Usual Name" Regulation Does Not Apply ............................. 14

CONCLUSION ......................................................................................................... 16

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)

- i -

28172\3510145.6

# TABLE OF AUTHORITIES

**Page**

## FEDERAL COURT CASES

*Anderson v. Jamba Juice Co.,*
  2012 U.S. Dist. LEXIS 12072 (N.D.Cal. Aug. 25, 2012) ........................................................ 3

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................................... 16

*Carrea v. Dryers Grand Ice Cream, Inc.,*
  2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ......................................................................... 7

*Comm. for Accurate Labeling & Mktg. v. Brownback,*
  665 F. Supp. 880 (D. Kan. 1987) ....................................................................................... 12

*Dysthe v. Basic Research LLC,*
  2011 WL 5868307 (C.D. Cal. June 13, 2011) ....................................................................... 7

*Grocery Mfgrs. of Am., Inc. v. Gerace,*
  755 F.2d 993 (2d Cir. 1985) ............................................................................................... 12

*Johns v. Bayer Corp.,*
  2010 WL 2573493 (S.D. Cal. 2010) ..................................................................................... 7

*Rooney v. Cumberland Packing Corp.,*
  2012 WL 1512106 (S.D. Cal. April 16, 2012) .................................................................. 5, 6

## CALIFORNIA STATE COURT CASES

*Brock v. Super. Ct.,*
  9 Cal. 2d 291 (1937) ........................................................................................................... 9

*City of Bakersfield v. Miller,*
  64 Cal. 2d 93 (1966) ......................................................................................................... 10

*In re Farm Raised Salmon,*
  42 Cal. 4th 1077 (2008) ....................................................................................................... 8

*People v. Kruger,*
  48 Cal. App. 3d Supp. 15 (1975) ......................................................................................... 9

*People v. Williams,*
  175 Cal. App. 3d Supp. 16 (1985) ..................................................................................... 10

*Plastic Pipe and Fittings Ass'n v. Cal. Bldg. Standards Comm'n,*
  124 Cal. App. 4th 1390 (2004) ......................................................................................... 10

## FEDERAL STATUTORY AUTHORITIES

21 U.S.C. § 337(a) ................................................................................................................. 8

## STATE STATUTORY AUTHORITIES

Cal. Bus. & Prof. Code
  § 17200 ................................................................................................................... *passim*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)

- ii -

28172\3510145.6

Cal. Health & Safety Code
    § 26510 ................................................................................................................ 11
    § 110100(a) ......................................................................................................... 4, 9
    § 110380 ........................................................................................................ 4, 8, 9, 11
    § 110505 ........................................................................................................ 4, 8, 9, 11
    § 110685 ............................................................................................................ 8, 12

### FEDERAL RULES AND REGULATIONS

21 C.F.R.
    § 101.3 ............................................................................................................. *passim*
    § 101.22 ........................................................................................................... *passim*
    § 102.5 ............................................................................................................. *passim*
    § 102.23 ............................................................................................................. 15, 16
    § 102.54 .................................................................................................................. 15
    § 163.111 ................................................................................................................. 1
    § 163.124 ......................................................................................................... *passim*

37 Fed. Reg, 12327 ..................................................................................................... 15

38 Fed. Reg. 6964 ....................................................................................................... 15

38 Fed. Reg. 6965 ....................................................................................................... 15

67 Fed. Reg. 62171 ................................................................................................. 11, 15

### OTHER AUTHORITIES

F. Scott Boyd, "Looking Glass Law:  Legislation By Reference In The States," La. L.
    Rev. 1201 (2008)........................................................................................................ 10

*Freimuth v. State,*
    272 So.2d 473 (Fla. 1972)......................................................................................... 11

*In re Castleberry's Food Co.,*
    40 Agric. Dec. 1262 (U.S.D.A. 1981)....................................................................... 12

*In re Kraft, Inc*.,
    114 F.T.C. 40 (F.T.C. 1991) ..................................................................................... 12

*Lee v. State*,
    635 P.2d 1282 (Mont. 1981) ..................................................................................... 10

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

1

2

# MEMORANDUM OF POINTS & AUTHORITIES

## INTRODUCTION AND SUMMARY OF ARGUMENT

3

4

5

6

7

8

9

"White chocolate" is not chocolate.  It's not!  *Compare* 21 C.F.R. § 163.111 *with* 21 C.F.R § 163.124.  But in an attempt to create standing to sue about products he never saw, Plaintiff Scott Miller now changes the theory of his case to allege that the word "Chocolate" in the Ghirardelli corporate logo – independent of the rest of the packaging – will lead consumers to think that the white frappe, white baking chips, white chocolate flavor mix, white chocolate flavored confectionary coating wafers, and white mocha beverage mix (the "White Products") are not "white chocolate" (as he alleged before) but instead are "chocolate" or taste like "chocolate."

10

11

12

13

14

15

16

17

18

If Miller really means that, without looking at the rest of the label, people think that the "characterizing flavor" of the product is "chocolate" based on the logo alone (FAC ¶ 21), the claim lacks merit as a matter of law.  No one looking at the labels, not even Miller himself, expects these products to taste like chocolate.  If he means instead that when the logo is combined with other elements of the packaging or marketing, the combination misleads consumers into thinking that they are getting a chocolate product, a white chocolate product, or one containing cacao butter, then he lacks standing to sue about the White Products except for the white baking chips:  As the Court already ruled, the combination of labeling elements and ingredients is different for each product, but Miller bought only the chips.

