1   **GUTRIDE SAFIER LLP**
    ADAM J. GUTRIDE (State Bar No. 181446)
2   SETH A. SAFIER (State Bar No. 197427)
    LEE JAY KUO (State Bar No. 173293)
3   KRISTEN G. SIMPLICIO (State Bar No. 263291)
4   835 Douglass Street
    San Francisco, California 94114
5   Telephone: (415) 336-6545
    Facsimile:  (415) 449-6469
6
7   Attorneys for Plaintiff

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11
    SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF        CASE NO. 3:12-cv-04936 (LB)
12  HIMSELF, THE GENERAL PUBLIC, AND THOSE
    SIMILARLY SITUATED,                              PLAINTIFF'S OPPOSITION TO
13                                                   DEFENDANT'S MOTION TO
                                                     DISMISS FIRST AMENDED
14      Plaintiff,                                   COMPLAINT

15          v.
                                                     Date:  March 21, 2013
16                                                   Time:  11:00 am
    GHIRARDELLI CHOCOLATE COMPANY, AND DOES          Place:  Courtroom C, 15th Floor
17  1 THROUGH 50,                                    Judge:  Hon. Laurel Beeler

18              Defendants.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ...............................................................................................................1

II.  ARGUMENT ....................................................................................................................3

    A.  Legal Standard For Motion To Dismiss ......................................................................3

    B.  Plaintiff Has Standing to Pursue This Litigation On Behalf of All Absent
        Class Members. ..........................................................................................................4

    C.  Plaintiff Adequately Pleads All of His Section 17200 Unlawful Claims Based
        on Violations of The Sherman Food, Drug and Cosmetic Law. ...............................9

        1.  The Sherman Law's Incorporation of Prospective FDA Regulations Is
            Constitutional. ...............................................................................................10

        2.  Defendant's Fake White Chocolate Products Must State Imitation,
            Artificial or Artificially Flavored. ................................................................13

            a.  Defendant Is Legally Obligated To Label The Fake Products
                As Imitation. .....................................................................................14

            b.  The Fake Products Must Be Labeled "Artificial" Or
                "Artificially Flavored." .....................................................................15

            c.  Defendant Violates 21 C.F.R. § 102.5 .................................................17

    D.  If Any Allegations Are Insufficient, Leave To Amend Should Be Granted. ..............19

III.  CONCLUSION ................................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Jamba Juice*, 2012 U.S. Dist. LEXIS 120723 (N.D. Cal. Aug. 25, 2012) .................................................................................................................5, 7

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012) ...........................................................................1, 3, 7, 10

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .....................................3

*Brock v. Super Ct.*, 9 Cal. 2d 291 (1937) ...........................................................10

*Brown v. Hain Celestial Group, Inc.*, 2012 U.S. Dist. LEXIS 181591 (N.D. Cal. Dec. 22, 2012) ..................................................................................1, 6, 7

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. Nov. 14, 2011).....................4

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ..............................17

*Calfarm Ins. Co. v. Deukmejian*, 48 Cal.3d 805 (1989) .....................................12

*Cardenas v. NBTY, Inc.*, 2012 U.S. Dist. LEXIS 63376 (E.D. Cal. May 4, 2012).....................4

*Chavez v. Blue Sky Natural Bev. Co*, 268 F.R.D. 365 (N.D. Cal. 2010) ...............4

*Committee on Children's Television Committee on Children's Television, Inc., et al., v. General Foods Corporation, et al*, 35 Cal.3d 197 (1974) ........................6

*Conley v. Gibson*, 355 U.S. 41 (1957) ..................................................................3

*Davis v. Scherer*, 468 U.S. 183 (1984) ................................................................3

*Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640 (D. Va. 1997) .....................10

*Delacruz v. Cytosport, Inc.*, 2012 U.S. Dist. LEXIS 90847 (N.D. Cal. June 28, 2012) ....................................................................................................................3, 7

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992)..............................19

*Donohue v. Apple*, 2012 U.S. Dist. LEXIS 65860 (N.D. Cal. May 10, 2012) ............................4

*Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996) ..............................2

*Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008) ................................2, 10, 11, 12

*Forcellati v. Hyland's, Inc.*, 2012 U.S. Dist. LEXIS 91393 (C.D. Cal. June 1, 2012) ........................................................................................................................4

*Harris Bank v. Pachaly*, 902 F. Supp. 156 (N.D. Ill 1995) ...............................10

*Hewlett-Packard v. Super. Ct.*, 167 Cal. App. 4th 87 (2008) ...............................4

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) ................................3

*Johnson v. Fankell*, 117 S. Ct. 1800 (1997).................................................2, 12

*Koh v. S.C. Johnson & Son, Inc.*, 2010 U.S. Dist. LEXIS 654 (Jan. 5, 2010) ............................5

*Levine v. Blue Shield of California*, 189 Cal.App.4th 1117 (2010).....................15, 16

*Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115 (2007) ...............6, 15

*McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457 (2006) ...................6, 15

*McKinniss v. Kellogg USA*, 2007 LEXIS 96106 (C.D. Cal. Sept. 19, 2007)...............................8

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) ...................3

*People v. Cooper*, 27 Cal. 4th 38 (2002) ............................................................12

*People v. Kruger*, 48 Cal. App. 3d Supp. 15 (1975) ................................................................. 13

*People v. Williams*, 175 Cal. App. 3d Supp. 16 (1985 .............................................................. 10

*Plastic Pipe & Fittings Assn. v. California Building Standards Com.*, 124 Cal.
App. 4th 1390 (2004) .......................................................................................................... 12

*Rooney v. Cumberland*, 2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012) .................... 8

*Saunders v. Super. Ct.*, 27 Cal. App. 4th 832 (1994) .......................................................... 6, 14

*Scheuer v. Rhodes*, 416 U.S. 232, (1974) .................................................................................. 3

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ................. 19

*State School Bldg. Finance Committee v. Betts*, 216 Cal. App. 2d 685 (1963) ........................ 12

*Sugawara v. Pepsico, Inc.*, 2009 U.S. Dist. LEXIS 43127 (E.D. Cal. May 21,
2009) ...................................................................................................................................... 8

*Videtto v. Kellogg USA*, 2009 U.S. Dist. LEXIS 43114 (E.D. Cal., May 21, 2009) ................... 8

*Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) ........................................... 4

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ..................................... 4

*Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) ...................... 8

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ............................................... 5, 8

*Willner v. Manpower Inc.*, 2012 U.S. Dist. LEXIS 62227 (N.D. Cal. May 3, 2012) ................ 12

**RULES**

Fed. R. Civ. P. 12(g) ................................................................................................................. 10

**TREATISES**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
1388 (3rd ed. 2004) ............................................................................................................... 9

**REGULATIONS**

21 C.F.R § 101.3(e)(2)(i)&(ii) ................................................................................................. 14

