Thomas B. Mayhew (State Bar No. 183539)
  tmayhew@fbm.com
Deborah K. Barron (State Bar No. 257146)
  dbarron@fbm.com
Benjamin J. Sitter (State Bar No. 273394)
  bsitter@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

Attorneys for Defendant
GHIRARDELLI CHOCOLATE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT MILLER, an individual, on behalf of himself, the general public and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GHIRARDELLI CHOCOLATE COMPANY, and DOES 1 THROUGH 50,<br><br>Defendants. | Case No. 3:12-cv-04936-LB<br><br>**GHIRARDELLI CHOCOLATE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**CLASS ACTION**<br><br>Date:      Hon. Laurel Beeler<br>Time:      March 21, 2013<br>Location:  11:00 a.m.<br>Courtroom: 15th Floor, Courtroom C |

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:12-CV-04936-LB

# **TABLE OF CONTENTS**

**Page**

I. MILLER LACKS STANDING TO SUE ABOUT PRODUCTS HE DID NOT PURCHASE ........................................................................................................... 1

II. PLAINTIFF'S CLAIMS BASED ON THE SHERMAN FOOD, DRUG & COSMETIC LAW SHOULD BE DISMISSED ................................................................. 4

    A. The Claims Based On Violation Of The "White Chocolate" Standard Of Identity, As Purportedly Incorporated Into The Sherman Act, Should Be Dismissed ................................................................................................................. 4

    B. Ghirardelli Need Not Put The Word "Imitation" On The Products ....................... 9

    C. Ghirardelli Need Not Put The Words "Artificially Flavored" On The Products ................................................................................................................. 10

    D. The "Common Or Usual Name" Regulation Does Not Apply ............................. 12

CONCLUSION ........................................................................................................................... 13

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT       - i -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................................ 9

*Cahill v. Liberty Mutual Co.,*
   80 F.3d 336 (9th Cir. 1996) ............................................................................................... 11

*Commission for Accurate Labeling & Marketing v. Brownback,*
   665 F. Supp. 880 (D. Kan. 1987) .................................................................................... 9, 10

*Dee-K Enterprises, Inc. v. Heveafil Sdn. Brotherhood,*
   985 F. Supp. 640 (D.Va. 1997) ........................................................................................... 4

*G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.,*
   460 F. Supp. 2d 1222 (D.Nev. 2006) .................................................................................. 4

*Grocery Manufacturers of America, Inc. v. Gerace,*
   755 F.2d 993 (2d Cir. 1985) ............................................................................................ 3, 9

*Hanna v. Plumer,*
   380 U.S. 460 (1965) ............................................................................................................ 9

*Harris Bank v. Pachaly,*
   902 F. Supp. 156 (N.D. Ill. 1995) ....................................................................................... 4

*Rooney v. Cumberland,*
   No. 12-CV-0033-H (DHB), 2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012) ............ 2

*Stephenson v. Neutrogena,*
   No. 12–cv–00426 PJH, 2012 U.S. Dist. LEXIS 1005099 (N.D.Cal. July 27, 2012) ................ 1

*Williams v. Gerber Products Co.,*
   552 F.3d 934 (9th Cir. 2008) .............................................................................................. 2

### STATE CASES

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
   No. C–11–2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012) .................................... 1

*Brock v. Superior Court,*
   9 Cal. 2d 291 (1937) .............................................................................................. 4, 5, 7, 8

*Brown v. Hain Celestial Group, Inc.,*
   No. CH-03082 LB, 2012 WL 6697670 (Dec. 22, 2012 N.D. Cal.) ......................................... 3

*Farm Raised Salmon Cases,*
   42 Cal. 4th 1077 (2008) ................................................................................................... 7, 8

*In re Castleberry's Food Co.,*
   40 Agric. Dec. 1262 (U.S.D.A. 1981) .............................................................................. 3, 9

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT      - ii -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2

*In re Kraft, Inc.*,
   114 F.T.C. 40 (F.T.C. 1991) .................................................................................................. 3, 9

*Kugler v. Yocum*,
   69 Cal. 2d 371 (1968) ................................................................................................................ 5

*Levine v. Blue Shield of California*,
   189 Cal. App. 4th 1117 (2010) ................................................................................................. 9

*Metropolitan Water District v. Whitsett*,
   215 Cal. 400 (1932) ............................................................................................................. 5, 6

*Palermo v. Stockton Theatres*,
   32 Cal. 2d 53 (1948) ............................................................................................................ 7, 8

*People v. Cooper*,
   27 Cal. 4th 38 (2002) ................................................................................................................ 6

*People v. Kruger*,
   48 Cal. App. 3d Supp. 15 (1975) .............................................................................................. 6

*People v. Williams*,
   175 Cal. App. 3d Supp. 16 (1985) ............................................................................................ 6

*People v. Wright*,
   30 Cal. 3d 705 (1982) ............................................................................................................... 9

