UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SCOTT MILLER, an individual, on behalf of himself, the general public, and those similarly situated,

    Plaintiff,

    v.

GHIRARDELLI CHOCOLATE COMPANY,

    Defendant.
_____/

No. C 12-4936 LB

**ORDER RE MOTION TO QUASH**

[ECF No. 54]

## INTRODUCTION

In this putative class action, Plaintiff Scott Miller bought a package of "Ghirardelli® Chocolate Premium Baking Chips – Classic White" believing it to contain white chocolate chips and later discovered that the baking chips were not white chocolate. The dispute regards his Rule 45 subpoena to Safeway for exemplars regarding the display of the products, marketing documents, communications with customers, and pricing information. Ghirardelli and Safeway moved to quash the subpoena. The court held a hearing on December 19, 2013, quashes the subpoena in part, and orders the meet-and-confer process discussed in this order.

## STATEMENT

The Rule 45 subpoena at issue is to Safeway, a retailer that is Ghirardelli's customer. Plaintiff narrowed the subpoena during the parties' meet-and-confer process, and the requests that still are in

ORDER (C 12-04936 LB)

dispute are as follows. *See* Motion to Quash, ECF No. 54 at 8.

| | |
|---|---|
| Request No. 2: | Exemplars of all shelf tags, shelf display cards, or similar informational items displaying the product name, size, SKU, UPC, or price for the BAKING CHIPS[1] or WHITE BAKING BAR[2] during the CLASS PERIOD.[3] |
| Request No. 5: | Internal communications related to the inclusion, omission, or exclusion of the words "white chocolate" or "cocoa butter" on MARKETING MATERIALS[4] for the white chips. |
| Request No. 8: | All DOCUMENTS that comprise, reference or RELATE TO communications to or from customers (including emails) during the CLASS PERIOD concerning the WHITE BAKING BAR or BAKING CHIPS. |
| Request No. 9: | Documents sufficient to establish the price of baking chips and white baking bar throughout the class period. |
| Request Nos. 12-14: | Documents sufficient to establish the price of competitors'[5] (12) white chips; (13) baking chips; and (14) white baking bars throughout the class period. |
| Request No. 19: | Documents relating to Ghirardelli's compliance with government regulations on the use of the phrase "white chocolate," including but not limited to 21 C.F.R. section 163. |

---

[1] Per the subpoena Definitions: "The term BAKING CHIPS means the products labeled 'Baking Chips', including the 'Milk Chocolate,' '60% Cacao Bittersweet Chocolate,' 'Semi-Sweet Chocolate,' 'Double Chocolate Bittersweet,' and WHITE CHIPS products, sold, or offered for sale, by GHIRARDELLI."

[2] Per the subpoena Definitions: "The term WHITE BAKING BAR means the product labeled 'Baking Bar White Chocolate' sold, or offered for sale, by GHIRARDELLI."

[3] Per the subpoena Definitions: "The term 'CLASS PERIOD' means August 17, 2008 through the present."

[4] Per the subpoena Definitions: "The terms 'MARKET,' 'MARKETED,' 'MARKETING' and 'MARKETING MATERIALS' refer to the use of any print advertisement, radio advertisement, television advertisement, billboard, banner advertisement, website, letter, postcard, brochure, pamphlet, packaging, shelf display card, shelf tag, in-store display, point-of sale display, coupon, offer, or other attempt, effort or process that conveys any information, invitation or offer to purchase any GHIRARDELLI product."

[5] Per the subpoena Definitions: "The term COMPETITORS includes any company that manufactures white baking chips or white chocolate chips, including but not limited to Nestle S.A., The Hershey Company, Baker's Chocolate (*i.e.*, Kraft Foods, Inc.), Guittard Chocolate Company, Caillebaut, SunSpire, Scott's Cakes, Oppenheimer, The Prepared Pantry, Dr. Oetker, Choclatique, King David, and any store or generic brands."

