UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| SCOTT MILLER, an individual, on behalf of himself, the general public and those similarly situated,<br><br>Plaintiff,<br>v.<br><br>GHIRARDELLI CHOCOLATE COMPANY, and DOES 1 THROUGH 50,<br><br>Defendants.<br>_____/ | No. C 12-04936 LB<br><br>**ORDER GRANTING STEVE LEYTON'S MOTION TO INTERVENE AND DENYING HIS MOTION TO FILE AN AMENDED COMPLAINT ON THE ALL-NATURAL CLAIMS**<br><br>[ECF No. 59-1] |

In this putative class action, Plaintiff Scott Miller claims that Defendant Ghirardelli Chocolate Company violated consumer protection laws and state and federal labeling regulations by labeling its "Ghirardelli® Chocolate Premium Baking Chips – Classic White" as containing white chocolate when they do not. On October 11, 2013, Steve Leyton, a third-party who is represented by the same attorneys as Miller, filed a motion to intervene and to file an amended complaint to add new claims that Ghirardelli falsely labeled certain products "all natural." Motion, ECF No. 59-1.[1] Miller joined Leyton's motion. *Id.* at 5. Leyton argues that he meets the criteria to intervene as a matter of right and that if he does not, the court should permit him to intervene. *Id.* at 6. The court **DENIES** the

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

ORDER (C 12-04936 LB)

motion to intervene as a matter of right, **GRANTS** the motion to intervene permissively, and **DENIES** the motion to add the new all-natural claims.

### STATEMENT

### I. PROCEDURAL HISTORY

On August 17, 2012, Miller filed suit in San Francisco County Superior Court against Ghirardelli. *See* Complaint, ECF No. 1 at 11. In the original complaint, Miller alleged that Ghirardelli falsely labeled five of its products as "white" or "white chocolate flavored" when they did not contain any white chocolate, and that Ghirardelli thus was liable for violating state consumer protection and tort laws. *Id.* Ghirardelli removed the matter to federal court on September 21, 2012, and it moved to dismiss several weeks later. *See* Notice of Removal, ECF No. 1 at 1; Motion to Dismiss, ECF No. 7. The undersigned granted Ghirardelli's motion on the ground that Miller lacked standing to sue regarding the four products that he never purchased, and it denied the motion in all other respects. *See* Order, ECF No. 20.

On January 11, 2013, Miller filed a First Amended Complaint ("FAC") that alleged similar claims, including that Ghirardelli failed to comply with state and federal labeling regulations and violated the "unlawful prong" of California's unfair competition law by using the words "Ghirardelli Chocolate" on the logo of five products that did not contain chocolate or white chocolate. FAC, ECF No. 24. On April 5, 2013, following Ghirardelli's motion to dismiss, the undersigned again held that Miller lacked standing for the products he did not purchase. *See* Order, ECF No. 37. Miller's remaining claims are based on labeling violations related to the one product that he did purchase – Ghirardelli Chocolate Premium Baking Chips – Classic White ("white baking chips").

While the motion to dismiss was pending, the parties entered into a stipulated protective order. ECF No. 35. The protective order allows either party to designate material produced in the case as confidential or highly confidential (collectively defined as, "Protected Material"). *See id.* ¶¶ 2.2, 2.3, 2.15. A "basic principle" of the protective order is that the parties may use Protected Material "in connection with this case only for prosecuting, defending, or attempting to settle this litigation." *Id.* ¶ 7.1. The scope of protection includes:

(1) any information copied or extracted from Protected Material; (2) all copies, excerpts,

summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

*Id.* ¶ 3.

However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

*Id.* ¶ 3.

Ghirardelli answered the FAC on April 19, 2013, and the parties began discovery. *See* Answer, ECF No. 38; 5/3/2013 Joint CMC Statement, ECF No. 39 at 10-12. In their May 3, 2013 Joint Case Management Conference Statement, Miller stated that he did "not anticipate further amendments to the pleading. Plaintiff may, however, seek leave to add or intervene additional plaintiffs." ECF No. 39 at 10. At the initial case management conference on May 10, 2013, the court set a pretrial schedule based on the dates the parties requested. *Compare id.* at 2, *with* CMC Order, ECF No. 42 at 2. The pretrial schedule set June 10, 2013 as the last day to seek leave to add new parties or amend the pleadings and December 11, 2013 as the last day for Miller to file his class certification motion.

