1   ADAM J. GUTRIDE (State Bar No. 181446)
    adam@gutridesafier.com
2   SETH A. SAFIER (State Bar No. 197427)
    seth@gutridesafier.com
3   KRISTEN G. SIMPLICIO (State Bar No. 263291)
    kristen@gutridesafier.com
4   **GUTRIDE SAFIER LLP**
    835 Douglass Street
5   San Francisco, California 94144
    Telephone: 415.271.6469
6   Facsimile: 415.449.6469

7
    Attorneys for Plaintiffs
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12   SCOTT MILLER and STEVE LEYTON,          CASE NO. 12-cv-04936 (LB)
     individuals, on behalf of themselves, the general
13   public and those similarly situated     **MOTION FOR PRELIMINARY
                                              APPROVAL OF CLASS ACTION
14      Plaintiffs,                           SETTLEMENT AND FOR LEAVE TO
                                              FILE THIRD AMENDED COMPLAINT**
15            v.
                                              Date: October 2, 2014
16                                            Time: 9:30 a.m.
     GHIRARDELLI CHOCOLATE COMPANY,           Dept: Courtroom C, 15th Floor
17                                            Judge: Hon. Laurel Beeler
                      Defendant.
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

NOTICE OF MOTION AND MOTION ................................................................................ v

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND FACTS AND DETAILS OF SETTLEMENT.............................. 2

        A.      Litigation History ......................................................................................... 2

        B.      Settlement Negotiations ................................................................................ 3

        C.      The Proposed Settlement ............................................................................... 4

                1.      Monetary Relief ................................................................................ 4

                2.      Changed Practices ............................................................................. 5

                3.      Administrative Expenses, Attorneys' Fees and Costs, Incentive
                        Awards .............................................................................................. 5

                4.      Notice................................................................................................. 5

                5.      The Third Amended Complaint......................................................... 6

        D.      Plaintiffs' Analysis of Settlement ................................................................ 7

III.    ARGUMENT .............................................................................................................. 8

        A.      PRELIMINARY APPROVAL IS WARRANTED...................................... 8

                1.      The Settlement is Presumed Fair ...................................................... 8

                2.      Other Factors Also Demonstrate the Fairness of the Settlement...... 9

                        a.      The Strength of Plaintiffs' Case and the Risks of Further
                                Litigation ............................................................................. 9

                        b.      The Amount Offered in Settlement ..................................... 10

                        c.      The Cy Pres Awards ........................................................... 11

                3.      Attorneys' Fees, Costs and Incentives............................................ 11

        B.      THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY
                CONDITIONALLY CERTIFIED ............................................................... 12

        C.      THE PROPOSED NOTICE IS ADEQUATE ............................................ 16

        D.      LEAVE TO AMEND SHOULD BE GRANTED....................................... 17

IV.     DATES FOR THE FINAL APPROVAL PROCESS ................................................ 18

1

V.    CONCLUSION ............................................................................................................19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

## **TABLE OF AUTHORITIES**

2

**CASES**

3

4

*Alsabur v. Autozone, Inc.*, 2014 WL 1340730 (N.D. Cal. Apr. 3, 2014)...................................18

5

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .........................................................15

6

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...................................................................13

7

*Bolton v. U.S. Nursing Corp.*, 2013 WL 2456564 (N.D. Cal. June 6, 2013)..............................11

8

*Ching v. Siemens Indus., Inc.*, 2013 WL 6200190 (N.D. Cal. Nov. 27, 2013).........................18

9

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). .........................................9

10

*Class Plaintiff v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) ................................................8

11

*Clothesrigger v. GTE Corp.,* 191 Cal. App. 3d 605 (1987).......................................................13

12

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974)..............................................................16

13

*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012)........................................13

14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..........................................13, 14, 15

15

*Harris v. Vector Mktg. Corp.*, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)...........................18

16

*In re Apple & AT&TM Antitrust Litig.*, 596 F.Supp.2d 1288 (N.D. Cal. 2008) ........................15

17

*In re Juniper Networks, Inc.*, 264 F.R.D. 584 (N.D. Cal. 2009)................................................15

18

*In re Netflix Privacy Litig.*, 2012 WL 2598819 (N.D. Cal. July 5, 2012) .................................17

19

*In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 (N.D. Cal. 2008) ..............................9

20

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)................................17

21

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009)........................................................................15

22

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)....................................10

23

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir.2007) .................................11

24

*Mazza v. Honda American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) .........................13

25

*Miletak v. Allstate Ins. Co.*, 2010 WL 809579 (N.D. Cal. 2010)........................................14, 15

26

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ............................................................11

27

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .....2, 8, 9, 10

28

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999) .................................13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................10

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).................................................................16

*Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ....................................................12, 13

*Rosenburg v. I.B.M.*, 2007 WL 128232 (N.D. Cal. 2007) ......................................................16

*Ross v. Trex Co., Inc.*, 2009 U.S. Dist. LEXIS 69633 (N.D. Cal. July 30, 2009) ...................2, 8

*Simpao v. Gov't of Guam*, 369 Fed. Appx. 837 (9th Cir. 2010) ............................................16

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)......................................................................12

*United Steel v. Conocophillips Co.*, 593 F.3d 802 (9th Cir. 2010) ............................................14

*Valentino v Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir 1996) ............................................15

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) ............................................15

*Williams v. MGM Pathe Communications Corp.*, 129 F.3d 1026 (9th Cir. 1997) .....................5

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ..................................15

