

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT MILLER  and STEVE LEYTON, individually and on behalf of themselves, the general public and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GHIRARDELLI CHOCOLATE COMPANY;<br><br>Defendant. | No. C 12-04936 LB<br><br>ORDER (1) CONDITIONALLY CERTIFYING SETTLEMENT CLASS; (2) PROVISIONALLY APPOINTING CLASS COUNSEL AND CLASS REPRESENTATIVES; (3) PRELIMINARILY APPROVING SETTLEMENT; (4) APPROVING NOTICE TO CLASS; (5) SETTING HEARING FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR FEES, COSTS, AND SERVICE AWARD; AND (6) GRANTING PLAINTIFFS' LEAVE TO FILE THEIR PROPOSED THIRD AMENDED COMPLAINT<br><br>[RE:  ECF No. 129] |

## INTRODUCTION

In this putative class action, Plaintiffs Scott Miller and Steve Leyton claim that Defendant Ghirardelli Chocolate Company violated consumer protection laws and labeling regulations by its labeling of its products.  The parties move for preliminary approval of a proposed class action settlement.  *See* Motion, ECF No. 129; Statement of Non-Opposition, ECF No. 132.[1]  The court

---

[1]  Citations are to the electronic case file ("ECF") with pin cites to the electronically-generated numbers at the top of the page.

1 | grants the motion.

2 | **STATEMENT**

3 | **I.  THE LAWSUIT TO DATE**

4 |    Mr. Miller was the original named Plaintiff.  *See* Complaint, ECF No. 1.  Mr. Leyton

5 | intervened with the court's permission in December 2013.  See 12/20/13 Order, ECF No. 84.

6 | The operative complaint alleges that Ghirardelli violated consumer protection laws by labeling its

7 | "Ghirardelli Chocolate Premium Baking Chips – Classic White" ("White Chips") as containing

8 | chocolate when they did not.  *See* Second Amended Complaint, ECF No. 86.  Mr. Leyton

9 | intervened in that lawsuit and also sought to add claims that Ghirardelli labeled the White Chips

10 | and certain other products as "All Natural."  Although the court allowed Mr. Leyton to intervene,

11 | it did not allow him to add the "All Natural" claims on the ground that it was too late in the

12 | litigation.  *See* Order, ECF No. 84 at 16-17.

13 |    In March 2014, Mr. Leyton gave notice of his intent to file his "All Natural" allegations in a

14 | separate lawsuit.  At the May 15, 2014 hearing on the motion, the parties asked the court to defer

15 | issuing its formal order so that they could return to mediation. Thereafter, they notified the court

16 | that they had settled their case.

17 | **II.  THE PROPOSED SETTLEMENT**

18 |    In summary form, the settlement agreement is as follows.  Ghirardelli will pay $5.25 million

19 | into a common fund.  The fund will be used to pay all costs of notice and administration, any fees

20 | and costs awarded to Plaintiffs' counsel, incentive awards to Plaintiffs, and claims by class

21 | members.  Each class member who makes a claim will obtain $1.50 per purchase of the White

22 | Chips and $0.75 per purchase of any of the other products labeled as "All Natural."  There will be

23 | no cap on the total amount paid to a claimant for claimed purchases that are corroborated by a

24 | Proof of Purchase.[2]  For claims that are not corroborated by a Proof of Purchase, a maximum of

25 |

26 |

27 | _____
[2]  "Proof of Purchase" means an itemized retail sales receipt showing, at a minimum, the
28 | purchase of a Product, the purchase price, and the date and place of the purchase.  Gutride Decl., Ex. 1, § 2.26.

1   $24.00 will be paid to any Household.[3]  Amounts may be reduced pro-rata if the total value of

2   claims exceeds the amount of the common fund after payment of notice and administration costs,

3   fees, costs, and incentive awards.  If funds remain in the common fund after paying all claims,

4   incentive awards, and fees and costs, the money will be donated *cy pres*, in equal amounts, to four

5   charitable organizations.  Finally, as part of the settlement, Ghirardelli has agreed to continue

6   with certain label changes it implemented during the litigation to the products at issue.  *See*

7   Settlement Agreement, Declaration of Adam Gutride ("Gutride Decl."), Ex. 1.

8       The settlement agreement will be administered by an independent claim administrator called

9   The Garden City Group, Inc., which will cause the notices to be published, emailed and mailed

10  (as described below), establish a website, distribute funds to class members, and otherwise

11  administer the settlement.  *Id.* § IV.