19

20

21

22

23

24

25

26

27

28

On the merits, Plaintiff's Section 17200 claims based on the California Sherman Food, Drug & Cosmetic Law ("Sherman Food Law"), *see* FAC ¶¶ 87 and 88(f) – should be dismissed. Ghirardelli did not violate the regulations Plaintiff cites.  First, the California Legislature never validly adopted the FDA "white chocolate" regulation!  It adopted FDA regulations as they existed in 1970 and 1992, but never voted on adopting FDA regulations passed after that date. Because the state legislature cannot validly delegate its legislative power to the FDA to create new laws under the Sherman Food Law, the Plaintiff's "unlawful" prong claim predicated on the adoption by California of the FDA white chocolate rule in 2002 fails as a matter of law.  Second, the "imitation" and "artificially flavored" regulation arguments fail because Plaintiff has not alleged that the product is nutritionally inferior or contains artificial flavoring.  And finally, the

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)

- 1 -

28172\3510145.6

references to 21 C.F.R § 102.5 do not state a claim because neither the applicability of that section, nor its violation, is alleged.

## ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))

1.  Whether Miller has Article III standing to make claims about products he never purchased.

2.  Whether Miller's Section 17200 "unlawful" prong claims based on violation of the Sherman Food Law, in paragraphs 87 and 88(f) of the FAC, state claims upon which relief can be granted:

    a.      Because the white chocolate regulation, 21 C.F.R. § 163.124, was never validly adopted as part of the Sherman Food Law by the California Legislature;

    b.      Because the "imitation" regulation, 21 C.F.R. § 101.3, as incorporated into the Sherman Food Law, does not apply without allegation of nutritional inferiority;

    c.      Because the "artificial flavoring"/ "artificial"/ "artificially flavored" regulation, 21 C.F.R. § 101.22, as incorporated into the Sherman Food Law, does not apply without allegation of "artificial flavoring" that "simulates, reinforces, or resembles" a primary characterizing flavor that is represented, and because the labels do not indicate that the products will have the characterizing flavor of "chocolate";

    d.      Because the "common or usual name" regulation, 21 C.F.R. § 102.5, as incorporated into the Sherman Food Law, does not apply because no "common or usual name" has been established for the products at issue, and no violation of the regulation is alleged.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)                    - 2 -                              28172\3510145.6

1    **ARGUMENT**

2    **I.    MILLER LACKS STANDING TO SUE ABOUT PRODUCTS HE DID NOT
3    PURCHASE.**

4           Plaintiff Scott Miller again tries to sue about five Ghirardelli products he never purchased:

5    "sweet ground white chocolate flavor" mix, "white chocolate flavored confectionary coating

6    wafers," "white mocha" hot beverage mix, and "classic white frappe" beverage mix (the "Other

7    Products").   *See* FAC ¶¶ 20-23, 44, 47, 87.  But Miller never bought the Other Products; he

8    purchased only the white baking chips.  First Amended Complaint ("FAC") ¶ 41.  Miller

9    therefore lacks Article III (as well as Proposition 64) standing to sue about the Other Products.

10          This Court has already ruled that Miller lacks standing to pursue claims for the Other

11   Products because "the products are too different, and their labeling is dissimilar."  Order Granting

12   in Part and Denying in Part Def.'s Mot. to Dismiss ("Order") dated 12/7/12 (Dkt. # 20) at 13; *see*

13   *also Anderson v. Jamba Juice Co.*, 2012 U.S. Dist. LEXIS 12072, *4 (N.D. Cal. Aug. 25, 2012)

14   (identifying the "critical inquiry" of "whether there is sufficient similarity between the products

15   purchased and not purchased").  The new claim about the logo does not change the result.

16   Indeed, the Court previously rejected the argument that the common logo is enough to grant

17   Miller standing to sue about the other products:

18          The products have some similarities . . . they are branded "Ghirardelli Chocolate,"
     they do not contain cacao butter, . . . [and] the products' labeling (by juxtaposition
19          to the brand "Ghirardelli Chocolate") suggests a connection to chocolate . . . .  But
     these similarities and Miller's other allegations about the labeling of the products
20          do not establish the kind of similarity that courts find persuasive in conferring
     standing over similar (but unpurchased) products.
21

22   Order at 10-11.  Because the merits of Miller's "unlawful" trade practices claims turn on the

23   content of each of the dissimilar labels, Miller lacks standing to sue about the Other Products.

24   Miller's standing fails on the same grounds as before:  the products, their labels, and the message

25   received from reading the labels are different for each product.