21 C.F.R. § 101.1, et seq .......................................................................................................... 17

21 C.F.R. § 101.22(i)(1)(i)-(iii) ............................................................................................... 17

21 C.F.R. § 102.5(d) ................................................................................................................ 19

21 C.F.R. § 101.3(e) ................................................................................................................ 14

21 C.F.R § 101.3(e)(2)(i) ......................................................................................................... 14

21 C.F.R § 101.3(e)(2)(ii) ........................................................................................................ 14

Cal. Health & Safety Code § 110100(a) ................................................................................... 10

Cal. Health & Safety Code § 110100(b) ................................................................................... 11

Cal. Health & Safety Code § 100115 .......................................................................................... 2

1    Plaintiff Scott Miller ("Plaintiff") respectfully submits this Opposition to Defendant's

2    Motion to Dismiss Plaintiff's First Amended Complaint ("Mot.").  (Dkt.# 27.)

3    **I.      INTRODUCTION**

4    Defendant Ghirardelli appears to have missed, or just artfully avoided, the entire point of

5    Plaintiff's First Amended Complaint ("FAC").  (Dkt.# 24.)  In its December 6, 2012 order

6    resolving Ghirardelli's first Rule 12(b)(6) motion, this Court granted Plaintiff leave to allege that

7    the word "CHOCOLATE" on "the front of the label"—and thus the harm under the FDA

8    regulations and standards—"is identical across product lines."  *Miller v. Ghirardelli Chocolate*

9    *Co.*, 2012 U.S. Dist. LEXIS 174008, at *26 (N.D. Cal. Dec. 6, 2012).  The FAC accordingly now

10   alleges that the common label bearing "CHOCOLATE" on certain "Ghirardelli®" fake white

11   chocolate products[1] runs afoul of the UCL, not because it is <u>unfair</u> or <u>fraudulent</u>, but because it is

12   <u>*unlawful*</u>.  Specifically, Plaintiff alleges Ghirardelli's identical representation violates Cal. Health

13   & Safety Code Sections 110100(a), 110380 and 110505, which incorporate federal regulations 21

14   C.F.R. §§ 101.3, 101.22 and 102.5.  (Dkt.# 24, ¶ 87.)  Plaintiff expressly limits his representation

15   to this singular UCL <u>*unlawful*</u> claim (id., ¶ 44), and the class definition *only* includes purchasers

16   of Ghirardelli products with "CHOCOLATE" on the primary display panel, incorporating no

17   other alleged misrepresentations.[2]  (Id., ¶¶ 20-21, 23.)  So limited, this case can no longer be

18   distinguished from *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 U.S. Dist. LEXIS 101371, at

19   *11 (N.D. Cal. July 20, 2012) (concerning "All Natural") or this Court's recent opinion in *Brown*

20   *v. Hain Celestial Group, Inc.*, 2012 U.S. Dist. LEXIS 181591 (N.D. Cal. Dec. 22, 2012)

21   (challenging "organic"), which Ghirardelli notably disregards.

22   [1] The products include "Ghirardelli® Chocolate Premium Baking Chips – Classic White,"

23   "Ghirardelli® Chocolate White Chocolate Flavored Confectionary Coating Wafers,"
     "Ghirardelli® Chocolate Sweet Ground White Chocolate Flavor," "Ghirardelli® Chocolate

24   Premium Hot Beverage – White Mocha," or "Ghirardelli® Chocolate Frappé Classico – Classic
     White."  (Dkt.# 24, ¶ 44.)

25

26   [2] With respect to the other claims this Court previously upheld, Plaintiff now limits his
     representation to a *subclass* of purchasers of the fake white chocolate chips.  *See Miller*, 2012

27   U.S. Dist. LEXIS 174008 at *20-26.  Because it dismissed Plaintiff's claims regarding all but the
     fake white chocolate chips, this Court did not reach the preemption issue regarding the flavored

28   products.  *Id.* at *27, fn.3.

Ghirardelli nevertheless repeats its argument from its first motion to dismiss that Plaintiff does not have standing as to white "chocolate" products that he did not purchase because the representations are too "dissimilar." While this argument is best addressed under Rule 23 commonality and/or typicality, it is the very issue remedied by Plaintiff's specific limitation of the class to purchasers of products with "CHOCOLATE" on the primary display label. The simple—and non-disparate question—is now exclusively whether Ghirardelli's use ran afoul of federal regulations adopted into law in California.

Ghirardelli next argues that California's "prospective" incorporation of federal regulations regarding "white chocolate" under the Sherman Food Drug & Cosmetic Act ("Sherman Law")[3] was unconstitutional—a desperate grab because its consistent violation of these very regulations underscores the non-disparate nature of Plaintiff's claims. This argument, in any event, is misguided because the Sherman Law absolutely does not automatically incorporate prospective FDA regulations. *See* Cal. Health & Safety Code § 100115 (providing for a period of objection, and an automatic stay, before any federal regulation is adopted.) Moreover, the Law in fact "perfectly parallels" the federal Food Drug and Cosmetic Act ("FDCA"), even with regard to FDCA regulations put into place after the Sherman Law was enacted, as is established by a long, unbroken line of cases reaching all the way to the California Supreme Court. *See, e.g., Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008). This Court must thereby presume the constitutionality, and apply the same construction, of the Sherman Law. *See Johnson v. Fankell*, 117 S. Ct. 1800, 1804 (1997) (state supreme court constructions of state laws are binding on federal courts); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1494 n.4 (9th Cir. 1996) (requiring deference to state supreme court constructions of state laws).

Ghirardelli finally posits that it is not required to state, on the label of any of the fake white "chocolate" products, the words "imitation," "artificial" or "artificially flavored" because

---

[3]Plaintiff does not seek to enforce any federal regulations. Rather, he relies on the federal—i.e., FDCA and FDA—regulations only to the extent they have been separately enacted as state law or regulation or provide a predicate basis of liability. (Dkt.# 24, p. 16.) Nor does he currently seek to enforce the enacting state laws except as predicates under his UCL unlawful claim. As such, any discussion in this opposition regarding Defendant's violation of any federal statute or regulation shall connote as adopted by the Sherman Law.

the FDA regulations do not apply, and because chocolate is not the "common or usual name" for food derived from the cacao plant.[4]  These justifications for sidestepping the FDA labeling requirements are, at best, premature; the application of the FDA regulations to the facts of this case may not determined in the context of this 12(b)(6) motion.  *See Astiana*, 2011 U.S. Dist. LEXIS 57348, at *9 (refusing to decide, on motion to dismiss, whether the complaint, as pled, fails to establish a violation of any FDA policy); *Delacruz v. Cytosport, Inc.*, 2012 U.S. Dist. LEXIS 90847, *20 (N.D. Cal. June 28, 2012) (same, further stating FDA regulations provide objective criteria for determining liability); *see also In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1116 (S.D. Cal. 2011) (stating, regarding similar claims against Nutella, "the Court cannot conclude as a matter of law that Ferrero has not violated the FDCA or the Sherman Law").  But even if these arguments were addressed now, they would still fail as they are predicated on Ghirardelli's selective, incomplete reading of the FDA regulations and the FAC.  This motion should be denied in its entirety.