*Saunders v. Superior Court*,
   27 Cal. App. 4th 832 (1994) ..................................................................................................... 9

*State School Building Finance Commission v. Betts*,
   216 Cal. App. 2d 685 (1963) .................................................................................................... 6

**FEDERAL RULES AND REGULATIONS**

21 C.F.R.
   § 101.22 ............................................................................................................................ *passim*
   § 101.3 ................................................................................................................. 3, 8, 9, 10, 12
   § 101.9(c) .................................................................................................................................. 9
   § 102.5 ......................................................................................................................... 11, 12, 13
   § 163.111 ................................................................................................................................ 12

Federal Rules of Civil Procedure
   Rule 8(a) ................................................................................................................................... 9
   Rule 12(h)(1) ............................................................................................................................ 4

**STATE STATUTES**

Cal. Health & Safety Code
   § 110100 ............................................................................................................................... 5, 9
   § 110380 ............................................................................................................................... 5, 9
   § 110505 ............................................................................................................................... 5, 9
   § 110115 ................................................................................................................................... 5

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT     - iii -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2

Cal. Penal Code
  § 190 .................................................................................................................................. 6
  § 1170.3(a) ....................................................................................................................... 8
  § 2933.1 ............................................................................................................................ 6

Cal. Rules of Court
  Rule 4.121 ........................................................................................................................ 8
  Rule 4.123 ........................................................................................................................ 8
  Rule 421 ........................................................................................................................... 8
  Rule 423 ........................................................................................................................... 8

**OTHER AUTHORITIES**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
  § 1388 (3rd ed. 2004) ....................................................................................................... 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:12-CV-04936-LB

- iv -

28172\3562033.2

## I. MILLER LACKS STANDING TO SUE ABOUT PRODUCTS HE DID NOT PURCHASE.

There's no misunderstanding about what Miller was trying to do by making his new "logo[1] says chocolate" claim: make a narrow claim that he has standing to pursue, and then argue that he has standing to sue about other products that also have a logo-says-chocolate issue. But Miller lacks standing concerning the Other Products because (1) he didn't buy them, (2) the Other Products' "labels differ widely" in ways that matter for his new logo-says-chocolate claim, and (3) the composition of the products is central to the "imitation" and "artificially flavored" claims (regardless of whether the logo is common to all five products) and the composition of each Other Product is different from the white chips.  These differences mean Miller lacks standing to sue about the Other Products. *See* Order Granting Dismissal at 11-13 (Dkt. No. 20) (no standing where "[I]n sum, the products are too different, and their labeling is dissimilar."); *see also Stephenson v. Neutrogena*, No. 12–cv–00426 PJH, 2012 U.S. Dist. LEXIS 105099 at *3 (N.D. Cal. July 27, 2012) (dismissing claims based on products not purchased because the purchased products were not "similar enough to the unpurchased products such that an individualized factual inquiry was not needed for each product"); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C–11–2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (noting that in most reasoned opinions, "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased").

Assessing whether the word "chocolate" in the logo means to the purchaser that the product will be "chocolate-flavored" is a question that will require looking at each label

---

[1] Plaintiff "objects" that Defendant should not call the logo a logo, claiming it is unclear whether it is a trademark. Defendant had adopted the neutral term "logo," because, even though the logo is in fact a registered trademark of Ghirardelli Chocolate Company, Plaintiff's complaint incorrectly pleads that it is not, and using the word "logo" meant not arguing over terminology that does not matter. Accepting Plaintiff's incorrect allegation as "true at the pleading stage" does not change the analysis. The combination of graphic elements and words – what we have called a "logo" – could be called a "brand, brand name, tagline, logo, trade mark, [or] trade name" (Opp. at 5 n.7). But regardless of terminology, its function placed in context is to identify the company that is the source of the goods, not to identify the product name (for example, "white chocolate flavored confectionary coating wafers" or "white baking chips").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT     - 1 -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2

1  separately, and determining what effect the logo has on the customers who buy the product.[2]
2  Customers who buy 50 pound bags of "white chocolate flavored confectionary coating wafers"
3  may be extraordinarily unlikely to believe that the wafers are going to taste like "chocolate,"
4  because the product is labeled with the words "white chocolate flavored . . . ."  On the other hand,
5  grocery store consumers who buy 11 ounce bags of white chips are also unlikely to actually
6  believe the product is going to taste like chocolate – but in both cases (or, all five cases), the
7  decision will be for reasons unique to how the purchasers interpret the package.