ORDER (C 12-04936 LB)        2

Plaintiff has issued eight subpoenas to Ghirardelli's customers: Safeway, Walmart, Target, Aldi, Supervalue, Kroger, Whole Foods, and Publix (collectively, the retailers). Motion to Quash, ECF No. 54 at 7. Safeway and Ghirardelli brought the motion to quash the Safeway subpoena together. *See id.*

## ANALYSIS

### I. LEGAL STANDARD

#### A. Standing and Rule 45 Subpoenas

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2459 (3d ed. 2013); *see also Crispin v. Christian Audigier, Inc.*, No. CV 09-09509 MMM (JEMx), 2010 WL 2293238, at *5 (C.D. Cal. May 26, 2010) (quoting Wright & Miller and providing additional citations).

#### B. Scope of Rule 45 Discovery

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. The scope of the discovery that can be requested through a Rule 45 subpoena is the same as under Rule 26(b). Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules"); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). Unless otherwise limited by court order, Rule 26(b) allows a party to obtain discovery concerning "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This includes "the identity and location of persons who know of any discoverable matter." *Id.* "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

A court must protect a nonparty subject to a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3). A court also must limit discovery if it is unreasonably duplicative, can be obtained from a source that is more convenient or less burdensome, or the burden of producing it outweighs its likely benefit. Fed.

R. Civ. P. 26(b)(2)(C). Moreover, upon motion from a party who certifies that it has conferred in good faith with the opposing party, a court also may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). The issuing court also may quash a subpoena if it determines that the subpoena requires disclosure of "a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(c)(3)(B).

"On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Chevron Corp. v. Donziger*, No. 12-MC-80237 CRB (NC), 2013 WL 4536808, at *4 (N. D. Cal. Aug. 22, 2013) (citing *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 12-80082 LHK (PSG), 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012)).

## II. SCOPE OF ORDER: SUBPOENA TO SAFEWAY

To the extent that Ghirardelli is trying to challenge all subpoenas to all retailers, it does not have standing to do so. *Cf. See Crispin,* 2010 WL 2293238, at *7 (plaintiff had standing because he had a personal right with regard to subscriber information and communications subpoenaed by defendants). Thus, the court limits its inquiry to the subpoena to Safeway, which joined the motion to quash.

## III. DISPUTED REQUESTS

### A. Request No. 2: Shelf Tags

Shelf tags contain pricing and text information. Ghirardelli[6] provides two examples, one from Whole Foods and one from Publix. The one from Publix says "GHIRARDELLI WHT CHOC CHP." *See* Motion to Quash at 11-12. Ghirardelli argues that if shelf tags are relevant, then Plaintiff's motion for class certification is doomed because the highly-individualized facts about what people saw defeats any motion for class certification. *Id.* That is an issue for class certification, not discovery. The shelf tags are relevant (perhaps not highly relevant, but relevant nonetheless).

---

[6] The court uses "Ghirardelli" as a short-hand reference for both movants.

Ghirardelli argues undue burden too. In its opening brief, it did not provide any information about what the burden might be, stating only that "asking third parties to prepare even an exemplary collection is incredibly burdensome." *Id.* at 13. In support of that argument, it attached a declaration by Matthew Wirth, a director of baking ingredients for Safeway. Wirth Decl., ECF No. 55. He says that it would take hundreds of hours to research the issue. *Id.* ¶ 2. Shelf signs are updated and changed constantly and vary store-by-store. *Id.* ¶ 3. There is no centralized archive. *Id.* Safeway has 1,400 retail stores. *Id.* It would take hundreds of hours to gather even a sample. *Id.* Plaintiff responded in his papers and at the hearing that he never met and conferred with Safeway to address burden issues. Opp'n, ECF No. 7 at 5. The court requires that process (and said so explicitly to the parties both in its initial order denying without prejudice the motion to quash and at the November 21, 2013 case management conference). That being said, the Wirth declaration establishes that the requested discovery is unduly burdensome. At the same time, the court is not convinced that capable lawyers – in consultation with someone like Mr. Wirth – cannot come up with some kind of sampling plan to give some insight into the issue. Sampling could be regional, it could focus on representative stores in a region, or perhaps it is too burdensome entirely. The court appreciates Safeway's representation that it does not keep a central archive, but this does not end the inquiry. Does it have any archive on a store-by-store basis? How are tags generated? Are they kept over time? Are they kept electronically in some kind of spreadsheet where it is possible to access them? The answer may well be that it is too burdensome, but the court cannot tell just based on Mr. Wirth's declaration. Accordingly, the court will allow Plaintiff an opportunity to meet and confer with the retailer and suggest – after that conference – what might be reasonable.