Ghirardelli deposed Miller on May 29, 2013. *See* Motion at 9 n.3. At end of the deposition, with more than seven hours on the record, Ghirardelli's counsel asked Miller, "Do you remember being influenced in any way in your purchase decision by the words All Natural ingredients on June 24th, 2012?" *See* Safier Decl. Ex. B. Miller answered, "No, I don't recall." *Id.*[2]

Before Leyton's purchase, and without knowing of it, Miller's counsel had been investigating whether the products were "natural." *See* Safier Decl. ¶ 3. He engaged in discovery-related meet-and-confers directed at the ingredients and their sources, but Ghirardelli said that there was no need

---

[2] Miller later corrected the transcript to change his answer to "Yes, but I don't specifically recall." *See* Safier Decl. Ex. C. Miller's counsel currently does not propose Miller as a representative on the "all natural" claims. Motion at 9.

ORDER (C 12-04936 LB)
3

1  to provide documents because all ingredients are listed on the packages. Safier Decl., ¶ 4.

2      On June 21, 2013, 11 days after the cut-off date to amend the pleadings, Ghirardelli produced a
3  document with an email chain that showed changes in packaging in response to this lawsuit,
4  including removing references to "chocolate"[3] and an email from Ghirardelli's CEO asking staff to
5  remove the words "All Natural." Motion at 9; *see* Safier Decl. ¶ 6, Ex. D. On July 12, 2013,
6  Ghirardelli produced a copy of a May 14, 2013 e-mail that Leyton sent Ghirardelli, saying that he
7  was dissatisfied with the white baking chips he purchased. *See* Safier Decl. ¶ 9, Ex. A.

8      On July 20, 2013, less than a month after the cut-off to amend the pleadings, Miller's counsel
9  sent Ghirardelli another CLRA letter on behalf of Miller and all similarly-situated persons, alleging
10 that the "all natural" claim was improper. Motion at 9; Safier Decl. ¶ 8 & Ex. E.[4] On August 9,
11 2013, Ghirardelli responded to the CLRA letter and said that it was willing to discuss the new claims
12 in the context of mediation. *See* Safier Decl. ¶ 10, Ex. F.

13     On August 12, 2013, Miller's counsel contacted Leyton "to investigate his experience and
14 inform him of the status of the litigation." Safier Decl. ¶ 11. Leyton expressed a desire to join the
15 litigation. *Id.* Because of the upcoming September mediation and Ghirardelli's August 9 letter,
16 Plaintiff's counsel decided to delay filing the motion to intervene until after the mediation. *Id.* ¶ 11.

17     In August, Miller's counsel deposed two Ghirardelli witnesses: Vicki Wong (who was the
18 30(b)(6) witness designee on the topic of "Defendant's manufacturing of Classic White baking
19 chips, including the ingredients and recipes used") and Steve Genzoli (Ms. Wong's supervisor and
20 the vice-president of quality assurance and research development). *See* Safier Decl. ¶¶ 12-14, Exs.
21 G, I. Their testimony, which Ghirardelli designated as "highly confidential - attorneys' eyes only"
22 provided additional detail about the source and provenance of the products' ingredients that are
23 relevant to Leyton's proposed "all natural" claims. *See* Safier Decl. ¶¶ 12-15, Ex. G ¶¶ 276-77;

---

[3] Ghirardelli's counsel acknowledged this during one of the hearings in this case.

[4] In their motion, Miller and Leyton's counsel state that when they sent the CLRA letter, "Plaintiff still did not have complete information about the ingredients or their sources," and "Miller is likely not an appropriate representative for an 'all natural' claim," in part because of his deposition testimony. Motion at 9.

UNITED STATES DISTRICT COURT
For the Northern District of California

Gutride Decl. Ex. I at 20.

On September 4, 2013, Miller's counsel shared its mediation statement with Ghirardelli. Safier Decl. ¶ 16. In it, counsel told Ghirardelli "that one or more class members were prepared to join as named plaintiffs regarding both the existing allegations and additional 'all natural' allegations." *Id.*

At the September 11 mediation, the parties were unable to resolve either Mr. Miller's claim or the proposed "all natural" claims. *Id.* ¶ 17. Leyton formally retained Miller's counsel after the mediation. Safier Decl. ¶ 18.

On October 1, 2013, Miller and Leyton's counsel gave Ghirardelli a copy of his Proposed Consolidated Amended Complaint ("PCAC") and asked them to stipulate to add Leyton and his all natural claims into the lawsuit, either by filing an amended complaint or permitting Leyton to intervene. Safier Decl. ¶ 19; *see* PCAC, ECF No. 59-2. Ghirardelli would not agree. Safier Decl. ¶ 19. Then on October 9, Miller and Leyton's counsel sent Ghirardelli another CLRA letter regarding Leyton's claims. *Id.* ¶ 20.