## RULES

Fed. R. Civ. Proc., Rule 23(b)(3). ......................................................................................14, 15

Fed. R. Civ. Proc. Rule 23(c)(2)(B)............................................................................................16

## TREATISES

Conte & Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ......................................passim

Wright & Miller, FEDERAL PRACTICE & PROCEDURE (3d ed. 2008).........................................16

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on October 2, 2014, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 840, before the Honorable Laurel Beeler, Plaintiffs shall and hereby do move the Court for an order of:

(1) Preliminary approval of the settlement of this class action as set forth in the class action settlement agreement dated August 18, 2014, attached as Exhibit 1 to the Gutride Declaration filed herewith;

(2) Preliminary approval, for settlement purposes only, of a settlement class defined as all persons (other than Excluded Persons) who, between August 17, 2008 and [the date of preliminary approval], purchased, in the United States, the Ghirardelli Classic White chips or any other product labeled as "all natural" (a complete product list is provided in the Long Form Notice (Gutride Declaration, Exhibit 1 – B1 - Appendix A));

(3) Preliminary appointment of Gutride Safier LLP as class counsel and Scott Miller and Steve Leyton as class representatives;

(4) Entry of an order directing the dissemination of notice in the form and manner set forth in the settlement agreement;

(5) Entry of an order granting Plaintiffs leave to file their third amended complaint, a copy of which is attached as Exhibit F to the settlement agreement; and

(6) Setting a date for a final approval hearing.

A copy of the [Proposed] Order for Preliminary Approval is attached to the settlement agreement as Exhibit C and also separately submitted herewith.

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Adam Gutride, and the pleadings and papers on file in this action and any other matter of which this Court may take notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

The parties have reached a proposed settlement of the putative class actions filed by Plaintiffs Scott Miller and Steve Leyton against Defendant Ghirardelli Chocolate Company. Plaintiffs now move for preliminary approval.

Under the settlement, Defendant will pay $5.25 million into a common fund. The fund will be used to pay all costs of notice and administration, any fees and costs awarded to Plaintiffs' counsel and incentive awards to Plaintiffs, as well as claims by class members.

Each class member who makes a claim may obtain $1.50 per purchase of Ghirardelli Classic White Chips ("White Chips") and $0.75 per purchase of any of the approximately 72 other Ghirardelli products advertised as "All Natural." A settlement class member may submit claims for an unlimited number of purchases. There will be no cap on the total amount paid to him or her for claimed purchases that are corroborated by Proof of Purchase. However, a maximum of $24.00 shall be paid to any Household for claimed purchases that are not corroborated by Proof of Purchase.  The amounts to be paid to each class member may be reduced pro-rata, if the total value of claims exceeds the amount of the common fund after payment of notice, administration, fees, costs and incentives. Should funds remain in the common fund after paying all claims, incentive awards, and fees and costs, the parties have agreed to donate the money *cy pres*, in equal amounts, to four charitable organizations

As part of the settlement, Defendant has also agreed to make labeling changes to all of the products at issue in order to address the challenged representations.

The settlement resolves the claims in the pending case by Plaintiffs regarding the White Chips, as well as the "all natural" claims in the separate suit to be filed by Mr. Leyton.  At the most recent hearing, the Court indicated that it would reject Defendant's request for an order precluding Mr. Leyton from filing his "all natural" lawsuit.  To streamline the proceedings and settlement administration, the parties have stipulated that Mr. Leyton should be granted to leave to add his "all natural" claims to this lawsuit by way of a third amended complaint.

A copy of the settlement agreement is attached as Exhibit 1 to the Declaration of Adam Gutride filed herewith.  The list of products covered in the settlement can be found in the Long

–1–

1  Form notice, which is Exhibit B1 to the settlement.  The proposed third amended complaint is

2  Exhibit F to the settlement agreement.  The proposed class notices can be found at Exhibits B1-B5.

3        The settlement falls within the standard for preliminary approval because it is "within the

4  range of reasonableness." *See Ross v. Trex Co., Inc.*, 2009 U.S. Dist. LEXIS 69633 at *9 (N.D.

5  Cal. July 30, 2009). There is a presumption of fairness because the settlement was reached after

6  substantial discovery and arms-length negotiations. *See Nat'l Rural Telecomm. Coop. v.

7  DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Numerous other factors also strongly favor

8  the settlement, including the risks of further litigation and the informed opinion of experienced

9  counsel on all sides who have negotiated and approved it based upon their views of the strengths

10  and weaknesses of the claims and defenses. *See id*. (finding that experienced counsel's views

11  regarding settlement are entitled to great weight).

12        Accordingly, Plaintiffs request that the Court preliminarily approve the settlement, grant

13  leave to file the third amended complaint, order that the proposed notice be disseminated, and

14  schedule a final approval hearing.

15  **II.**    **BACKGROUND FACTS AND DETAILS OF SETTLEMENT**

16      **A.**    **Litigation History**

17        This litigation commenced on August 17, 2012, when Plaintiff Scott Miller filed a

18  complaint against Defendant in the Superior Court of California, County of San Francisco, Case

19  No. CGC-12-523375. Miller alleged that Defendant had engaged in false advertising, unfair trade

20  practices and fraud in connection with the marketing and sale of the White Chips and several other

21  Ghirardelli-brand products. In particular, Miller alleged that the White Chips and other products

22  were marketed and packaged in a way that could mislead reasonable consumers into believing that

23  they were white chocolate. Miller brought the following statutory and common-law claims:

24  violations of California's Unfair Competition Law ("UCL"), California Business and Professions

25  Code § 17200 *et seq.*; violations of California's False Advertising Law ("FAL"), California

26  Business and Professions Code § 17500 *et seq.*; violations of California's Consumer Legal

27  Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*; and fraud, deceit and/or

28  misrepresentation.