12      On August 20, 2014, Plaintiffs filed an unopposed motion for an order (1) conditionally

13  certifying the proposed settlement class and appointing Gutride Safier LLP as class counsel and

14  Plaintiffs as class representatives, (2) preliminarily approving the proposed class settlement, (3)

15  directing the dissemination of notice in the form and manner set forth in the settlement

16  agreement, (4) setting a schedule for the fairness hearing and other remaining procedures, and (5)

17  granting Plaintiffs leave to file their proposed third amended complaint.  The court held a hearing

18  on October 2, 2014 and now issues this order granting the motion.

19                                  **ANALYSIS**

20  **I. JURISDICTION**

21      This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

22  **II. CONDITIONAL CERTIFICATION OF CLASS**

23      For settlement purposes only, the parties propose conditional certification of a class that

24  consists of all persons (other than Excluded Persons) who, between August 17, 2008, and October

25  2, 2014, purchased, in the United States, except for purposes of resale, the Ghirardelli "Classic

---

[3]  "Household" means any number of persons occupying the same dwelling unit.  *Id.*
§ 2.14.

White" chips or any of the other products labeled as "all natural," a complete list of which is provided in the Long Form Notice attached as Exhibit B1 to the settlement agreement.  Excluded Persons means (1) the presiding judge in this case (Laurel Beeler) and any member of her immediate family; (2) the Honorable Edward Infante and any member of his immediate family; (3) any government entity; (4) any of the Released Parties; and (5) any persons who timely opt out of the Settlement Class.

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b).  In a settlement context, the court must pay "undiluted, even heightened, attention" to class certification requirements because the court will not have the opportunity to adjust the class based on information revealed at trial.  *See Staton v. Boeing*, 327 F.3d 938, 952-53 (9th Cir. 2003) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (same).  The court finds that the proposed settlement class here meets the requirements of Federal Rule of Civil Procedure 23(a) and (b).

**A.  Rule 23(a)**

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members.  *See* Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953.

Here, the factors support class certification for purposes of settlement.  First, Plaintiffs have adduced from Ghirardelli's sales records that the class members number in the millions or more, which makes joinder impracticable.  *See Jordan v. County of L.A.*, 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds, *County of L.A. v. Jordan*, 459 U.S. 810 (1982).  Second, there exist common issues, including the following: (1) whether Ghirardelli's marketing and advertising materials were likely to deceive reasonable consumers; (2) whether Ghirardelli violated California Health & Safety Code sections 110100(a), 110380, and 11050 and (3) whether class members are entitled to injunctive and other equitable relief and, if so, what is the nature of such

4

1   relief.  Third, Plaintiffs' claims regarding the allegedly deceptive packaging are typical of other

2   class members.  *See Hanlon*, 150 F.3d at 1019-20 (claims are typical if they are reasonably

3   coextensive with that of absent class members; they need not be substantially identical).  Fourth,

4   the named Plaintiffs are able to fairly and adequately protect the interests of all class members.

5   The factors relevant to a determination of adequacy are as follows: (1) the absence of potential

6   conflict between the named plaintiff and the class members; and (2) counsel chosen by the

7   representative parties who are qualified, experienced and able to vigorously conduct the proposed

8   litigation.  *Id*. at 1020.  The court is satisfied that those factors exist here.  The named Plaintiffs

9   have shared claims and interests with the class.  Also, Plaintiffs have retained qualified and

10  competent counsel.  *See* Gutride Decl., Ex. 2; *Local Joint Executive Bd. of Culinary/Bartender

11  Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Brown v. Ticor Title

12  Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992).