26   \\\

27   \\\

28   \\\

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.        - 3 -                                    28172\3510145.6
(CASE NO. 3:12-CV-04936-LB)

In an attempt to avoid the Court's prior ruling on standing, Plaintiff's First Amended Complaint ("FAC") asserts a claim against all of the White Products based on the Ghirardelli corporate logo:



*See* Decl. of Heather Saunders in Supp. of Def.'s Mot. to Dismiss Exhs. A-F, and Reply Decl. of Heather Saunders Exh. G (compiling labels and submitting samples to the court), Dkt. # 9 and 18. Plaintiff's sole claim on behalf of the "Class" (which includes purchasers of all five products) as opposed to the "Subclass" (white baking chips purchasers only), is that the logo is "unlawful." FAC ¶ 87 (claiming the logo violates the unlawful prong of Business & Professions Code § 17200, by violating California Health & Safety Code §§ 110100(a), 110380, and 110505, which Miller alleges incorporate 21 C.F.R. §§ 163.124, 101.3, 101.22 and 102.5, "by including the word 'Chocolate' on the primary display panel . . . ."). Plaintiff further articulates the unlawful logo theory at paragraphs 20-21:

> 20.     The packaging for all the Fake White Chocolate Products is inconsistent with the FDA regulations, and those embodied in the state law for a uniform reason:  All the packaging prominently uses the term "chocolate" on the primary label panel when the products, in fact, contain no chocolate or white chocolate, cocoa butter, cacao fat, or any cacao derivatives.

> 21.     The word "Chocolate" is used on the front panel immediately following the brand name "Ghirardelli®" in a manner that suggests that it is the "characterizing flavor," 21 C.F.R. § 101.22(i), of the product.  The label shows "Ghirardelli®" is the brand name (as it is followed by the registered trademark symbol) and "Chocolate" as the flavor (as it is in a smaller font and not followed by any trademark symbol.  The label does not state the brand name as "Ghirardelli Chocolate Company."  Moreover, even if it had done so, or even if "Ghirardelli® Chocolate" were deemed to be a "trademark or brand," the regulations would require the statements about "artificial" or "imitation" immediately following that

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)

- 4 -

28172\3510145.6

trademark or brand.  *Id.* §§ 101.22(i)(3), 101.3.

FAC ¶¶ 20-21.

Miller's attempt to create standing fails, because the merits of his unlawful logo claim will turn on the message conveyed to different consumers by the different labels.  The logo alone doesn't mislead; if it did, everyone would think that the products were "chocolate" – and white chocolate is not chocolate.  The validity of Miller's claim will instead be determined by looking at each White Product label as a whole, not by reading one word in isolation:

***Is it chocolate?*** (***No, read the whole label.***)  Miller now claims, contrary to the theory of his original complaint, that the logo tells people that each of the White Products is not "white chocolate," but instead is actual chocolate.[1]  The word "chocolate" appears on a blue background along with the word "Ghirardelli," indicating that those two words are to be read together, and is grouped with an eagle, the words "San Francisco," and a stylized ribbon that says "Founded in 1852" to create a company trademark.[2]  If the logo were placed on a bag of jelly beans, no one would think that the jelly beans will taste like chocolate; if the logo were placed on a bag of bagels, no one would think that the characterizing flavor of the bagels was chocolate.[3]  The logo alone does not suggest what the product is or its characterizing flavor.  *See Rooney v.*

---

[1]    FAC ¶ 21 ("The word 'Chocolate' is used on the front panel . . . in a manner that suggests that it is the 'characterizing flavor' . . . of the product."); FAC ¶ 22 ("These actions further deceive customers into believing that all the [Other Products] contain chocolate."); FAC ¶ 23 ("Defendant did not disclose that the [Other Products] were not chocolate . . . nor were they flavored with chocolate.  To do so, they would at a [minimum] have been required to state in the appropriate font size and type . . . 'Imitation' (or . . . 'artificial' or 'artificially flavored.') Accordingly, all the packaging violated the state and federal regulations set forth above."

[2]    The logo, including "San Francisco," "Founded in 1852," and "Ghirardelli Chocolate," along with the eagle and the decorations, was filed with the U.S. Patent and Trademark Office in 1999, and registered as a trademark in September 2002.  *See* Exhibit A to the Declaration of Deborah Barron ("Barron Decl." ).  The name "Ghirardelli" had been separately registered in 1925.  *See* Exh. B to Barron Decl.

[3]    Do consumers assume that everything sold in a package with the brand name "Dunkin' Donuts" is donuts?  Not if they see that the rest of the package says "bagels" or "coffee."  The brand name is Dunkin' Donuts; the product identity is "bagels" or "coffee."  And people do not assume that the bagels or coffee will taste like (or, have the "primary characterizing flavor" of) donuts.  Reasonable consumers understand that the brand name alone will not answer the question of what is in a food package.  Determining whether a label communicates a characterizing flavor, or a statement of identity, requires looking at the label as a whole, not just picking a logo or single word on the label and ignoring the rest.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)                                - 5 -                                28172\3510145.6

*Cumberland Packing Corp.*, 2012 WL 1512106 (S.D. Cal. April 16, 2012) (holding that a reasonable consumer would not conclude that "Sugar in the Raw" is raw, unprocessed and unrefined sugar, where "[a]side from the brand name, the word raw does not appear on the packaging.").

      To find out what a product is, or its characterizing flavor where indicated, the rest of the label must be reviewed.  By reviewing the label, consumers are able to learn that certain products with the Ghirardelli logo are bittersweet or semisweet chocolate; on other packages, characterizing flavors like "chocolate mint" are identified.  By reviewing the label, consumers are able to learn that a white chocolate baking bar bearing the Ghirardelli logo is white chocolate (not actual "chocolate") – because the name of that product, as opposed to the name of the company – is "White Chocolate Premium Baking Bar."  FAC ¶ 25.  By reviewing the label, consumers are able to learn that they are buying products called "white frappe," "white baking chips," or "white mocha" – and no one will think that the products will taste like chocolate.  Indeed, even Miller did not expect that the logo meant that the product's "primary recognizable flavor" would be "chocolate."[4]  FAC ¶ 42 ("Plaintiff tasted [the white baking chips] and noticed that they did not at all taste like white chocolate.").  The only way to assess what the logo tells consumers about what a product is or its characterizing flavor is to view it in the context of the whole label.  And because each label and product is different, Miller lacks standing.