## II.     ARGUMENT

### A.     Legal Standard For Motion To Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint only if it fails to state a claim upon which relief can be granted.  A motion to dismiss should only be granted if it appears beyond doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The question is not whether a plaintiff will prevail in the action, but whether he is entitled to offer evidence in support of its claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984).

District courts are obligated to accept a plaintiff's allegations as true and construe them in the light most favorable to plaintiff.  *Id*.  To survive a Rule 12(b)(6) motion, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 1974 (2007); *see also Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994) (courts must

---

[4] Herein, "cacao" and "cocoa" are used interchangeably.

assume that all general allegations "embrace whatever specific facts might be necessary to support them"); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (at pleading stage, plaintiffs "need only show that the facts alleged, if proved, would confer standing upon him") (citations omitted).

**B.      Plaintiff Has Standing to Pursue This Litigation On Behalf of All Absent Class Members.**

As in it first motion, Ghirardelli again argues that Plaintiff lacks standing to sue about fake products he did not purchase.[5]  This time, however, Defendant's argument does not, and cannot, simply claim that the product packages are "too disparate" to go forward.  The FAC now focuses exclusively on the "CHOCOLATE" flavor characterization that is identically included on the primary label panel of all of the fake products, making this case indistinguishable from *Astiana*, 2012 U.S. Dist. LEXIS 101371, at *11, *Anderson v. Jamba Juice*, 2012 U.S. Dist.

---

[5] This "standing" issue is better addressed at the class certification stage. *See, e.g., Forcellati v. Hyland's, Inc.*, 2012 U.S. Dist. LEXIS 91393 (C.D. Cal. June 1, 2012) (allowing plaintiff to assert claims as to entire category of defendants' "Cold and Flu Remedies" and noting "numerous recent decisions that have concluded that Defendants' argument is better taken under the lens of typicality or adequacy of representation, rather than standing"); *Cardenas v. NBTY, Inc.*, 2012 U.S. Dist. LEXIS 63376, at *7 (E.D. Cal. May 4, 2012) ("The court will analyze solely under Rule 23 whether Plaintiff may be allowed to present claims on behalf of purchasers of the remaining Osteo Bi-Flex products."); *Donohue v. Apple*, No. 11-cv-05337 RMW, 2012 U.S. Dist. LEXIS 65860, at *6 (N.D. Cal. May 10, 2012) (denying motion to dismiss where plaintiff sought to represent a class of purchasers of different but similar products and reasoning that "questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, [are] issues that are better resolved at the class certification stage"); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 632-33 (N.D. Cal. 2011) (denying motion to strike claims with respect to computer models plaintiffs did not purchase and holding that the inclusion of such products at the pleading stage, and prior to a motion for class certification, is proper); *Bruno v. Quten Research Inst., LLC*, No. 11-173 DOC, 280 F.R.D. 524, 2011 U.S. Dist. LEXIS 132323, at *10 (C.D. Cal. Nov. 14, 2011) (named plaintiff had standing to sue on behalf of purchasers of related products, finding that "treatises and the vast majority of persuasive authority" indicate that this issue should be analyzed under Rule 23 rather than as standing question); *see also Chavez v. Blue Sky Natural Bev. Co*, 268 F.R.D. 365 (N.D. Cal. 2010) (granting class certification, and rejecting defendants' arguments, that "plaintiff's claims are not typical of the purported class pointing out that plaintiff did not buy each [of the dozens of] product[s] in the Blue Sky beverage line" because all that was required was that products "bore substantially the same misrepresentation."); *Hewlett-Packard v. Super. Ct.*, 167 Cal. App. 4th 87, 89-91 (2008) (denying writ to vacate order certifying class of computer purchasers for lack of community of interest, where class included models of computers plaintiff had not purchased).

LEXIS 120723, at *13-14 (N.D. Cal. Aug. 25, 2012), and *Koh v. S.C. Johnson & Son, Inc.*, 2010 U.S. Dist. LEXIS 654, at *2, 6-7 (Jan. 5, 2010).[6]

Ghirardelli is left arguing that Plaintiff's challenge to the word "CHOCOLATE" in its "corporate logo"[7] fails on the merits.  Though this line of argument is premature, *see, e.g., Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) (granting a motion to dismiss in this context is rarely appropriate), Defendant nevertheless specifically claims that Plaintiff's unlawful "logo claim" will "turn on" the message conveyed by the different labels because, as a matter of law, logos alone "don't mislead."  It further concludes that no consumers could possibly have been deceived by its use of "CHOCOLATE" on its primary label panel because they would know, from the rest of the label, that the product is white chocolate, not chocolate.[8]  It goes yet one step further to argue that all consumers would reasonably know that "white chocolate is not

---

[6] This case is even more straightforward because unlike *Astiana* ("All Natural Flavors" and "All Natural Ice Cream") and *Koh* ("Greenlist Ingredients" and "Greenlist™ is a rating system that promotes the use of environmentally responsible ingredients. For additional information, visit www.scjohnson.com"), the challenged representation here is a single word "CHOCOLATE" that is identically placed on all of the challenged packages.

[7] Plaintiff objects to Defendant's categorization of "GHIRARDELLI® CHOCOLATE" as its "corporate logo" or "logo." It is far from clear what it is—e.g., brand, brand name, tagline, logo, trade mark, trade name—which is precisely why this issue is not to be decided in the absence of discovery. Plaintiff, in fact, alleges that "GHIRARDELLI®" is the trademark or tradename, and "CHOCOLATE" is a description of the flavor of the product. (Dkt.# 24, ¶ 21.) This allegation must be accepted as true and construe them in the light most favorable to the plaintiff.  *See Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

[8] Ghirardelli's attempt to reduce the issue to absurdity is neither persuasive nor relevant. Certainly, even Defendant would admit that the line between "chocolate" and "white chocolate" is much finer than the line between donuts and coffee or bagels and chocolate. In any event, a jury, and not Defendant, will ultimately determine the issue. Finally, Ghirardelli's unsupported argument that consumers are obligated to look at the label as a whole has been rejected.  *See Williams*, 523 F.3d at 939 (stating "We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth…".)  The Ninth Circuit has in fact refused in this context to rescue defendants from their own statements, expressly stating that "it is not difficult to choose statements, designs, and devices which will not deceive." *Id.*, 523 F.3d 939 fn. 3, *citing United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*, 265 U.S. 438, 443 (1924).

chocolate. It's not!"[9]   Aside from being incorrect and completely unsupported, this analysis

mistakenly confuses and conflates several issues, and is thereby by irrelevant to this motion.[10]

*See Miller*, 2012 U.S. Dist. LEXIS 174008, at *29-34.