Reasonable consumers look at words like "white chocolate flavored confectionary coating wafers," "white mocha," or pictures of coffee cups and white-colored chips baked in cookies, to figure out what they are buying and what it will taste like.  And that is what the FDA expects them to do.  Indeed, the FDA rule that Plaintiff wants to litigate under makes this the essential test for whether the regulation applies at all: "If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means . . . ." 21 C.F.R. § 101.22(i).  So if that regulation applies to Ghirardelli's products (which is disputed), liability for each product is going to depend on whether each product's "entire label, labeling, or advertising . . . makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, . . . or other means . . . ." *Id.*  If the combination of elements on the packaging – logo and all – led Plaintiff to believe that he was buying a product that would taste like chocolate,[3] that does not

---

[2]  Miller distinguishes the "Sugar in the Raw" case, *Rooney v. Cumberland*, No. 12-CV-0033-H (DHB) 2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012) by pointing out that even though the court there decided on the merits that a consumer would not think that turbinado sugar was something else – some kind of "raw" sugar – based on the corporate logo (or trade mark, or trade name, or tagline), "raw" is not a regulated term while "chocolate" has an FDA standard of identity.  This distinction makes no difference at all.  The point of *Rooney* is that, in assessing whether a product is misleading at the pleading stage, consumers are not assumed to have tunnel vision with respect to the logo.  *Id.* at *12.  Even if consumers are not "expected to look beyond . . . the front of the box," *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008), one would nevertheless expect that they at least look at the front of the box.  It is difficult to imagine anyone successfully shopping at a grocery store while looking only at trademarks to figure out what to put into the cart.

[3]  The irony here is that while Plaintiff claims now to represent people on a claim that the logo made people think the product tasted like chocolate, he probably did not think that himself. FAC ¶ 42 (Miller was surprised it did not taste like *white* chocolate).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT      - 2 -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2

1  mean he has standing to sue on behalf of the purchasers of 50 pound bags of "white chocolate
2  flavored confectionary coating wafers," whose separate label gives a very different impression,
3  no matter what the logo says.  Indeed, when deciding whether the purchasers of 50 pound bags of
4  "white chocolate confectionary coating wafers" reasonably believe that the product will have the
5  "primary characterizing flavor" of "chocolate" (and not "white chocolate," as the product says
6  clearly on the label), Ghirardelli contends that the corporate logo's use of the word "chocolate"
7  will be "relatively unimportant considered in the context" of the entire label.  *Brown v. Hain*
8  *Celestial Grp., Inc.*, No. CF-03082 LB, 2012 WL 6697670 at *8 (N.D. Cal. 2012 Dec. 22, 2012)
9  (distinguishing this Court's prior opinion in this case).

10        Other elements of Plaintiff's claims on behalf of the putative class require assessing the
11  ingredients of each of the separate products, and how they contribute (or do not) to the nutritional
12  qualities and taste of the product.  In assessing whether each product violates the "imitation"
13  regulation, the nutritional value of each product, and the product for which Plaintiff claims it is a
14  substitute, will need to be assessed, whether as an element of the claim, 21 C.F.R. § 101.3(e)(1),
15  *In re Kraft, Inc.*, 114 F.T.C. 40, 91-92 (F.T.C. 1991), *In re Castleberry's Food Co.*, 40 Agric.
16  Dec. 1262, 1269-70 (U.S.D.A. 1981), or *Grocery Mfgrs. of Am., Inc. v. Gerace*, 755 F.2d 993,
17  997-98 (2d Cir. 1985), or alternatively as a defense.  Opp. at 14 (arguing that nutritional
18  equivalence is an affirmative defense under 21 C.F.R. § 101.3(e)(2)(i)&(ii)).  If Plaintiff claims
19  he was injured by buying white chips that he claims are not nutritionally equivalent to chocolate
20  chips, that does not mean that the Other Products are "imitation":  to figure out whether the Other
21  Products require the labeling statement "imitation," there must be a comparison between the
22  nutritional qualities of the white mocha mix, white frappe, white chocolate flavor mix, and white
23  chocolate flavored confectionary coating, and whatever products Plaintiff claims they are
24  substitutes for.  *Cf.* Original Complaint ¶ 46 (alleging ground white chocolate flavor mix
25  competes with "Safeway Select" brand "European Cafe Style – White Chocolate Hot Cocoa").
26        Similarly, in assessing whether each product requires the label "artificially flavored," the
27  logo alone does not decide the claim:  the recipe and labeling of each product will matter because
28  Plaintiff has to prove that each product contains an "artificial flavor."  21 C.F.R. § 101.22(i).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT - 3 -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2

Even if Plaintiff pleads and proves that the white chips he bought contain an "artificial flavoring" that "simulates" chocolate flavor (and proves that people believe the product has a primary flavor of chocolate based on the labeling), his alleged injury does not give him standing to sue about whether the "white mocha" mix, "white frappe" mix, "sweet ground white chocolate flavor" mix, or "white chocolate flavored confectionary coating wafers" violate the same rule based on the presence or absence of artificial flavoring, and whether the function of ingredients in those other products simulates, reinforces, or resembles chocolate flavor.  21 C.F.R. § 101.22(i).

Miller lacks standing to sue about the Other Products.