In sum, the information is relevant, and Plaintiff may explore those burdens with the retailer directly (as the undersigned's standing order requires). If gathering the information indeed is an enormous burden that exceeds the relevance, then the court will consider the undue burden argument. It must be raised in a joint letter brief in accordance with the court's discovery procedures.

**B. Request No. 5**: **Internal Documents re Marketing Materials**

This category covers internal documents about marketing materials (such as store circulars,

ORDER (C 12-04936 LB)
5

1  coupons, shelf tags, and point-of-sale materials). Ghirardelli already provided what it characterizes
2  as an extensive collection of circular advertisements for all retailers in the country. Motion, ECF
3  No. 54 at 13. Mr. Wirth adds that he is not aware of any marketing materials using the words "white
4  chocolate" or "cocoa butter." Wirth Decl., ECF No. 55, ¶ 4. Safeway also does not have an
5  enterprise-wide document management system that archives marketing materials. *Id.*

6  The court directs the in-person meet-and-confer process described above for the reasons
7  previously articulated.

### C. Request No. 8: Communications with Store Customers

Plaintiff wants customer complaints about the white chocolate baking bar and any Ghirardelli baking chips. It asked Ghirardelli for complaints only about white chips. Ghirardelli argues that a broader request to retailers makes no sense. Motion, ECF No. 54 at 15. The court agrees and quashes the subpoena to the extent it asks about products other than the white chips.

As to a narrowed request for white chips, Ghirardelli argues that it did a comprehensive search resulting in 518 total customer communications, and it cannot see how more complaints add anything to the case. *Id.* at 16. Ghirardelli recognizes that the larger inquiry might provide context for customer confusion. *Id.* It also argues that its undue burden objection is based on the minimal relevance of the request (but provides no explanation about how it is burdensome). *Id.* at 17.

The information is relevant. The court has no idea how Safeway (the only retailer here) tracks its complaints. It can make no assessment on this record about the burden. Accordingly, to the extent the subpoena asks for information about the white chips, the court directs Plaintiff and Safeway to the meet and confer to determine what the burdens are, what compromises they can make, and whether there is any reasonable way to produce the most relevant information while alleviating Safeway's burden. Plaintiffs and Safeway may raise any disputes about burden in a joint letter brief.

### D. Request No. 19: Ghirardelli Compliance with White Chocolate Regulations

The court cannot understand how retailers might have this information or how it is relevant to Ghirardelli. If Ghirardelli communicated relevant information to retailers, then it has to disclose the information. Mr. Wirth says that he is not aware of any such communications and articulates the

burden and his knowledge sufficiently that the court quashes the subpoena as to this category.

**E. Request Nos. 9, 12, 13, and 14: Pricing**

Ghirardelli concedes that the information is relevant but argues that the subpoena should be quashed because it "will produce incomplete information of the kind needed to prove damages." Motion, ECF No. 54 at 19. It also argues that this is a burdensome way to seek information and that Plaintiff can acquire the information it needs by purchasing a report from a market research firm like the Nielsen Company. *Id.* Ghirardelli's counsel contacted Nielsen, which estimated that it would cost approximately $8,000 to $10,000 for a report providing three years' of average and promotional prices for a single product category such as chips, broken down by week and retailer. Barron Decl., ECF No. 56, ¶ 10. Also, a retailer's pricing is highly confidential. Motion, ECF No. 54 at 9.