## II. THE NEW ALLEGATIONS IN LEYTON'S PROPOSED COMPLAINT[5]

In the PCAC, Leyton and Miller allege that Ghirardelli markets and sells numerous products as "All Natural," "100% All Natural," and containing "All Natural Ingredients" even though they are not natural. *See* PCAC ¶¶ 14, 42-48. The PCAC specifically alleges the ingredients that Leyton contends are unnatural and the products that contain those ingredients. *Id.*

Steve Leyton is a resident of San Diego, California. *See id.* ¶ 1. During the proposed class period, including in approximately April 2013, Leyton purchased several different Ghirardelli products. *Id.* ¶ 59. Ghirardelli advertised and marketed all of these products as "All Natural." *Id.* Leyton reviewed the front packaging of these products before he purchased them, including the words "All Natural." *Id.* He did not see anything stating that the products were not natural, and

---

[5] The following factual allegations are taken from Leyton's Proposed Consolidated Amended Complaint, ECF No. 59-2. The "white chocolate" allegations in the PCAC are largely identical to those in the operative complaint. The court's previous orders detailed the "white chocolate" allegations, so this order restates allegations relevant only to Leyton's new "all natural" claims. *See, e.g.,* ECF No. 37.

1 relied on Ghirardelli's omissions and the "all natural" claim on the packaging. *Id.*

2 In May 2013, he visited a grocery store in San Diego and perused the baking chips and chocolate
3 products. *Id.* ¶ 56. He read the front of a package of the white baking chips, including the words
4 "All Natural." *Id.* ¶ 56. He believed the white baking chips contained natural ingredients and would
5 be white chocolate and decided to purchase them. *Id.* He purchased the white baking chips for
6 approximately $4.29. *Id.*

7 On May 19, 2013, Leyton tried to melt some of the white baking chips, but they did not melt
8 properly and gave off a bad odor. *Id.* ¶ 57. He tried again with the same results. Then he read the
9 package and discovered that the white baking chips were "not a 'premium,' 'natural,' or 'chocolate'
10 product at all." *Id.*

11 Leyton complained to Ghirardelli the next day. *Id.* ¶ 58. He "informed Ghirardelli that he had
12 been misle[]d by the company's branding, and did not believe defendant should market the chips as
13 white chocolate or as natural." *Id.* Ghirardelli responded by mailing Leyton a coupon, which he
14 threw away. *Id.* ¶ 58. If Ghirardelli had not misrepresented (by omission and commission) the true
15 nature of the white chocolate chips and the other products that Leyton purchased, he would not have
16 purchased them or would have paid less for them. *Id.* ¶ 61.

17 In the PCAC, Leyton seeks to join Miller as a class representative for a "White Chips Class"
18 comprised of "all persons who, between August 17, 2008 and the present, purchased in the United
19 States, Ghirardelli® Chocolate Premium Baking Chips – Classic White." *Id.* ¶ 62. In addition,
20 Leyton (but not Miller) seeks to represent an "All Natural Class," defined as "[a]ll persons who,
21 between August 17, 2008 and the present, purchased, in the United States, any Ghirardelli products
22 that bore the words 'All Natural' on the primary display panel." *Id.*

23 Leyton seeks to bring the same claims on behalf of the proposed "all natural class" as Miller is
24 already bringing on behalf of the "white chips class." *See id.* ¶¶ 71-117. These are claims for: (1)
25 violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*; (2) violation
26 of the False Advertising Law, California Business and Professions Code § 17500, *et seq.*; (3) fraud,
27 deceit, and/or misrepresentation; and (4) "unfair, unlawful, and deceptive" trade practices in
28 violation of California Business and Professions Code § 17200, *et seq. Id.*

UNITED STATES DISTRICT COURT
For the Northern District of California

**ANALYSIS**

Leyton, who bought a bag of the white chips and thus is a class member, moves to intervene as an additional class representative to "address the adequacy and typicality challenges that Ghirardelli has raised with respect to Mr. Miller." Motion at 2. These include Ghirardelli's arguments that California law does not apply to Miller because he purchased the white baking chips in Florida. *See* Motion at 6. Ghirardelli has argued that Miller is atypical because (1) he purchased the chips to blend into his coffee and not for baking, (2) he did not complain directly to Ghirardelli and instead hired lawyers to do so, and (3) his focus was on cocoa butter and not other ingredients. *Id.* Leyton, by contrast, bought the chips for baking and other products (all in reliance on the claim that they were all natural), is a California resident, and complained directly to Ghirardelli. *Id.*

The issue is whether under these circumstances, Leyton may intervene under Rule 24 (either as a matter of right or permissively) and also amend the complaint to add the "all natural" claims.[6]

**I. INTERVENTION**

The first issue is whether Leyton may intervene, either as of right or permissively, with regard to the white-chip claims. (The court considers the appropriateness of adding the "all natural" claims in a stand-alone section.)