On September 21, 2012, Defendant removed the action, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), *et seq*., to the United States District Court for the Northern District of California. Following removal, Defendant moved to dismiss. On December 12, 2012, the Court granted in part and denied in part Defendant's motion. Plaintiff Miller filed a first amended complaint, and Defendant again moved to dismiss. On April 5, 2013, the Court granted in part and denied in part Defendant's second motion to dismiss. The result of the Court's orders was that Plaintiff Miller was permitted to proceed with claims only against the White Chips and not any other Ghirardelli products. On April 19, 2013, Defendant answered Plaintiff's first amended complaint.

On October 11, 2013, Steve Leyton filed a motion to intervene in the Litigation. In his motion, Leyton sought to make the same claims as those of Miller about the White Chips, and also to make claims that Defendant had falsely labeled the White Chips and other products as "All Natural." On December 20, 2013, the Court granted in part and denied in part Leyton's motion to intervene, permitting him to join in the allegations by Miller about the White Chips but not to add the "All Natural" allegations. On January 15, 2014, Plaintiffs filed a second amended complaint conforming to the Court's order.

On March 20, 2014, Plaintiffs moved for class certification. The motion has not yet been decided.

On March 13, 2014, Plaintiff Leyton gave notice of his intent to file his "All Natural" allegations in a separate complaint. On March 14, 2014, Defendant moved for an order to preclude that filing. On May 15, 2014, the Court held a hearing on Defendant's motion, at which it indicated that it would deny the motion, so the new lawsuit could be filed. The same day, the parties agreed to stay further proceedings to return to mediation.

### B.      Settlement Negotiations

The proposed settlement was reached following significant, hard fought litigation and many rounds of arms-length talks. (Id., ¶ 4.)  Settlement discussions began in the summer of 2013. After Plaintiffs completed Rule 30(b)(6) depositions and analyzed Defendant's document production, the parties held an all-day mediation, on September 11, 2013, before the Honorable

Judge Edward Infante (retired) at JAMS in San Francisco, California. The mediation was unsuccessful.  Informal talks continued after mediation, but no progress was made. (Id.)

Following the filing of Plaintiffs' class certification brief, and this Court's agreement that Plaintiff Leyton could file a lawsuit against Defendant for the "all natural" labeling, the parties agreed to a temporary stay in the litigation to participate in a further mediation session.

On June 5, 2014, the parties participated in a second all-day mediation again conducted by Judge Infante. (Id., ¶ 5.) That mediation and the discussions that followed resulted in the settlement memorialized in the agreement and described below.

### C.    The Proposed Settlement

The settlement class is to be comprised of all persons (other than Excluded Persons) who, between August 17, 2008 and the date of preliminary approval, purchased, in the United States, any of the Products, except purchases for purpose of resale. (Id., Ex. 1.) "Products" are defined as the White Chips and approximately 72 other listed products that were labeled "all natural." Excluded Persons are the Defendant's affiliates, the Court, the mediator, government entities, and those who opt out of the class.

### 1.    Monetary Relief

Class members can file a claim for cash refunds pertaining to their purchases of the Products during the Class Period (i.e., between August 17, 2008 and the date of preliminary approval.)  The refund amount is $1.50 per package of White Chips and $0.75 per other Product purchase. There is no cap on the total amount to be paid to any class member for claimed purchases that are corroborated by Proof of Purchase. However, a maximum of $24.00 shall be paid to any Household for claimed purchases that are not corroborated by Proof of Purchase. "Proof of Purchase" means an itemized retail sales receipt showing, at a minimum, the purchase of a Product, the purchase price, and the date and place of the purchase. (For those who purchased directly from Ghirardelli's website or phone ordering system, proof of purchase is not required.) (Id., Ex. 1, §§ 3.6-3.7.)  "Household" means any number of persons occupying the same dwelling unit.

The claim form is a simple one-page form that can be completed in a few minutes.  It can

1  be completed online or downloaded and submitted by mail.

2         **2.     Changed Practices**

3         Defendant will also change its practices to benefit class members. It has agreed to do the

4  following, for three years following final approval of the settlement: (1) not use the phrase

5  "Classic White" with respect to the White Chips except as part of the phrase "Classic White

6  Chips"; (2) not to use the phrases "baking chocolate" or "chocolate indulgence" on the packaging

7  of the White Chips, even to refer to other Ghirardelli products; and (3) not to use the phrase "all

8  natural" on any product. (Id., Ex. 1, § 3.10.)

9         **3.     Administrative Expenses, Attorneys' Fees and Costs, Incentive
                   Awards**
10

11        All costs of notice and administration of the settlement will be paid from the common fund.

12        In addition, Plaintiffs' counsel will request payment from the common fund of incentive

13  awards of $5,000 for each named Plaintiff. The incentive fee is designed to compensate the named

14  Plaintiffs for (1) the time and risk they took in prosecuting this action (including the risk of

15  liability for Defendant's costs) and (2) agreeing to a release broader than the one that will bind

16  settlement class members. (Id., Ex. 1, § 6.2.)

17        Plaintiffs also will request payment from the common fund of their out of pocket expenses

18  (approximately $90,000) plus attorneys' fees equal to 30% of the fund, for a total of $1,665,000.