13  **B. Rule 23(b)(3)**

14       In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate

15  for certification under one of the categories in Rule 23(b).  *See* Fed. R. Civ. P. 23(b); *Hanlon*, 150

16  F.3d at 1022.  The court finds that certification of the settlement class is appropriate under Rule

17  23(b)(3).  Questions of law and fact common to class members predominate over any questions

18  affecting only individual members.  *See* Fed. R. Civ. P. 23(b)(3).  The case involves multiple

19  claims for relatively small sums, and a class action is superior to an alternative method for fairly

20  and efficiently adjudicating the claims.  *See Amchem*, 521 U.S. at 625; *Culinary/Bartender Trust

21  Fund*, 244 F.3d at 1163 (class action appropriate because "if plaintiffs cannot proceed as a class,

22  some – perhaps most – will be unable to proceed as individuals because of the disparity between

23  their litigation costs and what they hope to recover"); *Pilgrim v. Universal Health Card, LLC*,

24  660 F.3d 943, 946 (6th Cir. 2011); *cf. Sullivan v. DB Invs.*, 667 F.3d 273, 303-04 & n.28 (3d Cir.

25  2011) ("In light of the Supreme Court's guidance that a district court '[c]onfronted with a request

26  for settlement-only class certification' need not inquire whether the case 'would present

27  intractable management problems,' *Amchem*, 521 U.S. at 620 . . . state law variations are largely

28  'irrelevant to certification of a settlement class.'").

**C.  Conclusion: Provisional Certification is Appropriate**

Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), the court conditionally certifies the class set forth above for the purpose of giving the class notice of the proposed settlement in this matter and conducting a fairness hearing.  The court has examined the propriety of certification only for settlement purposes.  If the Effective Date as defined in the settlement agreement fails to occur, then the settlement class will be decertified and the findings and conclusions in this part II of the Order will be deemed withdrawn.

**III.    APPOINTMENT OF CLASS REPRESENTATIVES, CLASS COUNSEL, AND CLAIM ADMINISTRATOR**

For the reasons set forth in the previous section, the court appoints Plaintiffs Scott Miller and Steve Leyton as the class representatives.  The court finds provisionally that they have claims that are typical of the claims of class members generally and that they are adequate representatives of the other members of the proposed class.  The court also provisionally finds that Gutride Safier LLP has sufficient qualifications, experience, and expertise in prosecuting class action cases and appoints that firm as class counsel for settlement purposes only.

The court designates, and approves, the Garden City Group to serve as Claim Administrator. It will administer the settlement, including, but not limited to, notice and related procedures, subject to the oversight of the parties and this court as described in the settlement agreement.

**IV. PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

The approval of a class action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms.  In reviewing the proposed settlement, the court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with Plaintiffs' fiduciary obligations to the class.  *See Hanlon*, 150 F.3d at 1027.  The *Hanlon* court identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the

1   extent of discovery completed and the stage of the proceeding; (6) the experience and views of

2   counsel; (7) the presence of a government participant; and (8) the reaction of class members to

3   the proposed settlement. *Id.* at 1026 (citation omitted).

4       The court has evaluated the proposed settlement agreement for overall fairness under the

5   *Hanlon* factors and concludes that preliminary settlement is appropriate.

6       First, an evaluation of the strengths and weaknesses of Plaintiffs' case militates in favor of

7   settlement.  Plaintiffs have represented that they believe that the evidence obtained in discovery

8   shows that Ghirardelli's White Chips packaging and advertisements were likely to (and did)

9   deceive unsuspecting consumers.  Plaintiffs also maintain that Ghirardelli knew of the deceptive

10  nature of the White Chips packaging.  On the other hand, Plaintiffs would have been required to

11  prove that the White Chips and "all natural" labeling was likely to deceive or confuse reasonable

12  persons.  Plaintiffs could have difficulty obtaining monetary relief because Ghirardelli contends

13  that the challenged labeling had no effect on pricing or sales volume and that pricing and sales

14  were the same before and after it changed its packaging to remove the challenged language.  *See*

15  Gutride Decl., ¶ 7.  Moreover, a jury might have reasonably concluded that the list of ingredients

16  adequately disclosed that the product did not have cocoa butter and was not white chocolate and

17  that the challenged aspects of the label were not misleading in light of the ingredient list.  While

18  this court held, following *Williams v. Gerber*, that the ingredient list disclosure was not

19  dispositive at the pleading stage (*see* ECF No. 20 at 17), satisfying the pleading standard does not

20  mean that Plaintiffs necessarily would have won at trial.  Settling the case to secure some relief,

21  rather than risking a complete loss at trial, is often a reasonable approach.