      ***Is it white chocolate?  (No, read the label.)***  After having said that people (improbably) believe that all products bearing the Ghirardelli logo have the "characterizing flavor" of chocolate, FAC ¶ 21, and/or "contain chocolate," FAC ¶ 22, Plaintiff returns to his original theory that people believe the products are "white chocolate" because the label does not say they are not.  FAC ¶ 23 ("Defendant did not disclose that the [products] were not chocolate, *white chocolate*, nor were they flavored with chocolate or *white chocolate*.") (emphasis added); FAC ¶ 20 ("All

---

[4]    One important reason is that everyone knows that chocolate is brown.  If you see a product that is white, or cream colored, you do not expect that its primary recognizable flavor will be chocolate – indeed, even chocolate made with cacao butter does not taste like chocolate.  And the logo would not persuade any reasonable person otherwise.  But again, assessing the claim in this fashion requires looking at each package, and the impression it conveys, separately.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)

- 6 -

28172\3510145.6

the packaging prominently uses the term 'chocolate' on the primary label panel when the products, in fact, contain no chocolate or white chocolate, cocoa butter, cacao fat, or any cacao derivatives."); *see also* original Complaint ¶¶ 1, 20, 24, 36, 48 (failure to disclose, and word "chocolate" in logo, deceived consumers to believe product contained "white chocolate" or "cocoa butter"). This claim falls squarely within the Court's prior ruling on standing. Whether people could reasonably read the label as implying or suggesting that each of the products contain white chocolate (or cacao butter), depends on what the entire label says. And because each product and label is dissimilar, Miller can only sue about the product and label that he claims injured him – the white chips. Order, Dkt. # 20 at p. 13; *see, e.g.*, *Carrea v. Dryers Grand Ice Cream, Inc.*, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) (dismissing claims to unpurchased product because labels were dissimilar to the purchased product); *Dysthe v. Basic Research LLC*, 2011 WL 5868307, at *4 (C.D. Cal. June 13, 2011) ("Plaintiff does not have standing to bring her CLRA, UCL, or warranty claim based on a product that she never purchased."), *citing Johns v. Bayer Corp.*, 2010 WL 2573493 (S.D. Cal. 2010) (Plaintiff "cannot expand the scope of his claims to include a product he did not purchase . . . .").

## II.     PLAINTIFF'S CLAIMS BASED ON THE SHERMAN FOOD, DRUG & COSMETIC LAW SHOULD BE DISMISSED.

In his Section 17200 claim, Plaintiff alleges that all of the White Products are "unlawful" because they violate certain FDA regulations that are incorporated into the Sherman Food Law. Plaintiff claims:

a.     That Ghirardelli violates the "white chocolate" definition because the products do not contain cacao butter as required by 21 C.F.R. §§ 163.124 (the "standard of identity" for white chocolate).

b.     That Ghirardelli violates the "imitation" regulation, 21 C.F.R. § 101.3.

c.     That Ghirardelli potentially violates the "artificially flavored" regulation, 21 C.F.R. § 101.22.

d.     That Ghirardelli violates the "common or usual name" regulation, 21 C.F.R. § 102.5.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)                - 7 -                          28172\3510145.6

As a matter of law, Plaintiff's "unlawful" claims based on the Sherman Food Law lack merit and should be dismissed for failure to state a claim.  *See* FAC ¶¶ 88, 87(f).

### A.   The Claims Based On Violation Of The "White Chocolate" Standard Of Identity, As Purportedly Incorporated Into The Sherman Food Law, Should Be Dismissed.

At the core of Plaintiff's case is the claim that Ghirardelli misleadingly labels or advertises its White Products as "white chocolate" in violation of the standard of identity for white chocolate contained in 21 C.F.R. § 163.124.[5]  Plaintiff expressly does not seek to enforce the federal regulation, however.[6]  He instead sues under a parallel state statutory system which he alleges "independently adopted" the federal standard of identity, as part of the Sherman Food

---

[5]     For example, Plaintiff alleges at FAC ¶¶ 88(f) a laundry list of Sherman Food Law provisions as the basis for the "unlawful" prong claim on behalf of the Subclass (white chips only).  Included in this list are a number of general mislabeling provisions, including specifically Health & Safety Code § 110505, which purports to incorporate all federal definitions and standards of identity into the Sherman Food Law.  The FAC alleges that the mislabeling claims are based on the theory that the federal standard of identity requires cacao butter for white chocolate products, FAC ¶ 17, and that the White Products lack cacao butter.  *See, e.g.,* FAC ¶ 20, 23, 42.  Meanwhile, other aspects of the Sherman Food Law also depend for their application on the existence of a standard of identity.  *See, e.g.,* Health & Safety Code § 110685 (governing the word "imitation").