Regarding the other fake products, Plaintiff has specifically limited his claims to violation

of the "unlawful" prong of the UCL.  (Dkt.# 24, ¶ 87, p. 23-25 (Prayer for Relief).)  The

"unlawful" prong "borrows" violations of other law, including "civil or criminal, federal, state, or

municipal, statutory, regulatory, or court-made" law.  *See Saunders v. Superior Court*, 27 Cal.

App. 4th 832, 838-39 (1994).  To state a cause of action under the unlawful prong, Plaintiff must

only plead violation of specific predicate acts—as he has done here by alleging Defendant

violated "Cal. Health & Safety Code § 110100(a), 110380, and 110505, which incorporate 21

C.F.R. §§ 101.3, 101.22 and 102.5."

Although Ghirardelli incorrectly challenges the *merits* of some of the alleged underlying

violations of law, it nowhere disputes that, as to the unlawful claim, the packaging is identical.

Plaintiff thus has standing to assert this claim on behalf of a Class of purchasers of the four fake

"white chocolate" products that he did not purchase.  This Court's recent decision in *Brown v.*

---

[9] That consumers would reasonably know this is at issue.  Indeed, as both chocolate and white chocolate are derived from cacao, this question is hotly disputed amongst chocolate experts and "chocoholics."  *See, e.g.,* http://en.wikipedia.org/wiki/White_chocolate.

[10] Even if Plaintiff had to prove that consumers were likely deceived by the "CHOCOLATE" representation, or the absence of disclosure, on the primary label panel, he has pled this cause of action adequately for at least two reasons. First, the Ninth Circuit and California Supreme Court have recognized that the law prohibits 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, 523 F.3d 939-40. (citations omitted). Second, such a ruling is foreclosed by *Williams*, 523 F.3d at 939-40 (9th Cir. 2008).  *See also Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.") quoting *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1472 (2006); *Committee on Children's Television Committee on Children's Television, Inc., et al., v. General Foods Corporation, et al*, 35 Cal.3d 197 (1974) (finding demurrer inappropriate in case where parents alleged deceptive advertising of sugar cereals); *In re Ferrero Litig.*, 794 F. Supp. 2d at 1116 (stating, with regard to similar claims as to Nutella, "at this time and giving all inferences to the Plaintiffs, the Court cannot conclude as a matter of law that Ferrero has not violated the FDCA or the Sherman Law.")

1  *Hain Celestial Group, Inc.*, 2012 U.S. Dist. LEXIS 181591 (N.D. Cal. Dec. 22, 2012) is

2  instructive.

3       In *Brown*, plaintiff challenged the labeling of products as "organic" because they allegedly

4  contained insufficient organic content under the applicable laws.  *See* 2012 U.S. Dist. LEXIS

5  181591, at *16.  Defendant moved to strike plaintiffs' class allegations for lack of standing to the

6  extent they were based on products that they did not purchase.  *See id*.  Denying the motion to

7  dismiss, this Court first compared the instant case, as *previously* pled, to the *Brown* plaintiffs'

8  allegations regarding the word "organic."  *Id*., at *22.  In that context, this Court found that the

9  plaintiff, in the instant case, previously lacked standing because his logo claim—the only

10 common misrepresentation across product lines—was relatively unimportant within the context

11 of the varying alleged misrepresentations across his other claims.  *Id*. The Court found *Brown* to

12 be different because, despite "various uses" and "different marketing," the common organic

13 misrepresentations were the crux of the case.  *Id*., at *23. The Court thereby viewed the brand

14 name/tag line associations as conveying something more, at least at the pleading stage. *Id*.

15      This case can no longer be distinguished from *Brown*.  Both cases identically attack a term

16 commonly used across all of the challenged products—i.e., there "organic" and here "chocolate."

17 *Id*.; *see also Astiana*, 2012 U.S. Dist. LEXIS 101371, at *11 (same result regarding "All Natural"

18 claims); *Anderson,* 2012 U.S. Dist. LEXIS 120723, at *13-14 (relying on *Astiana* for the same

19 proposition).  The use of both terms is regulated.[11] *Id*.; *Delacruz v. Cytosport, Inc*., 2012 U.S.

20 Dist. LEXIS 90847, at *20 (N.D. Cal. June 28, 2012) (denying motion to dismiss where "[t]he

21 FDA regulations provide objective criteria for determining whether products contain unhealthy

22 ingredients or certain ingredients in unhealthy amounts").

23      On the other hand, Defendant does not cite a single case to support its mistaken claims

24 that "the merits of his unlawful logo claim will turn on the message conveyed to different

25 consumers by the different labels."  Instead, it cites only *Rooney v. Cumberland*, 2012 U.S. Dist.

26

27 [11] In that vein, the Court added that "there are regulations about the use of 'organic' and no
regulations expressly authorize Hain's use of the word 'organic' in its product line." 2012 U.S.

28 Dist. LEXIS 181591 at *44.

LEXIS 58710 (S.D. Cal. Apr. 16, 2012), to argue that a consumer is obligated to read the label as whole because a logo alone cannot suggest what a product is or what its characterizing flavor may be.[12]  But *Rooney*, like all of the "*froot*" cereal cases,[13] is easily distinguished.

In *Rooney*, the court granted a motion to dismiss, finding that a reasonable consumer would not conclude that "SUGAR IN THE RAW®" contains unrefined sugar because, unlike here, unlike here, "raw" is the trademark and the product is repeatedly referred to as turbinado sugar.  Here, unlike in *Rooney*, however, chocolate is a regulated ingredient (whereas "raw" is not).  This distinction makes all the difference.  *See Brown*, 2012 U.S. Dist. LEXIS 18159, at *44 ("This case is different because there are regulations about the use of 'organic'").  Moreover, representations about "sugar in the raw" are very different from including the product flavor— CHOCOLATE—immediately under the brand name— "GHIRADELLI®"—on the primary label

---

[12] This exact argument has been rejected by the Ninth Circuit.  In *Williams*, like here, defendants advanced the same read-the-whole-label argument, specifically that the side of their package fully disclosed the true ingredients and their relative proportions.  *Id.* at 939-40.  The Ninth Circuit reversed the district court's order of dismissal:

> We do not…think that a busy parent walking through the aisles of a grocery store should be expected to verify that the representations on the front of the box are confirmed in the ingredient list. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.

*Id.*, at 940.  Defendant fails to make a single argument or cite a single case that successfully distinguishes this holding.