## II. PLAINTIFF'S CLAIMS BASED ON THE SHERMAN FOOD, DRUG & COSMETIC LAW SHOULD BE DISMISSED.

Plaintiff's claims based on the Sherman Food, Drug & Cosmetic Law ("Sherman Food Law") lack merit as a matter of law, and should be dismissed for failure to state a claim.[4]

### A. The Claims Based On Violation Of The "White Chocolate" Standard Of Identity, As Purportedly Incorporated Into The Sherman Food Law, Should Be Dismissed.

In *Brock v. Superior Court*, 9 Cal. 2d 291 (1937), the California Supreme Court stated that Article IV, Section 1 of the California Constitution – which provides that the lawmaking power of the state is placed in the California Legislature – permits the Legislature to incorporate federal law as California law, but only to a point: "It is, of course, perfectly valid to adopt *existing*

---

[4] Plaintiff adds a provocative footnote that Ghirardelli "waived" arguments about the applicability and validity of the Sherman Food Law by failing to make those arguments in its first motion to dismiss. This contention is frivolous. The only 12(b) motions that must be raised in a party's first pleading are those relating to personal jurisdiction, venue, and service of process. Fed. R. Civ. P. 12(h)(1). Plaintiff's citation to *Harris Bank v. Pachaly*, 902 F. Supp. 156 (N.D. Ill. 1995) (a case where plaintiff failed to raise a personal jurisdiction defense in the first motion) and *Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640, 643 n.2 (D. Va. 1997) (a case where plaintiff failed to raise a venue defense in the first motion) illustrate the proper application of the rule. Moreover, in the first complaint Plaintiff did not plead his "logo" claim at all, and changed his "imitation" and "artificially flavored" claims. And while Plaintiff cites to Wright and Miller, he quotes selectively from the treatise. The treatise actually states: "if the plaintiff voluntarily serves an amended complaint . . . the revised pleading may contain new information or different allegations making it subject to a defense or objection that was not previously apparent to the movant. In that event, a party may move to dismiss on the basis of the newly discovered ground even if she has filed a Rule 12 motion previously." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1388 (3rd ed. 2004); s*ee also G.K. Las Vegas Ltd P'ship v. Simon Prop. Grp., Inc*., 460 F. Supp. 2d 1222, 1244 n.11 (D. Nev. 2006) ("Defendants are well within their rights to assert defenses to the claims contained in the SAC even if they chose not to do so in the FAC.").

235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:12-CV-04936-LB
- 4 -
28172\3562033.2

1  statutes, rules or regulations of Congress or another state, by reference; but the attempt to make
2  *future* regulations of another jurisdiction part of the state law is generally held to be an
3  unconstitutional delegation of legislative power." *Id.* at 297.  This rule is an aspect of the "non-
4  delegation" doctrine which requires a state legislature to make laws for itself, rather than
5  delegating its lawmaking function to others.

6        Plaintiff first argues that Health and Safety Code Sections 110100, 110380, and 110505
7  do not automatically incorporate federal law – despite language saying that federal regulations
8  "adopted on or after that date" are California law – because of Section 110115.  Section 110115
9  says that "A federal regulation adopted pursuant to this part takes effect in this state 30 days after
10 it becomes effective as a federal regulation," unless an objection and request for hearing are filed
11 by "[a]ny person who will be adversely affected by adopted of the federal regulation."  This
12 provision does not cure the state constitutional problem.  The state Legislature does not evaluate
13 whether to adopt the new federal regulation as state law; it instead says that the new federal
14 regulation will become effective automatically, regardless of content, 30 days after adoption.
15 And leaving it to the public to decide whether to object to having a federal regulation become the
16 law of the state – delaying the effectiveness of the federal regulation that was automatically
17 adopted – does not mean that the Legislature is making the required decision about what state law
18 should be adopted.  For example, there may be no one "adversely affected" at the time the
19 regulation becomes state law.  The Legislature cannot conditionally delegate its prospective
20 lawmaking function to the FDA, conditioned on events outside the Legislature's control, any
21 more than it can irrevocably delegate its prospective lawmaking function to the FDA.

22       Plaintiff next argues that "[T]he Sherman Law does not leave food labeling to FDA."  The
23 argument is anti-tautological.  With respect to white chocolate – and every other food labeling
24 law passed after the Sherman Food Law – it did just that.