Given the confidentiality issues and the ability to access information elsewhere, the court grants the motion to quash as to this request.

**F. Procedural Defects**

*1. No Advance Notice to Ghirardelli*

Ghirardelli argues that the subpoena should be quashed as procedurally defective because Plaintiff gave him no pre-service notice. Motion, ECF No. 54 at 20. Rule 45 requires that a subpoena calling for the production of documents be served on each party before it is served on the third party. Fed. R. Civ. P. 45(a)(4) (effective December 1, 2013); Fed. R. Civ. P. 45(b)(1) (effective before December 1, 2013). Plaintiff responds that he gave notice to Ghirardelli at the same time he e-mailed the subpoenas to the process server who served them afterwards. Opposition, ECF No. 79 at 8. Plaintiff argues that he complied with the rule because "before" means "before."

The Advisory Committee note to the 2013 amendment for Rule 45(a) explains that the point of prior notice is to allow the other side to object or serve a subpoena for additional materials. The court would not quash the subpoena on this basis, especially given the extensive briefing and this order on the merits.

*2. Subpoenas Issued From the Wrong Court*

Ghirardelli argues that Plaintiff's counsel should have issued the subpoena out of the right court. Effective December 1, 2013, Rule 45 was amended to allow nationwide service. *Compare* Fed. R.

Civ. P. 45(b)(2) (superseded Dec. 1, 2013), *with* Fed. R. Civ. P. 45(b)(2). Plaintiff also makes fact arguments that subpoenas were properly issued from this court. Opposition, ECF No. 79 at 8. The court will not quash the Safeway subpoena on this ground.

Another procedural issue is whether Plaintiffs may command production of documents in San Francisco for retailers located more than 100 miles away. *See* Fed. R. Civ. P. 45(c)(2)(A) (effective December 1, 2013). The old rule requires production within 100 miles of the place of service and the new rule requires the subpoena to command production within 100 miles of "where the person resides, is employed, or regularly transacts business in person." *Id.* The subpoena to Safeway does not raise this issue. The subpoenas to other retailers may. The rule applies to them. That being said, parties negotiate these types of issues all the time and may do so in the meet-and-confer process that the court's discovery order requires.

### G. Compensation to Non-Parties

Ghirardelli argues that Plaintiffs should pay the costs of production in advance. Motion, ECF No. 54 at 22 (arguing that non-party witnesses are "entitled to recover the costs of responding to discovery subpoenas"). Non-parties are protected against "significant expense resulting from compliance" with a Rule 45 subpoena. Fed. R. Civ. P. 45(d)(2)(B)(ii). Thus, a party asking for discovery may be asked to pay all or part of any legal fees and expenses reasonably incurred by a non-party in complying with the subpoena. *See United States v. C.B.S., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982).

One good insight that a meet-and-confer process gives is how much it might cost to get the discovery, which in turn will guide Plaintiff's decision about what to ask for (knowing that costs can be shifted) and the court's inquiry about whether to shift costs. The court will not order that cost-shifting without a record. Plaintiff also is willing to meet and confer with retailers about costs and is willing to cover reasonable costs. Opposition, ECF No. 79 at 9.

The issue should be addressed first in the context of a meet-and-confer with the affected retailer, and then (if necessary) in a joint letter brief that addresses the issues about costs specifically and the parties' different views on what should happen.

**CONCLUSION**

The court grants in part and denies in part the motion to quash. The retailers and Plaintiff may raise specific arguments in a joint letter brief only after meeting and conferring in accordance with the discovery procedures in this court's standing order.

This disposes of ECF No. 54.

**IT IS SO ORDERED.**

Dated: December 19, 2013

_____
LAUREL BEELER
United States Magistrate Judge