---

[6] Courts in this district also apply Federal Rule of Civil Procedure 16(b) when intervention comes after the deadline to add new parties or claims and requires the court to modify its scheduling order. *See Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2010 WL 3743532, at *1-2 (N.D. Cal. Sept. 17, 2010) (applying Rule 16(b) to motion to intervene in putative class action and denying motion, in part, for failure to demonstrate good cause); *Briggs v. United States*, No. C 07-05760 WHA, 2009 WL 1560005 (N.D. Cal. June 1, 2009) (same). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992); *see also Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007) (same). Unlike timeliness under Rule 24(a) (discussed below), the focus of the good cause inquiry "is upon the moving party's reasons for seeking modification" and prejudice to the opposing party is less important. *See Johnson*, 975 F.2d at 609. As discussed below in the section on timeliness, the court's view is that the delay is not significant. It was close to the cut-off time for aiding parties and claims, discovery was modest (limited to documents and two Ghirardelli witnesses to keep costs down before mediation), and the parties agreed to include Leyton's claims – including the all natural claims – in the mediation. And given discovery issues, the schedule (including the class certification deadline) will need to be moved anyway, regardless of Leyton's participation in the litigation. The court finds good cause.

**A. Intervention As of Right**

Under Federal Rule of Civil Procedure 24(a), a non-party has the right to intervene in any action if either a federal statute gives the non-party an unconditional right to intervene, Rule 24(a)(1), or the non-party:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

In *Wilderness Society v. United States Forest Service*, the Ninth Circuit provided a four-part test for analyzing motions to intervene under Rule 24(a)(2):  (1) The motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impeded its ability to protect that interest;  and (4) the applicant's interest must be inadequately represented by the parties to the action.  630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (citing *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). "Failure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied."  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).  The Ninth Circuit directs district courts to follow "practical and equitable considerations" and to construe the Rule "broadly in favor of proposed intervenors."  *United States v. City of Los Angeles,* 288 F.3d 391, 397 (9th Cir. 2002) (internal quotation marks omitted); *see also Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001).  A district court must "take all well-pleaded, nonconclusory allegations in the motion . . . as true absent sham, frivolity or other objections."  *Berg*, 268 F.3d at 820.

Ghirardelli opposes the motion to intervene on two grounds: (1)  Leyton's motion is not timely, and (2) Miller adequately represents Leyton's interests.

### *1. Whether Leyton's Motion to Intervene is Timely*

Leyton may intervene as or right only if his motion is timely.  "Timeliness is a 'threshold requirement' for intervention as of right."  *United States v. California*, No. 11-57098, 2013 WL

4367595, at *1 (9th Cir. Aug. 16, 2013) (quoting *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) ("LULAC")). If a motion to intervene is untimely, the court need not consider other Rule 24(a) elements. *LULAC*, 131 F.3d at 1302. "Timeliness is a flexible concept; its determination is left to the district court's discretion." *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citing *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981)). Still, the court must consider whether a motion to intervene is timely based on all relevant circumstances, not just the length of time that the case has been pending. *See United States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) ("Mere lapse of time alone is not determinative.").

To determine whether an intervention motion under Rule 24(a)(2) is timely, the court must consider the following three factors: "1) the stage of the proceeding at which an applicant seeks to intervene; 2) the prejudice to other parties; and 3) the reason for and length of the delay." *California Dept. of Toxic Substances Control et al. v. Commercial Realty Projects et al.*, 309 F.3d 1113, 1119 (9th Cir. 2002). In considering whether the stage of the proceedings supports intervention, courts consider the party's interest in a specific phase of a proceeding. *Alisal*, 370 F.3d at 921. "Although delay can strongly weigh against intervention, the mere lapse of time, without more, is not necessarily a bar to intervention." *U.S. v. Oregon*, 745 F.2d at 552. Prejudice is the most important consideration in deciding whether a motion to intervene is timely. *Id.*

### *a. Stage of the Proceeding; Reason for and Length of the Delay*

Ghirardelli argues that counsel was not diligent[7] or timely by waiting until this stage in the

---

[7] The parties dispute whether the diligence inquiry is limited to a party's diligence or may consider the diligence of counsel. *See* Opp'n at 14-15; Reply at 4. In class actions where the same counsel represent the original class representatives and the proposed intervenors, courts in this district have considered the attorney's diligence, and the court's view is that result is appropriate here given the nature of the surviving claims, the context of the litigation, and Ghirardelli's ongoing dialogue with Miller's counsel about Miller's appropriateness as a class representative. *See Harris*, 2010 WL 3743532, at *3 ("the diligence of counsel for the proposed intervenors, even before the proposed intervenors learned of the lawsuit, should be taken into consideration because counsel for the proposed intervenors has represented [the named plaintiff] from the inception of this case"); *Briggs*, 2009 WL 1560005, at *2 (denying motion to intervene in class action to revive dismissed claims based, in part, on lack of diligence by named plaintiff's counsel). Leyton nonetheless argues that the controlling test in the Ninth Circuit does not consider counsel's diligence and instead