19  This request is in line with standard awards under other common fund settlements, under which

20  fees are awarded as percentage of the fund, as set out in *Williams v. MGM Pathe Communications*

21  *Corp.*, 129 F.3d 1026 (9th Cir. 1997). The request also will be justified by a lodestar-multiplier

22  analysis. The request for fees, costs and incentive awards will be the subject of a separate motion

23  to be filed, and posted on the settlement website, at least 42 days before the final approval hearing,

24  which is two weeks before the deadline for class member objections.

25        **4.     Notice**

26        The claim administrator (Garden City Group) will establish a settlement website, which

27  shall contain the settlement notices, a contact information page that includes address and telephone

28  numbers for the claim administrator and the parties, the settlement agreement, the signed order of

preliminary approval, online and printable versions of the claim form and the opt out forms, answers to frequently asked questions, a Product list, and (when it becomes available) Plaintiffs' counsel's application for attorneys' fees, costs, expenses and incentive awards and motion for final approval.

Notice will be published in several places, all of which will refer class members to the settlement website. (Gutride Decl. Ex. 1, § IV.) One half-page ad will be taken out in People Magazine. An additional 1/8 page ad will be published once a week for four successive weeks in the Oakland Tribune. Online notice will be published for a total of 280 million impressions on various websites, including Facebook, Yahoo network, MSN network, and several website groups that include cooking and baking websites. The ad will also appear 1.4 million times through an MSN ad mobile service. (Id. §§ 4.4- 4.7.)

The claim administrator also will send direct notice to each of the approximately 23,250 settlement class members for whom Defendant has names and addresses because they purchased through the Ghirardelli website or phone system.  An email notice will describe the settlement and provide a link to the settlement website. By clicking on the link provided in the email, it will bring the class members to a pre-populated claim form with the records of their purchases and inform them that Proof of Purchase for those items has been submitted. The email notice will be sent twice.  If an email address is not available or the initial email notice is returned as undeliverable, the claim administrator will send postcard notice via first class mail to the settlement class member's address based on Defendant's records as updated through the National Change of Address Database. (Id. § 4.3.)

**5.     The Third Amended Complaint**

To streamline the settlement process and ensure that more money can be refunded to class members by saving the costs of two separate notice and approval processes, Defendant has stipulated that Plaintiffs be granted leave to file a third amended complaint. In the third amended complaint, Leyton adds his claims that Defendant falsely and deceptively marketed, advertised and sold the Products as "all natural," when they contained genetically modified, hormone-treated and/or chemically extracted ingredients. Like the claims on behalf of White Chip purchasers,

Leyton brings claims for violations of California's Unfair Competition Law ("UCL"), California

Business and Professions Code § 17200 *et seq.*; violations of California's False Advertising Law

("FAL"), California Business and Professions Code § 17500 *et seq.;* violations of California's

Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*; and fraud, deceit

and/or misrepresentation.

**D.     Plaintiffs' Analysis of Settlement**

Based on their reasoned judgment, Plaintiffs' counsel believes the proposed Settlement is

fair and reasonable. (Gutride Decl., ¶¶6-7.)

Plaintiffs believe that the evidence obtained in discovery showed that Defendant's White

Chips packaging and advertisements were likely to (and did) deceive unsuspecting consumers.

Plaintiffs also maintain that Defendant knew of the deceptive nature of the White Chips

packaging.  (Id., ¶ 7.)

However, there were serious risks to continuing with the litigation. First, Plaintiffs would

have been required to prove that the White Chips and "all natural" labeling was likely to deceive

or confuse reasonable persons. Defendant disputed that consumers would understand

"Ghirardelli®  Chocolate—Premium Baking Chips—Classic White" or "all natural" to mean what

Plaintiffs allege. Second, Defendant strenuously opposed certification of a class, particularly a

nationwide class. Third, it could be difficult to obtain monetary relief because Defendant presented

evidence that the challenged labeling had no effect on pricing or sales volume, which were the

same before and after it changed its packaging to remove the challenged language. While Plaintiffs

dispute and have adduced evidence to undermine Defendant's arguments, it was unclear how the

arguments would be resolved at class certification, summary judgment or trial. (Id.) Thus, there

was a substantial risk that class members would recover only nominal damages, or nothing at all.

Finally, any judgment in Plaintiffs' favor would likely be appealed. Thus, even in the best case, it

could take years to get relief for class members. (Id.)

While Plaintiffs would have liked to get more money to class members, they and counsel

believe that a refund to claimants of $1.50 per bag of White Chips and $0.75 per other product,

with no cap on claims with proof of purchase, and a $24 cap on claims without proof of purchase,

is a good result, as good or better than the likely recovery at trial.  (Id., ¶ 8.) Indeed, in a contested proceeding, class members who lacked proof of purchase—which is likely the majority of class members—might get nothing at all. Having a claim process also directs available funds to those who most care about the alleged deception and thus are willing to file a claim. The $1.50 per bag of White Chips equates to approximately 35 to 60% of the retail purchase price, depending on retailer. The $0.75 per other Product represents varying percentages of the retail price, depending on specific Product and retailer.  There is a greater recovery for White Chips purchasers because of the stronger claims and evidence regarding the White Chips –which concerned not just the "all natural" labeling but also language suggesting that the product contained white chocolate. Further, in addition to the monetary relief, Plaintiffs believe that the changed practices will benefit class members and other consumers.  (Id., ¶ 8.)

Defendant, while continuing to deny all allegations of wrongdoing, also believes the settlement is in its interest to avoid further expense, inconvenience, and interference with its ongoing business operations.