22      Second, the litigation poses risks.  The court is familiar with the lengthy, hard-fought nature

23  of the proceeding, and there is a risk of continued, expensive litigation.  Ghirardelli strenuously

24  opposed certification of a class, particularly a nationwide class, and the issue of certification had

25  not yet been decided.  Ghirardelli argued throughout the litigation that its customers purchase its

26  products for a variety of different reasons and that many choose Ghirardelli products because of

27  their flavor and do not care about the specific product name or ingredients.  *See* ECF No. 39.

28  With regard to the White Chips, Ghirardelli argued that the ingredient list discloses the absence of

ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. C 12-04936 LB

1   cocoa butter and chocolate so consumers who read the ingredients could not have been misled

2   into believing the product contained cocoa butter or chocolate. *Id.* Ghirardelli could be expected

3   to argue that these factors show a lack of commonality and provide a potential defense on the

4   merits. Finally, any judgment in Plaintiffs' favor could be appealed, and that seems likely given

5   the class certification issues and Ghirardelli's approach so far in this litigation. Thus, Plaintiffs

6   have represented, and the court concludes based on the track record of the litigation, that it could

7   take years to get relief for class members. *See id.*

8       Third, the settlement appears to treat all class members fairly. Having a claims process is

9   necessary because there is no central repository of information identifying class members, and

10   because those who purchased the products for resale purposes are excluded from the class. The

11   claims process also directs available funds to those who most care about the alleged deception

12   and thus are willing to file a claim. The parties estimate that the $1.50 per bag of White Chips

13   equates to approximately 35 to 60% of the retail purchase price, and the $0.75 per other Product

14   represents varying percentages of the retail price, depending on specific Product and retailer. *See*

15   *id.* ¶ 8. Plaintiffs have explained that there is a greater recovery for White Chips purchasers

16   because of the stronger claims and evidence regarding the White Chips. That evidence concerned

17   not just the "All Natural" labeling but also language suggesting that the product contained white

18   chocolate. *See id.* Furthermore, in addition to the monetary relief, Plaintiffs believe that

19   Ghirardelli's changed practices will benefit class members and other consumers. *See id.* And the

20   $5,000 incentive awards Plaintiffs plan to request also appear to be within a range of

21   reasonableness to compensate Plaintiffs for their time and effort and for the risk they undertook in

22   prosecuting the case against Ghirardelli. The court will consider the amount of any such

23   incentive awards at the final approval hearing, after further motion practice and considering any

24   objections by class members. Finally, the settlement is the product of serious, non-collusive,

25   arms' length negotiations and was reached after a months-long mediation process, including two

26   in-person mediation sessions, before an experienced mediator, a retired United States Magistrate

27   Judge. *See id.* ¶¶ 4-5.

28       In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair,

ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. C 12-04936 LB

adequate, and reasonable" such that preliminary approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court thus approves the settlement agreement preliminarily.

The class notices state that plaintiffs will request an award, from the common fund, of attorney's fees of up to $1,575,000.00, plus out-of-pocket expenses of up to $90,000, for a total of $1,665,000.00. Plaintiffs state that the fee request will be justified both as a percentage of the common fund (which appears to be 30%) and on the basis of their lodestar. The record now is not sufficient to determine whether the amounts and percentages requested are appropriate, and the court will address the issue at the final approval hearing. *Cf. Hanlon*, 150 F.3d at 1029 (twenty-five percent is considered a benchmark in common fund cases); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (twenty-five percent benchmark, though a starting point for analysis, may be inappropriate in some cases; fees must be supported by findings).