[6]     The FAC is specific that Plaintiff does not intend to try and enforce the FDA rules separately, as opposed to as incorporated into the Sherman Food Law.  FAC p. 16 (unnumbered preface to "Causes of Action":  "Plaintiff does not plead, and hereby disclaims, causes of action under the [federal] Food, Drug and Cosmetic Act ("FDCA") and regulations promulgated thereunder by the FDA.").  The likely reason for Plaintiff's strategic pleading choice is to avoid a preemption argument.  In 21 U.S.C. § 337(a), Congress provided that only the FDA has the power to enforce or restrain violations of the FDCA:  "Except as provided in subsection (b) [providing for States to enforce if they give the federal government 30 days notice and opportunity to proceed], all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."  In *In re Farm Raised Salmon*, 42 Cal. 4th 1077, 1084 (2008), the California Supreme Court held that while this provision "precludes private enforcement of the FDCA" (*id.* at 1085), this provision did *not* preempt an action to enforce the Sherman Food Law (which in many cases has rules identical to FDA requirements).  *See id.* at 1097 ("All of these cases rejected claims or defenses because they were based on violations of the FDCA itself.[19] The district courts reasoned that directly applying the FDCA, as would have been required, would run afoul of section 337.  By contrast, Plaintiffs' claims in this case do not require referring to, or applying, the FDCA.  Plaintiffs' claims are based on violation of the Sherman Law and can be resolved with reference to state law alone.").  Thus in trying to avoid preemption and stay within the bounds of *In re Farm Raised Salmon*, Plaintiff cites and discusses FDA rules at length in his complaint, *see, e.g.,* FAC ¶¶ 14-18 ("Regulations Governing Labeling of Chocolate And White Chocolate"), but limits his "unlawful" prong 17200 claim to violation of the Sherman Food Law, which Plaintiff asserts incorporates the FDA rules by reference, *see* FAC ¶¶ 19, rather than the FDA rules themselves.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)                     - 8 -                          28172\3510145.6

1   Law.  *See* FAC ¶¶ 19, 88(f).  But due to a peculiar aspect of California law, the Sherman Food

2   Law does not perfectly parallel the federal FDCA.  Unlike the federal FDCA, the Sherman Food

3   Law lacks the definition of "white chocolate" that is at the core of Plaintiff's complaint.

4        Sections of the Sherman Food Law adopted in 1970 and 1992 *attempt* to parallel the

5   FDCA by incorporating it by reference into California law.  *See* Cal. Health & Safety Code §§

6   110100(a) (passed in 1992: "All food labeling regulations and any amendments to those

7   regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or

8   after that date shall be the food labeling regulations of this state." ); 110380 (passed in its current

9   substantive form in 1970, renumbered in 1995:  "All regulations and their amendments . . . that

10  are in effect on the effective date of this part, or that are adopted on or after that date . . .");

11  110505 (passed in its current substantive form in 1970, renumbered in 1995:  "Definitions and

12  standards of identity . . . and any amendments to the definitions and standards, adopted pursuant

13  to the federal act in effect on the effective date of this part, or adopted on or after that date, are the

14  definitions and standards of identity . . . in this state.").  But these statutory provisions are

15  constitutionally flawed:  To the extent the Sherman Food Law prospectively adopts future

16  regulations of a federal agency, it is an unconstitutional delegation of the California Legislature's

17  lawmaking function in violation of Article IV, Section 1 of the California State Constitution.

18       The California Legislature has no power to prospectively adopt future regulations of a

19  federal agency.  The Legislature can incorporate federal or other states' regulatory schemes into

20  California law, but only if those other schemes already exist at the time the Legislature passes the

21  law:

22       It is, of course, perfectly valid to adopt *existing* statutes, rules or regulations of
         Congress or another state, by reference; but the attempt to make *future* regulations
23       of another jurisdiction part of the state law is generally held to be an
         unconstitutional delegation of legislative power.
24
    *Brock v. Super. Ct.*, 9 Cal. 2d 291, 297 (1937) (emphasis added); *People v. Kruger*, 48 Cal. App.
25
    3d Supp. 15, 18-19 (1975) (state law that incorporated federal fishing regulations "as such
26
    regulations may be revised or amended in the future" was unconstitutional delegation:  "While
27
    existing statutes may be incorporated by reference, prospective incorporation has never been
28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.          - 9 -                                    28172\3510145.6
(CASE NO. 3:12-CV-04936-LB)

approved by a California court.") (following *Brock*); *People v. Williams*, 175 Cal. App. 3d Supp. 16, 24 (1985) ("Further, the California Legislature may condition the continued validity of a statute upon a state of events in the control of a third party, be it a private or governmental agency, as long as California retains control over fundamental policy decisions, insures against abuses of the delegated power, and makes no attempt to enact future regulations of another jurisdiction as part of state law. . . . The California statute does not provide that, if the federal maximum speed limit is ever revised, such amendment will be automatically applicable in California.")[7]; *cf. also Plastic Pipe and Fittings Ass'n v. Cal. Bldg. Standards Comm'n*, 124 Cal. App. 4th 1390, 1410 (2004) (Model code could not become California law without any review by state agency, despite agency rule purporting to adopt model codes; "For the Legislature to grant a private association such as the International Association of Plumbing and Mechanical Officials the power to make law with no direction from the Legislature and no review by a state agency would be unconstitutional."); *City of Bakersfield v. Miller*, 64 Cal. 2d 93, 98 (1966) (Adopting building codes is not improper delegation where "City of Bakersfield adopted an existing text" instead of "adopt[ing] in advance changes which the association might choose to make in the future.").[8]

---

[7]     *People v. Williams*, upholding the California 55 mile per hour speed limit because it did not make federal speed limit revisions "automatically applicable" expressly distinguished *Lee v. State*, 635 P.2d 1282 (Mont. 1981), where the Montana Supreme Court held that an adoption of the 55 mile per hour speed limit in language that mandated changing the Montana maximum speed limit "to equal the maximum speed limit established by the federal government *whenever* the federal government" changed its laws was an unconstitutional delegation of state legislative power. *Williams*, 175 Cal. App. 3d Supp. at 25-26 (emphasis in original).