[13] *See, e.g., McKinniss v. Kellogg USA*, 2007 LEXIS 96106, at *12 (C.D. Cal. Sept. 19, 2007) (reasonable consumer would not conclude FROOT LOOPS® contained real fruit, as the word was spelled differently, the product was billed as a cereal, and no photographs of fruit appeared on the box); *Videtto v. Kellogg USA*, 2009 U.S. Dist. LEXIS 43114 (E.D. Cal., May 21, 2009) (dismissing without leave to amend UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that FROOT LOOPS® cereal contained "real, nutritious fruit"); *Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) (holding that, as a matter of law, no reasonable consumer would be led to believe that CAP'N CRUNCH'S CRUNCH BERRIES® cereal contained real fruit berries despite the use of the word berries in the product); *Sugawara v. Pepsico, Inc.*, 2009 U.S. Dist. LEXIS 43127 (E.D. Cal. May 21, 2009) (same).

panel. *Id.* (stating "The cases all are distinguishable, mostly because the alleged misrepresentations in them are so obvious.  Representations about fake fruit in the sugar cereal cases or the phrase "sugar in the raw" are very different than product name + "organics", or product name + close tag line with word "organic.")

> ### C.   Plaintiff Adequately Pleads All of His Section 17200 Unlawful Claims Based on Violations of The Sherman Food, Drug and Cosmetic Law.

Defendant next argues that all of Plaintiff's section 17200 "unlawful" claims based on the Sherman Law must be dismissed because they both "lack merit" and fail to state a claim.[14] Ghirardelli presents three basic arguments.  It first argues that the Sherman Law unconstitutionally incorporates FDA rules and regulations that were adopted after January 1, 1993.  Second, it alternatively contends that, even if the Sherman Law applies, it is not legally required to put the words "imitation," "artificial," or "artificially flavored" on its labels.[15]  It finally contends that the common or usual name regulation set forth in 21 C.F.R. § 102.5 "has no application to this case."[16]  Like Defendant's other arguments, they are legally and factually

---

[14] It appears that Ghirardelli only argues this as to the federal regulations underlying Plaintiff's Sherman Law references. (*See, e.g.,* Dkt.# 27, p. 2 ("Issues To Be Decided" 2(a)-(c).) Moreover, Defendant challenges Plaintiff's reference to Cal. Health & Safety Code § 110685, but with regard to the fake white chocolate chips, does not challenge the other laws indentified in paragraph 88 of the FAC.  As such, all of those claims necessarily survive.  (Dkt.# 24, ¶ 88.)

[15] Ghirardelli predictably mounts independent challenges to these federal regulations because they post-date the enactment of the Sherman Law.  *See, e.g.,* 21 C.F.R § 101.3(e) (enacted 1977), § 101.22 (same), § 102.5 (same).  But even if Ghirardelli were to successfully challenge the enforcement of the FDA's definition of white chocolate at 21 CFR § 163.124, Plaintiff would still state a claim under the UCL for violation of 21 C.F.R §§ 101.3(e), 101.22, and 102.5.  As such, this Court need not even reach Defendant's manufactured constitutional question at this time.

[16] Ghirardelli has waived most of these arguments by not making in its last motion to dismiss. In his initial complaint, Plaintiff pled violation of the Sherman Law as a predicate act under the UCL.  *See Miller*, 2012 U.S. Dist. LEXIS 174008 at *12 (stating "Miller also alleges that Ghirardelli is liable under the UCL for violating at least 14 sections of the Sherman Food, Drug and Cosmetic Law, Cal. Health & Saf. Code § 109875, et seq.").  But nowhere in its first motion to dismiss, or its reply brief, did Defendant argue that the Sherman Law is unconstitutional. (Dkt.# 7, 17.)  It should accordingly be deemed waived or, at a minimum, viewed with disfavor. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1388 (3rd ed. 2004) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment.") *accord*

incorrect—and premature.  *See, e.g., Astiana*, 2011 U.S. Dist. LEXIS 57348, at *9 (refusing to

decide, on motion to dismiss, whether the complaint, as pled, fails to establish a violation of any

FDA policy).

> **1.     The Sherman Law's Incorporation of Prospective FDA Regulations Is Constitutional.**

California's Sherman Law contains identical provisions to the FDCA.  *See Farm Raised*

*Salmon Cases*, 42 Cal. 4th at 1086-87 (stating "[T]he Sherman Law incorporates '[a]ll food

labeling regulations and any amendments to those regulations adopted pursuant to the [FFDCA]'

as 'the food labeling regulations of this state') *quoting* Cal. Health & Safety Code § 110100(a).

Defendant now contends that the Sherman Law is constitutionally flawed because the California

Legislature "has no power to adopt future regulations of a federal agency."

This entire argument is incorrectly premised on Defendant's over-reading of *Brock v.*

*Super Ct.*, 9 Cal. 2d 291 (1937).  In *Brock*, the California Supreme Court stated, in dicta, that "It

is, of course, perfectly valid to adopt *existing* statutes, rules or regulations of Congress or another

state, by reference; but the attempt to make *future* regulations of another jurisdiction part of the

state law is generally held to be an unconstitutional delegation of legislative power."  *Id*. at 297.

(emphasis supplied.)  The court nevertheless went on to uphold the law because there was "no

automatic incorporation by reference of future federal laws."  *Id*. at 299.[17]  The same is true of the

Sherman Law because it does not automatically adopt any FDA regulation.  Rather, it permits any

person affected by a FDA regulation to object to the adoption, and, in fact, stays adoption while

an objection is pending.  The Sherman Law specifically states:

---

*Harris Bank v. Pachaly*, 902 F. Supp. 156 (N.D. Ill 1995); *Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640, 642 fn.2. (D. Va. 1997); Fed. R. Civ. P. 12(g).

[17] Ghirardelli's citation to *People v. Williams*, 175 Cal. App. 3d Supp. 16 (1985) is similarly inapposite. There, California's adoption of the 55-mile-per-hour speed limit, including amendments to the speed limit, was challenged as an unconstitutional delegation of power.  The court upheld the law, finding that Legislature did not delegate its "legislative power" to enact laws for the regulation of speed laws in California or its "function" to determine the contents of those speed laws.  *Id*., 175 Cal. App. 3d Supp. at 23. Rather, the court held the "California statute does not provide that, if the federal maximum speed limit is ever revised such amendment will be automatically applicable in California."  *Id*. at 24.

A federal regulation adopted pursuant to this part takes effect in this state 30 days after it becomes effective as a federal regulation. Any person who will be adversely affected by adoption of the federal regulation in this state may, within the 30 days prior to its becoming effective in this state, file with the department, in writing, objections and a request for a hearing. The timely filing of substantial objections to a regulation that has become effective under the federal act, stays the adoption of the regulation in this state.[18]

*Id*. § 110115.