25       This is not a case like *Kugler v. Yocum*, 69 Cal. 2d 371 (1968), where a small town could
26 decide that it would pay the "prevailing wage" by tying its firefighter minimum pay to the
27 firefighter minimum pay of neighboring Los Angeles.  Courts have long validated that wages for
28 public employees can be set by reference to comparable prevailing wages.  *See id*. at 378-379

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:12-CV-04936-LB

- 5 -

28172\3562033.2

1  (citing *Metropolitan Water Dist. v. Whitsett*, 215 Cal. 400 (1932); "The instant ordinance in
2  essence adopts the 'prevailing rate' for firemen in the larger locality which Alhambra adjoins.").
3  *Kugler* never questions *Brock* (which *Kugler* itself cites at 380), which plainly states that the state
4  Legislature may not leave the definition of California law to the future decisions of federal
5  decisionmakers who are neither guided by, nor bound to follow the guidance of, the California
6  Legislature.  Plaintiff's suggestion that the non-delegation doctrine does not apply because the
7  California Legislature can simply decide that aligning California law now and forevermore with
8  federal law is a good idea (Opp. at 11 ("the Legislature constitutionally determined, in passing the
9  Sherman Law, that the fundamental food labeling policy of California would be co-extensive with
10 federal policy")) swallows the rule:  in every case of improper delegation to federal (or other)
11 authorities, the Legislature seemingly thought that federal (or other) authorities would be good
12 decisionmakers.  *Compare People v. Kruger*, 48 Cal. App. 3d Supp. 15, 19 (Super. Ct. App. Div.
13 1975) (state regulation that adopts federal fishing regulations "as such regulations may be revised
14 or amended in the future" was invalid; "While existing statutes may be incorporated by reference,
15 prospective incorporation has never been approved by a California court.") with *People v.*
16 *Williams*, 175 Cal. App. 3d 16, 24 (Super. Ct. App. Div. 1985) ("The California statute does not
17 provide that, if the federal maximum speed limit is ever revised, such amendment will be
18 automatically applicable in California.  The Legislature declared [that if Congress did change the
19 national speed limit] the Legislature will review the provisions of . . . the Vehicle Code to
20 ascertain whether it would be appropriate to amend such provisions.").

21       Plaintiff also cites cases holding that in interpreting statutory text, general incorporation of
22 a law is usually construed to include future amendments to that law.[5]  Opp. at 12.  In each of the
23 cases Plaintiff cites, there was an argument about incorporation of the provisions of one
24 California statute into another California statute.  *People v. Cooper*, 27 Cal. 4th 38, 44 (2002)
25 (analyzing sentencing credits under California law based on interaction between state *Briggs*
26 initiative, Proposition 179, former Penal Code Section 190, and 1994 adoption of Penal Code

---

[5]  Here, this interpretive doctrine does not come into play:  the statutes unambiguously state an intention to include future enactments.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:12-CV-04936-LB

- 6 -

28172\3562033.2

1  Section 2933.1); *State School Bldg. Fin. Comm. v. Betts*, 216 Cal. App. 2d 685, 692 (1963)

2  (analyzing interaction between 1952 bond law and 1958 law amending repayment terms).  These

3  cases do not "uph[o]ld as constitutional" incorporation of future federal regulation, because they

4  concerned neither future federal regulations nor the non-delegation doctrine.  Significantly, both

5  *Cooper* and *State School Building Committee* cite for the general interpretive rule the case of

6  *Palermo v. Stockton Theatres,* 32 Cal. 2d 53 (1948).  *Palermo* identifies a critical exception to the

7  interpretive rule based on the non-delegation doctrine:

> "It also [ ] [must] be noted that there is a cognate rule, recognized as applicable to many cases, to the effect that where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time, and (it may be assumed although no such case has come to our attention) as they may be subjected to elimination altogether by repeal. [citations]  The question whether the reference to the treaty contained in the California Land Act should be deemed specific or general within the meaning of the foregoing rules might, as an abstract proposition, admit of different opinions.  The language is 'any treaty now existing between the government of the United States and the nation or country of which such alien is a citizen or subject.'  **However, in view of the fact that there is grave doubt whether our Legislature could constitutionally delegate to the treaty-making authority of the United States the right and power thus directly to control our local legislation with respect to future acts (*Rancho Santa Anita v. City of Arcadia*, *supra*, at page 319, 322; *Brock v. Superior Court*, *supra*, at page 297; *In re Burke*, *supra*, at pages 328-329), we are constrained to hold that the reference is specific** [i.e., to the historic version] **and not general** [i.e., to the current version]**, since such a construction is at least a reasonable one [citations] and therefore to be preferred to one of doubtful validity [citations]."

19  *Palermo*, 32 Cal. 2d at 59-60 (emphasis added).  Far from helping Plaintiff's argument, the

20  *Palermo* rule confirms that the California Supreme Court finds incorporation of future federal law

21  unconstitutional.