ORDER (C 12-04936 LB)
9

litigation to add a new class representative designed to counter an argument that Ghirardelli raised by September 2012 and repeated "early and often": that Miller – who lives in Florida and bought the chips there – cannot serve as a class representative for claims brought under California consumer protection laws. Opp'n at 16 (issue was raised by September 2012 and repeated in discovery; the answer pleads the choice of law and typicality issues; Miller said in the May 3, 2013 joint case management statement that he did not anticipate further amendments to the pleadings "at this point" but might seek leave to add additional plaintiffs); 5 & n.2 (discussing effect of *Mazza v. American Honda Co., Inc.*, 666 F.3d 581 (9th Cir. 2012)).[8] Plaintiff had their chance to add a California plaintiff before, and they did not do, and thus their motion is untimely. Opp'n at 14-16.

Leyton responds that his counsel acted diligently in moving to intervene despite being hampered by Ghirardelli's discovery tactics. Motion at 13-15; Reply at 5-6. They sought to "identify new potential plaintiffs even before the pleadings were settled." Reply at 5-6. They sought "customer complaints and a list of purchasers through the Ghirardelli website." *Id.* at 6. Counsel learned of Leyton's complaint right after the cut-off to amend the pleadings. *Id.* As to Leyton's diligence, he purchased the white baking chips in May 2013 (one month before the deadline to add parties in this matter) and promptly complained to Ghirardelli. He filed a motion to intervene shortly after mediation in this case failed.

---

considers only whether "the person attempting to intervene should have been aware that his 'interest[s] would no longer be protected adequately by the parties.'" Reply at 4-5 (emphasis omitted) (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 934 F.2d 1092, 1095 (9th Cir. 1991)). In *Officers for Justice*, the Ninth Circuit reversed the district court's denial of a motion to intervene where the district court considered the wrong time period in finding a motion to intervene untimely, but counsel's diligence was not an issue. The case thus is not dispositive here.

[8] Ghirardelli argues that *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), holds that a nationwide class cannot be certified under California consumer protection laws, including Cal. Bus. & Prof. Code § 17200 and the Consumer Legal Remedies Act. Opp'n at 5 n 2. Miller cites post-*Mazza* cases and argues that California law can apply to a nationwide class. Reply at 7 (citing *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, No. ML 10-02199 DDP (Rzx), 2012 WL 4490860 (C.D. Cal. Sept. 28, 2012); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012) (certifying nationwide class of dietary supplement purchasers)). As the court said previously, this is an issue for class certification.

1    The court previously found that these facts established good cause under Rule 16(b). *See supra*
2 at n.6. At this point, discovery has been fairly modest. The deadlines will be continued anyway. At
3 this stage of the proceedings, these facts do not establish timeliness, but they do not bar intervention,
4 either.

### b. Prejudice to Ghirardelli

Ghirardelli also argues prejudice from adding Leyton to the white chips case because previously it faced only a Florida class and now it could face a California class. Opp'n at 18.[9] In support of its argument, Ghirardelli cites *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2009 WL 1208073 (D. Kan. May 1, 2009). *In re Motor Fuel* was an MDL case challenging the practice of selling motor fuel at a specified price per gallon and failing to disclose or adjust for temperature expansion. The plaintiffs asked to amend the complaint to add 23 new parties who previously were not named in any case in the MDL. *Id.* at *3. In denying permissive intervention, the district court noted that six months previously, it had issued an order addressing the effect that adding new parties would have on the complex litigation, and had determined that the new parties would assert liability for fuel sales not at issue and substantially expand the number of jurisdictions at issue. *Id.*

Expanding the liability for fuel sales in an MDL litigation is different than adding a Plaintiff with the same white-chip claim and the same nationwide class. As discussed above, the court cannot see any real impact on the case deadlines by Leyton's intervention on the white-chip claim because the deadlines are being extended anyway. The additional discovery attributable to Leyton on the chip claims is modest. As discussed above, the parties disagree about the impact of *Mazza*, and that is an issue for class certification. The court resolves doubts in favor of permitting intervention. *See United States v. City of Los Angeles*, 288 F.3d at 397.

### 2. Adequacy of Miller's Representation of Leyton's Interest

Ghirardelli argues that Leyton has not shown that Miller does not adequately represent Leyton's interests in the litigation. Opp'n at 11-13.