## III.   ARGUMENT

### A.   PRELIMINARY APPROVAL IS WARRANTED

Although Rule 23(e) requires court approval of a class settlement, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiff v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526, citing 4 Conte & Newberg, NEWBERG ON CLASS ACTIONS ("Newberg") § 11.50 at 155 (4th ed. 2002). At the preliminary approval stage, the Court's role is to determine, on a preliminary basis, whether the settlement is within the range of what might be considered "fair, reasonable, and adequate" to allow notice to the proposed settlement class to be given and a hearing for final approval to be set. *See Ross*, 2009 U.S. Dist. LEXIS 69633 at *9.

#### 1.   The Settlement is Presumed Fair

Class settlements are presumed fair when they are reached "following sufficient discovery

and genuine arms-length negotiation." *DIRECTV*, 221 F.R.D. at 528; 4 Newberg at § 11.24.
Before reaching the settlement, the parties engaged in extensive, highly adversarial factual
investigation, which included numerous depositions, document production, and interrogatories,
including third party discovery. (Gutride Decl., ¶ 6.) At time of settlement, there had been
extensive briefing and argument on various significant legal issues. The parties were fully
informed as to the viability of the claims and the risks to both sides if the case did not settle.  (Id.)

The parties negotiated the proposed settlement in good faith, including months of intense
negotiations. (Id. ¶¶ 4-5.) Furthermore, counsel for each side, who are experienced class action
attorneys, have fully evaluated the strengths, weaknesses, and equities of the parties' respective
positions. (Id.) Their belief that the proposed settlement fairly resolves their respective differences
is entitled to considerable weight. *See In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 at
*4 (N.D. Cal. 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement
is in the best interest of those affected by the settlement."); *DIRECTV*, 221 F.R.D. at 528 ("great
weight" normally given to opinion of counsel regarding class settlement).

## 2.     Other Factors Also Demonstrate the Fairness of the Settlement

In addition to being presumptively valid, the settlement meets the "fairness" criteria
considered by courts in evaluating class action settlements under Rule 23(e), even in the context of
final approval. Some of these final settlement approval criteria are discussed below. *See Churchill
Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

### a.     The Strength of Plaintiffs' Case and the Risks of Further Litigation

These factors survey the potential risks and rewards of proceeding with litigation, to weigh
the likelihood of success against the benefits of an immediate settlement. At the time the
settlement was reached, Plaintiffs' motion for class certification on the White Chips claim was
pending, and the Court had indicated that it would reject Defendant's attempt to prevent Leyton
from filing a complaint regarding the "all natural" claims. The litigation had been highly
contentious, and the parties strongly disagreed on Plaintiffs' ability to prove liability and damages.
In particular, there may be substantial difficulties establishing: (1) that Defendant's marketing and
advertising of the Products was likely to deceive or confuse reasonable persons; (2) that alleged

1   misrepresentations and omissions were material to reasonable persons; (3) that common questions

2   predominate over individual issues such that a class may be certified on some or all claims;

3   (4) that the class should be certified at all, or extend to residents of states other than California and

4   Florida, where the named Plaintiffs reside; and/or (5) that damages or restitution should be

5   awarded or, if so, that any such award should be more than nominal. In particular, it may be very

6   difficult to establish that the volume of sales, or the pricing of individual products, would have

7   differed had the marketing and labeling been different. (Gutride Decl., ¶ 7.) While Plaintiffs are

8   confident in their positions and believe their claims are strong, Plaintiffs' counsel are also

9   experienced and realistic enough to know that the recovery and certainty achieved through

10   settlement, as opposed to the uncertainty inherent in class certification, and the trial and appellate

11   process, weighs heavily in favor of settlement. (Id.)

12                    **b.        The Amount Offered in Settlement**

13          This factor "assess[es] the consideration obtained by the class members in a class action

14   settlement." *DIRECTV*, 221 F.R.D. at 527. "[I]t is the complete package taken as a whole, rather

15   than the individual component parts, that must be examined for overall fairness." *Officers for*

16   *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). "In this regard, it is well-settled

17   law that a proposed settlement may be acceptable even though it amounts to only a fraction of the

18   potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at

19   527, *citing Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

20          Plaintiffs believe that their likely "best case" recovery at trial would be approximately $67

21   million, based on the following assumptions.  First, it appears that Defendant's wholesale revenues

22   from nationwide sales of the White Chips during the class period were approximately $34 million

23   and retail sales prices were approximately $56 million. (Gutride Decl., ¶ 9.) Plaintiffs believe that

24   expert analysis would show that the premium attributable to the false statements on the white chips

25   was up to 25%, or $14 million. With regard to the other products labeled "all natural," it appears

26   that Defendant's wholesale revenues from nationwide sales were approximately $650 million and

27   the retail sales prices were approximately $1.07 billion. It would be difficult to establish a

28   premium attributable to the "all natural" labeling, but a nominal recovery equal to one-half of one

1  percent of the retail price would be $53.5 million. The total of $14 million plus $53.5 million is

2  $67.5 million. (Id.)

3        The settlement amount of $5.25 million, which does not include the value of the changed

4  practices, is approximately 7.8% of this best-case recovery. Plaintiffs believe this recovery to be

5  fair in light of the risks discussed above. (Id., ¶¶ 7-8.)  Further, the per-claim amount of $1.50 per

6  bag of White Chips and $0.75 per other Product, with no cap on claims with proof of purchase,

7  and $24 cap on claims without proof of purchase, is good result compared to the possible result in

8  a contested proceeding, as discussed above. (Id. ¶ 8.)