The settlement agreement further provides that any awarded attorney's fees, costs and expenses will be paid to class counsel within seven days after (a) the court issues an order of Final Approval that includes an award of attorney's fees and/or expenses to Plaintiffs' Counsel and (b) Adam Gutride and Seth Safier have executed the Undertaking attached hereto as Exhibit E to the settlement agreement.[4] *See* Gutride Decl., Ex. 1, § 6.4 and Sub-Ex. E. Such "quick pay" provisions are routinely approved by courts in this district. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) (citing cases).

## V. APPROVAL OF CLASS NOTICE

The court approves the proposed notice. The Claim Administrator will establish a settlement website, which will contain the long form and email settlement notices, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the settlement agreement, the signed order of preliminary approval, the motion papers in support of

---

[4] If Final Approval or the award of attorney's fees, costs or expenses is later reversed on appeal then, within seven days of such order, class counsel shall repay to the Settlement Fund Account the amount received, plus interest that would have accrued had the money remained in the Settlement Fund Account. If class counsel fails to do so, Ghirardelli may ex parte obtain a judgment against class counsel and Adam Gutride and Seth Safier personally for the amount owed by class counsel, plus interest, as further set forth in the Undertaking.

1  the order for preliminary approval, online and printable versions of the claim form and the opt out

2  forms, answers to frequently asked questions, a Product list, and (when it becomes available)

3  Plaintiffs' counsel's application for attorney's fees, costs, expenses and incentive awards and

4  motion for final approval.

5      Notice will be published in several places, all of which will refer class members to the

6  settlement website. One half-page ad will be taken out in People Magazine. An additional 1/8

7  page ad will be published once a week for four successive weeks in the Oakland Tribune. Online

8  notice will be published for a total of 280 million impressions on various websites, including

9  Facebook, Yahoo network, MSN network, and several website groups that include cooking and

10 baking websites. The ad will appear 1.4 million times through an MSN ad mobile service.

11     The Claim Administrator will send direct notice to each of the approximately 23,250

12 settlement class members for whom Ghirardelli has names and addresses because they purchased

13 through the Ghirardelli website or phone system. An email notice will describe the settlement

14 and provide a link to the settlement website. By clicking on the link provided in the email, it will

15 bring the class members to a pre-populated claim form with the records of their purchases and

16 inform them that Proof of Purchase for those items has been submitted. The email notice will be

17 sent twice. If an email address is not available or the initial email notice is returned as

18 undeliverable, the Claim Administrator will send a postcard notice via first class mail to the

19 settlement class member's address based on Ghirardelli's records as updated through the National

20 Change of Address Database.

21     Class members will have until 28 days before the fairness hearing, to request exclusion or

22 object to the settlement. This gives class members sufficient time to consider their options and

23 make a fully informed decision. *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375

24 (9th Cir. 1993) (approving notice sent 31 days before the deadline for objections and 45 days

25 before the hearing).

26     The court also finds that the forms of notice attached as Exhibit B1 to B4 of the settlement

27 agreement fairly, plainly, accurately, and reasonably inform class members of the following: (1)

28 the nature of the litigation, the settlement class, the identity of class counsel, and the essential

terms of the settlement agreement; (2) the amounts that will be requested as attorney's fees, costs, and class representative incentive awards; (3) how to challenge or opt out of the settlement, and the effect of failing to do so; (4) the time and place of the fairness hearing; and (5) how to obtain additional information regarding this litigation, the settlement agreement and the approval process.  In addition, the online banner ad attached as Exhibit B5 to the settlement is appropriate in that it alerts class members to the settlement and links to the settlement website which will contain the long form notice attached as Exhibit B1 to the settlement agreement.  *See* Gutride Decl., Ex. 1, § 4.6.

In sum, the court approves, as to form and content, the Claim Form and the Notices, substantially similar to the forms attached as Exhibits A and B1 to B5 to the settlement agreement.  The court also approves the manner of distributing the class notice.  The parties will have discretion to jointly make non-material minor revisions to the Notices before emailing, mailing and publishing.