[8]     The bar on incorporating future laws of another jurisdiction derives from the state constitutional grant of legislative power to the Legislature; the Legislature cannot delegate its lawmaking function to someone else. "When an external incorporative reference [i.e., a state statute that refers to an "external" source outside state law] purports to adopt not only material in existence at the time the reference is made, but also subsequent changes to that material, most states have recognized that an unconstitutional delegation arises under some circumstances. It is impossible for the legislating body to know what changes may later be made by the entity promulgating the referenced material, or to exercise policy discretion with respect to those changes. The conclusion is that the legislating body has therefore allowed future amendment of the governing law to occur without the exercise of its discretion and so has abdicated its assigned role." F. Scott Boyd, "Looking Glass Law: Legislation By Reference In The States," 68 *La. L. Rev.* 1201, 1256-57 (2008).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)                    - 10 -                    28172\3510145.6

At the time California Health & Safety Code Section 110505, which adopts federal standards of identity into California law, was passed in its current substantive form in 1970,[9] the FDA "white chocolate" standard of identity did not yet exist. *See* 67 Fed. Reg. 62171 (Oct. 4, 2002) (adopting "white chocolate" standard of identity).[10]   The Legislature could not in 1970 or 1992 prospectively delegate to the FDA the power to define what conduct would violate the California Sherman Food Law; it could only incorporate those FDA rules that existed at the time the law passed.  Because the "white chocolate" standard of identity was not adopted until 2002, it never validly became part of the California Sherman Food Law.  67 Fed. Reg. 62171 (Oct. 4, 2002).  The "unlawful" prong claim, to the extent based on the white chocolate standard of identity, should therefore be dismissed.

## B.  Ghirardelli Need Not Put The Word "Imitation" On The Products.

Plaintiff also argues that the label of the white baking chips – and all the Other Products – violated 21 C.F.R. § 102.5 by failing to include the word "imitation."  FAC ¶¶ 21 ("the regulations . . . require the statements about . . . 'imitation' immediately following [the] trademark or brand."), 23, 87, 88(f).  Ghirardelli is not required to state "imitation" on the label of the white baking chips or other products.

First, the word "imitation," as specified in 21 C.F.R. § 101.3(e), is required for a product "if it is a substitute for and resembles another food but is nutritionally inferior to that food."  21

---

Thus, for example, in *Freimuth v. State*, 272 So. 2d 473 (Fla. 1972), the Florida Supreme Court was forced to strike down a state law drug conviction, because while the Florida Legislature's 1967 law defined "hallucinogenic drugs" as including "any other drug to which the drug abuse laws of the United States apply," Congress had not declared STP a hallucinogenic drug until 1968.  The Court held that adopting future federal changes was an unconstitutional delegation of legislative power.

[9]  Section 110505 was originally numbered Health & Safety Code Section 26510, but was renumbered as Section 110505 in 1995.  *See* Stats. 1995 ch. 415 § 6 (SB 1360).

[10]     Section 110505 is the most specific statute declaring that "standards of identity . . . adopted pursuant to the [FDCA] . . . are the . . . standards of identity . . . in this state."  Section 110380, incorporating regulations promulgated under the Fair Packaging and Labeling Act, does not really appear to apply, but even if it did, it too was adopted in 1970 and renumbered in 1995. Section 110100, adopting "all food labeling regulations" is less specific than 110505; it was passed in 1992 and renumbered in 1995.  All three statutes – 110100, 110380, and 110505 – contain the same "adopted on or after that date" language.

1   C.F.R. § 101.3(e)(1); *In re Kraft, Inc.*, 114 F.T.C. 40, 91-92 (F.T.C. 1991) ("FDA regulations

2   define imitations as nutritionally inferior . . ."); *In re Castleberry's Food Co.*, 40 Agric. Dec.

3   1262, 1269-70 (U.S.D.A. 1981) ("In determining whether a product should be labeled as

4   "imitation" . . .the [FDA] considers whether the product is nutritionally inferior to the product

5   imitated.  If the product is not determined to be nutritionally inferior, the Department permits a

6   descriptive term or fanciful name, rather than the "imitation" label."). Indeed, "[a] nutritionally

7   equivalent or superior substitute would be misbranded under federal law if it was labeled with the

8   term 'imitation.'"  *Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993, 997-98 (2d Cir. 1985).

9   "Nutritional inferiority is determined by comparing percentages of 'essential nutrients' in the

10  substitute food to those in the food for which it substitutes.  The essential nutrients are protein and

11  the nineteen vitamins and minerals for which the federal government has established

12  recommended daily allowances."  *Comm. for Accurate Labeling & Mktg. v. Brownback*, 665 F.