Moreover, by generally incorporating the FDCA into the Sherman Law, the Legislature cannot be said to have unlawfully delegated its power.  "An unconstitutional delegation of legislative authority occurs if the Legislature either leaves the resolution of fundamental policy issues to others or fails to provide adequate direction for the implementation of that policy." *Kugler v. Yocum*, 69 Cal. 2d 371, 376-377 (1968).  The Sherman Law does not leave food labeling to the FDA.  To the contrary, the Legislature constitutionally determined, in passing the Sherman Law, that the fundamental food labeling policy of California would be co-extensive with federal policy.  *See id*. at 379 (holding that law passed by the City of Alhambra establishing a policy of wage parity with firefighters in the City of Los Angeles was not an unconstitutional delegation of authority because the fundamental policy issue had been decided by the legislative body, and that decision was not negated simply because a third party had a role in the law's implementation).  Otherwise put, Defendant does not, and cannot reasonably, claim that the Legislature is powerless to resist any FDA regulation that it may find unacceptable.[19]  *See Farm Raised Salmon Cases*, 42 Cal. 4th at 1086-87 (holding that the Sherman Law incorporates the FDCA as "the food labeling regulations of this state.") *citing* Health & Saf. Code, § 110100(a).  Indeed, this exact type of general incorporation of a law, including future amendments to that

---

[18] Ghirardelli does not claim to have timely objected to the adoption of the federal regulations regarding the definition of white chocolate.

[19] The Sherman Law also expressly provides responsibility for implementation of the FDA policy exclusively to the Legislature. It states: the "department may, by regulation, adopt additional food labeling regulations." Health & Saf. Code, § 110100(b); *see also* § 110380 ("The department may, when necessary, prescribe any packaging and labeling regulation for foods, drugs, devices, and cosmetics whether or not the regulation is in accordance with regulations adopted under the Fair Packaging and Labeling Act.").

law, has, to the best of Plaintiff's knowledge, invariably been upheld as constitutional in

California. *See, e.g., People v. Cooper*, 27 Cal. 4th 38, 44 (2002) ("There is a cognate rule,

recognized as applicable to many cases, to the effect that where the reference is general instead of

specific, such as a reference to a system or body of laws or to the general law relating to the

subject in hand, the referring statute takes the law or laws referred to not only in their

contemporary form, but also as they may be changed from time to time"); *see also State School*

*Bldg. Finance Committee v. Betts*, 216 Cal. App. 2d 685, 692 (1963) ( "Incorporation by

reference of the law generally on a particular subject includes not only the contemporary law but

future amendments. Constitutional language will not be construed as a limitation on legislative

power in the absence of a clearly stated restriction."); *People v. Wright*, 30 Cal.3d 705, 712

(1982) ("An unconstitutional delegation of legislative power occurs when the Legislature

confers…unrestricted authority to make fundamental policy decisions".).

      Finally, the California Supreme Court itself construed the Sherman Law to impose

requirements "identical to" those contained in the FDCA.[20]  *See Farm Raised Salmon Cases*, 42

Cal. 4th at 1086.  This Court must both defer to that construction and presume the law to be

constitutional.[21]  *See, e.g., Johnson*, 117 S. Ct. at 1804 (state supreme court constructions of state

laws are binding on federal courts); *Easyriders*, 92 F.3d at 1494 n.4 (requiring deference to state

supreme court constructions of state laws).[22]

---

[20] Like the regulation defining "white chocolate," the FDA regulations regarding the use of
additive to make fish red or pink at issue in *Farm Raised Salmon*—i.e., 21 C.F.R. §§ 73.35(c),
73.75(c)(3)—were promulgated in around 2007, well after Defendant's claimed cut off of January
1, 1993. *See* 42 Cal. 4th at 1085.

[21] The Court must also presume that the Sherman Law, as written, is valid and uphold it unless its
"unconstitutionality clearly, positively, and unmistakably appears."  *Willner v. Manpower Inc.*,
2012 U.S. Dist. LEXIS 62227, *11-12 (N.D. Cal. May 3, 2012) *citing Calfarm Ins. Co. v.*
*Deukmejian*, 48 Cal.3d 805, 814 (1989).  All disputes must be resolved in favor of the statute.  *Id.*
Defendant's arguments do not even approach this elevated standard.

[22] The other cases cited by Defendant do not compel a different result.  Indeed, *Plastic Pipe &*
*Fittings Assn. v. California Building Standards Com.*, 124 Cal. App. 4th 1390 (2004) and
*Bakersfield v. Miller*, 64 Cal. 2d 93 (1966) support the constitutionality of the Sherman Law.  For
example, *Plastic Pipe* refused to overturn a challenge to Building Standards Law due to its
adoption of future regulations 1-year after their inclusion in the Uniform Plumbing Code of the
International Association of Plumbing and Mechanical Officials.  The court found the inclusion

### 2.   Defendant's Fake White Chocolate Products Must State Imitation, Artificial or Artificially Flavored.

Defendant next argues that it is not obligated to place on the labels of any of its fake white chocolate products the lack (or 0%) of chocolate or cacao or, for that matter, any other disclosures such as "imitation," "artificial" or "artificially flavored."  It thereby concludes that Plaintiff cannot state a UCL unlawful claim under the corresponding state and federal laws.[23]  But application of the FDA regulations to the facts of this case, at this juncture, is yet again premature.  *See In re Ferrero Litig.*, 794 F. Supp. 2d at 1116 (stating, with regard to similar claims as to Nutella, "at this time and giving all inferences to the Plaintiffs, the Court cannot conclude as a matter of law that Ferrero has not violated the FDCA or the Sherman Law."); *see also Delacruz*, 2012 U.S. Dist. LEXIS 90847 at *20 (declining to grant motion to dismiss where "The FDA regulations provide objective criteria for determining whether products contain unhealthy ingredients or certain ingredients in unhealthy amounts.")  Defendant's arguments regarding the different descriptive terms and regulated disclosures, even if deemed timely, also all

---

of future regulation was found to be constitutional because, like here, the Commission maintained the right to determine whether or not the Association's standards are appropriate.  A city's adoption of Uniform Building Code, including amendments, was similarly upheld in *Bakersfield v. Miller*.  *See* 64 Cal. 2d at 98 (citation omitted).

Finally, in *People v. Kruger*, 48 Cal. App. 3d Supp. 15, 19 (1975), a conviction under Cal. Code Regs. Title 14, § 108, for bringing ashore an overweight yellowfin tuna was overturned, primarily on preemption grounds.  The Court held that Congress has fully covered the field and preempted any regulation by California, certainly insofar as fishing in international waters is concerned—an area of law in which Congress has "paramount authority."  The same is not true here.  *See, e.g., Astiana*, 2011 U.S. Dist. LEXIS 57348, at *10 (finding that the same section of the FDCA does not preempt state-based UCL claims that would not impose requirements upon the defendant that differ from the federal requirements).  The court further found, as an additional "defect in the judgment of conviction," an unlawful delegation to the Fish and Game Commission to automatically "prohibit any act in turn barred by rules or regulations adopted pursuant to the Tuna Conventions Act."  At a minimum, this type of specific reference—i.e., to the Tuna Conventions Act— is absent from this case.