22  Plaintiff cites *Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008), which construed the

23  Sherman Food Law to impose requirements "identical to" those contained in the FDCA.  Opp. at

24  12.  Plaintiff argues that this Court should "defer to that construction" and "presume the law to be

25  constitutional."  As to the first point, there is no issue:  the question here is not whether the

26  Sherman Food Law is correctly *construed* as incorporating future federal regulations into

27  California law; it unambiguously says it does.  The question is instead whether the California

28  Legislature had the *power*, under the state constitution, to incorporate future federal regulations.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:12-CV-04936-LB

- 7 -

28172\3562033.2

1   On that question of legislative power, *Farm Raised Salmon* is entirely silent.  No one raised the
2   non-delegation doctrine issue in *Farm Raised Salmon*, so the opinion reveals nothing about how
3   the California Supreme Court would rule if confronted with the non-delegation issue presented
4   here.  And while it is true that courts will uphold laws against constitutional challenge unless the
5   problem is clear, here the problem is clear.  In *Brock*, the term "hereafter made" was
6   constitutionally suspect, because "the attempt to make future regulations of another jurisdiction
7   [including those of a federal agency] is generally held to be an unconstitutional delegation of
8   legislative power."  But in *Brock*, the Court found that "There has been no attempt to declare or
9   enforce any federal regulation as our law merely by reason of its promulgation by federal
10  authority."  9 Cal. 2d at 298.  Here, the term "adopted . . . after that date" (Cal. Health & Safety
11  Code §§ 110100, 110380, 110505) has the same constitutional infirmity as identified in *Brock*,
12  but unlike in *Brock*, there *is* an attempt to "enforce [a] federal regulation as our law, merely by
13  reason of its promulgation by federal authority."  *Brock*, 9 Cal. 2d at 298.  And unlike in *Palermo*,
14  the statutes here unambiguously refer to incorporating future federal law, and cannot be
15  interpreted to avoid the non-delegation doctrine issue.  32 Cal. 2d at 59-60 (construing state law
16  that referred to federal treaty law as *not* incorporating future federal treaty amendments, to avoid
17  unconstitutionality under *Brock*).  The case thus falls squarely within the rule of *Brock*, *Kruger*,
18  *Williams*, *Plastic Pipe and Fittings Ass'n*, and *City of Bakersfield*.
19      Finally, Plaintiff cites *People v. Wright*, 30 Cal. 3d 705, 712 (1982), a case that does not
20  involve incorporation of prospective federal legislation, but instead involved whether the
21  California Legislature could set up the general framework for California's Determinate
22  Sentencing Law (for example, that criteria be based on the absence or presence of aggravating or
23  mitigating circumstances, Penal Code § 1170.3(a)) and then leave to the California Judicial
24  Council the precise rules to carry out the legislative mandate (Cal. Rules of Court 4.421 and
25  4.423[6], listing "circumstances in aggravation" and "circumstances in mitigation" that can take a
26  crime out of the middle range for sentencing).  Here, by contrast, the California Legislature does

---

[6]   At the time of *Wright*, these Rules of Court were numbered Rules 421 and 423; they have since been renumbered 4.421 and 4.423.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:12-CV-04936-LB

- 8 -

28172\3562033.2

not "establish[] a yardstick guiding the administrator," *Wright,* 30 Cal. 3d at 712-13 – it does not attempt to define for the FDA what would be a proper basis on which to establish a standard of identity (for white chocolate, or anything else).[7]

### B. Ghirardelli Need Not Put The Word "Imitation" On The Products.

On the "imitation" issue, Plaintiff does not discuss 21 C.F.R. 101.3(e)(1), *In re Kraft, Inc.*, 114 F.T.C. at 91-92, *In re Castleberry's Food Co.*, 40 Agric. Dec. at 1269-70, or *Grocery Mfgrs. of Am., Inc.*, 755 F.2d at 997-98 . As cited and quoted in the motion, the regulation and these cases say that "imitation" is a term used to describe a substitute food that is nutritionally inferior. 21 C.F.R. § 101.3(e)(1). Indeed, the Second Circuit has even stated that using the word "imitation" to describe a substitute that is not nutritionally inferior would violate federal law. *Grocery Mfgrs. of Am., Inc.,* 755 F.2d at 997-98. Plaintiff does not plead nutritional inferiority, so he fails to state a claim for violation of this regulation as incorporated into the Sherman Food Law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (under Fed. R. Civ. Proc. 8(a), a complaint must plead the facts showing the legal violation, not just recite or refer to the statute allegedly violated and recite its terms).[8]

Nutritional inferiority is based on the protein content and the percentages of nineteen vitamins and minerals. *Comm. for Accurate Labeling & Mktg. v. Brownback*, 665 F. Supp. 880, 882-83 (D. Kan. 1987). Plaintiff argues that the internet crowd-sourced encyclopedia says cacao derivatives have nutritional benefits that he has not yet pleaded. Opp. at 15 n.27. Fine. We will

---

[7] *Wright* also questioned whether "promotion of 'uniformity'" was a sufficient standard to guide an administrative agency. *Id.* at 713. But because Health and Safety Code sections 110100, 110380, and 110505 do not purport to limit the FDA's decision-making about standards at all, the same issue is not raised.