---

[9] The prejudice from adding the "all natural" claims is discussed below.

An intervenor as a matter of right must establish that he has "significant protectable interest" in the action, meaning, "the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use v. Montana Wilderness Ass'n,* 647 F.3d 893, 897 (9th Cir. 2011) (internal citations omitted). Putative intervenors also must show that "disposition of [the] action may, as a practical matter, impair or impede [the intervenors'] ability to protect their interest." *Id.* at 898 (citing Fed. R. Civ. P. 24 advisory committee's note).

Leyton establishes his interest. *See In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3rd Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation."). Ghirardelli does not dispute this and instead argues that Leyton has not established that his interest is not represented adequately by Miller. Opp'n at 10.

In determining adequacy, the court examines the following three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Generally, the applicant's "burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Id.* That being said, "[i]f an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises." *Id.* (citing *LULAC*, 131 F.3d at 1305). "To rebut the presumption, an applicant must make a compelling showing of inadequacy of representation." *Id.* (quotation omitted). The presumption may be overcome by evidence of collusion, adversity of interest, nonfeasance, incompetence, or lack of financial resources. *See Farmland Irr. Co. v. Dopplmaier*, 220 F.2d 248, 248-49 (9th Cir. 1955); *see also Moosehead San. Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) (same), *cited with approval in LULA*, 131 F.3d at 1305 n.4; *Clark v. Putnam County*. 168 F.3d 458, 461 (11th Cir. 1999) (presumption is weak and requires the proposed intervenor to come forward with only some evidence); *cf. Arakaki*, 324 F.2d at 1086 (very

compelling showing required when government entity shares interest of intervenor).

Here, Leyton concedes that he and Miller share the same objective: their "claims with respect to the lack of cocoa butter in the white chips are identical," they seek to represent the same nationwide class for white-chip consumers, and they seek identical remedies. *See* Motion at 9. The reason that Miller is potentially inadequate is not the ordinary collusion or adverse interest. Instead, he seeks to intervene to counter Ghirardelli's challenges to Miller as a class representative (including Miller's purchase of the chips in Florida, his use of them for his coffee instead of baking, his focus on cocoa butter and not other ingredients, and his use of lawyers to complain instead of complaining directly). *Id.* at 2. Leyton, a California resident, addresses all of these deficiencies in a case that involves California's consumer protection laws. *See id.*, Opp'n at 11 n.2.

Ghirardelli responds that these justifications do not address adequacy (whether Miller is motivated to pursue the case). Instead, they are a means to counter Ghirardelli's arguments about Miller's typicality. Opp'n at 12. In other words, Leyton's desire to intervene is about whether Miller has the best personal fact pattern to recover on the class's behalf (or whether anyone could represent a nationwide class). *Id.* That, Ghirardelli concludes, is not a basis for intervention as a matter of right. *Id.*

Leyton's best argument is that as a California resident, his interests are not protected if the court cannot certify a national class for a violation of California's consumer rights laws and instead can certify only a California subclass that Miller cannot represent because he lives in Florida.[10] This does not support intervention as a matter of right before class certification. As Ghirardelli argues, Leyton's interests are protected if a class is certified, and he will be able to file an independent action of the case is not certified. Ghirardelli points to cases allowing replacement of the named plaintiff after class certification if the plaintiff can no longer represent the certified class. Opp'n at 12 n. 5 (citing cases where the named plaintiff's claim becomes moot, the named plaintiff dies, and the entity plaintiff went bankrupt); *see also Palmer v. Stassinos*, 236 F.R.D. 460, 464-66 (N.D. Cal.

---

[10] At least on this record, the other issues (such as how Miller consumed the chips) are less consequential and more obviously about typicality.

2006) (newly-named plaintiffs in Fair Debt Collection Practices Act case were the named plaintiffs in a separate action against defendants); *Morgan v. Laborers Pension Trust Fund*, 81 F.R.D. 669, 673-75 (N.D. Cal. 1979). And again, right now, Leyton and Miller would make the same arguments about the claim. *Cf. Sw. Ctr. for Biological Diversity*, 268 F.3d at 820 (intervenor defendants in environmental case against state and federal government defendants had different interests and would make different arguments). The court cannot see intervention as a matter of right when Leyton's and Miller's interests and arguments in the case are identical. If Miller can no longer represent the class, the outcome might be different.

### B. Permissive Intervention

Under Federal Rule of Civil Procedure 24(b), "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). When making this discretionary determination, a district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In determining whether a motion for permissive intervention is timely, the court looks to the same factors considered in determining intervention as or right. *See LULAC*, 131 F.3d at 1308. "In the context of permissive intervention, however, [courts] analyze the timeliness element more strictly than . . . with intervention as of right." *Id.* "The district court's discretion under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues." *Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (internal alterations omitted) (quoting *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir. 1974)).