9                    **c.      The Cy Pres Awards**

10        In their motion for final approval, Plaintiffs will ask the Court to approve a list of

11  charitable organizations to receive any balance remaining in the settlement fund, after payment of

12  notice, administration, fees, costs, incentives and valid claims. (Id., Ex. 1, § 3.4.) The proposed

13  charitable organizations are reasonably connected to this litigation, in that they work on advancing

14  the rights of consumers and the information available to food consumers. *See Nachshin v. AOL,*

15  *LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (holding that courts "may employ the *cy pres* doctrine

16  to 'put the unclaimed fund to its next best compensation use, *e.g.,* for the aggregate, indirect,

17  prospective benefit of the class'") (citing *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d

18  423, 436 (2d Cir.2007))*; see also Bolton v. U.S. Nursing Corp.*, 2013 WL 2456564, *2 (N.D. Cal.

19  June 6, 2013) (in order granting preliminary approval, deferring approval of proposed *cy pres*

20  recipients until final approval).

21                  **3.      Attorneys' Fees, Costs and Incentives**

22        In a separate motion to be filed along with the motion for final approval and posted on the

23  settlement website, Plaintiffs will ask the Court to approve payment of no more than $1,665,000

24  from the settlement common fund of their reasonable attorneys' fees, costs and incentive awards.

25  As of the filing of this motion, Plaintiffs' counsel has spent in excess of 2400 hours working on

26  this litigation.  Its lodestar is somewhat greater than the amount it will seek in attorneys' fees.

27  Counsel has additionally incurred approximately $90,000 in unreimbursed expenses.  (Gutride

28  Decl., ¶ 12.) The Court need not consider these issues at present; rather it is appropriate to defer

1    them until the final approval hearing, after class members have had an opportunity to comment.

2    **B.    THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY**
     **CONDITIONALLY CERTIFIED**

3
4    When a class settlement occurs before class certification has taken place, a court may

5    conditionally certify an action for settlement purposes. *See In re Wireless*, 253 F.R.D. 630, 633

6    (S.D. Cal. 2008) ("parties may settle a class action before class certification and stipulate that a

7    defined class be conditionally certified for settlement purposes"). When certification is sought

8    under Rule 23(a) and (b)(3), the Court's threshold task is to preliminarily determine whether the

9    proposed settlement class satisfies the numerosity, commonality, typicality and adequacy

10   requirements of Rule 23(a), and the predominance and superiority requirements of Rule 23(b)(3).

11   *Id*. The parties have sought preliminary certification of the settlement class now, with that

     certification to be confirmed at the time of final approval.

12
13   Plaintiffs' motion for class certification, filed March 20, 2014 (Dkt.# 97), was still pending

14   at the time of settlement. Although Defendant would have opposed certification of the proposed

     class in a contested proceeding, they have agreed to its certification for settlement purposes.

15
16   All of the class certification elements are met here. Numerosity is met because Defendant's

17   records confirm that tens of millions of Products were sold to the settlement class (Gutride Decl., ¶

18   9) and "joinder of all members is impracticable." Rule 23(a)(1). *See Stewart v. Abraham*, 275 F.3d

19   220, 227 (3d Cir. 2001) (more than 40 claimants sufficient to establish numerosity); 1 Newberg at

     § 3.

20
21   Commonality under Rule 23(a)(2), which requires that there be common questions of law

22   or fact, is also present. This requirement is construed permissively, and there does not have to be

     "complete congruence" of common issues; even one common issue is sufficient. *Rodriguez v.*

23   *Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010); 1 Newberg at § 3.10 (the commonality standard is

24   "easily met" for most settlement classes). Here, common issues include: (1) whether Defendant's

25   marketing and advertising materials were likely to deceive reasonable consumers, (2) whether

26   Defendant violated California Health & Safety Code sections 110100(a), 110380, and 11050;

27   (3) the amount of revenues and profits Defendant received as a result of such wrongdoing; the

28   amount of the price premium associated with the false advertising; (5) whether class members are

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

2  (6) whether class members are entitled to payment of actual, incidental, consequential, exemplary

3  and/or statutory damages plus interest thereon. (Dkt.# 97, 12-15.)

4       As Defendant is headquartered in California and directed the alleged unlawful activities

5  from this state (Gutride Decl., ¶ 10), the law of California can be applied to all Class members'

6  claims. *See Norwest Mortgage, Inc. v. Superior Court,* 72 Cal. App. 4th 214 (1999) (upholding

7  certification of a nationwide class in a consumer protection action against defendant with both its

8  headquarters and principal place of business located outside the state of California for alleged

9  wrongful conduct occurring in California); *Clothesrigger v. GTE Corp.*, 191 Cal. App. 3d 605

10 (1987) (nationwide class could be certified in suit against foreign corporation for allegedly

11 fraudulent representations that had been prepared in and disseminated from California).

12 Furthermore, under California's governmental interest test, no conflict has been demonstrated

13 between the law of California and any other state, nor has it been shown that any other state has a

14 greater interest in this dispute than does California.  *See Mazza v. Honda American Honda Motor*

15 *Co.*, 666 F.3d 581 (9th Cir. 2012); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D.

16 Cal. 2012) (certifying nationwide class under California's false advertising laws). Indeed, all states

17 would have to apply the same underlying standards to this dispute, since a key issue is Defendant's

18 compliance with federal Food and Drug Administration regulations.