## VI. CY PRES AWARDS

If, after payment of notice, administration, fees, costs, incentive awards, and valid claims, there remains a balance in the common fund, Plaintiffs will ask the court to approve a list of charitable organizations to receive any balance remaining in the settlement fund.  Gutride Decl., Ex. 1, § 3.4. The parties have selected the following organizations:  Consumers Union, Yonkers, NY; National Consumer Law Center, Washington, DC; University of California, Davis, Food Science & Technology Department; and Florida State University, Food & Nutrition Science Department.  *Id.*

Plaintiffs have represented that the proposed charitable organizations are reasonably connected to this litigation in that they work on advancing the rights of consumers and the information available to food consumers.  *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (holding that courts "may employ the *cy pres* doctrine to 'put the unclaimed fund to its next best compensation use, *e.g.,* for the aggregate, indirect, prospective benefit of the class'") (quoting *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir. 2007)).

The court provisionally accepts these organizations as acceptable and will defer final approval

1   until the fairness hearing.  *See, e.g., Bolton v. U.S. Nursing Corp.*, 2013 WL 2456564, *2 (N.D.

2   Cal. June 6, 2013) (in order granting preliminary approval, deferring approval of proposed *cy pres*

3   recipients until final approval).

4   **VII.  COMPLIANCE WITH CLASS ACTION FAIRNESS ACT**

5        On October 1, 2014, Plaintiff filed a declaration showing compliance with the Class Action

6   Fairness Act of 2005, 28 U.S.C. § 1715.  See ECF No. 139.  That declaration establishes that on

7   August 27, 2014, Garden City Group mailed notice of the settlement agreement to the Attorney

8   General of the United States and the appropriate California state official.  *Id.*  According to the

9   declaration, the notice contains the documentation required by 28 U.S.C. § 1715(b)(1-8).  *See id.*

10  Any final settlement approval will be more than 90 days after service as required by 28 U.S.C. §

11  1715.

12  **VIII.   LEAVE TO AMEND COMPLAINT**

13       As part of the settlement agreement, Ghirardelli has stipulated to Plaintiffs' filing  a third

14  amended complaint in the form attached as Exhibit F to the settlement agreement.  *See* Gutride

15  Decl., Ex. 1, § V; Sub-Ex. F.  In the third amended complaint, Plaintiff Leyton adds to this case

16  the "all natural" allegations that were to be a part of his separate lawsuit.  The parties have

17  represented that the third amended complaint will streamline the settlement process and ensure

18  that more money can be refunded to class members by saving the costs of two separate notice and

19  approval processes.  The court agrees.

20       Federal Rule 15(a)(2) permits a plaintiff to amend its pleading with the opposing party's

21  written consent, and thus, leave to file the complaint should be granted here.  *See, e.g., Alsabur v.*

22  *Autozone, Inc.*, 2014 WL 1340730, at *1 (N.D. Cal. Apr. 3, 2014) (granting leave to amend where

23  defendant stipulated to the amendment).  In addition, it is appropriate to grant leave to amend in

24  this context, where the parties have agreed to the filing of an amended complaint as part of a class

25  settlement. *See, e.g., Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *6 (N.D. Cal. Apr. 29,

26  2011) (approving stipulation and granting leave to amend complaint as part of order granting

27  preliminary approval); *Ching v. Siemens Indus., Inc.*, 2013 WL 6200190 (N.D. Cal. Nov. 27,

28  2013) (same).  This order is subject to the conditions set forth in Section X of this ruling.

## IX.  PROCEDURES FOR FINAL APPROVAL OF SETTLEMENT

The schedule for dates and deadlines is set forth in the table below and discussed in the sections that follow.

| **Event** | **Date** |
|---|---|
| Initiate Notice | 14 days after this order issues |
| Motion for Final Approval; Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Awards | 42 days before fairness hearing |
| Objections, Requests to Appear, Opt-Outs | 28 days before fairness hearing |
| Replies in Support of Final Approval and Motion for Attorney's Fees, Costs, and Incentive Awards; Response to Objections | 14 days before fairness hearing |
| Fairness Hearing | February 19, 2015, 9:30 a.m. |
| End of Claim Period | 30 days after final approval |

### A.  Fairness Hearing

At the hearing, the court will determine whether to grant final certification of the settlement class, confirm the appointment of Gutride Safier LLP as class counsel and the Plaintiffs as class representatives, finally approve the settlement agreement, and award the requested incentive awards to the class representatives and attorneys' fees and costs to class counsel.  The court may, for good cause, extend any of the deadlines in this order or continue the fairness hearing without further notice to the Settlement Class Members.