13  Supp. 880, 882-83 (D. Kan. 1987).[11]  Plaintiff never alleges that any of the products are

14  "nutritionally inferior" to chocolate – the only food name used in the logo – or, for that matter, to

15  white chocolate.  Nothing about the nutritional characteristics of any of the products is alleged.

16  "Imitation" does not have to appear after the logo,[12] or anywhere else.

17          Second, under California law the word "imitation" is used only "if it is an imitation of

18  another food for which a definition and standard of identity has been established by

19  regulation . . . ."  Cal. Health & Safety Code § 110685.  Because, as set forth in the previous

20  section, there is no standard of identity that has been established in California for white chocolate,

21  there is no violation of California law for failing to label the product as "imitation white

22  chocolate."

---

23  [11]     The FDA Commissioner has the power under 21 C.F.R. § 101.3(e)(4) to conclude that a
24  food is "inferior to the food imitated for reasons other than those set forth in this paragraph," but
    has never done so.

25  [12]     Indeed, the regulation governing the word "imitation" says nothing about placing the word
26  "immediately following [the] trademark or brand," as the complaint alleges at paragraph 21.
    Instead, when "imitation" is required, the prescribed location is to appear before the name of the
27  food, not after the trademark.  21 C.F.R. § 101.22(i)(3).  Thus, for example, if Ghirardelli decided
    to sell "imitation ice cream," it would place the word "imitation" immediately before "ice cream"
    – not "immediately following" the "Ghirardelli Chocolate" logo.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)                    - 12 -                    28172\3510145.6

C.      **Ghirardelli Need Not Put The Words "Artificially Flavored" On The Products.**

Plaintiff also pleads that because of the word "chocolate" in the logo, defendant potentially violates a regulation requiring use of the word "artificially flavored" for both the white baking chips and the Other Products.  But Plaintiff fails to plead facts supporting this theory.

Plaintiff's "artificially flavored" argument is tentative, conditional, and parenthetical:

> Defendant did not disclose that the Fake White Chocolate Products were not chocolate, white chocolate, nor were they flavored with chocolate or white chocolate.  To do so, they would have at a [minimum] have been required to state in the appropriate font size and type, on the front or primary label panel, "Imitation" **(or, if one of the other ingredients was designed to simulate the chocolate flavor, to state that ingredient as the flavor or to state "artificial" or "artificially flavored.")**.  Accordingly, all the packaging violated the state and federal regulations set forth above.

FAC ¶ 23 (emphasis added); *see also* FAC ¶ 21 (referring to "characterizing flavor" and claiming the word "artificial" is required to accompany it; citing 21 C.F.R. § 101.22(i)(3)); FAC ¶ 87.

First, in context of the actual labels, it is clear that Plaintiff's allegation that "Chocolate" in the logo refers to the "characterizing flavor" is absurd.  FAC ¶ 21; *see* pp. 4-5 above. Reasonable consumers will think that "White chocolate flavored confectionary coating wafers" have a characterizing flavor of "white chocolate" – not chocolate.  No reasonable purchaser of these products would think they will taste like chocolate, not even the Plaintiff.  *See* FAC ¶ 42. The word "Chocolate" in the logo refers to the company name, does not "make[] any direct or indirect representations with respect to the primary recognizable flavor(s)," and 21 C.F.R. § 101.22(i) does not apply.

Second, the words "artificial" or "artificially flavored" are used "[i]f the food contains any artificial flavor which simulates, resembles, or reinforces the characterizing flavor . . ." 21 C.F.R. § 101.22(i)(2).  Plaintiff never alleges that the product contains any "artificial flavor," a term FDA defines as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)                - 13 -                          28172\3510145.6

1   thereof."  21 C.F.R. § 101.22(a)(1).[13]

2          Third, Plaintiff does not allege that any "artificial flavor" is used to "simulate[],

3   resemble[], or reinforce[]" the characterizing flavor – which he alleges is "chocolate."  Plaintiff

4   concedes that he has no facts supporting this claim by the way he pleads it in paragraph 23:  he

5   puts in parentheses (to which we ask parenthetically, can a parenthetical aside ever state a claim?)

6   that "**if** one of the other ingredients was designed to simulate the chocolate flavor" **then**

7   Ghirardelli had to state that ingredient as the flavor or state "artificial" or "artificially flavored."

8   FAC ¶ 23.  A complaint that says that "if" someone falls within a regulation, they have to comply

9   with the regulation, does not state a claim for violation of the regulation.

10         **D.      The "Common Or Usual Name" Regulation Does Not Apply.**

11         Plaintiff also throws in references to 21 C.F.R. § 102.5.  FAC ¶¶ 14, 16, 87.  Section 102.5

12   has no application to this case.

13         Under 21 C.F.R. § 101.3, packaged food has to be labeled with a "statement of identity" –

14   *i.e.*, the outside of the package must indicate the contents of the package.  *Id.* § 101.3(a).  If there

15   is a standard of identity for the product, that name should be used:  thus white chocolate should

16   say "white chocolate," and "orange juice" should say "orange juice."  21 C.F.R. § 101.3(b)(1).  If

17   there is a "common or usual name of the food," that should be used.  21 C.F.R. § 101.3(b)(2).

18   And if there is no standard of identity or "common or usual name," then the food's identity

19   should be stated with "an appropriately descriptive term, or when the nature of the food is

20   obvious, a fanciful name commonly used by the public for such food."  21 C.F.R. § 101.3(b)(3).