[23] Ghirardelli challenges Plaintiff's reference to Cal. Health & Safety Code § 110685, but, with regard to the fake white chocolate chips, does not challenge the other laws indentified in paragraph 88 of the first amended complaint.  As such, all of those claims necessarily survive. (Dkt.# 24, ¶ 88.)

miss the mark.[24]

### a. Defendant Is Legally Obligated To Label The Fake Products As Imitation.

Defendant first argues that it is not required to place "imitation" on its labels because 21 C.F.R § 101.3(e) requires it only if the fake food is "nutritionally inferior" to the real article.[25] This argument is not entirely correct.

The regulation provides that "a food shall be deemed to be misbranded if it is an imitation of another food unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated." 21 C.F.R § 101.3(e). Plaintiff adequately alleges that Ghirardelli violates this regulation, as incorporated into the Sherman Law, by representing the products are chocolate, when they contained no derivative of cacao, without disclosing that they are imitation. (Dkt.# 24, ¶¶ 1, 16, 18, 23, 41, 47, 87.)

Ghirardelli is referring to an *exception* to this labeling requirement, set forth in § 101.3(e)(2), whereby a food is not deemed "imitation" if meets a series of requirements, including nutritional equivalence. *See* 21 C.F.R § 101.3(e)(2)(i)&(ii). The burden of proving that this exception applies falls on Ghirardelli, not Plaintiff. In any event, this issue—i.e., whether these foods are nutritional equivalents—may not be decided in this context.[26]

Ghirardelli persists, however, claiming Plaintiff fails to allege "nutritional inferiority." But it fails to identify any such pleading requirement under the UCL unlawful prong. Nor does it cite any authority for this proposition, likely because there is none. *Cf. Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 839 (1994); *see also Levine v. Blue Shield of California*, 189 Cal. App. 4th

---

[24] Each of these arguments also could (and should) have been made in Defendant's last motion to dismiss.

[25] Ghirardelli also quibbles about where on the label "imitation" must be placed, but that too is irrelevant to this motion.

[26] Ghirardelli also argues that the "imitation" is used only "if it is an imitation of another food for which a definition and standard of identity has been established by regulation." It further asserts (again) that this requirement is inapplicable because the "regulation" providing a "standard of identity" to "white chocolate," per Health & Safety Code § 110685, is unconstitutional. Mere repetition, however, does not make the argument fare any better in this context.

1117, 1136 (2010) (stating "In order to state a claim for a violation of the [UCL], a plaintiff must allege that the defendant committed a business act that is either fraudulent, unlawful, or unfair.") In any event, Plaintiff sufficiently alleges the nutritional inferiority of the product, as labeled, discussing, for example, the nutritional value of cacao and the fact that all of Defendant's fake products contain none of it.[27]  (Dkt.# 24, ¶¶ 17, 18, 21, 22-23.)

### b. The Fake Products Must Be Labeled "Artificial" Or "Artificially Flavored."

Ghirardelli also advances reasons regarding why it should be permitted to disregard the FDA requirement to label its fake products as "artificial" or "artificially flavored."  For example, it argues, again without any support, that "reasonable consumers" will think that the fake white chocolate products have a characterizing flavor of white chocolate, not chocolate.  In other words, Ghirardelli again argues that all consumers know that white chocolate is not chocolate.  But this argument is totally contrary to what Plaintiff alleges, and will easily prove.  To the contrary, Plaintiff asserts that most consumers think that white chocolate (like dark, milk, and semi-sweet) *is* chocolate.

Defendant's next contention—i.e., that the "chocolate" in the logo refers to the company name, not the "primary recognizable flavor"—also ignores Plaintiff's express allegations: "[T]he label shows 'Ghirardelli®' is the brand name (as it is followed by the registered trademark symbol) and 'Chocolate' as the flavor (as it is in a smaller font and not followed by any trademark symbol."  (Dkt.# 24, ¶ 21.)  Whatever the ultimate conclusions on both of these issues, Ghirardelli's requested ruling, at this stage, is once again foreclosed by *Williams*, 523 F.3d at 939-40 (9th Cir. 2008); *see also Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.") *quoting McKell v. Washington Mutual,*

---

[27] Should this Court require additionally pleading regarding the nutritional inferiority of the fake products, Plaintiff can easily amend.  *See infra*, III(D).  Plaintiff maintains, and could easily plead, that cacao, and its derivatives, have numerous nutritional benefits such as lower heart disease and cancer, reduced blood pressure, lower cholesterol, and enhanced memory.  *See* http://en.wikipedia.org/wiki/Health_effects_of_chocolate.

1   *Inc.*, 142 Cal.App.4th 1457, 1472 (2006); *Astiana*, 2011 U.S. Dist. LEXIS 57348, at *9 (refusing

2   to decide, on motion to dismiss, whether consumers where plausible deceived); *see also*

3   *Delacruz*, 2012 U.S. Dist. LEXIS 90847, at *20 (denying motion to dismiss where the "FDA

4   regulations provide objective criteria for determining whether products contain unhealthy

5   ingredients or certain ingredients in unhealthy amounts").

6         Ghirardelli next seeks to manufacture two minor pleading deficiencies.[28]  It first argues

7   that the FAC fails to state a cause of action under the FDA's artificial regulation, because Plaintiff

8   only *conditionally* pleads that the products contain artificial flavors.  It further argues that, even if

9   Plaintiff adequately pleads the existence of artificial flavor, he still fails to adequately plead that

10  the "artificial flavor" is used to simulate, resemble, or reinforce the characterizing ingredient—

11  i.e., chocolate or cacao.

12        As discussed above, there is no such pleading requirement under the UCL.  *See Levine*,

13  189 Cal. App. 4th at 1136.  But even if Plaintiff was required to expressly plead the artificial

14  nature of the fake white chocolate products used to "simulate," "resemble," or "reinforce" the

15  primary characterizing flavor, he has complied:

16          Defendant deceptively informed and led its customers to believe that they were
    purchasing, for a premium price, products containing chocolate, while failing to

17  adequately disclose that such products contain no chocolate, white chocolate, or cocoa

18  derivatives of any kind and that they were "***artificial***"

19          Defendant did not disclose that the Fake White Chocolate Products were not chocolate,
    white chocolate, nor were they flavored with chocolate or white chocolate

20

21          Defendant's competitors more adequately disclose the truth about their products that are
    artificially flavored white chocolate.

22

23          Plaintiff further relied on Defendant's failure to adequately disclose that the product was
    artificial or imitation, was not chocolate, was not "white chocolate" and that it contained

24  no cocoa butter.