[8] Plaintiff incorrectly cites two California cases – *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994) and *Levine v. Blue Shield of Calif.*, 189 Cal. App. 4th 1117, 1136 (2010) as articulating a relevant pleading standard. In federal court, Rule 8(a) applies. *Hanna v. Plumer*, 380 U.S. 460 (1965) (Federal Rules of Civil Procedure apply in federal court, even in diversity case). Even if they did apply in federal court, neither *Saunders* nor *Levine* would excuse Plaintiff from pleading facts showing why he contends that there is artificial flavoring used in the white chips product, or permit him to sue on a claim where he says "if" artificial flavoring is used "then" he has a cause of action. *See, e.g., Saunders*, 27 Cal. App. 4th at 842 (dismissing cause of action based on restraint of trade, misrepresentation of court reporters' experience, and the interest of certain persons in litigation: "Such allegations are too vague and conclusionary to support a claim. . . . too vague and uncertain to state a cause of action . . . .").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT     - 9 -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2

need to wait and see whether the nutritional differences Plaintiff pleads involve the protein content and percentages of the nineteen vitamins and minerals listed by FDA.[9] 21 C.F.R. §§ 101.3(4), 101.9(c). *Brownback*, 665 F. Supp. at 882-83. If there is some other health benefit of cacao fat that Plaintiff wants to emphasize that is not on the list of nineteen, or some other kind of inferiority he wants to complain about, he will have to petition the FDA to get that kind of "inferiority" covered by the "imitation" rule. 21 C.F.R. § 101.3(e)(4)(iii). (And then, get the California Legislature to pass it as California law, so that he can privately enforce it. *See* section II.A. above).

### C. Ghirardelli Need Not Put The Words "Artificially Flavored" On The Products.

While Plaintiff now[10] argues that consumers do not know that white chocolate and chocolate are not the same thing, his "artificially flavored" claim has a different and more fundamental problem: no artificial flavoring. Opp. at 15. Without saying that the product (1) actually contains an artificial flavor ingredient, and (2) that the artificial flavoring is used to simulate, resemble, or reinforce chocolate flavor (the "primary characterizing flavor" in his claim), the complaint fails to state a claim upon which relief can be granted. 21 C.F.R. § 101.22(i)

The first requirement of the FDA rule requiring use of the term "artificially flavored" is that the product actually contain an "artificial flavor." 21 C.F.R. § 101.22(i)(2) ("If the food contains any artificial flavor . . . ."). An "artificial flavor" or "artificial flavoring" means a particular kind of compound – the kind that is defined in 21 C.F.R. § 101.22(a)(1). Plaintiff has

---

[9] We will also need to wait and see what Plaintiff claims are in regards to comparison products – for example, whether Plaintiff compares the white baking chips to chocolate chips vs. white chocolate chips.

[10] The case has taken a somewhat bizarre turn, now that Plaintiff seems to claim that everyone thinks the products are "chocolate" not just "white chocolate" (and despite labeling that does not say "white chocolate"). After the standing issue is worked out, we suspect that this argument will not be heard from again. No one really thinks "white chocolate-flavored confectionary coating wafers" are going to taste like chocolate, to take one example. Ghirardelli continues to maintain that reasonable consumers know that there is a difference between chocolate and a "white chocolate flavored" product or "white baking chips," and would not believe that any of the products at issue in this case have the "primary characterizing flavor" of chocolate.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT     - 10 -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2

read the ingredient list, FAC ¶ 42, but has not identified an ingredient he thinks is an "artificial flavor." Plaintiff quotes paragraphs 1, 15, 18-21, 23, and 37-42 of his FAC, but none of them say what the artificial flavor is, or even if there is one present. The closest the complaint comes is to say tentatively, conditionally, and parenthetically that maybe there is one, and that Plaintiff wants to have a claim if there is. FAC ¶ 23 (". . . (or, if one of the other ingredients was designed to simulate the chocolate flavor, to state . . . 'artificial' or 'artificially flavored.')."). Nothing in *Levine*, a state court pleading case affirming a demurrer without leave to amend where plaintiffs failed to plead facts showing a duty to disclose in an insurance contract negotiation, says that a claim can be brought based on pleading a "what if" instead of a fact. While the court "must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party," (Opp. at 17 (citing *Cahill v. Liberty Mut. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)), there is no factual allegation to support the claim here.

        The second requirement of the FDA "artificially flavored" rule is that the artificial flavor ingredient simulate, resemble, or reinforce the characterizing flavor. 21 C.F.R. § 101.22(i)(2). Plaintiff claims this product "did not at all taste like white chocolate." FAC ¶ 42. In other words, according to Plaintiff, even if there was an artificial flavoring, it did not simulate, resemble, or reinforce a white chocolate flavor "at all" – defeating application of the FDA rule. Meanwhile, Plaintiff never says the white chips taste like chocolate, much less that the "artificial flavor" ingredient is "simulat[ing], resembl[ing], or reinforc[ing]" a characterizing flavor of chocolate.