At least as to the current claim, and for the reasons stated in the previous section, the timing does not unduly delay or prejudice the adjudication of Ghirardelli's rights. Ghirardelli's other arguments do not change the outcome either.[11]

First, Ghirardelli says that Miller could have timely amended his complaint to add a co-plaintiff.

---

[11] Some of these arguments were raised in the context of intervention as a matter of right. The court considers them here because it did not need to in the previous section.

Opp'n at 13. As the court said in the previous section, it is not persuaded by Ghirardelli's arguments about timeliness, even in the context of permissive intervention. Also, Miller joins Leyton's motion.

Second, Ghirardelli argues that this is a back-door attempt to begin the action anew. *Id.* at 12. In support of this conclusion, it cites *Lidie v. State of California*, 478 F.3d 552, 555 (9th Cir. 1973). In that case, plaintiffs challenged the state government's processing of food stamp applications, but the named plaintiffs either were not eligible for food stamps at all or had been dropped from the food stamp rolls for failure to use food stamps and were complaining of delay in their recertification. The Ninth Circuit denied a motion by new plaintiffs to intervene on appeal, in part because the new parties "could not enhance the common cause, and would add to the idiosyncratic problems presented by the original plaintiffs"). *Lidie* is about a case with plaintiffs with no claims at all in the context of a putative class with fact issues peculiar to individual plaintiffs. *See id.*

*Velazquez v. GMAC Mortgage Corporation*, which was a TILA and state-law case involving the sales and servicing of mortgages, similarly is a case where the named plaintiffs apparently had no substantive claims. 2009 WL 295838, at *3 (C.D. Cal. Sept. 10, 2009). They elected to withdraw, and the court denied a motion to amend to substitute similarly-situated plaintiffs, noting that Defendants would have to redo all the discovery and explore the same issues. *Id.* ("The Ninth Circuit has affirmed denial of leave to amend where, as here, '[t]he proposed amendment was not based upon any facts which were not known or readily available' and prior extensive discovery was 'not directed' to the factual issues raised by the proposed amendment.") (*quoting Komie v. Buehler Corp.*, 449 F.2d 644, 648 (9th Cir. 1971).

Ghirardelli also quotes *Ho v. Ernst & Young LLP*, a wage-and-hour case: "[i]ntervention shouldn't be allowed just to give class action lawyers multiple bites at the certification apple when they have chosen, as should have been obvious from the start, patently inappropriate candidates to be the class representatives." No. C-05-04867 RMW, 2012 WL 95342, at *3 (N.D. Cal. Jan. 11, 2012) (quotation omitted). *Ho* is distinguishable because it of the timing issues presented. *Ho* was first filed in 2005. In 2007, the court permitted amendment to add three new representative plaintiffs. *See id.* at *1. In 2008, the court granted summary judgment against two of the plaintiffs' claims, but was unable to determine whether defendant's arguments (which implicated typicality)

defeated the remaining plaintiffs' claims. *Id.* In 2011, the court certified a narrower class than the plaintiff wanted because she was not typical for the reasons the defendant asserted years earlier. *Id.* Then, in 2012, the plaintiff moved to add a new representative plaintiff to overcome the typicality problems. The court found that Plaintiffs were reasonable in putting forth the previous representative but deficient in exploring whether other plaintiffs should be added to the case given that they "should have realized that [the motion for class certification] was likely their only opportunity to ensure that all of their positions were put forward." *Id.* at *3. As this procedural history shows, *Ho* involves a complicated timeline that shows much more evidence of undue delay and prejudice than the facts at issue in this case.

In sum, as discussed in the previous sections, and in the context of only the white-chip claim, the court's view is that adding a new plaintiff is not inappropriate at this stage. The court grants permissive intervention on the white-chip claim.

## II. AMENDMENT TO ADD THE ALL-NATURAL CLAIMS

What really is at stake is Leyton's request to add new claims that Ghirardelli falsely labeled many additional products as "all natural."

Because the court found good cause, the court examines the appropriateness of amendment under Rule 15. *See Johnson*, 975 F.2d at 608. A court considers five factors to determine whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff previously amended his complaint. *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Delay alone is insufficient to justify denial of leave to amend. *Jones v. Bates*, 127 F.3d 839, 847 n.8 (9th Cir. 1997).