19      Typicality under Rule 23(a)(3) requires that the representatives' claims be "reasonably co-

20 extensive with those of absent class members; they need not be substantially identical." *Hanlon v.*

21 *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). This requirement is "'satisfied when each

22 class member's claim arises from the same course of events, and each class member makes similar

23 legal arguments to prove the defendant's liability.'" *Rodriguez*, 591 F.3d at 1124, *citing Armstrong*

24 *v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Plaintiffs' claims regarding the deceptive packaging

25 are identical to the claims of the settlement class members. (Dkt.# 97, p. 15.) Typicality is also

26 aided by the fact that the "objective reasonable consumer standard" applies to determine liability

27 here under all the consumer statutes in issue. *See Miletak v. Allstate Ins. Co.*, 2010 WL 809579,

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  *11 (N.D. Cal. 2010) (rejecting defendants' attack on typicality based on fact that objective

2  reasonable consumer standard applied).

3       Adequacy under Rule 23(a)(4) concerns whether the class representatives will "fairly and

4  adequately protect the interests of the class." This inquiry involves two questions: "(1) do the

5  named Plaintiffs and their counsel have any conflicts of interest with other class members and

6  (2) will the named Plaintiffs and their counsel prosecute the action vigorously on behalf of the

7  class?" *Hanlon*, 150 F.3d at 1020. Both requirements are met here. There is no antagonism

8  between Plaintiffs and the class members, all of whom assert the same underlying claims based

9  upon the same injuries, arising in the same manner from the same uniform business practices.

10 Plaintiffs' interests are thus in line with the interests of the class they represents because they seek

11 the same relief as the class, based upon the same claims and uniform business practices. Plaintiffs'

12 adequacy is also shown by their agreement to serve as representative plaintiffs; their retention of

13 experienced, competent counsel; their production of documents and appearance for deposition;

14 their participation in responding to written discovery; and their participation in the negotiation of

15 this settlement. They also assumed the risk of bearing Defendant's costs should the litigation have

16 ultimately been unsuccessful. (Gutride Decl., ¶ 11.)

17      Counsel for Plaintiffs is competent and qualified to represent the Class. Plaintiffs' counsel

18 has extensive experience with complex class actions, having served as class counsel in numerous

19 federal and state court consumer fraud actions that have resulted in millions of dollars being

20 returned to consumers. (Gutride Decl., Ex. 2.) Numerous courts have repeatedly found Plaintiffs'

21 counsel to be adequate class counsel, including many in this District. (Id.) *Cf.* 1 Newberg § 3.24 at

22 418 (the competence and experience of class counsel should be presumed in the absence of proof

23 to the contrary).

24      The predominance requirement under Rule 23(b)(3) is also satisfied. "Predominance" is

25 determined from the plaintiff's legal theory of the case; that is, the relevant question is whether

26 proving plaintiff's theory will involve mainly common legal and factual issues or individual

27 issues. *See United Steel v. Conocophillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010) (main

28 question is whether plaintiff's legal theory was one in which common issues of law or fact would

1  predominate over individual issues; whether plaintiff will in fact prevail is immaterial). The

2  predominance inquiry focuses on "the relationship between the common and individual issues"—

3  as long as common issues "present a significant aspect of the case" and can be resolved in a single

4  case, predominance is met. *In re Juniper Networks, Inc.*, 264 F.R.D. 584, 590 (N.D. Cal. 2009),

5  *citing Hanlon*, 150 F.3d at 1022); *see also* 2 Newberg at § 4.25.

6        Here, the claims at issue are based upon uniform business practices and standard product

7  packaging and similar representations. There are no predominating individual issues because,

8  under Plaintiffs' legal theories, the objective reasonable consumer standard applies to determining

9  liability, as well as to the materiality of the alleged non-disclosures or alleged misrepresentations.

10  *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089, 1092-93 (9th Cir. 2010)

11  (predominance requirement met where state's consumer protection statute is based upon the

12  objective reasonable consumer standard); *Williams v. Gerber Products Co.,* 552 F.3d 934, 938-39

13  (9th Cir. 2008) (reasonable consumer standard applies to California's consumer protection

14  statutes); *see also In re Apple & AT&TM Antitrust Litig.*, 596 F.Supp.2d 1288, 1310-11 (N.D. Cal.

15  2008) (materiality for purposes of duty to disclose analysis determined by reasonable consumer

16  standard); *In re Tobacco II Cases*, 46 Cal.4th 298, 326-27 (2009) (no showing of injury or reliance

17  by absent class members required).

18        Finally, Rule 23(b)(3)'s superiority analysis essentially looks to alternative methods of

19  adjudication and whether maintenance of a class action would be fair and efficient. *See Valentino v*

20  *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir 1996); 2 Newberg at § 4.27. Superiority is

21  satisfied in the present case because: (1) prosecuting or defending separate actions at this stage

22  would be impractical and inefficient; and (2) to the parties' knowledge, there is no other litigation

23  concerning this controversy. (Gutride Decl., ¶ 13.); *see also* Fed. R. Civ. Proc., Rule 23(b)(3).

24  Here, there are a multitude of consumers who were injured in small amounts. This "small

25  individual damages" factor is significant and weighs heavily in favor of class certification,

26  especially given the common scheme at issue. *See Miletak*, 2010 WL 809579 at *13.[1]

27  _____

28  [1] Because this action is being settled, the Court need not consider the manageability issues. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

## C.   THE PROPOSED NOTICE IS ADEQUATE

The proposed notice plan and claim form comports with the procedural and substantive requirements of Rule 23. Under Rule 23, due process requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. Proc., Rule 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("individual notice must be provided to those class members who are identifiable through reasonable effort"). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process. *See* 7A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1786 (3d ed. 2008)*; see also Rosenburg v. I.B.M.*, 2007 WL 128232 at \*5 (N.D. Cal. 2007) (notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement).