### B.  Initiation of Notice by No Later Than 14 Days From Today

The court orders the parties (through the claim administrator) to send the notice in the form approved by this order within 14 days of this order as discussed in Section V.

Class counsel must file proof of distribution of notice at or before the final hearing.

### C.  Requests for Exclusion from the Settlement

Class members may exclude themselves from the class settlement, and that request for exclusion must be made in the following manner: any member of the Settlement Class who wants to be excluded from the Settlement Class, and therefore not be bound by the terms of the settlement agreement, must submit an online request for exclusion by January 21, 2015 [28 days

1   prior to Fairness Hearing] or mail to the Claim Administrator, pursuant to the instructions set

2   forth in the Long Form Notice, a timely and valid written request for exclusion, received (not

3   postmarked) no later than January 21, 2015 (28 days prior to Fairness Hearing).  No one will be

4   permitted to exercise any exclusion rights on behalf of any other person, whether as an agent or

5   representative of another or otherwise, except upon proof of a legal power of attorney,

6   conservatorship, trusteeship, or other legal authorization, and no one may exclude other persons

7   within the Settlement Class as a group, class, or in the aggregate.

8       **D.  Objections to the Settlement**

9       Any class member who wishes to object to the settlement and/or to be heard at the Fairness

10  Hearing must electronically file with or deliver to the Clerk of the Court a written notice of

11  objection by January 21, 2015 (28 days before Fairness Hearing).  Each such objection must

12  include the following:  (1) the name, address, and telephone number of the Settlement Class

13  Member; (2) documents or testimony sufficient to establish membership in the Settlement Class;

14  and (3) a detailed statement of any objection asserted, including the grounds therefor and reasons,

15  if any, and for requesting the opportunity to appear and be heard at the fairness hearing.  Failure

16  to include the foregoing information will constitute grounds for striking an objection.

17      **E.  Deadline for Submitting Motion for Final Approval and Petition for Attorney's Fees,
18          Costs, and Expenses**

19      Plaintiff must file a motion for final approval of the settlement and settlement agreement at

20  least 42 days before the fairness hearing.  Pursuant to *In re Mercury Interactive Corp. Sec. Litig*.,

21  618 F.3d 988, 994-95 (9th Cir. 2010), class counsel must file with this court their petition for an

22  award of attorney's fees and reimbursement of costs at the same time.  Both motions will be

23  heard at the time of the fairness hearing.

24      **F.  Plaintiffs' and Class Members' Release**

25      If, at the fairness hearing, this court grants final approval to the settlement and the settlement

26  agreement, the named Plaintiffs and each individual settlement class member who does not timely

27  opt out will release claims, as set forth in the settlement agreement, by operation of this court's

28  entry of the judgment and final approval.

1  **X.  EFFECT OF THIS ORDER**

2      This Order will not be construed as an admission or concession by Ghirardelli of the truth

3  of any allegations made by the Plaintiffs or of liability or fault of any kind.

4      In the event that the proposed settlement is not finally approved by the court, or in the event

5  that the settlement agreement becomes null and void pursuant to its terms, this Preliminary

6  Approval Order and all orders entered in connection herewith will become null and void, will be

7  of no further force and effect, and will not be used or referred to for any purposes whatsoever in

8  this Action or in any other case or controversy.  In such an event, the settlement agreement and all

9  negotiations and proceedings directly related thereto will be deemed to be without prejudice to

10  the rights of any and all of the parties, who will be restored to their respective positions as of the

11  date and time immediately preceding the execution of the settlement agreement, and the Third

12  Amended Complaint will be stricken from the record.

13                                  **CONCLUSION**

14      This disposes of ECF No. 129.

15      **IT IS SO ORDERED.**

16

17  Dated:  October 2, 2014        _____

18                                  Laurel Beeler
                                    UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

15