21         Plaintiff never alleges that a "common or usual name" has been established for white

22   baking chips (or any of the Other Products).  And neither the complaint, nor the FDA rulemaking

23   regarding "white chocolate," show that there is one.  FDA establishes "common or usual names"

24   by regulation.[14]  It did not create one for "white chocolate," opting instead for the creation of a

---

25   [13]      In fact, the taste of the white baking chips comes from the sugar, whole milk powder, dry
26   milk, and vanilla – all of which are derived from "plant material . . . [or] dairy products . . ." and
     none of which therefore fall within the definition of "artificial flavor."

27   [14]      As described in 1973 when section 102.5 was created, FDA has a procedure for assigning
28   "common or usual names" to products:

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)                        - 14 -                        28172\3510145.6

standard of identity (a standard of identity, unlike a common or usual name, specifies the compositional aspects of a food, *see* 38 Fed. Reg. 6964 (comment 3).  *See* 67 Fed. Reg. 62171, at 62173 (comment 2) (declining to create "common or usual name" regulation for white chocolate; adopting standard of identity instead).  While FDA has established common or usual names for other products, *see, e.g.*, 21 C.F.R. § 102.23 (establishing that "the common or usual name of a spreadable peanut product that does not conform to [the standard of identity for "peanut butter," with greater than 10% non-peanut content] shall consist of the term "peanut spread"); *id.* § 102.33(d)(2) (certain fruit juice-based beverages); *id.* § 102.54 ("seafood cocktail," "shrimp cocktail"), Plaintiff has pointed to no regulation establishing a "common or usual" name for the white baking chips or any of the Other Products.  And as Plaintiff himself points out at paragraphs 38 and 39, different companies use different terms to refer to white, sweet, creamy chip-shaped confections:  Hershey labels them "Premier White Chips," Nestle calls them "Premier White Morsels," and Ghirardelli calls them either "Premier Baking Chips – Classic White" or "Classic White Baking Chips."  Each of these is an "appropriately descriptive term," properly used in the absence of a "common or usual name."  *See* 21 C.F.R. § 101.3(b)(2) and (b)(3); *see also* 21 C.F.R. § 102.5(a) (a "common or usual name" "shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name.").

Plaintiff never alleges facts showing that a "common or usual name" has been established

---

In the Federal Register of June 22, 1972 (37 Fed. Reg. 12327), the Commissioner of Food and Drugs proposed a procedure for the establishment by regulation of common or usual names for foods.  The Commission also proposed to establish a common or usual name for seafood cocktails, to include the percentage of the characterizing seafood ingredients.

38 Fed. Reg. 6964 (1973).  The FDA expressly decided that it would not try to name all foods; only some would be assigned "common or usual names":

Common or usual names will not be established under Subpart B of Part 102 for all nonstandardized foods.  Such names will be established by such regulation only when it is necessary fully to inform the consumer, or where different names are used for the same product by different manufacturers.  Common or usual names for "like" or "similar" products where none now exists, may be proposed under the provisions of this regulation and will reflect the reasonable expectations of consumers.

38 Fed. Reg. at 6965 (comment 4).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.
(CASE NO. 3:12-CV-04936-LB)

- 15 -

28172\3510145.6

1    for confections like these.  Nor does he allege facts showing what the label should have called

2    these white, sweet, creamy, chip-shaped confections, or what it is about the label that he thinks

3    violates this rule – he just quotes the rule and leaves it at that.[15]  *Cf. Ashcroft v. Iqbal*, 556 U.S.

4    662, 678 (2009) ("formulaic recitation" of statute is not enough to state a claim).  The only

5    reference to violation of Section 102.5 appears in paragraph 87, which refers to "imitation" and

6    "artificial" or "artificially flavored," neither of which terms are prescribed by Section 102.5.  No

7    violation of Section 102.5 is pleaded.

8                                    **CONCLUSION**

9          For the foregoing reasons, Plaintiff lacks standing to sue about any product other than the

10   white baking chips.  In addition, Plaintiff's Section 17200 unlawful claims that all of the White

11   Product labels – including the white chip label – violate the Sherman Food Law should be

12   dismissed for failure to state a claim.

13   Dated:      February 14, 2013              FARELLA BRAUN + MARTEL LLP

14

15                                             By:/s/ Thomas B. Mayhew
                                                  Thomas B. Mayhew
16

17                                             Attorneys for Defendant
                                               GHIRARDELLI CHOCOLATE COMPANY
18

19

20

21

22

23   ─────────────────────

24   [15]    Indeed, Plaintiff changes the noun when the complaint quotes from the regulation, with
     the apparent effect of trying to transform a rule governing *FDA's* rulemaking for "common or
     usual names" to a rule governing the manufacturer's labeling of products.  Compare:

25
     [Plaintiff's version, from FAC ¶ 14 (emphasis added)]:  "***The label also must*** 'include a
26   statement of the presence or absence of any characterizing ingredient . . ." with

27   [The actual text of § 102.5(c) (emphasis added)]:  "***The common or usual name of a food***
     ***shall*** include a statement of the presence or absence of any characterizing ingredient . . ."
28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MOT. TO DISMISS FIRST AM. COMPL.          - 16 -                          28172\3510145.6
(CASE NO. 3:12-CV-04936-LB)