25          The next day, Plaintiff tasted Defendant's Ghirardelli® Chocolate Premium Baking Chips
    — Classic White and noticed that they did not at all taste like white chocolate. He then

26  looked closely at the ingredients list on the back of the packaging and noticed that the

27

28  [28] Should this Court require additionally pleading regarding the artificial composition used to
    "simulate," "resemble" or "reinforce" the characterizing flavor, of the fake products, Plaintiff
    could easily add such minor details.  *See infra*, III(D).

product did not contain any white chocolate, chocolate, cocoa or cocoa butter. (Dkt.# 24, ¶¶ 1, 15, 18-21, 23, 37-42 (emphasis supplied).)  At a minimum, the artificial nature of the fake white chocolate products used to "simulate," "resemble," or "reinforce" the primary characterizing flavor of the products can easily be inferred from the complaint.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (holding that a court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party.).

Defendant also argues, albeit in a footnote and without evidentiary support, that the taste of the fake white chocolate flavor comes from non-artificial sugar, whole milk powder, dry milk, and vanilla.  But this "fact" is nowhere found in the FAC, and accordingly should be ignored as irrelevant.  More importantly, however, this argument simply highlights the point why this question—i.e., what flavor is Ghirardelli artificially imitating—cannot be decided without discovery.[29]  And if discovery reveals that Ghirardelli intended to artificially imitate vanilla, milk or cream, then it would still be required to label the product as "artificial."  *See* 21 C.F.R. § C.F.R. 101.22(i)(1)-(2).  In that instance, however, the package would state not artificial *chocolate* flavor, but artificial vanilla, milk or cream flavored, which coincidentally is *exactly* how Hershey sorts out this issue. (Dkt.# 24 ¶ 38 ("Hershey specifically states, immediately under the name of the product, "Artificially Flavored Creamy Vanilla.")

### c.    Defendant Violates 21 C.F.R. § 102.5

Defendant finally argues that Plaintiff fails to plead a violation of the "common or usual name" requirements in 21 C.F.R. § 102.5 because he has not adequately alleged that a common or usual name has been established, by regulation, for the confections at issue in this litigation. This argument is both incorrect and, like all of Defendant's other regulatory arguments, premature.

The FDA has promulgated a number of regulations concerning food safety and labeling. *See* 21 C.F.R. § 101.1, et seq.  These regulations include, in pertinent part, the following

---

[29] Even if it turns out that the products are "naturally" flavored to resemble vanilla, chocolate, milk, or cream, Ghirardelli would still be obligated to state as much.  *See* 21 C.F.R. § 101.22(i)(1)(i)-(iii).

provisions for discerning the "common or usual name" of a food:

(a) The common or usual name of a food, which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients . . .

(b) The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case…

(c) The common or usual name of a food shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s) and/or the need for the user to add any characterizing ingredient(s) or component(s) when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food . . .

(1) The presence or absence of a characterizing ingredient or component shall be declared by the words "containing (or contains) " or "containing (or contains) no   " or "no   " or "does not contain   ", with the blank being filled in with the common or usual name of the ingredient or component

…

(d) A common or usual name of a food may be established by common usage or by establishment of a regulation in subpart B of this part, in part 104 of this chapter, in a standard of identity, or in other regulations in this chapter.

21 C.F.R. § 102.5.[30]  Plaintiff alleges, and will prove, that Defendant violated this regulation by, inter alia, (a) inaccurately stating on the label of the fake products "the basic nature of the food or its characterizing properties or ingredients," and (b) not declaring, on all of the labels, the absence or percentage (0%) of the characterizing ingredient for the fake products—i.e., cacao.[31] (Dkt.# 24, ¶¶ 14, 16, 20, 87.)

---

[30] Plaintiff alleges that the FDA has established a standard of identity for both "chocolate" and "white chocolate." Though Defendant seemingly does not disagree, it contends that the FDA's definition and standard of identity of chocolate and/or white chocolate is inapplicable because it post-dates the most-recent adoption, by the California Legislature, of the Sherman Law.

[31] Indeed, a trip to any grocery store reveals that most chocolate manufacturers, including Defendant, typically state the percent chocolate/cacao on the label of chocolate. *See, e.g.,* http://www.ghirardelli.com/store/shop-products/collections/gourmet-milk.html/ ("Gourmet Milk **32% Cacao**") (emphasis supplied).

1    Defendant counters that, as a matter of law, it did not violate this regulation because a

2    "common or usual name" for chocolate or white chocolate has not been established by (FDA)

3    regulation.  It further claims that Plaintiff "points" to no other regulation establishing a common

4    name for the fake products at issue.  Whether or not that is true, however, is irrelevant because,

5    contrary to Defendant's reading of the regulation, a "common or usual name" can also be

6    "established by common usage."  21 C.F.R. § 102.5(d) ("A common or usual name of a food may

7    be established by common usage . . .").  In that context, Plaintiff adequately alleges that

8    Defendant violated this regulation by pleading that the common or usual name for a products

9    made from cacao is chocolate, which ingredient is notably absent from all of Ghirardelli's fake

10   products.  (Dkt.# 24 ¶¶ 27 (including the Webster's Dictionary definition), 47, 65, 75, 80.)

11   Irrespective of Plaintiff's allegations, the common or usual name and characterizing ingredient of

12   Defendant's fake products is quite obvious.  Finally, Ghirardelli points out that Hershey and

13   Nestle use the terms "Premier Baking Chips" and "Premier White Morsels" to establish that

14   different companies use different terms to refer to "white, sweet, creamy chip" confections.  But

15   this proves nothing because Hershey and Nestle do not state "CHOCOLATE," but *do* state

16   artificial or imitation on the primary label panel of their products.  In any event, three wrongs

17   would not add up to Ghirardelli's compliance with the regulations.

18        **D.        If Any Allegations Are Insufficient, Leave To Amend Should Be Granted.**

19        If a complaint is dismissed for failure to state a claim, "leave to amend should be granted

20   unless the court determines that the allegation of other facts consistent with the challenged

21   pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture*

22   *Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Indeed, leave to amend is only really properly denied

23   "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th

24   Cir. 1992).  Should this Court find any of his allegations insufficient to state a claim for relief,

25   Plaintiff requests leave to amend.

26   **III.    CONCLUSION**

27        For the foregoing reasons, this Court should deny, in its entirety, Defendant's motion to

28   dismiss the first amended complaint.

1

Dated:  February 28, 2013                 **GUTRIDE SAFIER LLP**

2
/s/ Seth A. Safier
Adam J. Gutride, Esq.

3
Seth A. Safier, Esq.
Lee Jay Kuo, Esq.

4
Kristen G. Simplicio, Esq.
835 Douglass Street

5
San Francisco, California 94114

6
Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28