        Plaintiff's further argument that it should be permitted to sue and decide in discovery "what flavor is Ghirardelli artificially imitating" – speculating Ghirardelli is trying to "artificially imitate vanilla, milk, or cream"? – further underscores the lack of merit of this claim.[11] Without pleading (1) a reasonably interpreted representation of a primary characterizing flavor, (2) an

---

[11] Plaintiff also refers to the Hershey's "Premier White Chips" product, and points out that Ghirardelli's competitor's product uses the term "artificially flavored creamy vanilla." Opp. at 17. For what it's worth, Hershey's probably does that because it contains no vanilla and instead uses an "artificial flavor" to simulate vanilla, as indicated on its ingredient list. http://www.thehersheycompany.com/brands/baking-pieces/hersheys-premier-white-chips.aspx But as Plaintiff points out, none of this is in the FAC, because the FAC does not claim that Ghirardelli is using an artificial flavor to simulate vanilla flavor.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT   - 11 -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2

artificial flavoring agent covered by 21 C.F.R. § 101.22(a)(1), and (3) the contention that the first is simulated, resembled, or reinforced by the second, *id.* § 101.22(i)(2), there is no claim here.

### D. The "Common Or Usual Name" Regulation Does Not Apply.

Plaintiff's claim under 21 C.F.R. § 102.5 fails. Plaintiff continues to substitute the term "label" for "common or usual name" when quoting from this regulation, thus trying to turn a regulation about how the FDA uses a particular "term of art" – the phrase "common or usual name" – into a regulation about labeling requirements. Plaintiff also fails to point to any allegation of the FAC alleging that a "common or usual name" has been established for either the white chips or any of the Other Products. Plaintiff cites here to paragraphs 14, 16, 20, and 87, but none of them have an allegation saying that there is a "common or usual name" for any of the products, or explain how Section 102.5 is violated by any of the products. Paragraph 14 just quotes the rule – albeit incorrectly, by changing the noun. Paragraph 16 quotes from a sub-sub-section in the "imitation" regulation, which contains a cross-reference to Section 102.5. Paragraph 20 says only "All the packaging prominently uses the term 'chocolate' on the primary label panel when the products, in fact, contain no chocolate or white chocolate, cocoa butter, cacao fat, or any cacao derivatives." It says nothing about whether a "common or usual name" exists for any of the five products at issue here, or how Plaintiff contends any of them violate Section 102.5. And paragraph 87 refers only to the absence of the words "imitation" and "artificially flavored" as the conduct constituting the "unlawful trade practices"; it cites but does not explain why it is citing Section 102.5.

Plaintiff argues that he alleges the "common or usual name" for a product made from cacao is "chocolate," and cacao is absent from all of the products. Opp. at 19, citing FAC ¶¶ 27, 47, 65, 75, 80). But none of the products are labeled "chocolate": they are labeled "Premium Baking Chips – Classic White, " "White Chocolate Flavored Confectionary Coating Wafers," "Sweet Ground White Chocolate Flavor," "Premium Hot Beverage - White Mocha," and "Frappe Classico – Classic White." *See* Saunders Decl. ISO Mot. to Dismiss (Dkt. No. 9); FAC ¶ 13. Moreover, "chocolate" is a term with a standard of identity, 21 C.F.R. § 163.111(c), and thus does not fall under the "common or usual name" rubric. *See* 21 C.F.R. § 101.3(b)(1), (b)(2) and (b)(3)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT                - 12 -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2

(distinguishing between those foods for which a name is specified by regulation, i.e., a "standard of identity," and those for which there is a "common or usual name" or "an appropriately descriptive term"). So if Plaintiff contends the product's logo represents the product's "identity" (as opposed to the brand name, corporate logo, trade name, etc.), then his claim should invoke the "chocolate" standard of identity, not the "common or usual name" regulation. Moreover, none of the products at issue contain cacao, so even if there is a "common or usual name" for a product containing cacao, the products appropriately do not use such a term. There is no "common or usual name" for creamy, white, sweet confections shaped in chip form for baking.[12] No claim is stated based on the "common or usual name" regulation, 21 C.F.R. § 102.5 as incorporated into the Sherman Food Law.

## CONCLUSION

For the foregoing reasons, Plaintiff lacks standing to sue about products other than the white baking chips and Plaintiff's California Business and Professions Code Section 17200 unlawful claims that all of the White Product labels – including the white chip label – violate the Sherman Food Law should be dismissed for failure to state a claim.

Dated: March 7, 2013                    FARELLA BRAUN + MARTEL LLP


By: /s/ Thomas B. Mayhew
    Thomas B. Mayhew

Attorneys for Defendant
GHIRARDELLI CHOCOLATE COMPANY

---

[12] Plaintiff's Opposition claims, in response to this argument, that Nestlé's white chips "state artificial or imitation on the primary label panel." Opp. at 19. This is inaccurate. Nestlé, like Ghirardelli, simply states the name of its product: "Premier White Morsels." *See* Declaration of Deborah Barron, Ex. A.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED COMPLAINT    - 13 -
CASE NO. 3:12-CV-04936-LB

28172\3562033.2