Of the factors, prejudice to the opposing party is the "touchstone of the inquiry under rule 15(a)" and "carries the greatest weight." *See Eminence Capital*, 316 F.3d at 1052. Absent prejudice or a strong showing on other factors, a presumption exists under Rule 15(a) favoring granting leave to amend. *See id.* The party opposing a motion to amend bears the burden of showing prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Ghirardelli argues that the new claims are an attempt to shoehorn new claims by a new plaintiff into the older and much narrower white chips case. The court agrees. These are new claims

involving many new products sold in different grocery store departments, marketed by different departments within Ghirardelli, and sold to different consumers. Opp'n at 21-23. Different legal issues are involved, including whether the court should stay or dismiss the case on primary jurisdiction grounds, and the effect of differing statutes of limitations on the proposed "white chocolate" and "all natural" classes. The "all natural" claims are a larger and more complex case that would require significantly more and different discovery before class certification. *Id.* at 21-24. In short, Leyton's new claims would be the primary focus of this litigation, and allowing them into this suit would be akin to starting the litigation from the beginning.

Leyton nonetheless argues that the court should allow him to bring the new claims in this case because (1) judicial economy favors trying the "all natural" and "white chocolate" claims in the same action, and (2) the rule against claim-splitting and the doctrine of claim preclusion prevent him from bringing the "all natural" claims in a separate lawsuit. Motion at 20-21.

The best argument about the first point is that – as Ghirardelli concedes – Miller could have amended his complaint to bring all-natural claims (and for the reasons stated above, the court likely would have granted leave to amend). That being said, Leyton is not Miller and instead is a new plaintiff, and this point does not alter the outcome.

Leyton also has a fair second point that if he intervenes in the white chip case, he has to bring the "all natural" and "white chocolate" claims in the same action. Motion at 20-21. Ghirardelli responds that claim-splitting does not apply where the court orders the alleged split. Opp'n at 27-29.

"The doctrine of claim splitting bars a party from subsequent litigation when the same controversy has already been sued on." *Pasternak v. Trans Union LLC*, No. C 08-02972 CW, 2008 WL 4544370 (N.D. Cal. Sept. 30, 2008). The "main purpose behind the rule preventing claim splitting is 'to protect the defendant from being harassed by repetitive actions based on the same claim.'" *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995). To determine if the doctrine of claim splitting bars a subsequent case, the Ninth Circuit uses the transaction test applicable to determine claim preclusion. *Adams v. California Dep't of HealthServs.*, 487 F.3d 684, 688 (9th Cir. 2007). "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they

could conveniently be tried together." *Id.* (quoting *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992)). In applying the transaction test, courts examine four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* (quoting *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201–02 (9th Cir. 1982)). "The last of these criteria is the most important." *Id.*

Here, the parties agree that barring an exception, if Leyton does not assert his "all natural" claims in this action, the claim splitting doctrine would bar him from bringing them in a separate suit. Opp'n at 27-29; Reply at 10-11 n.6. Ghirardelli argues that the court can refuse to permit Leyton to file amended claims in this action and expressly reserve his rights to bring those claims later. Opp'n at 65-4; *see Central States, SE & SW Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 629 (7th Cir. 2002); *King v. Provident Life and Acc. Ins. Co.*, 23 F.3d 926 (5th Cir. 1994). And as Leyton points out, the Ninth Circuit has held that the rule against claim splitting is inapplicable "where a defendant acquiesces in the split." *Clements*, 69 F.3d at 328; *see* Reply at 10-11 n.6. Leyton asks that if the court denies leave to amend, it should "ensure that Ghirardelli will not be able to successfully raise this affirmative defense in a subsequent lawsuit." Reply at 11 n.6.

At the December 19, 2013 hearing in this matter, Ghirardelli's counsel acknowledged on the record that it acquiesces in the split and stipulated to not raising this affirmative defense in a future lawsuit brought by Leyton or any one else who might file the lawsuit. The court also expressly declines to allow Leyton to bring the all-natural claims and holds that his intervention does not preclude him from bringing them in a separate lawsuit.

Given this outcome, the court denies leave to amend to bring in the all-natural claims.

### III. VIOLATION OF THE PROTECTIVE ORDER

Ghirardelli also asserts that Miller's attorney obtained discovery that he used to develop the all-natural claims. According to Leyton's attorney's, Leyton has "never received information designated confidential." Reply at 11 (emphasis omitted). Given the court's holdings in the previous sections, it does not decide the issue in this case.

ORDER (C 12-04936 LB)

18

## CONCLUSION

The court **DENIES** the motion to intervene as a matter of right, **GRANTS** the motion to intervene permissively, and **DENIES** the motion to add the new all-natural claims. Leyton is not precluded from bringing the all-natural claims in a later lawsuit. This disposes of ECF No. 59-1.

**IT IS SO ORDERED.**

Dated: December 20, 2013



LAUREL BEELER
United States Magistrate Judge