Notice of the settlement is to be provided to the class as follows: (1) within 14 days following preliminary approval, published in the Oakland Tribune, once a week for four weeks; (2) within 35 days of preliminary approval, published in People Magazine; (3) within 14 days of preliminary approval, and continuing for 28 days after, 281.4 million impressions of online ads containing links to the settlement website on mobile services such as Facebook, Yahoo, MSN and other sites commonly used by class members; and (4) within 14 days of preliminary approval, send email notice to those class members for whom Defendant has contact information, or if email fails, mailed notice. (Gutride Decl. Ex. 1, §§ 4.4-4.7.) In addition, the claim administrator will establish the settlement website, which shall contain the settlement notices, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the settlement agreement, the signed order of preliminary approval, a printable version of the claim form, product list and (when it becomes available) Class Counsel's application for attorneys' fees, costs, expenses and incentive awards and final approval motion. (Id. § 4.2.)

As explained in the declaration from the claim administrator filed herewith, this multi-communication method remains the best notice practicable and is reasonably designed to reach the settlement class members. (Dowd Decl. ¶¶ 7-27.) *See, e.g.*, *Simpao v. Gov't of Guam*, 369 Fed. Appx. 837, 838 (9th Cir. 2010) (notice plan was "best notice practicable" where direct notice was

mailed to class members and supplemented by published notice); *In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, *7 (N.D. Cal. Mar. 26, 2014) (where direct individual notice not practical, "publication or something similar is sufficient to provide notice to the individuals that will be bound by the judgment"); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (approving settlement; holding that where defendants do not maintain complete lists of all class members, notice via publication is "reasonable"); *In re Netflix Privacy Litig.*, 2012 WL 2598819, *5 (N.D. Cal. July 5, 2012) (approving notice procedure that included emailing customers at last known email address, publication in People Magazine, and advertising on Facebook.com).

The proposed notices inform class members about the proposed settlement; their right to opt out or object; the need to file a claim; a summary of settlement benefits; the prospective request for attorneys' fees, costs and incentives; and the fact that they will be bound by the judgment if they do not opt out. The notices refer class members to the settlement website where they can obtain the long-form notice, which provides more details about the case and the settlement, the procedures for opting out or objecting, a fuller discussion of the release, and methods to obtain additional information. The settlement website also contains a copy of the full settlement agreement and will contain the fee application when filed. (Gutride Decl., Ex. 1, § IV; Sub-Ex. B1, B2.)

Settlement class members who seek benefits under the Settlement need to fill out a simple claim form online. They also have the option to print complete and mail the claim form to the claim administrator. The claim form requires them to certify under the penalty of perjury (1) their name and address and (2) basic information about the Products purchased, including types, quantity, price paid, time and place of purchase and that the purchases were not made for purposes of resale. (Id. § 3.6.)

## D.     LEAVE TO AMEND SHOULD BE GRANTED

As part of the settlement agreement, Defendant has agreed to stipulate to permit Plaintiffs to file a third amended complaint in the form attached as Exhibit F to the Settlement Agreement. (Gutride Decl., Ex. 1, Sub-Ex. F.) Federal Rule 15(a)(2) permits a plaintiff to amend its pleading

with the opposing party's written consent, and thus, leave to file the complaint should be granted here. *See, e.g., Alsabur v. Autozone, Inc.*, 2014 WL 1340730, *1 (N.D. Cal. Apr. 3, 2014) (granting leave to amend where defendant stipulated to the amendment). In addition, courts routinely grant leave to amend in this context, where the parties have agreed to the filing of an amended complaint as part of a class settlement. *See, e.g., Harris v. Vector Mktg. Corp.*, 2011 WL 1627973. *6 (N.D. Cal. Apr. 29, 2011) (approving stipulation and granting leave to amend complaint as part of order granting preliminary approval); *Ching v. Siemens Indus., Inc.*, 2013 WL 6200190 (N.D. Cal. Nov. 27, 2013) (same).

## IV.   DATES FOR THE FINAL APPROVAL PROCESS

Plaintiffs request that in connection with preliminary approval, this Court set a date for a final approval hearing to consider the fairness of the Settlement and to hear any comments from the settlement class members, as well as dates for mailing and publishing Notice and deadlines for objections and opting out of the settlement class. Plaintiffs propose the following schedule:

| Item | Proposed Due Date |
| --- | --- |
| Initiate Notice | 14 days after preliminary approval |
| Motion for final approval; Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Award | 42 days before final approval hearing |
| Objections, Requests to Appear, opt-outs | 28 days before final approval hearing |
| Replies in support of final approval and motion for attorneys' fees, costs and incentive awards; response to objections | 14 days before final approval Hearing |
| Final approval Hearing | Early February, 2015 |
| End of Claim Period | 30 days after final approval |

**V.    CONCLUSION**

    For the reasons stated above, Plaintiffs respectfully request that this Court grant preliminary approval to the proposed class action settlement.

Dated: August 20, 2014             **Respectfully submitted,**

                          **GUTRIDE SAFIER LLP**

                          By: /s/ Adam Gutride
                          Adam J. Gutride
                          Seth A. Safier
                          Kristen G. Simplicio

                          *Counsel for Plaintiffs*